IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIGITAL MEDIA TECHNOLOGY HOLDINGS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 25-038-CFC |
| DELUXE MEDIA INC., | ) ) | |
| Defendant. | ) ) | |

**DELUXE MEDIA INC.'S OPENING BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS THE COMPLAINT</u>**

OF COUNSEL:
Gene W. Lee
PERKINS COIE LLP
1155 Avenue of the Americas
22nd Floor
New York, NY  10036-2711
(212) 262-6900

Dated: March 17, 2025

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Deluxe
Media Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ..................................1

III.   SUMMARY OF ARGUMENT .....................................................2

IV.    STATEMENT OF FACTS ........................................................2

V.     LEGAL STANDARD .............................................................4

VI.    ARGUMENT ......................................................................6

     A.    Claim 1 Is Invalid Under 35 U.S.C. § 101. ........................................6

          1.    *Alice* Step One: Claim 1 Is Directed To An Abstract Idea. ................................................................6

              a.    Claim 1 Is Directed To Well-Known Business Practices. ...........................................6

              b.    Claim 1 Is Written In Broad, Functional Terms. ................................................9

              c.    The Federal Circuit Has Found Similar Patent Claims To Be Directed To Abstract Ideas. ......................................................10

          2.    *Alice* Step Two: Claim 1 Uses Generic Computers And Thus Lacks An Inventive Concept. ..............................13

     B.    The Other Claims Of The '725 Patent Are Also Invalid Under Section 101. ..........................................16

VII.   CONCLUSION....................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Alice Corp. v. CLS Bank Int'l,*
  573 U.S. 208 (2014)......................................................................passim

*Beteiro, LLC v. DraftKings Inc.,*
  104 F.4th 1350 (Fed. Cir. 2024) .........................................................9

*Broadband iTV, Inc. v. Amazon.com, Inc.,*
  113 F.4th 1359 (Fed. Cir. 2024) ....................................8, 10, 11, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat.
  Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................16, 17

*Credit Acceptance Corp. v. Westlake Servs.,*
  859 F.3d 1044 (Fed. Cir. 2017) .........................................................13

*Digital Media Technology Holdings, LLC v. Digital Cinema
  Distribution Coalition, LLC,*
  No. 1:24-cv-01321-CFC (filed Dec. 5, 2024) ....................................2

*Digital Media Technology Holdings, LLC v. Disney Media &
  Entertainment Distribution LLC,*
  No. 1:22-cv-01642-CJB (filed Dec. 29, 2022) ...................................2

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016) ..........................................5, 8, 9, 11

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
  839 F.3d 1089 (Fed. Cir. 2016) .........................................................14

*GeoComply Sols. Inc. v. Xpoint Servs. LLC,*
  No. 22-1273-WCB, 2023 WL 1927393 (D. Del. Feb. 10, 2023).........5

*Luxer Corp. v. Parcel Pending, Inc.,*
  No. 1:24-CV-00604-JCG, 2025 WL 417049 (D. Del. Feb. 6, 2025)................17

*Mobile Acuity Ltd. v. Blippar Ltd.,*
  110 F.4th 1280 (Fed. Cir. 2024) ...........................................9, 10, 16

**Page(s)**

*SAP America, Inc. v. InvestPic, LLC,*
   898 F.3d 1161 (Fed. Cir. 2018) ......................................................... 4-5

*In re TLI Commc'ns LLC Pat. Litig.,*
   823 F.3d 607 (Fed. Cir. 2016) ....................................................13, 14

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) .........................................5, 11, 12, 14

*Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.,*
   916 F.3d 1363 (Fed. Cir. 2019) .........................................................13

## STATUTES AND OTHER AUTHORITIES

35 U.S.C. § 101 ..............................................................................passim

Fed. R. Civ. P. 12(b)(6)...............................................................2, 4, 12

## I.    INTRODUCTION

Plaintiff Digital Media Technology Holdings, LLC ("Plaintiff") alleges that defendant Deluxe Media, Inc. infringes U.S. Patent 7,574,725 (the "'725 Patent"). The '725 Patent is a long-expired patent with claims that are directed to the abstract idea of organizing, distributing, and displaying media content and related advertisements. The '725 Patent issued in 2009, nearly five years before the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) setting forth the modern two-part test for patent eligibility. The '725 Patent fails both parts of the *Alice* test.

Organizing, distributing, and displaying media content (e.g., movies) and related advertisements (e.g., movie trailers) were well-known business practices in media-related industries long before the '725 Patent. The '725 Patent proposes no technological improvement or innovation to these well-known business practices; rather, it simply calls for using general-purpose computers to perform them. Because the '725 Patent does not identify, much less solve, any technical problem and instead applies conventional technology to an abstract idea, it is ineligible for protection under *Alice*. Thus, all claims of the '725 Patent are invalid under 35 U.S.C. § 101, and Plaintiff's complaint should be dismissed with prejudice.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this action on January 8, 2025. The complaint alleges

infringement of "at least claim 1 of the '725 Patent." D.I. 1, ¶14. Defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) because the '725 Patent is invalid under Section 101.[1]

## III.    SUMMARY OF ARGUMENT

1.    All claims (claims 1-23) of the '725 Patent are invalid because they are directed to the abstract idea of organizing, distributing, and displaying media content and related advertisements, and they implement this abstract idea using generic computers without adding anything that transforms the abstract idea into a patent-eligible invention.

## IV.    STATEMENT OF FACTS

The '725 Patent is titled, "Multimedia Marketing and Distribution System." D.I. 1-1. The specification states that the invention of the '725 Patent "relates to the marketing and distribution of multimedia material, including digitally generated film, video, graphics and audio, and analog[] traditional media converted into digital

---

[1] Plaintiff asserts the '725 Patent in two other pending cases in this District: *Digital Media Technology Holdings, LLC v. Digital Cinema Distribution Coalition, LLC*, No. 1:24-cv-01321-CFC (filed Dec. 5, 2024) ("*DCDC*"), and *Digital Media Technology Holdings, LLC v. Disney Media & Entertainment Distribution LLC*, No. 1:22-cv-01642-CJB (filed Dec. 29, 2022) ("*Disney*"). In both cases, the defendants filed motions to dismiss based on invalidity under Section 101. Briefing is ongoing in the *DCDC* case, with defendant DCDC's reply brief due by April 2, 2025. *DCDC*, D.I. 18. Defendant Disney's motion was dismissed without prejudice because the *Disney* case was stayed in view of an *inter partes* review. *Disney*, D.I. 77.

movie and television programs, and associated marketing materials for distribution over a computer network to exhibitors and broadcasters." *Id.*, 1:20-25. Claim 1 of the '725 Patent is a method claim that includes six steps ((a) through (f)) of organizing and distributing two types of information—media content and related advertisements—and a "wherein" limitation (g) that describes the purchaser of the media content and related advertisements and the display of such content:

> 1.  A method of marketing and distributing multimedia, the method comprising:
>
>     a.  receiving, by a server, multimedia material and advertising material from a producer or owner of said multimedia material, said advertising material being associated with said multimedia material, said advertising material comprising audio and video components;
>
>     b.  storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in digital format;
>
>     c.  providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to potential purchasers;
>
>     d.  providing samples of said correlated information in a digital format from said server system over said communication network to said potential purchasers, said purchasers being linked to the server system through said communication network;
>
>     e.  downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format corresponding to said multimedia material from

said server system, said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material; and

f. providing said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, said purchasers downloading said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material, said purchasers storing the downloaded correlated information in a digital format corresponding to said advertising material; and

g. wherein said purchaser is an exhibitor exhibiting said multimedia material, after deriving said multimedia material from said stored correlated information in a digital format corresponding to said multimedia material, in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor, said advertising material, after deriving of said advertising material from said correlated information in a digital format corresponding to said stored associated advertising material, being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed.

*Id.*, 16:19-17:2.

## V.    LEGAL STANDARD

Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161,

4

1166 (Fed. Cir. 2018) (citations omitted); *see, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713, 717 (Fed. Cir. 2014).

The Supreme Court has developed a two-part test for determining whether a patent claim is ineligible for patent protection for covering an abstract idea. *Alice*, 573 U.S. at 218. Step one determines whether a claim is "directed to" an abstract idea. *Id*. This step considers the claim's overall "focus" and "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Applying step one of the *Alice* test, "courts have identified fundamental economic and business practices as abstract ideas." *GeoComply Sols. Inc. v. Xpoint Servs. LLC*, C.A. No. 22-1273-WCB, 2023 WL 1927393, at *4 (D. Del. Feb. 10, 2023) (citations omitted). If a patent claim is directed to an abstract idea under step one, step two considers whether the claim elements recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "Thus, if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on … a computer,'" that addition cannot impart patent eligibility." *Id.* (citation omitted).

## VI.    ARGUMENT

### A.    Claim 1 Is Invalid Under 35 U.S.C. § 101.

#### 1.    *Alice* Step One: Claim 1 Is Directed To An Abstract Idea.

Claim 1 is directed to the abstract idea of organizing, distributing, and displaying media content and related advertisements and recites using general-purpose computers to carry out this abstract idea. *See* D.I. 1-1, 16:19-17:2. The '725 Patent admits that the film and TV industries have long performed the tasks of organizing and distributing media content and related advertisements (*id.*, 1:20-2:44), and it proposes improving and reducing the costs of these well-known practices through the use of computer technology (*id.*, 2:48-3:25). Furthermore, the '725 Patent admits that using computers and networks to distribute multimedia materials was known in the prior art. *See, e.g.*, D.I. 1-1, 1:29-32 ("growth of computer networks, like the Internet, has provided a convenient way for computer users to obtain from remote sites information in the form of … video").

##### a.    Claim 1 Is Directed To Well-Known Business Practices.

The elements of claim 1 recite fundamental business practices for distributing and marketing media content. Claim 1 involves the following steps: (a) receiving "multimedia material" and associated "advertising material" from a content provider; (b) storing such content "in a digital format"; (c) providing potential purchasers with access to the stored content over a communication network; (d) providing "samples" of the stored content to potential purchasers; (e) purchasers

downloading and storing the multimedia material; and (f) the purchasers downloading and storing the associated advertising material to allow them to market and sell the multimedia material. *Id*. Element (g) states that (1) the purchaser exhibits the "multimedia material … in a public theater to a number of individuals in exchange for a paid admission" or broadcasts the multimedia material, and (2) the advertising material is "shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed." *Id*., 16:19-17:2.

First, claim 1 recites limitations directed to organizing media content by "associat[ing]" or "correlat[ing]" certain media with advertisements. D.I. 1-1, 16:19-17:2. Step (a) recites "said advertising material being ***associated with*** said multimedia material." *Id*., 16:23-24 (emphasis added). Step (b) recites "storing said multimedia material and ***associated*** advertising material … as ***correlated*** information in a digital format." *Id*., 16:26-28 (emphasis added). Step (f) recites "providing said ***correlated*** information in a digital format ***corresponding*** to said advertising material that is ***associated*** with said multimedia material." *Id*., 16:47-49 (emphasis added). Element (g) recites "deriving said multimedia material from said stored ***correlated*** information in a digital format ***corresponding*** to said multimedia material." *Id*., 16:58-17:2 (emphasis added). These claim limitations associate or correlate "multimedia material" with "advertising material" to allow purchasers to

7

acquire related materials. *Id.*, 16:19-17:2. But organizing information by associating or correlating content as recited by claim 1 "can be performed in the human mind or using a pencil and paper, [which] can inform whether a claim is abstract." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024).

Second, claim 1 recites limitations directed to the distribution of media content and advertisements. For example, steps (a) and (b) recite the steps of "receiving" and "storing" media content and associated advertising material. D.I. 1-1, 16:21-28. Step (c) recites "providing a server system accessible over a communication network … for transfer of" media content. *Id.*, 16:29-34. Step (d) recites "providing samples … to said potential purchasers." D.I. 1-1, 16:35-39. Steps (e) and (f) recite the steps of "downloading" and "providing" media content and advertising material to purchasers, "allowing purchasers to locally market and sell said multimedia material." *Id.*, 16:40-57. The Federal Circuit has "treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1353.

Third, element (g) calls for the purchaser displaying the multimedia material by exhibiting it in a public theater or as a broadcast, such that the advertising material is "shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed." D.I. 1-1, 16:58-17:2. The

Federal Circuit has stated that displaying information by "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1354.

In summary, claim 1 is directed to well-known business practices of organizing media content and related advertising material, distributing such content to purchasers, and displaying such content, which long predated the '725 Patent.

### b.    Claim 1 Is Written In Broad, Functional Terms.

Claim 1 of the '725 Patent is written in broad, functional language. Claim 1 requires the functional results of "***receiving***" multimedia material and advertising material, "***storing***" such content as correlated information, "***providing***" a server system "***accessing***" such content, "***providing***" samples of such content, "***downloading***"/"***providing***" and "***storing***" such content, and "***exhibiting***" such content. "[T]he claims are drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results. Claims of this nature are almost always found to be ineligible for patenting under Section 101." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (citing *Elec. Power Grp.*, 830 F.3d at 1356).

The Federal Circuit's decision in *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1292 (Fed. Cir. 2024), is instructive. Like the claims of the '725 Patent, the

claims in *Mobile Acuity* required associating and manipulating two types of information. *Id.* at 1292-93. *Mobile Acuity* involved claims "directed to the abstract idea of receiving information, associating information with images, comparing the images, and presenting information based on that comparison." *Id.* at 1292. The court found the claims to be directed to an abstract idea because they "consist solely of result-orientated, functional language and omit any specific requirements as to how these steps of information manipulation are performed." *Id.* at 1292-93.

### c. The Federal Circuit Has Found Similar Patent Claims To Be Directed To Abstract Ideas.

Claim 1 of the '725 Patent is very similar to claims the Federal Circuit has found to be directed to abstract ideas and invalid under Section 101.

The present case is factually and legally very similar to *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359 (Fed. Cir. 2024). *Broadband iTV* involved the '026 patent, which claimed an Internet-connected device for receiving three types of related information—video content and related metadata and pictures—and organizing such information to generate a hierarchically arranged electronic program guide to enable a subscriber to navigate the program guide and select a desired video program. *Id.* at 1363-64. The District Court granted summary judgment that the claims of the '026 patent were directed to an abstract idea and invalid under Section 101.

10

On appeal, the Federal Circuit affirmed. The court observed:

> The claims of the '026 patent family are directed to receiving metadata and organizing the display of video content based on that metadata. Representative claim 1 of the '026 patent recites an "electronic program guide" that is automatically created using "metadata" that was "uploaded to a [server] by a content provider." Specifically, the claimed metadata determines the "respective hierarchical location of a respective title of the video content within the electronic program guide to be displayed."

*Id.* at 1367-68 (citations omitted).

The court held "that receiving metadata and organizing the display of video content based on that metadata is abstract." *Id.* at 1368 (citing *Elec. Power Grp.* 830 F.3d at 1351). The court also found that the recitation of a conventional server to which the video content and metadata were uploaded did not change the fact that the claims were directed to an abstract idea. *Id.* at 1369.

The present case is also very similar to *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014). *Ultramercial* involved the '545 patent, which had claims for receiving two types of related information—a media product and an associated advertisement. The court found that the representative claim 1 was "directed to a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content." *Id.* at 712. Claim 1 involved steps including receiving media content from a content provider; selecting an advertisement to be associated with the media content; providing

11

consumers access to the media content and associated advertisement over the Internet; granting consumers, at their request, access to the media content in exchange for viewing the advertisement; and receiving payment from the sponsor of the advertisement. *See Ultramercial, Inc.*, 772 F.3d at 712, 714-715. The district court dismissed the complaint under Rule 12(b)(6), finding that the claims of the '545 patent were directed to an abstract idea and invalid under Section 101.

On appeal, the Federal Circuit affirmed, stating:

This ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form. The process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application. Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content.

*Id.* at 715.

Claim 1 of the '725 Patent is very similar to the claims found to be directed to an abstract idea and invalid under Section 101 in *Broadband iTV* and *Ultramercial*. Like claim 1 of the '725 Patent, the challenged claims in *Broadband iTV* and *Ultramercial* involved receiving and organizing media content and related information (e.g., metadata or advertisements) and displaying such media content and related information. Claim 1 of the '725 Patent should be found to be directed

to an abstract idea for substantially the same reasons the challenged claims in *Broadband iTV* and *Ultramercial* were so found.

### 2. *Alice* Step Two: Claim 1 Uses Generic Computers And Thus Lacks An Inventive Concept.

Claim 1 of the '725 Patent also fails the second step of the *Alice* test. This step examines whether the claim elements provide an "inventive concept" sufficient to transform the claim into something "significantly more" than an abstract idea. *Alice*, 573 U.S. at 221-22. "[I]f a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Id.* at 223 (cleaned up). The "mere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *see also Univ. of Fla. Rsch. Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1369 (Fed. Cir. 2019). Because claim 1 of the '725 Patent simply uses generic computer technology to receive, store, provide, and download data, it provides nothing inventive.

Claim 1 describes common computer operations without providing "a solution to a technological problem." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quotations omitted). For example, claim 1 of the '725 Patent recites "storing said multimedia material and associated advertising material … as correlated information in digital format." D.I. 1-1, 16:26-28. But the

claim does not describe a specific technique to achieve that result and says nothing about *how* the relevant data is stored and correlated. The only computer hardware components recited in claim 1 are a "server" (or "server system"), a "computer readable storage medium," and a "communication network." *Id.*, 16:19-17:2. These are generic components used for their basic functions of receiving, storing, providing, and downloading data; the '725 Patent does not describe any improvement to these functions. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d at 612 (using "server" for "performing generic computer functions such as storing, receiving, and extracting data" is not a technological improvement); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1096 (Fed. Cir. 2016) (claims that "merely graft generic computer components onto otherwise-ineligible method claims" are invalid).

Claim 1's ordered combination of steps likewise fails to provide an inventive concept. Again, the '725 Patent's specification admits that the organization, distribution, and marketing of media content were well-known concepts in the media industry long before its filing. *See* pages 5-6 above. Again, the claimed steps of "receiving," "storing," "providing," and "downloading" all have clear pre-computer analogs. *Id*. Because claim 1 "simply instruct[s] the practitioner to implement [an] abstract idea with routine, conventional" computer operations, it cannot satisfy the second step of the *Alice* test. *Ultramercial, Inc.*, 772 F.3d at 715.

14

The '725 Patent's specification and figures confirm that it does not address a technological problem. The specification itself suggests the use of "*conventional*" computer technology, such as using "conventional magnetic disk storage such as floppy disks, or the like" for the computer readable storage medium. D.I. 1-1, 8:48-49. Indeed, the specification describes no new technology at all and calls for using only known computer systems and networks to perform media organization, distribution and marketing. *See, e.g.*, *id*., 3:13-17 ("In conventional form, the inventive method of marketing and distributing multimedia includes the option of providing a server system accessible over a public communication system, such as the Internet."); *id*., 11:15-20 ("using the home page 100 as an entry point to subsequent screens for searching and purchasing rights in product and arranging for the transport of the same via the Internet or otherwise, including conventional means"). The patent figures, too, illustrate only generic computer components and the Internet, not anything new or unique. *See id*., Figs. 1, 9 (depicting generic computers, servers, "Computer Readable Data Storage," and "Cyberspace").

Without any specific improvement to the computer technology used to implement the claimed method, claim 1 provides no "inventive concept" and cannot satisfy the second step of the *Alice* test. Thus, claim 1 fails both steps of the *Alice* test and is invalid as a matter of law under Section 101.

**B.    The Other Claims Of The '725 Patent Are Also Invalid Under Section 101.**

Claim 1 is representative of all 23 claims of the '725 Patent. Analysis of patent eligibility under Section 101 is properly limited to a representative claim when "the claims at issue are substantially similar and linked to the same ineligible concept." *Mobile Acuity*, 110 F.4th at 1290 (internal quotation marks omitted); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). In this case, all 23 claims of the '725 Patent are directed to the abstract idea of organizing, distributing, and displaying media content and related advertisements, and the differences between the claims are immaterial with respect to patent eligibility.

Claim 14 is the system analog of claim 1—that is, it is similar in scope to claim 1 but is written as a system instead of as a method with conventional and generic hardware elements such as central processing units, memories, a communications network, an input device, and a digital film projector. It is invalid under Section 101 for the same reasons that claim 1 is invalid. As the Supreme Court stated in *Alice*, "the system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." *Alice*, 573 U.S. at 226.

16

The other claims—claims 2-13, 15-23—are method claims that differ from claim 1 in insignificant ways with respect to patent eligibility. In *Content Extraction*, the Federal Circuit affirmed the Section 101 invalidation of claims the district court had found representative because they were all "substantially similar and linked to the same abstract idea." 776 F.3d at 1348 (internal citation omitted). The court rejected plaintiff's argument that "certain dependent claims recite[d] additional steps … rendering [them] patent-eligible" because "all of the additional limitations in the claims … recite well-known, routine, and conventional functions of scanners and computers." 776 F.3d at 1349. As detailed below, claims 2-13, 15-23 similarly recite conventional, well-known features that do not transform the abstract idea of claim 1 into a patent-eligible invention. *See Luxer Corp. v. Parcel Pending, Inc.*, C.A. No. 1:24-CV-00604-JCG, 2025 WL 417049, at *4-5, 12 (D. Del. Feb. 6, 2025) (finding claims representative for Section 101 analysis where dependent claims added only well-known structural or functional features to the "allegedly abstract concept of authorizing access to a secure location upon verification of a user's credentials").

Claim 2 depends from claim 1 and specifies that the multimedia material includes certain non-digital media. Claim 3 depends from claim 2 and calls for digitizing the non-digital media. Claim 4 depends from claim 1 and states that the server that receives the multimedia material and advertising material is accessed

17

over a public communications network (e.g., the Internet). Claim 5 depends from claim 1 and specifies that the exhibition of multimedia material is a public showing of a motion picture. Claim 6 depends from claim 1 and adds a search function. Claim 7 depends from claim 1 and states that the advertising material comprises a motion picture with synchronized sound. Claim 8 depends from claim 1 and states that the advertising material comprises a motion picture with synchronized sound and a radio commercial. Claim 9 depends from claim 1 and states that the advertising material comprises a motion picture trailer or coming attraction movie segment with sound. Claim 10 depends from claim 9 and requires that at least one element of the advertising material is selected from the group of graphics for a newspaper advertisement, a radio spot, a poster, a coming attractions film segment, and handbills. Claim 11 depends from claim 1 and adds automatically collecting sales information relating to the multimedia material and providing sales and marketing data to exhibitors.

Claim 13 is an independent claim that is similar to claim 1 but specifies receiving a movie on celluloid and adds scanning the movie and converting it into digital form, inputting licensing information about the movie, and transmitting the licensing information to a potential exhibitor.

Claim 15 is an independent claim that is similar to claim 1 but adds establishing an account for a broadcast or live theater exhibitor, communicating with

the exhibitor to determine information necessary to calculate the amount owed for the multimedia material, and charging the exhibitor the amount owed. Claim 16 depends from claim 15 and (like claim 2) specifies that the multimedia material includes certain non-digital media. Claim 17 depends from claim 15 and requires that the communicating with the exhibitor is by automatically sending an email. Claim 18 depends from claim 15 and adds consulting publicly reported data about the exhibitor. Claim 19 depends from claim 15 and calls for querying the exhibitor to cause the sending of data from exhibitor and recording the data in a database. Claim 20 depends from claim 19 and calls for providing marketing data reported in the database to customers in response to a query from the exhibitor. Claim 21 depends from claim 15 and requires that the information comprises box office information that is transmitted to other exhibitors and/or potential exhibitors.

Claim 22 is an independent claim that is similar to claim 1 but adds querying the exhibitor to stimulate the sending of ticket sales data from the exhibitor, recording such data into a database for billing purposes, and reporting the ticket sales data to other exhibitors.

## VII.  CONCLUSION

For the reasons stated above, defendant Deluxe respectfully requests that the court dismiss Plaintiff's complaint because claims 1-23 of the '725 Patent are invalid under 35 U.S.C. § 101.

<div style="margin-left: 50%;">

/s/ Karen E. Keller
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Deluxe Media Inc.*

</div>

OF COUNSEL:
Gene W. Lee
Thomas Matthew
PERKINS COIE LLP
1155 Avenue of the Americas
22nd Floor
New York, NY  10036-2711
(212) 262-6900

Aaron E. Schindler
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
(608) 663-7460

Dated: March 17, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby confirm that this document complies with the type and number

limitations set forth in the Court's November 10, 2022 Standing Order. I certify

that this document contains 4,515 words, which were counted using the word count

feature in Microsoft Word, in 14-point Times New Roman font. The word count

does not include the cover page, tables, or the counsel blocks.

<div style="text-align:right">

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant Deluxe*
*Media Inc.*

</div>

Dated: March 17, 2025