# EXHIBIT A

Please type a plus sign (+) inside this box → [+]    PTO/SB/05 (12/97)

| **UTILITY PATENT APPLICATION TRANSMITTAL**<br><br>*(Only for new nonprovisional applications under 37 CFR 1.53(b))* | Attorney Docket No. | NS2 | Total Pages | 59 |
|---|---|---|---|---|
| | First Named Inventor or Application Identifier | STILIADIS | | |
| | Express Mail Label No. | EL695230855US | | |

| **APPLICATION ELEMENTS**<br>*See MPEP chapter 500 concerning utility patent application contents* | TO: | **Assistant Commissioner for Patents**<br>**Box Patent Application**<br>**Washington, DC 20231** |
|---|---|---|

1. [X]  Fee Transmittal Form (e.g., PTO/SB/17)   *(Submit an original, and a duplicate for fee processing)*
2. [X]  Specification                          [Total Pages    [ 47 ]]
3. [X]  Drawing(s) (35 USC 113)                [Total Sheets   [ 10 ]]
4. [X]  Oath or Declaration                    [Total Sheets   [ 2 ]]
     a. [ X ]  Newly executed (original or copy)
     b. [ ]   Copy from a prior application (37 CFR 1.63(d))
              *(for continuation/divisional with Box 17 completed)* **[Note Box 5 below]**
              i  [ ]   <u>DELETION OF INVENTOR(S)</u> Signed statement attached deleting Inventor(s) named in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).
5. [ ]  Incorporation By Reference (usable if Box 4b is checked) The entire disclosure of the prior application, from which a copy of the oath or declaration is supplied under Box 4b, is considered as being part of the disclosure of the accompanying application and is hereby incorporated by reference therein.
6. [ ]  Microfiche Computer Program (Appendix)
7. [ ]  Nucleotide and/or Amino Acid Sequence Submission (if applicable, all necessary)
     a. [ ]  Computer Readable Copy b. [ ] Paper Copy (identical to computer copy)
     c. [ ]  Statement verifying identity of above copies

## ACCOMPANYING APPLICATION PARTS

8.  [ ]  Assignment Papers (cover sheet & document(s))
9.  [ ]  37 CFR 3.73 (b) Statement  *(when there is an assignee)*      [ ]  Power of Attorney
10. [ ]  English Translation Document *(if applicable)*
11. [ ]  Information Disclosure Statement   (IDS)/PTO-1449      [ ] Copies of IDS Citations
12. [ ]  Preliminary Amendment
13. [X]  Return Receipt Postcard (MPEP 503) *(Should be specifically itemized)*
14. [X]  Small Entity Statement(s)      [X]  Statement filed in prior application. Status still proper and desired
15. [ ]  Certified Copy of Priority Document(s) *(if foreign priority is claimed)*
16. [ ]  Other:  a) Make the references on the parent application(s) of record herein *(see MPEP 2001.06(b))*.
                 b)

**17. If a CONTINUING APPLICATION**, check appropriate box and supply the requisite information:
[ ] Continuation   [ ] Divisional   [ ] Continuation-in-part (CIP)  of prior application No: _____

## 18. CORRESPONDENCE ADDRESS



00545

PATENT TRADEMARK OFFICE

**Anthony H. Handal Reg. No. 26,275**
**Roger Pitt Reg. No. 46,996**
**Phone: (203) 838-8589**
**Fax: (203) 838-8794**

# HANDAL & MOROFSKY
### Counsellors at Law
### 80 Washington Street
### Norwalk, Connecticut 06854

Paul Morofsky  1926-1986

District of Columbia Office
American Center - Tysons Corner
Suite 500
8300 Boone Boulevard
Vienna, Virginia 22182

Telephone: 203-838-8589
Facsimile: 203-838-8794
Telex: 429283 PATSLAW

April 23, 2001

**BOX PATENT APPLICATION**
Assistant Commissioner for Patents
Washington, D.C. 20231

      Re:    Nicholas STILIADIS
           New U.S. Non Provisional Patent Application   Filed: Herewith
           (Based on USAN 60/201,118  filed: May 2, 2000)
           "MULTIMEDIA MARKETING AND DISTRIBUTION
           SYSTEM"_____   Case: NS2_____

S I R :
We enclose herewith:

      [X]    Utility Patent Application Transmittal
      [X]    Specification (38 pp), Claims (8 pp) and Abstract ( 1 p)
      [X]    Declaration (unexecuted)
      [X]    Ten (10) Sheets of Drawings
      [X]    Check for $502.00 (Cinemavault Releasing Inc.) ($355.00 Basic Filing
            Fee, $147.00 Extra Claims Fees)
      [X]    Acknowledgment Postcard

      The Commissioner is hereby authorized to charge payment of the fees associated with this communication regarding this application, or credit any overpayment to Deposit Account No. 08-0570.

      The applicants hereby petition under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

                  Respectfully submitted,

                  Anthony H. Handal
                  Reg. No. 26,275
                  Roger Pitt
                  Reg. No. 46,996

**Express Mail Label No.:**
**EL695230855US**

Attorney Docket No. NS2

INVENTOR:

Nicholas STILIADIS
434 Queen Street, E
Toronto
CANADA M5A 1T5

# MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM

1      CROSS-REFERENCE TO RELATED APPLICATIONS

2  This application claims benefit of U.S. Provisional Patent Application No.

3  60/201,118 filed May 2, 2001, the disclosure of which is hereby

4  incorporated herein by reference thereto.

5

6

7      STATEMENT REGARDING FEDERALLY SPONSORED

8      RESEARCH OR DEVELOPMENT

9  Not Applicable.

10

11

12

13

Attorney Docket No. NS2

1              BACKGROUND OF THE INVENTION

2    1.    *Field of the Invention*

3    The present invention relates to the marketing and distribution of

4    multimedia material, including digitally generated film, video, graphics

5    and audio, and analogues traditional media converted into digital movie

6    and television programs, and associated marketing materials for

7    distribution over a computer network to exhibitors and broadcasters.

8

9    2.    *Description of Related Art Including Information Disclosed under 37 CFR 1.97*

10        *and 37 CFR 1.98*

11   The explosive growth of computer networks, like the Internet, has

12   provided a convenient way for computer users to obtain from remote sites

13   information in the form of text, graphics and audio, as well as video.  A

14   computer connected to the Internet or other computer network can also be

15   utilized to interact in real-time with other computers connected to the

16   computer network.

17

18   The film and television industries have evolved over the years with the

19   audiovisual image becoming omnipresent.  Yet despite the incursion of the

20   new technologies into many fields of business with the microchip and

21   digital technology changing many aspects of modern life including

22   marketing and distribution systems:  the movie and television business

23   remains largely unchanged still the motion picture and television industry

24   today can benefit greatly by reducing overhead costs with the attendant

25   improvement in profit margins.  These overhead costs include the

-2-

Attorney Docket No. NS2

1   replication and distribution of hundreds of celluloid prints, of movies,

2   videotapes, advertising materials and so forth.

3

4   Today, these costs remain substantially of the same character and nature as

5   when the industry was relatively young because the sale of audiovisual

6   materials has undergone little change in decades.  Typically, distributors

7   through film markets, catalogue sales and long established relationships

8   between purchasers and sellers, sell films.

9

10  Another problem facing producers and distributors is the high cost of

11  transportation and shipping of the films themselves and marketing and

12  advertising materials associated therewith.  Part of this problem includes

13  delayed and damaged shipments adding to the costs involved.  Another

14  high-cost component involves responding to requests for previews,

15  marketing materials, contract negotiations, and collecting and tracking

16  sales data for royalties and further marketing programs.  Finally, with

17  regard to promotional materials, there is little opportunity to select the

18  same, and wasteful production and transport often occurs.

19

20  Another problem addressed by the present invention is the time involved

21  in marketing and distributing multimedia products, especially motion

22  picture films.  The longer the time taken to introduce and distribute a

23  multimedia product the higher the financing costs become since revenues

24  take longer to be returned.

25

Attorney Docket No. NS2

1  Yet another problem with the present distribution system is that the

2  producers and owners must market the products through several different

3  channels requiring similar expenditures in each of those market areas.

4  Each purchase usually involves multiple charges for each item sent, such

5  as trailers, sample materials, duplicates and masters. These costs,

6  especially when incurred across continents can double a buyer's cost,

7  thereby significantly cutting into operating margins. In addition, obtaining

8  prospective purchaser lists, and the purchase history of those purchasers,

9  in locations around the globe is difficult and thus very costly.

10

11  Many elements are generated during the production of a typical feature

12  film. The storage, handling and administration of these elements are time

13  consuming, labor intensive and thus costly. The delivery process

14  necessitates working with a variety of suppliers to successfully assemble

15  the required elements, including thirty five millimeter release prints, audio

16  and music tracks, foreign language tracks and transcripts, still pictures,

17  video masters in a variety of formats, such as NTSC, PAL, Beta, one inch,

18  D1 and D2. Scripts, legal documents and a variety of other documents

19  must be stored and shipped. Multiple versions of films are often required

20  to comply with foreign rating regulations. Each time a new purchase is

21  made for a new market the process must be repeated. The elimination of

22  physically handling all of these elements significantly reduces labor costs.

23  Therefore, the present invention is designed to reduce or nearly eliminate

24  such handling.

25

Attorney Docket No. NS2

1  The market for many films is now worldwide, yet communication between

2  smaller markets around the world remains challenging.  Many movies

3  continue to produce revenue long after their first release by being re-

4  released in these smaller markets.  In addition, television programming for

5  major markets can continue producing revenue when local television

6  stations around the world seek programming.  Nevertheless, servicing the

7  smallest markets remains grossly inefficient.  The problems and costs

8  associated with marketing and distributing to these markets are currently

9  not cost effective.  The present invention addresses and minimizes these

10  problems by substantially reducing the costs making the marketing and

11  distribution of movies and television programming to these markets

12  economically feasible.

13

14                    BRIEF SUMMARY OF THE INVENTION

15  The inventive method of marketing and distributing multimedia such as

16  motion picture films, television programming and the like comprises

17  receiving multimedia material from a producer or owner of the material.  If

18  necessary, the material is converted to digital format.  The digital material

19  is then stored on a computer readable storage medium.  A server system is

20  provided that is accessible over a communication network.  The server

21  system accesses data from the computer readable storage medium for

22  transfer over the communication network to exhibitors.  The server can

23  provide samples of the multimedia material to potential purchasers

24  depending upon the marketing strategy employed by the producer or

25  owner.

Attorney Docket No. STILIADIS

1

2  The inventive system provides for the download, upon request, from the

3  server system over a public or private network of multimedia material and

4  then advertising material to exhibitors purchasing rights over the inventive

5  communications network.  This allows exhibitors and broadcasters to

6  locally use the multimedia material.

7

8  The method of marketing and distributing multimedia is dependant upon

9  the format in which the media is embodied.  One method of receiving

10  multimedia material is by downloading via the communication network.

11  If the media is not in an electronic format, the producer or owner must

12  convert the media to such a format or physically transport the media to the

13  server for conversion to an electronic format.  The preceding arrangement

14  is employed in accordance with the invention for motion picture movies

15  that are commonly produced only in a film format, or in a lower quality on

16  magnetic videotape.  The inventive method of marketing and distributing

17  multimedia also includes the capacity to digitize any non-digital media for

18  storage on the computer readable storage medium.

19

20  The inventive system may be employed to deliver films, advertising,

21  coming attraction strips, etc.  In conventional form, the inventive method

22  of marketing and distributing multimedia includes the option of providing

23  a server system accessible over a public communication system, such as

24  the Internet.  The distribution of the multimedia includes downloading

25  digital material from the server system for digital display to an audience.

-6-

Attorney Docket No. STILIADIS

1     In addition to the base media, advertising materials can be downloaded

2     from the server system.

3

4     In addition to providing multimedia to users, the server system collects

5     data about the users and information respecting the economics and sales

6     success of exhibitors and broadcasters.

7

8      BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWING

9     These and other features and advantages of the present invention will be

10    readily apparent from the following detailed description of the invention,

11    the scope of the invention being set out in the appended claims.  The

12    detailed description will be better understood in conjunction with the

13    accompanying drawings, wherein like reference characters represent like

14    elements throughout the various views of the drawings and wherein:

15

16    Figure 1     is a block diagram generally illustrating the inventive system

17               for marketing and distributing multimedia products;

18    Figure 2     is a block diagram showing a method for loading  multimedia

19               of various formats on a computer readable storage medium in

20               accordance with the invention;

21    Figure 3     is an illustration of a computer screen suitable for serving as a

22               home page in accordance with the method and apparatus of

23               the present invention;

24    Figure 4     is a web page screen for the selection of material;

Attorney Docket No. STILIADIS

1   Figure 5    is a flow chart illustrating the inventive method for obtaining

2               product over the Internet;

3   Figure 6    is an illustration of a secondary web page for the entry of

4               financial data in a web site constructed in accordance with

5               present invention;

6   Figure 7    is an illustration of a web page for selecting download of

7               various products;

8   Figure 8    is an illustration of a web page for selecting delivery options

9               for multimedia material selected in accordance with the

10              present invention;

11  Figure 9    is a block diagram showing the structure of input and output

12              systems at the central server and at an exhibitor's facility

13              utilizing a communications link which may be a publicly

14              accessible network such as the Internet; and

15  Figure 10   is a flow chart, similar to a flow chart in Figure 5, illustrating

16              an alternative inventive method for obtaining product over

17              the Internet while generating and providing statistical data.

18

19              DETAILED DESCRIPTION OF THE INVENTION

20  Referring now to Figure 1, a computer or communications network 10

21  implementing the method of the present invention is illustrated.  In the

22  illustrated embodiment, the system exchanges information through the use

23  of cyberspace 12, which may be either a private computer-based

24  communications system or a public system, such as that known under the

25  alleged trademark the Internet.  In accordance with the invention, an

-8-

Attorney Docket No. STILIADIS

1   owner of rights in a particular work, such as a multimedia producer 14, is

2   linked through network 10 to a central server 16 which functions as a

3   distribution web site in accordance with the invention.  Multimedia

4   producer 14 may also be connected to central server 16 via a private

5   network link 20, thus providing either a faster data link, a more secure

6   link, or both.  In addition, in accordance with the invention, it is

7   contemplated that communications between the owners of rights may also

8   take traditional forms, such as the transfer of print masters, or the like.

9

10   Similarly, a plurality of exhibitors, including a movie theater 18a, a

11   television station 18b, a satellite television operator 18c, a cable television

12   operator 18d and a high school 18e, are also connected through cyberspace

13   12 to central server 16.  It is noted that in accordance with the invention,

14   the servicing of smaller facilities, such as high school 18e is particularly

15   cost-effective as compared to conventional methods for transporting film

16   and associated promotional materials.

17

18   Multimedia producer 14, central server 16, and each of the exhibitors 18a-e

19   obtain and/or send product and associated information through facilities

20   which comprise computers with various peripheral devices, such as a

21   communications modem, display screen, keyboard, various printers,

22   scanners, and the like, as will be discussed in greater detail below.  In the

23   case of central server 16, relatively robust commercial systems may be

24   employed.  However, sufficient functionality can be achieved by exhibitors

Attorney Docket No. STILIADIS

1   18a-e using high-end personal computers with enhanced RAM and hard

2   drives.

3

4   Referring now to Figure 2, a flow chart is presented that generally shows

5   how various multimedia formats can be loaded into a computer readable

6   storage media 28 by producers and other persons who own rights in

7   various cinematographic properties.  In accordance with the invention the

8   same are loaded into a computer readable storage media 28, which is

9   located at central server 16.  Media 28 may take any one of a number of

10  different forms, but in accordance with the preferred embodiment

11  comprises a hard drive with high-speed access and large capacity.

12  Alternatively, the same may be a combination of a large hard drive for

13  materials other than feature-length or program-length movies, while such

14  movies and programs are made available via a jukebox arrangement

15  involving access to multiple disks and mechanical systems for moving

16  those disks to one or a plurality of player heads.

17

18  In accordance with present invention, there are a plurality of input paths

19  over which films and associated materials can be transported for storage in

20  media 28.  In the simplest case, all such media material is physically

21  delivered to central server 16.  An operator at central server 16 logs onto a

22  central processor unit located at the premises of the website operator at

23  step 30 in Figure 2.  After logging on, the operator of the system inputs an

24  identifier, such as a title of a movie, associated with the material to be

25  entered, converted, and stored on storage media 28.  Such material

-10-

Attorney Docket No. STILIADIS

1   associated with the title may include the actual film, in the case of a feature

2   length film, graphics for a newspaper advertisement, a radio spot, a poster,

3   a coming attractions film segment, handbills or the like.

4

5   In accordance with the invention, it is also contemplated that producers

6   may log onto the website from a remote location.  Likewise, the official

7   operator of the website can also log onto the system from a remote

8   location.

9

10   Input of Materials into the System.

11

12   If we first consider the case of a remote official operator logging onto the

13   system at step 30, such operator gives his name and password, thus

14   identifying himself.  The system thus knows the identity of the person

15   using the system from the name and password of the individual logging

16   onto the system, in this case the official operator.  The official operator is

17   treated as the equivalent of an owner because he acts for owners to input

18   materials into the system.  When the operator is identified, at step 31 the

19   system makes the determination that the operator is acting for owners of

20   product.  At this point the system presents the operator with a list of titles

21   at step 32 and gives the operator access to implement the system whose

22   operation is illustrated in Figure 2.

23

24   If, on the other hand the system determines that the person logging onto

25   the system is an exhibitor, it proceeds along path 29 through the inventive

Attorney Docket No. STILIADIS

1    method steps toward implementation of distribution of product over the

2    Internet to the exhibitor, the charging of the account of the exhibitor, and

3    to various other steps, as will be described in detail below.

4

5    One embodiment of the invention will now be described in connection

6    with the input of a movie entitled "ABC". Initially, this movie is received

7    on seventy-millimeter film (celluloid). The producer or owner of the

8    movie also provides the operator of the inventive web site with advertising

9    posters, newspaper advertisements, radio promotional spots on

10   audiocassette or compact disc, television promotional spots on video

11   cassette or videodisc, trailers on celluloid or video cassette, a film strip

12   comprising a coming events announcement, and text, such as all or

13   portions of the script and critic's reviews. All of these materials and other

14   types of materials that are normally transported physically from the

15   owner, such as the producer or other owner of rights, to the person

16   licensing the movie, are digitized and stored in storage media 28 in

17   accordance with the invention.

18

19   When these materials are in-house, the operator, who is to enter the

20   material into the information storage media 28 for availability over the

21   Internet from central server 16, enters the title, ABC, at step 32. In

22   accordance with the invention, a screen for the entry of the title is

23   provided. The screen has a line into which the title is to be entered which

24   may be highlighted, whereby the title of the movie may be typed in. The

25   system, in this respect behaves like other systems where the beginning of

-12-

Attorney Docket No. STILIADIS

1    the typing of the name results in the system following the keystrokes to

2    come to the title, if that title is in storage.  In this respect, the system

3    operates much like help topics in many programs.  Likewise, it is possible

4    to cursor through the list of titles, again as in the case of the help topics

5    screen.  If no material associated with the title is in storage, the title will

6    not be found.  It then becomes necessary that, in accordance with the

7    invention, the title must be entered into the system at step 33.

8

9    In this respect, the central processor 22 at step 34 checks computer readable

10    storage media 28 to see if the title has previously  been entered into the

11    system.  If the title is already in the system, the operator will be given the

12    opportunity to enter or select various versions of the media and select

13    materials, such as a television version, director's cut, poster, European

14    version and the like, as appears more fully below.

15

16    If it is a new title, the system, at step 36, assigns an identifier to the title

17    ABC and, at step 38, stores that information in storage media 28.  The

18    operator can then input any additional  data at step 40, such as the

19    producer or owner of the title.  The object of this additional entry of data is

20    to allow the identification of products in ways other than the title.

21

22    This allows additional flexibility when it comes time to output product

23    from the system.  For example, if one wanted to search the work of Stanley

24    Kubrick, or dramatizations of Mario Puzo novels, such additional

25    information provides for this facility.  In addition, more than one piece

-13-

Attorney Docket No. STILIADIS

1   may have the same title.  Accordingly, such additional information allows

2   positive identification of the particular item to be furnished to an exhibitor

3   or broadcaster.  In accordance with the invention it is contemplated that

4   after a title has been entered into the system and given an identifier, the

5   title may be retrieved at step 33 from storage media 28 and presented to

6   the operator at step 40, where additional materials can be added if desired.

7

8   Returning to description of the inventive method for inputting materials

9   into the system, the operator indicates the type of media at step 42 that is

10  to be converted into digital format, if necessary, and stored on storage

11  media 28.  For example, the material may be identified as a feature film on

12  celluloid, an hour-long television program on video, a radio spot for a

13  movie, the magazine advertisement for a television show, or the like.  Once

14  rendered and stored digitally on central server 16, audio and visual

15  materials are easily accessible by business-to-business customers around

16  the globe.

17

18  The invention may be applied, for example, to the various types of media

19  illustrated in Figure 2, namely celluloid, video, audio, text, and graphics.

20  At step 46, visual media, such as film or videotape is input into the system

21  for conversion.  Movie film can come in several formats of its own, such as

22  seventy millimeter, thirty-five millimeter, and sixteen millimeter, each of

23  which can be in such formats as interpositive, duplicate negative, original

24  negative, low contrast print, or release print.

25

Attorney Docket No. STILIADIS

1    In the case of such film inputs into the system, it is necessary for the film to

2    be scanned at step 48 and turned into an analog RGB video signal. The

3    video signal resulting from the scanning of the celluloid film can then be

4    digitized using an analog to digital converter and stored in RAM at step

5    50. Because of the high bandwidth of the resulting video signals and the

6    very large information content associated with a video signal, it has

7    relatively large storage requirements. However, video signals are also

8    highly redundant. Accordingly, compression of video signals is highly

9    effective and desirable. Accordingly, after the signal has been digitized in

10   RAM at step 50, the signal is compressed at step 52, given an address at

11   step 54 and stored in media 28. At step 54, the type of the particular

12   product, which has been stored, will be indicated in storage, in this case,

13   film, and details respecting the nature of that film will also be indicated in

14   storage. For example, the product may be designated as seventy

15   millimeter, feature length, documentary footage shot for television in 1984.

16   Other details respecting the particular product, such as the producer,

17   director, actors cover and other information may also be sent to storage for

18   later retrieval.

19

20   In accordance with the present invention, in order to avoid a need for

21   excessive storage space in media 28, the video signal, whether it was

22   generated by scanning conventional celluloid film or originated as a video

23   signal on videotape, is not put into RAM for compression in one large

24   operation, but is, instead, digitally compressed portion by portion to

25   reduce bandwidth and file size, and then stored at step 54. However, after

Attorney Docket No. STILIADIS

1    one video portion has been stored in media 28 at step 54, the system

2    returns to step 46, where additional video is input into the system and

3    processed as described above, and the entire process repeated until the

4    entire video has been transformed into RAM.  It is noted that the

5    redundancy in a video signal resides largely in corresponding pixel to

6    corresponding pixel redundancy from one frame to the next.  Accordingly,

7    it is highly desirable that portions to be compressed be more than one

8    frame in size, and that each frame of each such portion is compared to the

9    prior frame, corresponding pixel by corresponding pixel.  This will

10   effectively remove redundancy and maximize the reduction of file size.

11

12   In accordance with the invention, it is also contemplated that electronic

13   video recordings may also be input into the system, digitized and stored in

14   media 28.  For example, possible video formats include VHS, 1², digital

15   Betacam, D1, D2, BetacamSP, and the new high-resolution formats.  When

16   a video signal is to be digitized, scanning is not necessary and after input

17   of the footage at step 56, the system proceeds directly to digitize the signal

18   and store it in RAM at step 58.  The digitized movie is then compressed at

19   step 60, and stored in RAM together with its associated other information,

20   as described above the connection with film input at step 46, under its

21   identifier address at step 62 in computer readable storage 28.  Here again,

22   because of the high information content of video, digitizing and

23   compression is done in portions at steps 58 and 60, the information is

24   stored at step 62, and the system proceeds back to step 56 to repeat the

25   process for the next portion of input video.

Attorney Docket No. STILIADIS

1　　As alluded to above, the objective of the system is to store not only feature

2　　films, but also associated promotional and other materials.  For example,

3　　marketing materials may be stored along with a feature film.  This allows

4　　such materials to be sent in digital form directly from producer 14 to

5　　central server 16 via either cyberspace 12 or private link 20, as shown in

6　　Figure 1.  With the advent of motion pictures being "filmed" digitally, this

7　　transfer will be relatively easy.  However, since almost all existing feature

8　　films are on celluloid, they must be converted by scanning and digitizing,

9　　and then compressed and stored, or converted and compressed through

10　　the use of equivalent techniques.

11

12　　Referring back to the objective of storing associated materials, if, for

13　　example, a radio spot is to be input into the system, the system proceeds to

14　　step 64, where audio material can be entered.  This is done by the system

15　　activating a soundcard or similar device in the computer associated with

16　　the storage of information on disk storage 28.  In accordance with the

17　　invention, analog audio may simply be coupled to the soundcard.  The

18　　same can be generated using any playback device, or, alternatively, or may

19　　arrive from a remote location by wire, for example, over the telephone

20　　system.  Audio may input into the system by a producer 14 in any format

21　　such as DA-88, DAT,  thirty-five millimeter magnetic tape, sixteen

22　　millimeter magnetic tape, $1/4^2$ audio tape, thirty-five millimeter optical

23　　tack, computer session, compact disc, audio from video formats noted

24　　above, or any other source, including live performance.  If audio is input at

25　　step 64 in an analog format, it is converted to digital at analog/digital

-17-

Attorney Docket No. STILIADIS

1    conversion step 58.  Digital audio may then optionally be compressed in

2    memory at step 68.  The audio spot is then stored at step seventy under a

3    selected identifier which associates it was the particular feature film or

4    other product for later retrieval from readable storage 28 via the Internet,

5    private link, or the like.

6    It is also contemplated that the inventive system will be used to make

7    graphics, such as movie posters, handbills, newspaper advertisements, and

8    the like inexpensively and quickly available at remote locations.  In the

9    event that the operator wishes to input such materials into the system, the

10   system proceeds to step 72 in response to the selection of the media type at

11   step 42.  The operator activates the input graphics at step 72, after the

12   system activates a scanner at step 74.

13

14   In accordance with the invention, it is contemplated that the input of

15   graphics at step 72 and scanning at step 74 will consist generally letter size

16   or smaller graphics and text (typical of magazines and smaller newspaper

17   advertising, handbills and the like).  Over the system also contemplates

18   application to oversize graphics with and without text (such as posters of

19   the type commonly seen at movie theaters).  After the performance of

20   scanning at step 74, the output of the scanner is digitized at step 76.  The

21   file containing the graphics entered into the system is then compressed at

22   step 78, although this is optional.  The final version of the material is then

23   stored in memory at step 80.  Such storage at step 80 in disk storage 28 is

24   done under the selected identifier that associates it with the particular

Attorney Docket No. STILIADIS

1    feature film or to like. Such storage also includes the description of the

2    media type (graphics) so that the same is available from storage media 28.

3

4    There has been described above a process for moving graphics of a

5    conventional nature into the system. This is particularly important in the

6    case of the overwhelming majority of existing feature films and other

7    productions. However, this will become increasingly unimportant in the

8    future as virtually all production of such materials migrates into the digital

9    world.

10

11    Accordingly, as multimedia producer 14 in digital form may produce some

12    or all of the media materials in this category, this material may also be

13    transferred electronically over cyberspace 12 or private network 20 to

14    central server 16. Downloads to central server 16 may be done directly

15    into storage media 28 under a selected identifier. Alternatively,  more

16    control may be exercised by the operator of the web site at central server 16

17    by having the download stored temporarily in a "mail box" file assigned to

18    the producer for such purposes, or the like, until an operator located at the

19    central server reviews material and transfers it to its proper place in

20    storage media 28 under its associated feature film or the like identifier and

21    type.

22

23    In similar fashion, and it is possible, in accordance with the present

24    invention, to input alphanumeric materials into the system for retrieval

25    over the Internet. Such alphanumeric materials may include scripts,

Attorney Docket No. STILIADIS

1    foreign subtitles, and closed caption data for the hearing-impaired. Where

2    such alphanumeric data has been selected for input at step 42, the system

3    proceeds to look up the film's identification address, which is then

4    associated with the material at step 44 . The system then receives such

5    alphanumeric data at step 82, and stores that material at step 84.

6

7    Inasmuch as such alphanumeric material is generally available in digital

8    form, it is contemplated that the same will be downloaded to disk storage

9    28 through the use of the Internet or conventional magnetic disk storage,

10   such as floppy disks, or the like. However, in the event that such

11   information is only available in hardcopy, the same may be scanned using

12   optical character recognition software, with an OCR reader and the optical

13   character recognition software being activated at step 42 upon the

14   identification of the type of material.

15

16   In accordance with the invention, it is also contemplated that other

17   materials not specifically identified above, may also be input into the

18   system for later retrieval from disk storage 28 via the Internet or other

19   means. It is also noted that, in accordance with the invention, it is

20   preferred that material be input into the system through the use of existing

21   digital materials, through the use of remote transport over the Internet or

22   other communications network.

23

24   In accordance with the method of the present invention, the presentation

25   of the program illustrated by the flowchart of Figure 2 is done on the

-20-

1    monitor of a computer in conjunction with the number of screens which

2    form the graphical user interface between the inventive system and the

3    person implementing the storage of film and materials in disk storage 28.

4    More particularly, Figure 3 is an example of a display screen for

5    implementation of steps 30 and 32 in Figure 2.

6

7    Graphical User Interface.

8

9    Referring now to Figure 3, a screen 100 is shown that is a simplified web

10   site home page to be viewed by a producer or an exhibitor looking to

11   transact business or communicate with the operator of the inventive web

12   site. A log-on block 102 for implementation of step 30 is provided. A

13   person working on behalf of any owner of rights which participates in the

14   system (such as a producer 14 as illustrated Figure 1) or any one of the

15   exhibitors 18a-e can enter his organization's name and password in order

16   to gain access to the rest of the web site. If a valid password is entered the

17   user can then make a selection or enter a desired title. Once logged on, a

18   user can enter a title or click on search button 104 to locate a particular type

19   of movie.

20

21   Searching is done by way of a secondary group of screens allowing

22   searching according to any of various search criteria, such as producer,

23   director, lead actor, supporting actors, subject matter, etc. Once the

24   searching has been completed, the title of the product, which the user is

25   interested in obtaining, appears after "Movie Title:" in screen 100.

Attorney Docket No. STILIADIS

1    Screen 100 has two sets of functions associated with it.  The first set of

2    functions is implemented when the system recognizes that it is dealing

3    with a producer or other order of rights.  On the other hand, a second set

4    of functions is active and implemented when the system recognizes that it

5    is dealing with an exhibitor.

6

7    In the case where the system recognizes the person logging onto the web

8    site as an owner of rights, it implements the first set of functions.

9    Accordingly, if the user is a producer or other owner of rights and wishes

10   to view the conditions for use of the web site to distribute his product for

11   various types of products, he clicks on an enter sales data button 106.

12   Upon the clicking of button 106, if the user is unknown to the system, the

13   user is instructed in subsequent screens to enter such data as the type of

14   product which he licenses, the performers associated with the product, the

15   content (i.e.  dramatic, musical, news, etc.), and historical income data.  If

16   the user is already known to the system, much information is already

17   known to the system, such as the location of the exhibitor, the nature of his

18   business, his existing contractual relationships with exhibitors and with

19   the operator of the web site, and the like.  This allows the system to give

20   the exhibitor cost factors in accordance with his contracts and other

21   information.  Naturally, these figures are a function of agreements between

22   the web site operator and the owner of rights.

23

24   In addition to using the home page 100 as an entry point to subsequent

25   screens for providing information, and providing for the input of product

-22-

Attorney Docket No. STILIADIS

1  into the system, the home page also provides a portal for a client, such as

2  an exhibitor or an owner of rights, to view his account status, as will be

3  described more fully below.

4

5  In addition, an exhibitor, for example, may click on an email button 110 to

6  be added to an email list to receive announcements for such things as

7  newly added titles on a regular basis. In the case of owners of rights, other

8  subject matter will be implemented in regular e-mail communication. In

9  addition, a "send e-mail" button 112 may be provided on home page 100 to

10  allow messages to be sent to the web site operator.

11

12  A button 114 for requesting additional information about the web site may

13  also be placed on the home page illustrated in Figure 3. This information

14  may be on the home page to give unregistered visitors an idea of what the

15  web site is all about. Clicking on button 114 will bring the users to a

16  secondary page or pages giving information on the web site (not

17  illustrated).

18

19  It is also contemplated that various advertisements 116 may also appear on

20  the home page. In accordance of the invention it is contemplated that such

21  advertisements will be specific to particular users, their geography and the

22  like and will be based on information held in the system with respect to

23  prior exhibition of various titles, their popularity and the like. The

24  objective of the system is to use data inside the database of the web site to

25  predict successful products and to make such products available to users

-23-

Attorney Docket No. STILIADIS

1   by way of advertisements, and to further include in said advertisements

2   information with respect to the fact that such product is expected to be

3   successful and why such success is to be expected.  Such information may

4   include information on previous box office, Nielsen ratings, or the like in

5   other cities.

6

7   Such information may also include the fact that the product is generally

8   popular, but has not been seen in the area for years.  This is of particular

9   interest to television operators who are sometimes not well staffed and

10   thus not able to do the research, which would make their stations

11   successful.  As is alluded to above, it is the objective of this invention to

12   store in its database all information respecting licensing of films and other

13   products, their location, the time at which licensing of the same occurred,

14   box office, and so forth for later use in targeted advertising and in checking

15   the accuracy of reported box office (in order to prevent fraud), and for

16   other uses known to those in the industry.

17

18   Returning to the description of the function of screen 100 as a portal for

19   exhibitors or the official web site operator to enter products into storage

20   media 28, once the title is entered data entry logon block 102 and button

21   118 is click on, the system proceeds to screen 120 in Figure 4.  Screen 120

22   provides for the input of three types of material, namely, text and graphics,

23   they feature film, and audio.  The user would then click the button

24   associated with the particular type of material in the general categories

25   noted above, which he wishes to input.  Each selection may have sub-

-24-

Attorney Docket No. STILIADIS

1    screens for making additional distinctions between the formats set forth

2    above.

3

4    Alternatively, screen 120 could be replaced by a screen, which lists such

5    things as feature films, television specials, news programs, and so forth.

6    Selection of one of these types of material to be downloaded to the web site

7    results in the generation of inappropriate sub screen.  For example, if

8    feature film is selected, the sub screen would list feature film, radio

9    promotion spot, magazine advertisements, posters and the like.  Some

10   screens coming off of each of these selections would differentiate between

11   the various types of formats.  For example, feature film would bring up a

12   screen showing celluloid format, video format, and digital format.

13

14   Either of these two alternatives provides for the generation of descriptive

15   and indexing information in the process of downloading product into the

16   web site.

17   In the event that the decision has been made to make certain functions of

18   central server 16 directly available to producers 14 over a computer

19   network 10, screen 44 becomes a generally available web page and

20   functions for numerous producers 16 as it does for an operator at central

21   server 16 to enter new multimedia material, such as a new version for a

22   movie, or simply to update a critics comments on a poster or press release.

23   Even different  departments with an individual producer 16 may have

24   access to such a web site of central server 16.

25

-25-

Attorney Docket No. STILIADIS

1    Remote Access to Product and Transfer of Same over the Internet.

2

3    If the user is an exhibitor and wishes to view the conditions for sale of the

4    particular product selected, the exhibitor clicks on an enter sales data

5    button 106 in Figure 3.  Upon the clicking of button 106, the user is

6    instructed in subsequent screens to enter such data as his expected box

7    office figures.  Other information is already known to the system, such as

8    the location of the exhibitor, the nature of his business, his existing

9    contractual relationships with producers or owners and with the operator

10    of the web site, and the like.  This allows the system to give the exhibitor

11    cost factors in accordance with his contracts and other information.

12    Naturally, these figures are a function of agreements between the web site

13    operator and the owner of rights in the particular title sought by the user.

14

15    In addition to using the home page 100 as an entry point to subsequent

16    screens for searching and purchasing rights in product and arranging for

17    the transport of the same via the Internet or otherwise, including

18    conventional means, the home page also provides a portal for an exhibitor

19    as well as an owner of rights, to view his account status.

20

21    If the exhibitor wishes to obtain media, the exhibitor clicks on button 118,

22    and this brings up screen 120 illustrated in Figure 4.  As illustrated in

23    Figure 4, the select media type screen 120 presents the operator with

24    several choices with respect to media type and format.  The exhibitor is

25    thus invited to click on various buttons to obtain various products.  It is

Attorney Docket No. STILIADIS

1    noted that this screen is greatly simplified or purposes of illustration and

2    may include any products that the operator of the web site wishes to make

3    available, such as posters, radio advertisements, and so forth, and that

4    screen 120 may have specific entries of it which show the availability of

5    such products, their length, their size, and so forth.

6

7    Once a title and its associated marketing material has been stored on

8    computer readable storage media 28 of central server 16 as described

9    above, it can be accessed by an exhibitor 18a-18d from anywhere in the

10    world through a connection to cyberspace 12, in this example, the Internet.

11    The steps of inventive method 122 for implementing the transport of

12    product already in storage at the central server are illustrated in Figure 5.

13

14    In particular, an exhibitor 18, after reaching the central server's web site,

15    can log on at step 30 by entering a name known to the system and

16    confirming the same with a password. This is done on the site's home

17    page as illustrated Figure 3. Alternatively, the exhibitor may click on a

18    become a member button 124 and be sent to a data entry step 98. Such a

19    data entry step is associated with a screen with basic information about

20    interests and the nature of the user. Later, the system sends the visitor to a

21    financial data entry screen 126, as illustrated Figure 6, and as will be more

22    fully described below. In accordance with the invention, it is anticipated

23    that the ability of small facilities, such as high schools, colleges and the like

24    to obtain first quality product will be enhanced. This is because of the cost

25    savings associated with the automated transfer of product over the

-27-

Attorney Docket No. STILIADIS

1    Internet.  Accordingly, such users will be paying relatively small amounts

2    of money and a credit card financing arrangement may become the rule

3    rather than the exception.  Such an arrangement is easily implemented

4    using screen 126.

5

6    However, in the case of "trade" users, more sophisticated arrangements

7    may become necessary with correspondingly different input screens.  Such

8    arrangements may involve automatic debiting of bank accounts, 30 days

9    credit, or other arrangements typically used in the entertainment industry.

10   It is also contemplated that charges may be key to Nielsen ratings in the

11   case of television exhibitors, and that the output of the Nielsen ratings

12   system may be input into the system for automatic charging of the

13   accounts of television exhibitors after a particular product has been

14   transported to the exhibitor and exhibited on television, provided that the

15   Nielsen system has monitored the subject exhibition.

16

17   Referring back to Figure 5, central server 16 examines the log on entry at

18   step 31 to determine whether the individual is an exhibitor who is going to

19   transport material to the database, or an exhibitor who will have product

20   downloaded to his site for exhibition, posting, advertising for the like.  If

21   the system determines that the individual is an owner or other person

22   wishing to download information into the web site at step 31, it will

23   proceed along path 128 and through the method steps illustrated in Figure

24   2.

25

Attorney Docket No. STILIADIS

1    If, on the other hand, the system detects at step 31 that the person who has

2    logged on is an exhibitor 18, it implements the method steps illustrated

3    Figure 5.  In particular, it moves along path 29 to step 130, where it

4    determines whether the user is already signed as a subscriber to the

5    product transport service provided by the operator of the inventive web

6    site.  In the event that the individual is not a subscriber, certain limited

7    functions will be allowed to function.  The purpose of this is to interest the

8    individual visiting the web site into becoming a member of the service.

9

10   Referring back to Figure 5, if the user does not have a valid password, or is

11   a new user, the user can enter and sign-up by giving certain data at step

12   132.  After the data entry screen has been populated with all necessary data

13   by the person visiting the web site,  the system proceeds to step 134 where

14   a financial data information screen 126, as illustrated Figure 6, is presented

15   to enable the visitor to enter either credit card and/or financial institution

16   information.

17

18   It is contemplated that many different types of transactions will be

19   available.  For example, a user does not purchase a major motion picture

20   with a credit card, since payment is usually based on revenues, such as a

21   royalty payment, often keyed to box office receipts.  However, a credit card

22   makes sense for the purchase of a poster, radio spot, or the like.  Older

23   films and "B" movies may be available to some users, such as schools,

24   libraries, and other non-profit organizations, and these may be purchased

25   by use of a credit card.  Indeed, even feature films being distributed to a

1    relatively small venue for a single showing, such as a high school, they use

2    the services of a credit card company.  It is also noted that if the credit card

3    is being used in connection with an exhibition at a small venue and the

4    product is being offered on the basis of the box office as opposed to a fixed

5    fee, an estimate of the charge associated with the transaction may be made

6    in charge to the credit card account, with any excess being credited or

7    shortfall charged after exhibition.

8

9    Alternatively, users may make deposits and obtain credits, which may be

10    charged against, in the case of greater charges.  It is also contemplated in

11    accordance with the present invention that direct charges against the bank

12    account of an exhibitor may be made, and that the same may be

13    implemented electronically at the time that the order for, for example, a

14    feature films is placed.  Once the order has been placed and the account

15    debited instantly and electronically, product may be delivered to the

16    exhibitor.  In the case of exhibition by license keyed to the box office,

17    historical data in the system may be used to estimate the box office and the

18    royalty.

19

20    After user 18 completes the entry of financial data at step 134, the system

21    proceeds to a credit approval step 136.  In the case of a credit card, this is

22    simply the verification that the account has the amount of money needed

23    to consummate the transaction.  In the case of more substantial accounts,

24    such as a theater in a major city, the system may log itself off after

-30-

Attorney Docket No. STILIADIS

1  receiving data necessary for credit check, and the credit check

2  implemented in a conventional way.

3

4  After the credit check has resulted in a determination, the system sends the

5  user an e-mail telling him to contact the web site.  The user then logs onto

6  the web site and continues the process.  If the credit of the user has been

7  disapproved, he is told us at step 136 and the system proceeds to log off at

8  step 138.

9

10  After the credit of the user, now a prospective exhibitor has been approved

11  at step 136, the system proceeds to the select action step 140.  Likewise, in

12  the system had determined at step 130 that the individual was already an

13  exhibitor known to the system after checking the name and password, the

14  system also proceeds to the select action step 140.

15

16  At the select action step, a select action menu is presented to the exhibitor

17  in the form of a select action screen 142 which gives the exhibitor the

18  opportunity to take various actions with respect to the title previously

19  selected, as illustrated Figure 7.  An example of such a secondary web page

20  142 shows the various choices that a verified user may make.  By way of

21  example, and not by way of limitation, a user may click on a change

22  language button 144 to view the web site in a different language.  A user

23  may click on a preview movie button 146 to preview a selected movie title

24  or click on a preview other programming button 148 to view television

25  programming or the like.  A user may click on a download movie or

-31-

Attorney Docket No. STILIADIS

1    program button 150 to download a selected title or program.  A download

2    advertising button 152 may be provided that either downloads an

3    advertising package containing preselected material or allows the user to

4    select from a list of available material.  Since there may be advertising

5    supplements available a download advertising supplements button 154

6    may be present.  Other marketing materials that may be made available for

7    the title selected in the previous screen, and having their own buttons in

8    screen 142, may include previews and trailers button 156, audio segments

9    button 158, ownership verification button 160,  contract information button

10   162, a terms button 164, and a sales history and related information

11   button166, all for the previously selected feature film, program or other

12   product.

13

14   After the selection is made at step 140, that selection is recorded at step 168

15   along with an identification designation associated with the exhibitor who

16   has made that selection.  This enables a record to be kept of each user's

17   requests, along with selected data such as date and time of request.  It also

18   enables the collection of some of the statistical data to be used by the

19   system.

20

21   If at the select action step a selection was made which indicates that the

22   user is interested in exhibiting a particular product, such as buttons 146,

23   150, 152, or 166, the system proceeds to step 170.  A title availability

24   function is performed at step 170 to determine whether the particular title

25   is available.  If the title is not available, the screen receives and presents an

Attorney Docket No. STILIADIS

1    indication that the title is not available and provides a button for the user

2    to make another selection.  If the title is not available, the exhibitor is

3    returned to select action step 140 to select another action, or change the

4    title, either manually or through activation of the search button in screen

5    142 illustrated in Figure 7.

6

7    Once a title that is in the system has been selected its identifier is noted in

8    memory and the exhibitor is able then to make appropriate selections.

9    Several functions may be available on a single screen as described above.

10   A user may call up a review movie function at step 172.  At step 172 the

11   exhibitor is given the opportunity to either review an entire movie or

12   portions thereof.  After that, the exhibitor has the opportunity to decide

13   whether to select another title and be sent to select action step 140 or

14   decide to proceed with purchasing or leasing the movie.

15

16   Where the exhibitor has decided to purchase the product after being

17   presented with an alphanumeric invitation to do so, screen at the web site,

18   the exhibitor is then presented with a contract for the particular material

19   for the selected title and accepts or refuses the contract at contract

20   acceptance function 174.  User 18 then selects type of material that is

21   desired at the select format step 176.  For example, if a poster is desired,

22   the resolution must be selected to fit the size that the poster will be, for

23   example, handbill-size, or marquee-size.  This selection is also recorded at

24   step 168 for later analysis.  The selected material is then downloaded at

25   step 180 and the download is stored on the user's local storage media at

1    step 182.  Step 180 is implemented in a separate screen illustrated in Figure

2    8, which will be described in detail below.  The exhibitor's account or

3    credit card is charged at 184.  The user is then permitted to either select

4    another title or leave the web site at step 128.

5

6    As alluded to above, Figure 8 illustrates a web site page for enabling an

7    exhibitor to select delivery options including download (via Internet)

8    indicated by a selector box 186, overnight delivery indicated by a selector

9    box 188, regular surface indicated by a selector box 190, fax indicated by a

10   selector box 192 (if appropriate media requested), and a telephone

11   confirmation of request option indicated by a selector box 194.  The

12   exhibitor clicks on any one of the above selector boxes 186 through 192,

13   and, if desired, telephone confirmation selector box 194  executing their

14   marked request(s) by clicking on send request button 180.  After the

15   appropriate boxes have been selected by the exhibitor, the exhibitor then

16   clicks on button 196 to send this information to the system.

17   Referring now to Figure 9, the relationship between central server 16 and

18   exhibitor 18 is shown in greater detail in block diagram form along with

19   certain functions occurring at each location.  As previously discussed,

20   media having different formats is loaded or stored onto computer readable

21   data storage media 28 using peripherals connected to central server 16.

22   Examples of peripheral equipment include film scanner 198, which scans

23   visual material in the form of celluloid film to be digitized and turns it into

24   a digital signal, which is compressed, and stored on data storage media 28.

25   Sound board 200 is utilized in conjunction with devices capable of playing

-34-

Attorney Docket No. STILIADIS

1  audio material in various formats as discussed above to digitize the

2  material for later compression and storage on data storage media 28.

3  Scanner 202 is a letter size scanner for digitizing text, small graphical

4  material and the like of marketing materials, such as newspaper and radio

5  advertisements to be used by a local theater or television station owner.  A

6  large format scanner 204 is used to digitize media such as the posters that

7  are common in theaters for hyping patrons with respect to coming

8  attractions.

9

10  The computer readable data storage media 28 is made available to

11  exhibitors 18 using their own central processor units 206 and its associated

12  memory, communicating with the central server 16 over a communication

13  network such as the Internet.  In the case of using the Internet for a

14  connection, user's computer 206 acts through the web site computer, which

15  serves as the central server 16, to access data storage media 28.  Once

16  digitized media materials may be downloaded to user's computer 206

17  using an appropriate data storage media depending upon the size of the

18  media to be downloaded.  In particular, any selected material can be

19  printed out on a poster size printer doorway, printed on a letter size

20  printer 210, recorded on an audio connection or system 212, or a digital

21  projector 214 in the case of a theater.  However, in the case of a television

22  transmitter associated with a television station, the material may be

23  downloaded to videotape or any other format for playback by the

24  television station.

25

Attorney Docket No. STILIADIS

1    A particularly advantageous embodiment of the system especially adapted

2    to sales of audiovisual productions to television stations and theaters is

3    illustrated in Figure 10. In accordance with the embodiment of the system

4    illustrated in Figure 10, data is collected for the purpose of billing and also

5    for the purpose of generating a database of information useful as a sales

6    tool and as a device for assuring a high likelihood of exhibitor satisfaction

7    with the delivered product.

8    In the system illustrated in Figure 10, operation of system 422 is similar to

9    the operation of the system illustrated in Figure 5, and parts performing

10   the same function have been given the same reference numerals. The

11   description that follows is limited to those aspects of the system, which are

12   different from the embodiment of Figure 5.

13

14   In particular, in system 422 after a movie has been viewed at step 172

15   contract terms for commercial licensing of a production are presented at

16   step 424. This is followed at step 426 with the presentation of statistics

17   respecting the particular system at step 428. Such statistics may include

18   past box office in cities of various sizes, with various language use

19   characteristics, and so forth, such data being collected by the system

20   during the course of a customer's signing up for the inventive service, and

21   the customers using the inventive service.

22

23   After acceptance and format selection at steps 174 and 176, the system

24   proceeds to log a follow-up at step 430 by sending information respecting

25   the format selected to the database 4 32. This information is sent at step

Attorney Docket No. STILIADIS

1    434.  At step 174, the system also proceeds to send information respecting

2    the contract acceptance to database 432 at step 436.  This includes the

3    storage of statistics on such things as format, customer, customer location,

4    other products combined with the subject product in the same order, title,

5    nature of exhibitor, and so forth.  This information is sent to a statistics

6    database 438 at step 436.  The system then proceeds to download the

7    selected material at step 180, as illustrated in Figure 5, and the material

8    stored and the account of the client charged, or the transaction financially

9    implemented by other means.

10

11    Follow-up database 432 is periodically queried for ripe follow-up data.

12    Ripeness may be determined by any suitable means, including fixed

13    periods, inquiries from the customer, detection of a problem, or the like.  In

14    response to a determination that a particular sale, previously made as

15    described above, is right for inquiry, this information comes from database

16    432 and, in the case of a theater triggers the sending of an e-mail at step 440

17    or other communication to the theater requiring respecting the box office

18    receipts.  When this information is received, the system proceeds at step

19    442 to record the box office receipts and so this information to statistics

20    database 438.  In addition, the system also triggers the charging of the

21    customers account in a second implementation of step 184.

22

23    In similar fashion, in the case of a customer that is a television station, the

24    most applicable ratings at the time of the airing of the product are checked

25    by the system at step 442.  The statistics are then stored at step 436 and sent

-37-

Attorney Docket No. STILIADIS

1    to statistics database 438. Such information can be made available on

2    demand (for example by clicking on an appropriately labeled screen

3    button) to any person using the automated ordering system as outlined

4    above of the present invention, or it may be "pushed" without a customer

5    demand (for example as a marketing tool to advertise or promote a

6    particularly attractive product, or get a sale on a product about which the

7    customer has already inquired about) at any point or points in the ordering

8    cycle for multimedia product.

9

10    While the foregoing description and drawings represents the preferred

11    embodiments of the present invention, it will be understood that various

12    additions, modifications and substitutions may be made without departing

13    from the spirit and scope of the present invention as defined in the

14    accompanying claims. In particular, it will be clear that the present

15    invention may be embodied in other specific forms, structures,

16    arrangements, proportions, and with other elements, materials, and

17    components, without departing from the spirit or essential characteristics

18    thereof.

19

20    The presently disclosed embodiments are therefore to be considered in all

21    respects as illustrative and not restrictive. The metes and bounds of the

22    invention are defined by the appended claims, and not limited to the

23    foregoing description.

24

25

Attorney Docket No. STILIADIS

1                             CLAIMS

2   1. A method of marketing and distributing multimedia, the method

3   comprising:

4         a.     receiving multimedia material from a producer or owner of

5                said material;

6         b.     storing said material on a computer readable storage medium;

7         c.     providing a server system accessible over a communication

8                network, said server system accessing data from said

9                computer readable storage medium for transfer over said

10               communication network;

11        d.     providing  samples over said server system of said

12               multimedia material to potential purchasers;

13        e.     downloading upon request over said server system said

14               multimedia material; and

15        f.     providing advertising material to purchasers over said

16               communication network allowing purchasers to locally

17               market and sell said multimedia material.

18

19   2.     The method of marketing and distributing multimedia of claim 1,

20   including receiving multimedia material by downloading via said

21   communication network.

22

23   3.     The method of marketing and distributing multimedia of claim 1,

24   wherein receiving multimedia material includes receiving non-digital

Attorney Docket No. STILIADIS

1   media such as celluloid media, printed media, video cassettes, and audio

2   tape.

3

4   4.     The method of marketing and distributing multimedia of claim 3,

5   including the step of digitizing said non-digital media for storage on said

6   computer readable storage medium.

7

8   5.     The method of marketing and distributing multimedia of claim 1,

9   including providing a server system accessible over a public

10   communication system.

11

12   6.     The method of marketing and distributing multimedia of claim 1,

13   including downloading digital material from said server system for digital

14   display to an audience.

15

16   7.     The method of marketing and distributing multimedia of claim 1,

17   including providing downloadable advertising materials on said sever

18   system.

19

20   8.     The method of marketing and distributing multimedia of claim 1,

21   including providing sales and marketing data based upon visitors to said

22   server system.

23

Attorney Docket No. STILIADIS

1    9.    The method of marketing and distributing multimedia of claim 8,

2    including providing marketing data based upon actual users of said server

3    system.

4

5    10.    A method of distributing movies comprising:

6        a.    receiving a movie on celluloid;

7        b.    scanning said movie converting it into a digital format, storing

8            said digital format in a computer readable memory;

9        c.    transferring said digital format to a theater via a

10            communications network and storing said digital format on a

11            computer readable memory located at said theater; and

12        d.  projecting said digital format using a digital projector onto a

13            screen for display to an audience.

14

15    11.    A distribution system for distributing multimedia comprising:

16        a.    a first central processing unit;

17        b.    a first memory associated with said first central processing

18            unit;

19        c.    a communications network accessible by said first central

20            processing unit for transferring data into and out of said first

21            memory;

22        d.    an input device connected for data transfer to said first central

23            processing unit, said input device receiving multimedia and

24            transferring it into said first memory via said central

25            processing unit;

-41-

Attorney Docket No. STILIADIS

1      e.    a second central processing unit;

2      f.    a second memory, said second memory associated with said

3            second central processing unit with said communications

4            network being accessible by said second central processing

5            unit for transferring data into and out of said second memory;

6            and

7      g.   a digital feature film projector in data communication with said

8            second central processing unit for displaying a feature film onto a

9            screen for presentation to an audience, said feature film stored in

10          digital form in said second memory after being transferred via

11          said communications network from said first memory.

12

13    12.  A method of marketing and distributing multimedia, the method

14   comprising:

15      a.    receiving multimedia material from a producer or owner of

16           said material;

17      b.    storing said material on a computer readable storage medium;

18      c.    providing a server system accessible over a communication

19           network, said server system accessing data from said

20           computer readable storage medium for transfer over said

21           communication network;

22      d.    establishing an account for a customer;

23      e.    downloading a product upon request from said customer for

24           said product over said server system said multimedia

25           material;

Attorney Docket No. STILIADIS

1       f.   following up to determine information necessary to calculate

2           the amount owed by said customer for said product; and

3       g.   charging the account of said customer.

4

5    13.   The method of marketing and distributing multimedia of claim 12,

6    including receiving multimedia material by downloading via said

7    communication network.

8

9    14.   The method of marketing and distributing multimedia of claim 12,

10    wherein receiving multimedia material includes receiving non-digital

11    media such as celluloid media, printed media, video cassettes, and audio

12    tape.

13

14    15.   The method of marketing and distributing multimedia of claim 12,

15    wherein said follow-up is implemented by sending an e-mail to said

16    customer.

17

18    16.   The method of marketing and distributing multimedia of claim 12,

19    wherein said follow-up is implemented by consulting publicly reported

20    data respecting said customer.

21

22    17.   The method of marketing and distributing multimedia of claim 12,

23    further comprising providing advertising material to purchasers over said

24    communication network allowing purchasers to locally market and sell

25    said multimedia material.

Attorney Docket No. STILIADIS

18.    The method of marketing and distributing multimedia of claim 17, further comprising querying said customer to stimulate the sending of data from said customer and recording said data into a database.

19.    The method of marketing and distributing multimedia of claim 18, comprising providing marketing data recorded in said database to customers in response to a query from a customer.

20.    The method of marketing and distributing multimedia of claim 19, including providing marketing data based upon actual users of said server system.

21.    A method of marketing and distributing multimedia, the method comprising:

    a.    receiving multimedia material from a producer or owner of said material;

    b.    storing said material on a computer readable storage medium;

    c.    providing a server system accessible over a communication network, said server system accessing data from said computer readable storage medium for transfer over said communication network;

    d.    providing  samples over said server system of said multimedia material to potential purchasers;

    e.    downloading upon request over said server system said multimedia material;

-44-

Attorney Docket No. STILIADIS

1     f.    querying said customer to stimulate the sending of data from

2         said customer; and

3     g.    recording said data into a database.

4

5  22. The method of marketing and distributing multimedia of claim 21,

6  comprising providing marketing data recorded in said database to

7  customers in response to a query from a customer.

8

9  23.    A distribution system for distributing multimedia comprising:

10     a.    a first central processing unit;

11     b.    a first memory domain associated with said first central

12         processing unit;

13     c.    a communications network accessible by said first central

14         processing unit for transferring data into and out of said first

15         memory domain in response to an order for a multimedia

16         product;

17     d.    an input device connected for data transfer to said first central

18         processing unit, said input device receiving multimedia and

19         transferring it into said first memory domain via said central

20         processing unit;

21     e.    a second central processing unit;

22     f.    a second memory domain, said second memory domain

23         associated with said second central processing unit with said

24         communications network being accessible by said second

Attorney Docket No. STILIADIS

1    central processing unit for transferring data into and out of

2    said second memory domain;

3    g.    a third memory domain for receiving market data in response

4    to an order for said multimedia product; and

5    h.    a digital feature film projector in data communication with

6    said second central processing unit for displaying a feature

7    film onto a screen for presentation to an audience, said feature

8    film stored in digital form in said second memory after being

9    transferred via said communications network from said first

10    memory.

-46-

Attorney Docket No. STILIADIS

1

2             ABSTRACT OF THE DISCLOSURE

3   A central server having a computer readable storage media for storing

4   multimedia material, such as motion pictures and television programming,

5   in digital format is connected to a communications network such as the

6   Internet. Exhibitors, such as theaters and television stations, can access the

7   central server, preview available programming, verify the ownership of

8   such material, review contract provisions for obtaining and paying for the

9   desired programming, and download the programming along with

10   marketing materials for the program or movie. The central server loads

11   material onto the storage media as it is received from producers and

12   owners of such material. In addition, central server retains data regarding

13   requests for material, such as titles requested, who requested such, and

14   where the requesters are located geographically. This information can be

15   used to help producers market their material more economically.

16



Figure 1



# Figure 2



Fig. 3

# FilmSellers.Com

**120**

## Fig. 4

## Select media type:

### Text and Graphics

☐ Digital

☐ 8.5 x 11

☐ Posters

### Feature film

☐ Digital

☐ Celluloid

☐ Magnetic Tape

### Audio

☐ Digital

☐ Analog (Magnetic Tape)



# Figure 5

# FilmSellers.Com

In order to process your request, we need you to give us some information on your credit.

Name:

Address:

City:

State:

Zip Code:

E-Mail Address:

Telephone:

Fax:


Credit Card Number:                Type: ☐ VISA      ☐ Mastercard

Date of Expiration:

Bank:            Account No.:                    Branch:

## Figure 6

# FilmSellers.Com

Movie Title: _ABC_____    [ Search ]

144
☐ Change Language

146
☐ Preview Movie

148
☐ Preview Other Programming

150
☐ Download Movie or Program

152
☐ Download Advertising Material

154
☐ Download Advertising Supplements

156
☐ Download Previews and Trailers

158
☐ Download Audio Segments

160
☐ Download Ownership Verification

162
☐ Download Contract Information

164
☐ Download Payment Obligations

166
☐ Download Sales History

142

# Figure 7

# FilmSellers.Com

Delivery Options (Mark All That Apply)

186 ☐ Download

188 ☐ Overnight Delivery

190 ☐ Regular Three Day

192 ☐ Fax

194 ☐ Telephone Confirmation

196 ☐ Enter

# Fig. 8



Figure 9





Figure 10

[+]                                                        Attorney Docket No.: NS2

| **DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION (37 CFR 1.63)** | *First Named Inventor* | STILIADIS |
|---|---|---|
| | *COMPLETE IF KNOWN* | |
| [ ]  *Declaration Submitted with Initial Filing* | *Application Number* | Unknown |
| OR | *Filing Date* | Herewith |
| [X]  *Declaration Submitted after Initial Filing (surcharge (37 CFR 1.16 (e)) required)* | *Group Art Unit* | Unknown |
| | *Examiner Name* | Unknown |

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

MULTIMEDIA MARKETING AND
DISTRIBUTION SYSTEM

the specification of which

      [X ]   is attached hereto
OR   [ ]   was filed on _____ as United States Application Number _____
            or PCT International Application Number _____
            and was amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR §1.56.

I hereby claim foreign priority benefits under 35 U.S.C. §119(a)-(d) or §365(b) of any foreign application(s) for patent or inventor's certificate, or §365(a) of any PCT International application which designated at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed.

| *Prior Foreign Application Number(s)* | *Country* | *Foreign Filing Date (mm/dd/yyyy)* | *Priority Not Claimed* | *Certified Copy Attached* | |
|---|---|---|---|---|---|
| | | | | YES | NO |
| | | | [ ] | [ ] | [ ] |
| | | | [ ] | [ ] | [ ] |

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below.

| *Application Number(s)* | *Filing Date (mm/dd/yyyy)* |
|---|---|
| 60/201,118 | 05/02/2000 |
| | |

I hereby claim the benefit under 35 U.S.C. §120 of any United States application(s), or 365(c) of any PCT International application designating the United States of America, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. §112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR §1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application.

| U.S. Parent Application or PCT Parent Number | Parent Filing Date (MM/DD/YYYY) | Parent Patent Number (if applicable) |
|---|---|---|
|  |  |  |
|  |  |  |

As a named inventor, I hereby appoint  Anthony H. Handal, Registration No. 26,275, and all other registered practitioners listed under Customer No.:



00545

PATENT TRADEMARK OFFICE

as my attorneys or agents to prosecute this application, and to transact all business in the Patent and Trademark Office connected therewith.  Address all telephone calls to Anthony H. Handal at (203) 838-8589.

**Address all correspondence to: Customer No.**

00545

PATENT TRADEMARK OFFICE

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| NAME OF SOLE OR FIRST INVENTOR: | | [ ]  A petition has been filed for this unsigned inventor | | |
|---|---|---|---|---|
| Given Names (at least one name in full plus other names or initials) | | Family Name or Surname | | |
| Nicholas | | STILIADIS | | |
| Inventor's Signature: | | | Date: | |
| Residence: City  Toronto | State | Country  Canada | Citizenship | Canadian |
| Post Office Address:  434 Queen Street, East | | | | |
| City  Toronto | State | Zip  M5A 1T5 | Country | Canada |

[ ]  Additional inventors are being named on the separate sheet attached hereto.



## UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 3319**

| SERIAL NUMBER 09/840,283 | FILING DATE 04/23/2001 RULE | CLASS 709 | GROUP ART UNIT 2152 | ATTORNEY DOCKET NO. NS2 |
|---|---|---|---|---|

**APPLICANTS**

　Nicholas Stiliadis, Toronto, CANADA;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
　THIS APPLN CLAIMS BENEFIT OF 60/201,118 05/02/2000

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IF REQUIRED, FOREIGN FILING LICENSE GRANTED** \*\* SMALL ENTITY \*\*
\*\* 06/15/2001

| Foreign Priority claimed ☐ yes ☐ no 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance Verified and Acknowledged　Examiner's Signature　Initials | STATE OR COUNTRY CANADA | SHEETS DRAWING 10 | TOTAL CLAIMS 23 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|

**ADDRESS**
00545

**TITLE**
Mutimedia marketing and distribution system

| FILING FEE RECEIVED 567 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

PATENT  APPLICATION  SERIAL  NO. _____

U.S.  DEPARTMENT  OF  COMMERCE
PATENT  AND  TRADEMARK  OFFICE
FEE  RECORD  SHEET

04/26/2001 DTESSEM1 00000008 09840283

```
01 FC:201              355.00 OP
02 FC:203               27.00 OP
03 FC:202              120.00 OP
```

PTO-1556
(5/87)

*U.S. GPO: 2000-468-987/39595

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2000

Application or Docket Number

89846283

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 23 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 23 minus 20= | 3 |
| INDEPENDENT CLAIMS | minus 3 = | 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 355.00 | OR | BASIC FEE | 710.00 |
| X$ 9= | 27 | OR | X$18= | |
| X40= | 120 | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL | 502 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

| AMENDMENT A | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| AMENDMENT B | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| AMENDMENT C | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

BEST AVAILABLE COPY

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-706/30103



## CLAIMS ONLY

SERIAL NO. 09840283

FILING DATE

APPLICANT(S)

CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | | * | | * | | * | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | | IND. | DEP. | IND. | DEP. | IND. | DEP. | |
| 1 | 1 | | | | | | 51 | | | | | | | | |
| 2 | | 1 | | | | | 52 | | | | | | | | |
| 3 | | 1 | | | | | 53 | | | | | | | | |
| 4 | | 1 | | | | | 54 | | | | | | | | |
| 5 | | 1 | | | | | 55 | | | | | | | | |
| 6 | | 1 | | | | | 56 | | | | | | | | |
| 7 | | 1 | | | | | 57 | | | | | | | | |
| 8 | | 1 | | | | | 58 | | | | | | | | |
| 9 | | 1 | | | | | 59 | | | | | | | | |
| 10 | 1 | | | | | | 60 | | | | | | | | |
| 11 | 1 | | | | | | 61 | | | | | | | | |
| 12 | 1 | | | | | | 62 | | | | | | | | |
| 13 | | 1 | | | | | 63 | | | | | | | | |
| 14 | | 1 | | | | | 64 | | | | | | | | |
| 15 | | 1 | | | | | 65 | | | | | | | | |
| 16 | | 1 | | | | | 66 | | | | | | | | |
| 17 | | 1 | | | | | 67 | | | | | | | | |
| 18 | | 1 | | | | | 68 | | | | | | | | |
| 19 | | 1 | | | | | 69 | | | | | | | | |
| 20 | | 1 | | | | | 70 | | | | | | | | |
| 21 | 1 | | | | | | 71 | | | | | | | | |
| 22 | | 1 | | | | | 72 | | | | | | | | |
| 23 | 1 | | | | | | 73 | | | | | | | | |
| 24 | | | | | | | 74 | | | | | | | | |
| 25 | | | | | | | 75 | | | | | | | | |
| 26 | | | | | | | 76 | | | | | | | | |
| 27 | | | | | | | 77 | | | | | | | | |
| 28 | | | | | | | 78 | | | | | | | | |
| 29 | | | | | | | 79 | | | | | | | | |
| 30 | | | | | | | 80 | | | | | | | | |
| 31 | | | | | | | 81 | | | | | | | | |
| 32 | | | | | | | 82 | | | | | | | | |
| 33 | | | | | | | 83 | | | | | | | | |
| 34 | | | | | | | 84 | | | | | | | | |
| 35 | | | | | | | 85 | | | | | | | | |
| 36 | | | | | | | 86 | | | | | | | | |
| 37 | | | | | | | 87 | | | | | | | | |
| 38 | | | | | | | 88 | | | | | | | | |
| 39 | | | | | | | 89 | | | | | | | | |
| 40 | | | | | | | 90 | | | | | | | | |
| 41 | | | | | | | 91 | | | | | | | | |
| 42 | | | | | | | 92 | | | | | | | | |
| 43 | | | | | | | 93 | | | | | | | | |
| 44 | | | | | | | 94 | | | | | | | | |
| 45 | | | | | | | 95 | | | | | | | | |
| 46 | | | | | | | 96 | | | | | | | | |
| 47 | | | | | | | 97 | | | | | | | | |
| 48 | | | | | | | 98 | | | | | | | | |
| 49 | | | | | | | 99 | | | | | | | | |
| 50 | | | | | | | 100 | | | | | | | | |
| TOTAL IND. | 6 | | | | | | TOTAL IND. | | | | | | | | |
| TOTAL DEP. | 17 | | | | | | TOTAL DEP. | | | | | | | | |
| TOTAL CLAIMS | 23 | | | | | | TOTAL CLAIMS | | | | | | | | |

*MAY BE USED FOR ADDITIONAL CLAIMS OR AMDENDMENTS

FORM PTO-2022 (1-98)

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

*U.S. Government Printing Office: 1998 - 433-214/70303

## BEST AVAILABLE COPY



Figure 1



Log On
30
Owner?
No
29
31
Yes
Present Title List
32
Enter or ID Video Title
33
New?
No
34
Yes
Assign Film Address
36
Address to Memory
38
ID Material Type
42
Enter Data
40
Look Up Film Address
44
Input Alphanumeric
82
Store under Address and Type
84
Input Graphics
72
Scan
74
Digitize in RAM
76
Compress
78
Store under Address and Type
80
Input Audio
64
Digitize in RAM
66
Compress
68
Store under Address and Type
70
Input Video
56
Digitize in RAM
58
Compress
60
Store under Address and Type
62
Input Film
46
Scan
48
Digitize in RAM
50
Compress
52
Store under Address and Type
54
Disk Storage
28

Figure 2



Fig. 3

100

FilmSellers.Com

Name: _____
Password: _____
Submit

116    BANNER ADVERTISING AVAILABLE
102

104
Movie Title: _____    Search

108    ☐ View Account Status
118    ☐ Select Media
112    ☐ Send Email

110    ☐ Add to Email List
☐ Sales Data
106
☐ Info on F-S.Com
114

☐ Join

116    BANNER ADVERTISING AVAILABLE



Fig. 4

120



# Figure 5

# FilmSellers.Com

In order to process your request, we need you to give us some information on your credit.

Name:
Address:
City:
State:
Zip Code:
E-Mail Address:
Telephone:
Fax:

Credit Card Number:                    Type: ☐ VISA    ☐ Mastercard
Date of Expiration:
Bank:          Account No.:                    Branch:

## Figure 6



# FilmSellers.Com

Movie Title: ___ABC___    [ Search ]

144
☐ Change Language

146
☐ Preview Movie

148
☐ Preview Other Programming

150
☐ Download Movie or Program

152
☐ Download Advertising Material

154
☐ Download Advertising Supplements

156
☐ Download Previews and Trailers

158
☐ Download Audio Segments

160
☐ Download Ownership Verification

162
☐ Download Contract Information

164
☐ Download Payment Obligations

166
☐ Download Sales History

142 〜

# Figure 7

# FilmSellers.Com

Delivery Options (Mark All That Apply)

186 ☐ Download

188 ☐ Overnight Delivery

190 ☐ Regular Three Day

192 ☐ Fax

194 ☐ Telephone Confirmation

196

☐ Enter

# Fig. 8

# Figure 9





Figure 10

[+]    JUN 13 2001

Attorney Docket No.: NS2

| **DECLARATION FOR UTILITY OR DESIGN PATENT APPLICATION (37 CFR 1.63)** | *First Named Inventor* | **STILIADIS** |
|---|---|---|
| | *COMPLETE IF KNOWN* | |
| [ ]  *Declaration Submitted with Initial Filing*<br>OR | *Application Number* | 09/840,283 |
| | *Filing Date* | April 23, 2001 |
| [X]  *Declaration Submitted after Initial Filing (surcharge (37 CFR 1.16 (e)) required)* | *Group Art Unit* | Unknown |
| | *Examiner Name* | Unknown |

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

> MULTIMEDIA MARKETING AND
> DISTRIBUTION SYSTEM

the specification of which

> [ ]    is attached hereto

OR   [X]    was filed on ___April 23, 2001___ as United States Application Number ___09/840,283___
or PCT International Application Number _____
and was amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment specifically referred to above.

I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR §1.56.

I hereby claim foreign priority benefits under 35 U.S.C. §119(a)-(d) or §365(b) of any foreign application(s) for patent or inventor's certificate, or §365(a) of any PCT International application which designated at least one country other than the United States of America, listed below and have also identified below, by checking the box, any foreign application for patent or inventor's certificate, or PCT International application having a filing date before that of the application on which priority is claimed.

| *Prior Foreign Application Number(s)* | *Country* | *Foreign Filing Date (mm/dd/yyyy)* | *Priority Not Claimed* | *Certified Copy Attached*<br>*YES*    *NO* | |
|---|---|---|---|---|---|
| | | | [ ] | [ ] | [ ] |
| | | | [ ] | [ ] | [ ] |

I hereby claim the benefit under 35 U.S.C. §119(e) of any United States provisional application(s) listed below.

| *Application Number(s)* | *Filing Date (mm/dd/yyyy)* |
|---|---|
| 60/201,118 | 05/02/2000 |
| | |

I hereby claim the benefit under 35 U.S.C. §120 of any United States application(s), or 365(c) of any PCT International application designating the United States of America, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of 35 U.S.C. §112, I acknowledge the duty to disclose information which is material to patentability as defined in 37 CFR §1.56 which became available between the filing date of the prior application and the national or PCT International filing date of this application.

| U.S. Parent Application or PCT Parent Number | Parent Filing Date (MM/DD/YYYY) | Parent Patent Number (if applicable) |
|---|---|---|
| | | |
| | | |

As a named inventor, I hereby appoint  Anthony H. Handal, Registration No. 26,275, and all other registered practitioners listed under Customer No.:

00545

PATENT TRADEMARK OFFICE

as my attorneys or agents to prosecute this application, and to transact all business in the Patent and Trademark Office connected therewith.  Address all telephone calls to Anthony H. Handal at (203) 838-8589.

**Address all correspondence to: Customer No.**

00545

PATENT TRADEMARK OFFICE

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| NAME OF SOLE OR FIRST INVENTOR: | | [ ]    A petition has been filed for this unsigned inventor | | | | | |
|---|---|---|---|---|---|---|---|
| Given Names (at least one name in full plus other names or initials) | | | | Family Name or Surname | | | |
| Nicholas | | | | STILIADIS | | | |
| Inventor's Signature: | | | | | | Date: | |
| Residence: City | Toronto | State | | Country | Canada | Citizenship | Canadian |
| Post Office Address: | 434 Queen Street, East | | | | | | |
| City | Toronto | State | | Zip | M5A 1T5 | Country | Canada |

[ ] Additional inventors are being named on the separate sheet attached hereto.

**HANDAL & MOROFSKY**

Counsellors at Law
80 Washington Street
Norwalk, Connecticut 06854

Telephone: 203-838-8589
Facsimile: 203-838-8794
Telex: 429283 PATSLAW

Paul Morofsky   1926-1986

District of Columbia Office
American Center - Tysons Corner
Suite 500
8300 Boone Boulevard
Vienna, Virginia 22182

June 11, 2001

**BOX MISSING PARTS**

Assistant Commissioner for Patents
Washington, D.C. 20231

Re:   Nicholas STILIADIS
      U.S. Patent Application No. 09/840,283   Filed: April 23, 2001
      Based on USAN 60/201,118   Filed: May 2, 2000
      Attorney Docket No. NS2
      "MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

S I R :

We enclose herewith:

      [X]   Declaration
      [X]   Acknowledgment Postcard

      The Commissioner is hereby authorized to charge payment of the fees associated with this communication or credit any overpayment to Deposit Account No. 08-0570.

      The applicants hereby petition under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

                                    Respectfully submitted,

                                    Anthony H. Handal
                                    Reg. No. 26,275
                                    Roger Pitt
                                    Reg. No. 46,996

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231 on June 11, 2001

Anthony H. Handal Reg. No. 26,275
Roger Pitt Reg. No. 46,996



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 |

00545
HANDAL & MOROFSKY
80 WASHINGTON STREET
NORWALK, CT 06854

**CONFIRMATION NO. 3319**
**FORMALITIES LETTER**

*OC000000006189006*

Date Mailed: 06/15/2001

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The oath or declaration is unsigned.
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $65 for a small entity in compliance with 37 CFR 1.27, must be submitted with the missing items identified in this letter.
- **The balance due by applicant is $ 65.**

The application is informal since it does not comply with the regulations for the reason(s) indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- Substitute drawings in compliance with 37 CFR 1.84 because:

  - drawing sheets do not have the appropriate margin(s) (see 37 CFR 1.84(g)). Each sheet must include a top margin of at least 2.5 cm. (1 inch), a left side margin of at least 2.5 cm. (1 inch), a right side margin of at least 1.5 cm. ( 5/8 inch), and a bottom margin of at least 1.0 cm. (3/8 inch);

*A copy of this notice **MUST** be returned with the reply.*

Customer Service Center

Initial Patent Examination Division (703) 308-1202

PART 3 - OFFICE COPY

## HANDAL & MOROFSKY

### Counsellors at Law
### 80 Washington Street
### Norwalk, Connecticut 06854

Paul Morofsky   1926-1986

Telephone: 203-838-8589
Facsimile: 203-838-8794
Telex: 429283 PATSLAW

District of Columbia Office
American Center - Tysons Corner
Suite 500
8300 Boone Boulevard
Vienna, Virginia 22182

June 28, 2001

**BOX MISSING PARTS**
Assistant Commissioner for Patents
Washington, D.C. 20231

> Re:   Nicholas STILIADIS
> U.S. Patent Application No. 09/840,283   Filed: April 23, 2001
> Based on USAN 60/201,118   Filed: May 2, 2000
> Attorney Docket No. NS2                 Confirmation No. 3319
> "MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

S I R :

We enclose herewith:

> [X]   Copy of Notice to file Missing Parts;
> [X]   Ten (10) Sheets of Drawings;
> [X]   Check for $65.00 (Late filing of Declaration);
> [X]   Acknowledgment Postcard.

**Declaration:** Executed Declaration was submitted to the Office on June 11, 2001, and it is believed that the documents crossed in the mail.

The Commissioner is hereby authorized to charge payment of the fees associated with this communication or credit any overpayment to Deposit Account No. 08-0570.

The applicants hereby petition under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

Respectfully submitted,

Anthony H. Handal
Reg. No. 26,275
Roger Pitt
Reg. No. 46,996

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231 on June 28, 2001

Anthony H. Handal Reg. No. 26,275
Roger Pitt Reg. No. 46,996



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

| APPLICATION NUMBER | FILING/RECEIPT DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NUMBER |
|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 |

00545
HANDAL & MOROFSKY
80 WASHINGTON STREET
NORWALK, CT 06854

**CONFIRMATION NO. 3319**

**FORMALITIES LETTER**

*OC000000006189006*

Date Mailed: 06/15/2001

# NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

### *Filing Date Granted*

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items and pay any fees required below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The oath or declaration is unsigned.
- To avoid abandonment, a late filing fee or oath or declaration surcharge as set forth in 37 CFR 1.16(e) of $65 for a small entity in compliance with 37 CFR 1.27, must be submitted with the missing items identified in this letter.
- **The balance due by applicant is $ 65.**

The application is informal since it does not comply with the regulations for the reason(s) indicated below.

The required item(s) identified below must be timely submitted to avoid abandonment:

- Substitute drawings in compliance with 37 CFR 1.84 because:

  - drawing sheets do not have the appropriate margin(s) (see 37 CFR 1.84(g)). Each sheet must include a top margin of at least 2.5 cm. (1 inch), a left side margin of at least 2.5 cm. (1 inch), a right side margin of at least 1.5 cm. ( 5/8 inch), and a bottom margin of at least 1.0 cm. (3/8 inch);

07/06/2001 AZERGAW1 00000081 09840283
01 FC:205                65.00 OP

*A copy of this notice MUST be returned with the reply.*

RECEIVED
JUN 18 2001
HANDAL & MOROFSKY
COUNSELLORS AT LAW

Customer Service Center

Initial Patent Examination Division (703) 308-1202
PART 2 - COPY TO BE RETURNED WITH RESPONSE

0130

**HANDAL & MOROFSKY**
Counsellors at Law
80 Washington Street
Norwalk, Connecticut 06854

Paul Morofsky   1926-1986

Telephone: 203-838-8589
Facsimile: 203-838-8794
Telex: 429283 PATSLAW

District of Columbia Office
American Center - Tysons Corner
Suite 500
8300 Boone Boulevard
Vienna, Virginia 22182

RECEIVED

SEP 0 4 2001

Technology Center 2100

August 16, 2001

BOX NO FEE
Assistant Commissioner for Patents
Washington, D.C. 20231

Re:   Nick STILIADIS
U.S. Patent Application No. 09/840,283   Filed: April 23, 2001
Case: NS2
Based on USAN 60/201,118   Filed: May 2, 2000
"MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

S I R :

We enclose herewith:

[X]   Information Disclosure Citation Form PTO-1449
[X]   Twenty Three (23) Copies of References Cited
[X]   Acknowledgment Postcard

The Commissioner is hereby authorized to charge payment of the fees associated with this communication or credit any overpayment to Deposit Account No. 08-0570.

The applicants hereby petition under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

Respectfully submitted,

Anthony H. Handal/Roger Pitt
Reg. No. 26,275, Reg. No. 46,996

I hereby certify that this correspondence is being deposited with the United States Postal Service, in an envelope, postage prepaid, addressed to the Assistant Commissioner for Patents Washington, D.C. 20231 on August 16, 2001

Anthony H. Handal/Roger Pitt
Reg. No.: 26,275. Reg. No. 46,996

Sheet 1 of 3

| Form PTO-1449 (Rev. 8-83) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. NS2 | SERIAL NO. 09/840,283 |
|---|---|---|---|
| INFORMATION DISCLOSURE CITATION (Use several sheets if necessary) | | APPLICANT STILIADIS | |
| | | FILING DATE APRIL 23, 2001 | GROUP Unknown |

*(Stamp: OIPE AUG 2 0 2001 PATENT & TRADEMARK OFFICE)*

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | | | | | | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

*(Stamp: RECEIVED SEP 04 2001 Technology Center 2100)*

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | | |
|---|---|---|---|
| | ✓ | 1. | Hollywood Software, Inc. *Product Brochure* "Rightsmart.com" (date unknown) |
| | ✓ | 2. | LuxSat International SA *Product Brochure* "Multimedia on Demand" (date unknown) |
| | ✓ | 3. | Tv. Tv. *Product Brochure* "Questions and Answers about broadband, the Internet and how content owners can take advantage of both right now" (date unknown) |
| | ✓ | 4. | Screen International "Digital dithering" (October 20,2000) |
| | ✓ | 5. | Orca Computers Ltd. *Product Brochure* "Right TV" (date unknown) |
| | ✓ | 6. | The Bulldog Group. *Various Corporate Publications* |
| | ✓ | 7. | Television Business International pp. 19-25 D-Exploitation" (November 2000) |
| | ✓ | 8. | Video Store Magazine pp. 14-16 "Digital Cinema" (April 2000) |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

(2-92)     Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Sheet 2 of 3

| Form PTO-1449<br>(Rev. 8-83) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO.<br>NS2 | SERIAL NO.<br>09/840,283 |
|---|---|---|---|
| **INFORMATION DISCLOSURE CITATION**<br>*(Use several sheets if necessary)* | | APPLICANT<br>**STILIADIS** | |
| | | FILING DATE<br>APRIL 23, 2001 | GROUP<br>Unknown |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | | |
|---|---|---|---|
| | ✓ | 9. | iBEAM Broadcasting Corporation *Product Brochure* "iBEAM Syndication Manager (2001)* |
| | ✓ | 10. | GeoVideo Networks *Various Corporate Publications* (date unknown) |
| | ✓ | 11. | Reelplay.com *Various Corporate Publications* (date unknown) |
| | ✓ | 12. | Sightsound.com *Product Brochure* (date unknown) |
| | ✓ | 13. | Tivix *Various Corporate Publications* "Online Program Marketing for Buyers and Sellers" (February-June 2000) |
| | ✓ | 14. | TV Files *Product Brochure* "Enabling Convergence" (date unknown) |
| | ✓ | 15. | The Hollywood Reporter pp. 9-10 ( February 27, 2000) |
| | ✓ | 16. | Internet Studios *Corporate Profile* (date unknown) |
| | ✓ | 17. | Filmbazaar.com *Product Brochure* "Moving Pictures at AFM 2000 |
| | | | (date unknown) |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

Sheet 3 of 3

| Form PTO-1449<br>(Rev. 8-83) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO.<br>**NS2** | | SERIAL NO.<br>**09/840,283** |
|---|---|---|---|---|
| INFORMATION DISCLOSURE CITATION<br>*(Use several sheets if necessary)* | | APPLICANT<br>**STILIADIS** | | |
| | | FILING DATE<br>**APRIL 23, 2001** | | GROUP<br>**Unknown** |

*(OIPE stamp: AUG 2 0 2001 PATENT & TRADEMARK OFFICE)*

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*RECEIVED*
*SEP 0 4 2001*
*Technology Center 2100*

### OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | | |
|---|---|---|---|
| | ✓ | 17A. | Filmbazaar.com *Product Brochure* "Professional Business Center" (date unknown) |
| | ✓ | 18. | TIVIX *Product Brochure* "Streamlining" (date unknown) |
| | ✓ | 19. | AFMA Independent Vol.1, No. 4 "Internet Distribution of Films Presents Problems |
| | | | and Possibilities" (November/December 1999) |
| | ✓ | 20. | TvResource.com Advertisement (date unknown) |
| | ✓ | 21. | Independent 2. "Welcome to the Electronic Future" (date unknown) |
| | ✓ | 22. | Screen Digest "Digital Cinema: Year Two Getting Down To Business" |
| | | | (April 2001) |
| | ✓ | 23. | EMAP Media Limited "Boeing Digital Cinema" (July 22, 2001) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

EXAMINER: *Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to the applicant.*

2611

IFW

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

-------------------------------------------------X

| | | |
|---|---|---|
| In re application of | : | Attorney Docket No.: NS2 |
| Applicant: Nicolas STILIADIS | : | |
| Application No. 09/840,283 | : | GAU: 2611 |
| Filed: April 23, 2001 | : | Examiner: Andrew Faile |
| For: " MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM" | : | |

-------------------------------------------------X

**COPY OF PAPERS
ORIGINALLY FILED**

August 12, 2002

Assistant Commissioner for Patents
Washington, D.C. 20231

**RECEIVED
AUG 2 3 2002
Technology Center 2600**

### STATUS INQUIRY LETTER

S I R:

    Applicant hereby requests the Office to specify the status of the above identified

patent application with regard to the issuance of an Office action.

**TC 2600 CSO
STATUS RESPONSE DATE**

SEP 2 4 2002

Initials: _AD_
EXP'D OA: _15_
☐ FAX   ☐ PHONE   ☒ MAILED

Respectfully submitted,

By: _____
Anthony H. Handal
Reg. No. 26,275
Roger Pitt
Reg. No. 46,996

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231 on August 12, 2002.

_____
Anthony H. Handal
Reg. No. 26,275
Roger Pitt
Reg. No. 46,996

**TC 2600 CSO
STATUS INQUIRY
RECEIVED
SEP 0 9 2002**

Initials: _____

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

------------------------------------------------X

In re application of                  :        Attorney Docket No.:
                                               NS2
Applicant: Nicolas STILIADIS          :

Serial No.: 09/840,283                :        GAU: 2611

Filed: April 23, 2001                 :        Examiner: Andrew Faile

For: "MULTIMEDIA MARKETING AND
DISTRIBUTION SYSTEM"                  :

------------------------------------------------X


                                               February 5, 2004

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450                      **RECEIVED**

                                               FEB 1 2 2004
            **SECOND STATUS INQUIRY LETTER**
                                               Technology Center 2600

        S I R:


            Applicant hereby requests the Office to specify the status of the above application with

regard to issuance of the first Office Action.

        **TC 2600 CSO
        STATUS RESPONSE DATE**          Respectfully submitted,

                                        By
            FEB 1 3 2004                 Anthony H. Handal
        Initials: _____               Reg. No. 26,275
        EXP'D OA: _____               Roger Pitt  (212) 536 4867
        ☐ FAX    ☐ PHONE  ☐ MAILED     Reg. No. 46,996

        I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in envelope,
        postage prepaid, addressed to Commissioner for Patents, Alexandria, VA 22313-1450 on February 5, 2004.

        Anthony H. Handal
        Reg. No. 26,275
        Roger Pitt
        Reg. No. 46,996


        Kirkpatrick & Lockhart, LLP
        599 Lexington Avenue
        New York, NY 10022

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 1 | ("6324519").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2005/05/25 10:33 |
| L2 | 113 | 725/143 | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:33 |
| L3 | 113 | 725/145 | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:35 |
| L4 | 7 | 2 and 3 | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:35 |
| L5 | 219 | 2 or 3 | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:35 |
| L6 | 106 | 2 NOT 3 | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:36 |
| L7 | 212 | 2 xOR 3 | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:36 |
| S1 | 1 | ("5977964").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2005/05/17 12:26 |
| S2 | 1 | ("5918213").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2005/05/17 12:27 |
| S3 | 1 | ("5661517").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2005/05/18 16:31 |
| S4 | 1 | ("20030009771").PN. | US-PGPUB; USPAT; USOCR | OR | OFF | 2005/05/23 13:48 |
| S5 | 25 | celluloid and movies and digital and projector and theater | US-PGPUB; USPAT | OR | OFF | 2005/05/25 10:04 |
| S6 | 0 | celluloid near digital | US-PGPUB; USPAT | OR | OFF | 2005/05/24 15:41 |
| S7 | 3 | celluloid near2 digital | US-PGPUB; USPAT | OR | OFF | 2005/05/24 15:41 |
| S8 | 3 | celluloid$1 near2 digital | US-PGPUB; USPAT | OR | OFF | 2005/05/24 15:59 |
| S9 | 638356 | celluloid$1 with2 digital | US-PGPUB; USPAT | OR | OFF | 2005/05/24 16:00 |
| S10 | 47 | celluloid$1 with digital | US-PGPUB; USPAT | OR | OFF | 2005/05/24 16:00 |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

545        7590        06/06/2005
ANTHONY H. HANDAL
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 LEXINGTON AVENUE
33RD FLOOR
NEW YORK, NY  10022-6030

| EXAMINER |
|---|
| AKLILU, KIRUBEL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2614 | |

DATE MAILED: 06/06/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Office Action Summary*** | 09/840,283 | STILIADIS, NICHOLAS | |
| | Examiner | Art Unit | |
| | Kirubel Aklilu | 2614 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>23 April 2001</u>.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-23* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-23* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>13 June 2001</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date *8/20/01*.

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____.

Application/Control Number: 09/840,283                                    Page 2
Art Unit: 2614

## DETAILED ACTION

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public
use or on sale in this country, more than one year prior to the date of application for patent in the United
States.

Claims **1-3, 5-9, 12-14**, and **17-22** are rejected under 35 U.S.C. 102(b) as being

anticipated by Bernard et al. (U.S. Patent # 5,918,213).

1. As for **Claim 1**, Bernard et al. teach a method of marketing and distributing

multimedia (see col. 3 lines 8-29 "The present invention is directed toward an

automated product purchasing and previewing system which allows customers to shop

for and purchase products via a remote communications medium in an automated

fashion . . . For example, in one embodiment, music, videos, computer software, and

other multimedia products are offered for sale by the automated product purchasing

system."), the method comprising:

a. receiving multimedia material from a producer or owner of said material (see

col. 3 lines 30-32 "where the product is movies, the purchaser can select a particular

movie to preview before actually purchasing or renting the movie.");

b. storing said material on a computer readable storage medium (see col. 5 lines

16-22 "The system stores important information such as customer information, order

Application/Control Number: 09/840,283                                   Page 3
Art Unit: 2614

information pertaining to the customer's order, and product information.  The product

information can include texts describing the products and their features, and **samples**

**of the products such as music samples, video samples, and other samples as**

**appropriate depending on the product.**"  It is interpreted that these multimedia

material are stored on a computer readable storage medium);

      c. providing a server system accessible over a communication network, said

server system accessing data from said computer readable storage medium for transfer

over said communication network (see col. 3 lines 14-18 "According to the invention,

customers access the automated system and browse through the selections offered.

This access can be achieved by any remote communications medium such as the

telephone, a direct data link, a network connection (e.g., the Internet), and other

communications means."  The limitation of the server system is met by the automated

system that uses a network connection such as the Internet to access samples of

multimedia data to transfer to potential customers.);

      d. providing samples over said server system of said multimedia material to

potential purchasers (see col. 3 lines 26-28 "users can sample portions of selected titles

to determine whether or not it is a product that they would actually like to rent or

purchase.");

      e. downloading upon request over said server system said multimedia material

(see col. 3 lines 30-36 "a sample portion of the movie, or an actual preview, is provided

to the customer for his or her sampling.  Where the customer is connected by a suitable

medium (such as the Internet, for example), actual movie clips can be provided."); and

f. providing advertising material to purchasers over said communication network

allowing purchasers to locally market and sell said multimedia material (see col. 3 lines

24-28 "For example, in one embodiment, music, videos, computer software, and other

multimedia products are offered for sale by the automated product purchasing system.

In this embodiment, users can sample portions of selected titles to determine whether or

not it is a product that they would actually like to rent or purchase." The sample

multimedia presented to the users is interpreted to be advertising material provided to

users).

2. As for **Claim 2**, Bernard et al. teach receiving multimedia material by downloading via

said communication network (see col. 3 lines 30-36 "a sample portion of the movie, or

an actual preview, is provided to the customer for his or her sampling. Where the

customer is connected by a suitable medium (such as the Internet, for example), actual

movie clips can be provided." When sample portion of movie is provided to a user via

the Internet, it is interpreted that the multimedia material is downloaded to the user.).

3. As for **Claim 3**, Bernard et al. teach receiving multimedia material includes receiving

non-digital media such as audio tape (see col. 13 lines 36-39 "The above description

outlined various features and functions of the purchasing system in terms of an

embodiment where the product offered is music (albums, CDS, cassettes, etc.)." The

multimedia material is audio music and it is received in non-digital media such as audio

tape (cassettes)).

Application/Control Number: 09/840,283                                          Page 5
Art Unit: 2614

4. As for **Claim 5**, Bernard et al. teach providing a server system accessible over a

public communication system (see col. 3 lines 14-18 "According to the invention,

customers access the automated system and browse through the selections offered.

This access can be achieved by any remote communications medium such as the

telephone, a direct data link, a network connection (e.g., the Internet), and other

communications means." The limitation of the server system is met by the automated

system that uses a network connection such as the Internet to access samples of

multimedia data to transfer to potential customers and the Internet is interpreted to be a

public communication network).

5. As for **Claim 6**, Bernard et al. teach downloading digital material from said server

system for digital display to an audience (see col. 13 lines 43-45 "the system lends itself

particularly well to the sale of products such as videos (movies and movie rental, video-

on-demand, educational programming, etc.), video games, computer software and other

multi-media products." The computer software is inherently a digital material that is

downloaded over the server for digital display to an audience.)

6. As for **Claim 7**, Bernard et al. teach providing downloadable advertising materials on

said sever system (see col. 3 lines 30-36 "a sample portion of the movie, or an actual

preview, is provided to the customer for his or her sampling. Where the customer is

connected by a suitable medium (such as the Internet, for example), actual movie clips

Application/Control Number: 09/840,283                                      Page 6
Art Unit: 2614

can be provided." When sample portion of movie is provided to a user via the Internet,

it is interpreted that downloadable advertising material is provided over said server.)


7. As for **Claim 8**, Bernard et al. teach providing sales and marketing data based upon

visitors to said server system (see col. 3 lines 14-18 "According to the invention,

customers access the automated system and browse through the selections offered.

This access can be achieved by any remote communications medium such as the

telephone, a direct data link, a network connection (e.g., the Internet), and other

communications means." The customers that access the automated system are

interpreted to be visitors to the server system).


8. As for **Claim 9**, Bernard et al. teach providing marketing data based upon actual

users of said server system (see col. 3 lines 14-18 "According to the invention,

customers access the automated system and browse through the selections offered.

This access can be achieved by any remote communications medium such as the

telephone, a direct data link, a network connection (e.g., the Internet), and other

communications means." The customers that access the automated system are

interpreted to be actual users to the server system because the customers are using the

server system as they are accessing it.)

Application/Control Number: 09/840,283                                    Page 7
Art Unit: 2614

9. As for **Claim 12**, Bernard et al. teach a method of marketing and distributing
multimedia, the method comprising:

a. receiving multimedia material from a producer or owner of said material (see
col. 3 lines 30-32 "where the product is movies, the purchaser can select a particular
movie to preview before actually purchasing or renting the movie.");

b. storing said material on a computer readable storage medium (see col. 5 lines
16-22 "The system stores important information such as customer information, order
information pertaining to the customer's order, and product information.  The product
information can include texts describing the products and their features, and **samples
of the products such as music samples, video samples, and other samples as
appropriate depending on the product.**" It is interpreted that these multimedia
material are stored on a computer readable storage medium);

c. providing a server system accessible over a communication network, said
server system accessing data from said computer readable storage medium for transfer
over said communication network (see col. 3 lines 14-18 "According to the invention,
customers access the automated system and browse through the selections offered.
This access can be achieved by any remote communications medium such as the
telephone, a direct data link, a network connection (e.g., the Internet), and other
communications means."  The limitation of the server system is met by the automated
system that uses a network connection such as the Internet to access samples of
multimedia data to transfer to potential customers.);

Application/Control Number: 09/840,283                                          Page 8
Art Unit: 2614

d. establishing an account for a customer (col. 23 lines 39-42 "or embodiments using Internet or other data access, the establishment of a membership account can be done in a wholly automated fashion without need for a representative to speak to customer 182.");

e. downloading a product upon request from said customer for said product over said server system said multimedia material (see col. 3 lines 30-36 "a sample portion of the movie, or an actual preview, is provided to the customer for his or her sampling. Where the customer is connected by a suitable medium (such as the Internet, for example), actual movie clips can be provided.");

f. following up to determine information necessary to calculate the amount owed by said customer for said product (see col. 30 lines 23-34 "Interactive transaction database 112 also maintains order information. Order information is simply a list of all the titles ordered by the caller 182. Order information preferably also includes an identification of the caller 182 such as the caller's ANI or the caller's membership number. Each time caller 182 indicates that he or she wishes to purchase a title, the catalog ID number for that title is appended to that caller's order information. If caller 182 later decides that he or she does not wish to purchase that title, that catalog ID number 1008 can be deleted from the order information list." The order information is interpreted to be information necessary to calculate the amount owed by a customer for a product); and

g. charging the account of said customer (see col. 27 lines 3-12 "In a step 814, the automated product purchasing system makes the appropriate payment query to

Application/Control Number: 09/840,283                                    Page 9
Art Unit: 2614

verify the caller's payment information.  In this step, interactive transaction database

112 makes the query via gateway routers 714 to the appropriate credit approval service,

such as authorization server 440.  Authorization server 440 can be a credit card

authorization service, a debit card service, a traditional ATM type of debit service, or

other payment service.  The appropriate approval or denial is returned to interactive

transaction database 112 via the same path."  In the above steps, it is interpreted that

the customer's account is charged when the Authorization server 440 approves the

payment.)


10.  As for **Claim 13**, Bernard et al. teach receiving multimedia material by downloading

via said communication network (see col. 3 lines 30-36 "a sample portion of the movie,

or an actual preview, is provided to the customer for his or her sampling.  Where the

customer is connected by a suitable medium (such as the Internet, for example), actual

movie clips can be provided."  When sample portion of movie is provided to a user via

the Internet, it is interpreted that the multimedia material is downloaded to the user.).


11.  As for **Claim 14**, Bernard et al. teach receiving multimedia material includes

receiving non-digital media such as audio tape (see col. 13 lines 36-39 "The above

description outlined various features and functions of the purchasing system in terms of

an embodiment where the product offered is music (albums, CDS, cassettes, etc.)."

The multimedia material is audio music and it is received in non-digital media such as

audio tape (cassettes)).

Application/Control Number: 09/840,283                                     Page 10
Art Unit: 2614

12. As for **Claim 17**, Bernard et al. teach comprising providing advertising material to
purchasers over said communication network allowing purchasers to locally market and
sell said multimedia material (see col. 3 lines 24-28 "For example, in one embodiment,
music, videos, computer software, and other multimedia products are offered for sale by
the automated product purchasing system. In this embodiment, users can sample
portions of selected titles to determine whether or not it is a product that they would
actually like to rent or purchase." The sample multimedia presented to the users is
interpreted to be advertising material provided to users).

13. As for **Claim 18**, Bernard et al. teach querying said customer to stimulate the
sending of data from said customer and recording said data into a database (see col. 4
line 67 – col. 5 line 5 "The system comprises an interface unit which provides the front-
end interface to the customers, an interactive transaction database for storing important
information regarding the system and its customers, and, optionally, a customer service
center for handling special situations which may arise from time to time with customers."
And col. 5 lines 50-57 "In situations where a membership profile is established for that
customer and all the payment and delivery information is on file, the customer has to do
no more than verify the purchase. In other situations where information needs to be
provided, this information is provided by the customer to the automated product
purchasing system to complete the transaction and finalize the sale." When a
customer's membership profile is not established and the customer needs to provide

Application/Control Number: 09/840,283                                Page 11
Art Unit: 2614

information to the automated product purchasing system, it is interpreted that the

customer is queried in order to provide important customer information to be stored in

the system database.)


14.  As for **Claim 19**, Bernard et al. teach providing marketing data recorded in said

database to customers in response to a query from a customer (see col.5 lines 16-22

"The system stores important information such as customer information, order

information pertaining to the customer's order, and product information.  The product

information can include texts describing the products and their features, and samples of

the products such as music samples, video samples, and other samples as appropriate

depending on the product." It is interpreted that the samples are provided to the user

when a customer requests for samples.  Therefore, it is interpreted that the marketing

data (samples of music and video) which are stored are provided to customers in

response to a query from the customers.).


15.  As for **Claim 20**, Bernard et al. teach providing marketing data based upon actual

users of said server system (see col. 3 lines 14-18 "According to the invention,

customers access the automated system and browse through the selections offered.

This access can be achieved by any remote communications medium such as the

telephone, a direct data link, a network connection (e.g., the Internet), and other

communications means." The customers that access the automated system are

Application/Control Number: 09/840,283                                    Page 12
Art Unit: 2614

interpreted to be actual users to the server system because the customers are using the

server system as they are accessing it).


16. As for **Claim 21**, Bernard et al. teach a method of marketing and distributing

multimedia (see col. 3 lines 8-29 "The present invention is directed toward an

automated product purchasing and previewing system which allows customers to shop

for and purchase products via a remote communications medium in an automated

fashion . . . For example, in one embodiment, music, videos, computer software, and

other multimedia products are offered for sale by the automated product purchasing

system."), the method comprising:

     a. receiving multimedia material from a producer or owner of said material (see

col. 3 lines 30-32 "where the product is movies, the purchaser can select a particular

movie to preview before actually purchasing or renting the movie.");

     b. storing said material on a computer readable storage medium (see col. 5 lines

16-22 "The system stores important information such as customer information, order

information pertaining to the customer's order, and product information.  The product

information can include texts describing the products and their features, and **samples

of the products such as music samples, video samples, and other samples as

appropriate depending on the product.**"  It is interpreted that these multimedia

material are stored on a computer readable storage medium);

     c. providing a server system accessible over a communication network, said

server system accessing data from said computer readable storage medium for transfer

Application/Control Number: 09/840,283                                     Page 13
Art Unit: 2614

over said communication network (see col. 3 lines 14-18 "According to the invention,

customers access the automated system and browse through the selections offered.

This access can be achieved by any remote communications medium such as the

telephone, a direct data link, a network connection (e.g., the Internet), and other

communications means." The limitation of the server system is met by the automated

system that uses a network connection such as the Internet to access samples of

multimedia data to transfer to potential customers.);

    d. providing samples over said server system of said multimedia material to

potential purchasers (see col. 3 lines 26-28 "users can sample portions of selected titles

to determine whether or not it is a product that they would actually like to rent or

purchase.");

    e. downloading upon request over said server system said multimedia material

(see col. 3 lines 30-36 "a sample portion of the movie, or an actual preview, is provided

to the customer for his or her sampling. Where the customer is connected by a suitable

medium (such as the Internet, for example), actual movie clips can be provided.");

    f. querying said customer to stimulate the sending of data from said customer

(col. 5 lines 50-57 "In situations where a membership profile is established for that

customer and all the payment and delivery information is on file, the customer has to do

no more than verify the purchase. In other situations where information needs to be

provided, this information is provided by the customer to the automated product

purchasing system to complete the transaction and finalize the sale." When a

customer's membership profile is not established and the customer needs to provide

Application/Control Number: 09/840,283                                    Page 14
Art Unit: 2614

information to the automated product purchasing system, it is interpreted that the

customer is queried in order to provide important customer information to be stored in

the system database.); and

g. recording said data into a database (see col. 4 line 67 – col. 5 line 5 "The

system comprises an interface unit which provides the front-end interface to the

customers, an interactive transaction database for storing important information

regarding the system and its customers, and, optionally, a customer service center for

handling special situations which may arise from time to time with customers." It is

interpreted that the information provided by the customer is stored in the database so

the membership profile for a user is established).


17. As for **Claim 22**, Bernard et al. teach providing marketing data recorded in said

database to customers in response to a query from a customer (see col.5 lines 16-22

"The system stores important information such as customer information, order

information pertaining to the customer's order, and product information.  The product

information can include texts describing the products and their features, and samples of

the products such as music samples, video samples, and other samples as appropriate

depending on the product." It is interpreted that the samples are provided to the user

when a customer requests for samples.  Therefore, it is interpreted that the marketing

data (samples of music and video) which are stored are provided to customers in

response to a query from the customers.).

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claim **11** is rejected under 35 U.S.C. 102(b) as being anticipated by Abecassis (U.S.

Patent # 6,038,367)

18. As for **Claim 11**, Abecassis teaches a system for distributing multimedia (see fig. 9

units 913 video provider system and unit 936 RAViT, col. 32 lines 22-38 "A video

provider system, for example 911, comprises: i) communications technologies 921 for

establishing a plurality of video and communications streams to a plurality of RAViTs

931-936;") comprising:

a. a first central processing unit (see col. 32 lines 26-31 "ii) processing hardware

and software 922 for retrieving from a RAVIT a subscriber's video preferences and

content preferences, and for automatically selecting, for each of the participating

subscribers, a content-on-demand video responsive to the video and content

preferences;");

b. a first memory associated with said first central processing unit (see col. 32

lines 31-36 "iii) mass storage random access memory devices 923 for storing a

videobase comprising a plurality of any combination of conventional programs and

interactive games and services, variable content videos, and content-on-demand video including the corresponding video maps;");

c. a communications network accessible by said first central processing unit for transferring data into and out of said first memory (It is interpreted that there is inherently going to be a communication network between unit 922 and unit 923 to transfer data);

d. an input device connected for data transfer to said first central processing unit, said input device receiving multimedia and transferring it into said first memory via said central processing unit (see fig. 9 unit 905 Satellite col. 32 lines 1-5 "Shown are wired and non-wired video transmission infrastructures based on the use of one or a hybrid combination of the following: fiber optic 901, coaxial cable 902, twisted copper wire 903, microwave and radio 904, and satellite 905." Satellite 905 is interpreted to be an input device connected for data transfer to said first central processing unit);

e. a second central processing unit (see fig. 9 unit 936 RAViT and fig. 5 unit 511 System CPU. System CUP 511 is interpreted to be the second central processing unit);

f. a second memory, said second memory associated with said second central processing unit with said communications network being accessible by said second central processing unit for transferring data into and out of said second memory (see fig. 5 unit 512 Memory, col. 20 lines 44-48 "RAViT further comprises computing elements and video processing elements readily found in multimedia devices and video electronic systems such as, for example and not limited thereto: i) microprocessor 511; ii) memory units 512; iii) video processor 513; and iv) video buffers 514." ); and

Application/Control Number: 09/840,283                                      Page 17
Art Unit: 2614

g. a digital feature film projector in data communication with said second central

processing unit for displaying a feature film onto a screen for presentation to an

audience, said feature film stored in digital form in said second memory after being

transferred via said communications network from said first memory (see fig. 9 unit 959

projector, col. 33 lines 29-40 "In commercial applications, such as a theater, a RAViT

936 may support a high definition projector 959 such as for example Hughes/JVC

Electronic HDTV projector."  It is interpreted that the data that is initially stored in the

server provider is transmitted via a communication network to the second processing

unit of the RAViT, which is stored in a second memory of RAViT and eventually

transmitted to projector 959 for display to an audience).

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

Claims **4** and **15-16** are rejected under 35 U.S.C. 103(a) as being unpatentable

over Bernard et al. (U.S. Patent # 5,918,213).

Application/Control Number: 09/840,283                                    Page 18
Art Unit: 2614

19.  As for **Claim 4**, Bernard et al. do not expressly teaches the step of digitizing said

non-digital media for storage on said computer readable storage medium.  However,

Official Notice (MPEP § 2144.03) is taken that both the concepts and advantages of

digitizing non-digital media are well known and expected in the art.  At the time the

invention was made, it would have been obvious to one with ordinary skill in the art to

have digitized said non-digital media for storage on a computer readable storage

medium to take advantage of a digital multimedia data such as achieving a better signal

quality and compression in order to save storage space.


20.  As for **Claim 15**, Bernard et al. do not expressly teach said follow-up is

implemented by sending an e-mail to said customer.  However, Official Notice (MPEP §

2144.03) is taken that both the concepts and advantages of using e-mail in business

transaction are well known and expected in the art.  At the time the invention was made,

it would have been obvious to one with ordinary skill in the art to have used email to

follow up with the customer because email is a fast and cost effective method of

communication when Internet service is available.


21.  As for **Claim 16**, Bernard et al. do not expressly teach said follow-up is

implemented by consulting publicly reported data respecting said customer.  However,

Official Notice (MPEP § 2144.03) is taken that both the concepts and advantages of

using publicly reported data are well known and expected in the art.  At the time the

invention was made, it would have been obvious to one with ordinary skill in the art to

Application/Control Number: 09/840,283                                     Page 19
Art Unit: 2614

have implemented a follow up by consulting publicly reported data respecting said

customer, because the customer's publicly listed telephone number or address publicly

reported data (such as a listed phone number or mailing address) are reliable means of

communication in a business transaction.


Claim **10** is rejected under 35 U.S.C. 103(a) as being unpatentable over Abecassis

(U.S. Patent # 6,038,367) in view of Sood (U.S. Patent # 6,233,523).


22.  As for **Claim 10**, Abecassis teaches a method of distributing movies (see

Abecassis col. 2 lines 30-36 "it is an object of the systems and methods herein

disclosed to deliver to a viewer an automatically customized version of a single edition

of the viewer-selected video responsive to the viewer's content preferences for the level

of detail and explicitness in a range of content categories.") comprising:


        c. transferring a digital format to a theater via a communications network and

storing said digital format on a computer readable memory located at said theater (see

Abecassis fig. 5 unit 500 RAViT and unit 503, 504, and 505 storage systems and col. 18

lines 41-67 "The viewer interface above detailed resides in a viewer's Random Access

Video Technologies device ("RAViT").  A RAViT permits the viewer to retrieve content-

on-demand videos and other services from media locally accessible or within the

RAViT, or from a remote video services provider . . . A fully featured RAViT 500

comprises . . . iii) fixed storage sub-system 503; iv) removable storage sub-system 504;

Application/Control Number: 09/840,283                                    Page 20
Art Unit: 2614

v) compact portable storage sub-system 505;"RAViT is interpreted to be a theater that

receives digital movies for projection to users. Storage systems 503-505 are interpreted

to be storage systems for the theater);  and

 d. projecting said digital format using a digital projector onto a screen for display

to an audience (see Abecassis fig. 9 unit 959 Projector and col. 33 lines 29-39 "In

commercial applications, such as a theater, a RAViT 936 may support a high definition

projector 959 such as for example Hughes/JVC Electronic HDTV projector." Figure 9

unit 959 clearely shows projecting a video on a digital projector onto a screen for display

to an audience). However, Abecassis does not expressly teach:

 a. receiving a movie on celluloid;  and

 b. scanning said movie converting it into a digital format, storing said digital

format in a computer readable memory.

 In the same field of endeavor, Sood teaches a method for converting data on a

celluloid into a digital format.  See Sood col. 3 lines 40-45 "Film cameras or still

cameras may be used.  Although conventional cameras based on celluloid film may be

used in principle, the products of which are digitized at a later point of time, digital video

cameras are preferred for two reasons.  Firstly, it is more beneficial to take digital

pictures directly and secondly, their data carriers may be reused for other trips."  In light

of the teaching of Sood, it would have been obvious to one of ordinary skill in the art to

modify the teaching of Abecassis to include receiving a movie in celluloid and

converting the data into a digital format to store in a computer readable memory.  One

of ordinary skill in the art at the time the invention was made would have been

motivated to do this in order to transmit a movie that is originally captured on a celluloid

to the RAViT theater system of Abecassis in a customized and edited version (see

Abecassis col. 2 lines 30-36 "it is an object of the systems and methods herein

disclosed to deliver to a viewer an automatically customized version of a single edition

of the viewer-selected video responsive to the viewer's content preferences for the level

of detail and explicitness in a range of content categories.")

Claim **23** is rejected under 35 U.S.C. 103(a) as being unpatentable over Abecassis

(U.S. Patent # 6,038,367) in view of Bernard et al. (U.S. Patent # 5,918,213).

23.  As for **Claim 23**, the limitations of Claim 23 fall within the limitations of Claim 11.

Claim 23 is analyzed and rejected as previously show on Claim 11.  Claim 23 further

requires the limitation of having a third memory domain for receiving market data in

response to an order for said multimedia product.  Abecassis does not expressly teach

having a third memory domain for receiving market data in response to an order for said

multimedia product.  However, in the same field of endeavor, Bernard et al. teach

storing market data in response to an order for a multimedia product.  See Bernard et

al. col. 4 line 67 – col. 5 line 5 "The system comprises an interface unit which provides

the front-end interface to the customers, an interactive transaction database for storing

important information regarding the system and its customers, and, optionally, a

customer service center for handling special situations which may arise from time to

time with customers."  In light of the teaching of Bernard et al., it would have been

Application/Control Number: 09/840,283                                  Page 22
Art Unit: 2614

obvious to one of ordinary skill in the art at the time the invention was made to have

modified the teaching of Abecassis to include a third memory domain for receiving and

storing important market data (such as vital customer information) in response to an

order for a multimedia product.  One of ordinary skill in the art would have been

motivated to have a third memory domain for storing market data in order to keep a

profile on the customers so the customer's personal preference can be stored in

memory and customers do not have to enter personal information again.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kirubel Aklilu whose telephone number is 571-272-

7342.  The examiner can normally be reached on 9:00AM - 5:30PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Miller can be reached on 571-272-7353.  The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

Application/Control Number: 09/840,283                                    Page 23
Art Unit: 2614

KA
5/24/05

NGOC-YEN VU
PRIMARY EXAMINER

Sheet 1 of 3

| Form PTO-1449 (Rev. 8-83) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. NS2 | SERIAL NO. 09/840,283 |
|---|---|---|---|
| **INFORMATION DISCLOSURE CITATION** *(Use several sheets if necessary)* | | APPLICANT **STILIADIS** | |
| | | FILING DATE **APRIL 23, 2001** | GROUP **2614** ~~Unknown~~ |

OYPE AUG 2 0 2001 PATENT & TRADEMARK OFFICE

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

RECEIVED SEP 0 4 2001 Technology Center 2100

## OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | | |
|---|---|---|---|
| XA | ✓ | 1. | Hollywood Software, Inc. *Product Brochure* "Rightsmart.com" (date unknown) |
| XA XA | ✓ | 2. | LuxSat International SA *Product Brochure* "Multimedia on Demand" (date unknown) |
| XA | ✓ | 3. | Tv. Tv. *Product Brochure* "Questions and Answers about broadband, the Internet and how content owners can take advantage of both right now" (date unknown) |
| XA | ✓ | 4. | Screen International "Digital dithering" (October 20,2000) |
| XA | ✓ | 5. | Orca Computers Ltd. *Product Brochure* "Right TV" (date unknown) |
| XA | ✓ | 6. | The Bulldog Group. *Various Corporate Publications* |
| XA | ✓ | 7. | Television Business International pp. 19-25 D-Exploitation" (November 2000) |
| XA | ✓ | 8. | Video Store Magazine pp. 14-16 "Digital Cinema" (April 2000) |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | 5/16/05 |

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

Sheet 2 of 3

| Form PTO-1449 (Rev. 8-83) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. NS2 | | SERIAL NO. 09/840,283 |
|---|---|---|---|---|
| INFORMATION DISCLOSURE CITATION (Use several sheets if necessary) | | APPLICANT STILIADIS | | |
| | | FILING DATE APRIL 23, 2001 | GROUP | 2614 Unknown |

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | | | | | | | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

RECEIVED
SEP 04 2001
Technology Center 2100

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| ICA | / | 9. | iBEAM Broadcasting Corporation *Product Brochure* "iBEAM Syndication Manager (2001)* |
|---|---|---|---|
| ICA | ✓ | 10. | GeoVideo Networks *Various Corporate Publications* (date unknown) |
| ICA | ✓ | 11. | Reelplay.com *Various Corporate Publications* (date unknown) |
| ICA | ✓ | 12. | Sightsound.com *Product Brochure* (date unknown) |
| ICA | ✓ | 13. | Tivix *Various Corporate Publications* "Online Program Marketing for Buyers and Sellers" (February-June 2000) |
| ICA | ✓ | 14. | TV Files *Product Brochure* "Enabling Convergence" (date unknown) |
| ICA | ✓ | 15. | The Hollywood Reporter pp. 9-10 ( February 27, 2000) |
| ICA | ✓ | 16. | Internet Studios *Corporate Profile* (date unknown) |
| ICA | ✓ | 17. | Filmbazaar.com *Product Brochure* "Moving Pictures at AFM 2000 |
| | | | (date unknown) |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | 5/16/05 |

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

Sheet 3 of 3

| Form PTO-1449 (Rev. 8-83) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. NS2 | SERIAL NO. 09/840,283 |
|---|---|---|---|
| **INFORMATION DISCLOSURE CITATION** (Use several sheets if necessary) | | APPLICANT STILIADIS | |
| | | FILING DATE APRIL 23, 2001 | GROUP 2614 Unknown |

OIPE AUG 2 0 2001 PATENT & TRADEMARK OFFICE

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

RECEIVED SEP 0 4 2001 Technology Center 2100

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | | |
|---|---|---|---|
| VA | √ | 17A. | Filmbazaar.com *Product Brochure* "Professional Business Center" (date unknown) |
| | | 18. | TIVIX *Product Brochure* "Streamlining" (date unknown) |
| VA | √ | 19. | AFMA Independent Vol.1, No. 4 "Internet Distribution of Films Presents Problems |
| VA | | | and Possibilities" (November/December 1999) |
| VA | √ | 20. | TvResource.com Advertisement (date unknown) |
| VA | √ | 21. | Independent 2. "Welcome to the Electronic Future" (date unknown) |
| VA | √ | 22. | Screen Digest "Digital Cinema: Year Two Getting Down To Business" |
| | | | (April 2001) |
| VA | √ | 23. | EMAP Media Limited "Boeing Digital Cinema" (July 22, 2001) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| EXAMINER | DATE CONSIDERED 5/16/05 |
|---|---|

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Kirubel Aklilu | 2614 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-5,918,213 | 06-1999 | Bernard et al. | 705/26 |
| | B | US-6,038,367 | 03-2000 | Abecassis, Max | 386/46 |
| | C | US-6,233,523 | 05-2001 | Sood, Ralf A. | 701/213 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.





### UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 3319**

| SERIAL NUMBER 09/840,283 | FILING DATE 04/23/2001 RULE | CLASS 709 | GROUP ART UNIT 2152 | ATTORNEY DOCKET NO. NS2 |
|---|---|---|---|---|

**APPLICANTS**
Nicholas Stiliadis, Toronto, CANADA;

** CONTINUING DATA **************************
THIS APPLN CLAIMS BENEFIT OF 60/201,118 05/02/2000

** FOREIGN APPLICATIONS *********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED** SMALL ENTITY **
** 06/15/2001

| Foreign Priority claimed ☐ yes ☑ no | STATE OR COUNTRY CANADA | SHEETS DRAWING 10 | TOTAL CLAIMS 23 | INDEPENDENT CLAIMS 6 |
|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance | | | | |
| Verified and Acknowledged    Examiner's Signature      Initials | | | | |

**ADDRESS**
00545

**TITLE**
Mutimedia marketing and distribution system

| FILING FEE RECEIVED 567 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other |
| | | ☐ Credit |

## Index of Claims

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 09/840,283 | STILIADIS, NICHOLAS |
| Examiner | Art Unit |
| Kirubel Aklilu | 2614 |

| √ | Rejected | — | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Final | Original | 5/16/05 |
|---|---|---|
| | 1 | √ |
| | 2 | √ |
| | 3 | √ |
| | 4 | √ |
| | 5 | √ |
| | 6 | √ |
| | 7 | √ |
| | 8 | √ |
| | 9 | √ |
| | 10 | √ |
| | 11 | √ |
| | 12 | √ |
| | 13 | √ |
| | 14 | √ |
| | 15 | √ |
| | 16 | √ |
| | 17 | √ |
| | 18 | √ |
| | 19 | √ |
| | 20 | √ |
| | 21 | √ |
| | 22 | √ |
| | 23 | √ |

Claims 24–150 blank.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Kirubel Aklilu | 2614 | |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 725 | 143 | 5/23/2005 | KA |
| 725 | 145 | 5/23/2005 | KA |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| Celluloid and (Movie or Video) and (teather or projector) and digital | 5/23/2005 | KA |
| Celluloid$1 near2 digital | 5/23/2005 | KA |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Part of Paper No.  20050516



**Kirkpatrick & Lockhart Nicholson Graham** LLP

599 Lexington Avenue
New York, NY  10022-6030
212.536.3900
Fax 212.536.3901
www.klng.com

September 6, 2005

MAIL STOP NON FEE AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Re:    Nick STILIADIS
        U.S. Patent Application No. 09/840,283 Filed: April 23, 2001
        (Based on USAN 60/201,118 Filed May 2, 2000) Atty Docket: NS2
        "MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

SIR:

        We enclose herewith:

        [X]      Amendment; and
        [X[      Acknowledgement Postcard.

        CORRESPONDENCE ADDRESS INDICATION: The Office is respectfully requested to enter the new correspondence address indicated in the accompanying power: **Customer No. 00545.**

        The Commissioner is hereby authorized to charge payment of fees associated with this communication or credit any overpayment to Deposit Account No. **08-0570.**

        Applicant hereby petitions under 37 CFR 1.136 to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

                                        Respectfully submitted,

                                        Anthony H. Handal
                                        Reg. No. 26,275 Phone (212) 536-4870
                                        Roger Pitt
                                        Reg. No. 46,996 Phone (212) 536-4867

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on September 6, 2005.

Anthony H. Handal Reg. No. 26,275
Roger Pitt, Reg. No. 46,996

NY-386081 v1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

---------------------------------------------------X

| | | |
|---|---|---|
| In re application of | : | Attorney Docket No. |
| | : | NS2 |
| Applicant: Nicholas STILIADIS | : | |
| | : | |
| Application No.: 09/840,283 | : | GAU: 2614 |
| | : | |
| Filed: April 23, 2001 | : | Examiner: Ngoc-Yen Vu |
| | : | |
| For: "MULTIMEDIA MARKETING | : | |
| AND DISTRIBUTION SYSTEM" | : | |

---------------------------------------------------X

September 6, 2005

MAIL STOP NON FEE AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

AMENDMENT

SIR:

In response to the Official Action dated June 6, 2005, in please amend the above-identified application as follows:

1

IN THE CLAIMS:

Please AMEND the claims as follows:

1. (currently amended)  A method of marketing and distributing multimedia, the method comprising:

a.      receiving multimedia material from a producer or owner of said material;

b.      storing said material on a computer readable storage medium;

c.      providing a server system accessible over a communication network, said server system accessing data from said computer readable storage medium for transfer over said communication network;

d.      providing  samples over said server system of said multimedia material to potential purchasers;

e.      downloading upon request over said server system said multimedia material; and

f.      providing advertising material to purchasers over said communication network allowing purchasers to locally market and sell said multimedia material;

e.      said purchaser being an exhibitor exhibiting said multimedia material in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor; and

h.      said purchaser publishing said advertising material.

2

2. (original)   The method of marketing and distributing multimedia of claim 1, including receiving multimedia material by downloading via said communication network.

3. (original)   The method of marketing and distributing multimedia of claim 1, wherein receiving multimedia material includes receiving non-digital media such as celluloid media, printed media, video cassettes, and audio tape.

4. (original)   The method of marketing and distributing multimedia of claim 3, including the step of digitizing said non-digital media for storage on said computer readable storage medium.

5. (original)   The method of marketing and distributing multimedia of claim 1, including providing a server system accessible over a public communication system.

6. (original)   The method of marketing and distributing multimedia of claim 1, including downloading digital material from said server system for digital display to an audience.

7. (original)   The method of marketing and distributing multimedia of claim 1, including providing downloadable advertising materials on said sever system.

3

8. (currently amended)  The method of marketing and distributing multimedia of claim 1, further ~~including~~ comprising collecting sales information from exhibitor recipients of said multimedia material and providing sales and marketing data based upon information from said users of said server system.

9. (original)   The method of marketing and distributing multimedia of claim 8, including providing marketing data based upon actual users of said server system.

10. (original)  A method of distributing movies comprising:

a.      receiving a movie on celluloid;

b.      scanning said movie converting it into a digital format, storing said digital format in a computer readable memory;

c.      transferring said digital format to a theater via a communications network and storing said digital format on a computer readable memory located at said theater; and

d.      projecting said digital format using a digital projector onto a screen for display to an audience.

11. (original)  A distribution system for distributing multimedia comprising:

a.      a first central processing unit;

b.      a first memory associated with said first central processing unit;

4

c.    a communications network accessible by said first central processing unit for transferring data into and out of said first memory;

d.    an input device connected for data transfer to said first central processing unit, said input device receiving multimedia and transferring it into said first memory via said central processing unit;

e.    a second central processing unit;

f.    a second memory, said second memory associated with said second central processing unit with said communications network being accessible by said second central processing unit for transferring data into and out of said second memory; and

g.    a digital feature film projector in data communication with said second central processing unit for displaying a feature film onto a screen for presentation to an audience, said feature film stored in digital form in said second memory after being transferred via said communications network from said first memory.

12.    (currently amended)  A method of marketing and distributing multimedia, the method comprising:

a.    receiving multimedia material from a producer or owner of said material;

b.    storing advertising material associated with said material on a computer readable storage medium;

5

c.    providing a server system accessible over a communication network, said server system accessing said advertising material ~~data~~ from said computer readable storage medium for transfer over said communication network;

d.    establishing an account for a broadcast or live theater exhibitor ~~customer~~;

e.    providing said multimedia material to said exhibitor downloading said advertising material ~~a product~~ upon request from said customer for said advertising material ~~product~~ over said server system ~~said multimedia material~~;

f.    following up to determine information necessary to calculate an ~~the~~ amount owed by said customer for said product; and

g.    charging the account of said exhibitor with the amount owed ~~customer~~.


13. (original) The method of marketing and distributing multimedia of claim 12, including receiving multimedia material by downloading via said communication network.


14. (currently amended) The method of marketing and distributing multimedia of claim 12, wherein receiving multimedia material includes receiving non-digital media such as celluloid media, printed media, video cassettes, and audio tape, and wherein said multimedia material is provided to said exhibitor using an electronic communications network.

6

15. (currently amended)    The method of marketing and distributing multimedia of claim 12, wherein said follow-up is implemented by sending an e-mail to said <u>exhibitor</u> ~~customer~~.

16. (currently amended)  The method of marketing and distributing multimedia of claim 12, wherein said follow-up is implemented by consulting publicly reported data respecting said <u>exhibitor</u> ~~customer~~.

17. (currently amended)  The method of marketing and distributing multimedia of claim 12, further comprising providing advertising material to purchasers over said communication network, and ~~allowing purchasers~~ <u>exhibitors</u> to locally market and sell said multimedia material.

18. (currently amended)  The method of marketing and distributing multimedia of claim 17, further comprising querying said <u>exhibitor</u> ~~customer~~ to stimulate the sending of data from said <u>exhibitor</u> ~~customer~~ and recording said data into a database.

19. (currently amended)  The method of marketing and distributing multimedia of claim 18, comprising providing marketing data recorded in said database to customers in response to a query from a <u>exhibitor</u> ~~customer~~.

7

20. (original) The method of marketing and distributing multimedia of claim 19, including providing marketing data based upon actual users of said server system.

21. (original)  A method of marketing and distributing multimedia, the  method comprising:

a.    receiving multimedia material from a producer or owner of said material;

b.    storing said material on a computer readable storage medium;

c.    providing a server system accessible over a communication network, said server system accessing data from said computer readable storage medium for transfer over said communication network;

d.    providing  samples over said server system of said multimedia material to potential purchasers;

e.    downloading upon request over said server system said multimedia material;

f.    querying said customer to stimulate the sending of <u>ticket sales</u> data from said customer; and

g.    recording said data into a database.

22. (original)  The method of marketing and distributing multimedia of claim 21, comprising providing marketing data recorded in said database to customers in response to a query from a customer.

23. (original)  A distribution system for distributing multimedia comprising:

a.      a first central processing unit;

b.      a first memory domain associated with said first central processing unit;

c.      a communications network accessible by said first central processing unit for transferring data into and out of said first memory domain in response to an order for a multimedia product;

d.      an input device connected for data transfer to said first central processing unit, said input device receiving multimedia and transferring it into said first memory domain via said central processing unit;

e.      a second central processing unit;

f.      a second memory domain, said second memory domain associated with said second central processing unit with said communications network being accessible by said second central processing unit for transferring data into and out of said second memory domain;

g.      a third memory domain for receiving market data in response to an order for said multimedia product; and

h.      a digital feature film projector in data communication with said second central processing unit for displaying a feature film onto a screen for presentation to an

audience, said feature film stored in digital form in said second memory after being

transferred via said communications network from said first memory.

## REMARKS

In the outstanding Office Action, claims 1 to 23 were presented for examination. Rejection was advanced on the basis of 35 U.S.C. 102 against claims 1-3, 5-9, 11-14 , and on the basis of 35 U.S.C. 103 against claims 4, 10 and 15-16, 23.  Rejection was based on references to Bernard, Abecassis and Sood.

The Office Action has been most carefully studied.  In this amendment applicant has amended the claims to more clearly claim the invention In addition, the claims have been amended in order to remove any questions under 35 U.S.C. 112, in accordance with the guidelines and requirements set forth in the outstanding Office Action.

Accordingly, as will be discussed in detail below, it is believed that the application is clearly in condition for allowance.

Generally, the inventive system differs fundamentally from the cited prior art.  In particular, the patent to Bernard deals with a system involving the retail sale, primarily by mail, of hard copy products.  Indeed, as detailed in the specification, the same is meant as a sales method, and not a method for delivery of product and downstream marketing as claimed in the application as originally filed.  See, for example, claim 17 which specifically recites providing advertising material to purchasers over said communications network allowing purchasers to locally market and sell the multimedia material.

11

In this respect, also, reference is made to, for example, claim 10, which specifically recites projection of the movie for display to an audience in a theater.

Claim 1 has also now been amended to make various aspects of this aspect of the invention was clear. Care has been taken not to raise any new issues, and the claim language added in this amendment has been carefully written not to raise any new elements for search above and beyond those raised in the claims as filed. Accordingly, in view of the failure of the prior art to teach the above aspects of the invention, it is believed that these claims are in condition for allowance.

Referring to the Abecassis patent, while advertisements are transmitted over the system, these are conventional advertisements that go with programming, not advertising material used to market the movie being marketed. In this respect the double marketing aspect of the inventive system is not remotely taught by the cited art. Electronic downloading of movies for exhibition, together with marketing materials to sell those movies and increase the number of persons attending or otherwise seeing in the exhibition is not remotely taught by the prior art.

In addition, the recitation of the provision of marketing data to potential exhibitors is also something that shown by the prior art, and originally in the claims as filed. Accordingly, the claims which include these limitations are additionally nonobvious as compared to the prior art. In contrast to the invention taught by

12

applicant, Abecassis is concerned primarily with or adding content by removing, for example, scenes which include bloodshed.

Bernard is likewise inapplicable. This reference merely deals with a system for the ordering of products. It is not concerned with downstream marketing of the same by the buyers. Like the other art of record, no marketing materials are provided. Nor are the movies marketed and exhibited. In this respect Bernard is fundamentally different from the invention taught by the applicant. While it is true that Bernard does talk about providing movie clips, this is not the equivalent of advertising material, nor does it entail exhibition of the same to potential downstream buyers of the material.

The patent to Sood fails to remedy any of the above discussed defficiencies. Accordingly, it is believed clear that the claims are in condition for allowance.

In view of the above amendments and the discussion relating thereto, it is respectfully submitted that the instant application, as amended, is in condition for allowance. Such action is most earnestly solicited. If for any reason the Examiner feels that consultation with Applicant's attorney would be helpful in the advancement of the prosecution, he is invited to call the telephone number below for an interview.

13

Respectfully submitted,

By: _____

Anthony H. Handal
Reg. No. 26,275  Tel. No.: (212) 536-4870
Roger Pitt
Reg. No. 46,996  Tel. No.: (212) 536-4867

Kirkpatrick & Lockhart Nicholson Graham LLP
599 Lexington Avenue
New York, NY 10022
(212) 536-4870

I hereby certify that this correspondence is being deposited with the United States
Postal Service as first class mail in an envelope addressed to: Commissioner for Patents,
P.O. Box 1450, Alexandria, VA 22313-1450, on September 6, 2005.

_____
Anthony H. Handal Reg. No. 26,275
Roger Pitt Reg. No. 46,996

14

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2000

Application or Docket Number

89846283

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY TYPE ☐ | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|
| TOTAL CLAIMS | 23 | | | | |
| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE | RATE | FEE |
| TOTAL CHARGEABLE CLAIMS | 23 minus 20= | * 3 | BASIC FEE 355.00 | OR | BASIC FEE 710.00 |
| INDEPENDENT CLAIMS | minus 3 = | 3 | X$ 9= 27 | OR | X$18= |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ | X40= 120 | OR | X80= |
| | | | +135= | OR | +270= |
| | | | TOTAL 502 | OR | TOTAL |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

9-9-05

| AMENDMENT A | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|---|
| | | | | RATE | ADDITIONAL FEE | RATE | ADDITIONAL FEE |
| Total | * 23 | Minus ** 23 | = | X$ 9= | | X$18= |
| Independent | * 6 | Minus *** 6 | = | X40= | | X80= |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +135= | | +270= |
| | | | | TOTAL ADDIT. FEE | | TOTAL ADDIT. FEE |

| AMENDMENT B | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | | |
|---|---|---|---|---|---|---|
| | | | | RATE | ADDITIONAL FEE | RATE | ADDITIONAL FEE |
| Total | * | Minus ** | = | X$ 9= | | X$18= |
| Independent | * | Minus *** | = | X40= | | X80= |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +135= | | +270= |
| | | | | TOTAL ADDIT. FEE | | TOTAL ADDIT. FEE |

| AMENDMENT C | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | | |
|---|---|---|---|---|---|---|
| | | | | RATE | ADDITIONAL FEE | RATE | ADDITIONAL FEE |
| Total | * | Minus ** | = | X$ 9= | | X$18= |
| Independent | * | Minus *** | = | X40= | | X80= |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +135= | | +270= |
| | | | | TOTAL ADDIT. FEE | | TOTAL ADDIT. FEE |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/00)

**BEST AVAILABLE COPY**

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

*U.S. GPO: 2000-460-706/30103

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 2 | 705/14.ccls. and (marketing adj data) and (ticket adj sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 13:36 |
| L2 | 1 | "725"/$7.ccls. and (marketing adj data) and (ticket adj sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 13:36 |
| L3 | 164 | 705/14.ccls. and (marketing adj data) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:16 |
| L4 | 31 | 705/14.ccls. and ((marketing adj data) with (provid$5 request$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:17 |
| L5 | 31 | (US-20010054180-$ or US-20020023274-$ or US-20020059611-$ or US-20020162113-$ or US-20030088463-$ or US-20010054001-$ or US-20040093608-$ or US-20040078269-$ or US-20040078268-$ or US-20020094787-$ or US-20020069107-$ or US-20010052841-$ or US-20030225641-$ or US-20010037205-$).did. or (US-4630108-$ or US-5392066-$ or US-5761601-$ or US-5801754-$ or US-5892535-$ or US-5909638-$ or US-5924013-$ or US-6038545-$ or US-6141530-$ or US-6633982-$ or US-6925444-$ or US-6698020-$ or US-6502242-$ or US-5412416-$ or US-6133908-$ or US-6477704-$ or US-5890135-$).did. | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:49 |
| L6 | 13 | 5 and billing | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:33 |
| L7 | 265 | "725"/$7.ccls. and billing and reporting | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:33 |
| L8 | 43 | "725"/$7.ccls. and (billing with reporting) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:37 |
| L9 | 47 | "705"/14.ccls. and ((aggregat$5 combined) with (sales market) with (data information statistics)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:40 |
| L10 | 295 | (movie adj (theater theatre)) and ((sales usage market) near2 (data research statistics information)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:41 |
| L11 | 40 | (movie adj (theater theatre)) and (((sales usage market) near2 (data research statistics information)) with (request$5 provid$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:43 |

| L12 | 31 | 725/9-21.ccls. and 725/1,4-5.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:46 |
| L13 | 180 | 725/1,4-5.ccls. and server | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:46 |
| L14 | 24 | 725/1,4-5.ccls. and server and ((market sales usage) near3 (data statistics)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:46 |
| L15 | 22 | 5 and ((market usage sales) with (data information research statistics)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:57 |
| L16 | 1845 | 705/10.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:59 |
| L17 | 11 | 705/10.ccls. and (movie adj (theater theatre)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:01 |
| L18 | 226 | 705/10.ccls. and ((provid$5 request$5 access$5) with ((market sales usage) near2 (data information statistics))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:11 |
| L19 | 19 | 705/10.ccls. and ((provid$5 request$5 access$5) with ((market sales usage) near2 (data information statistics))) and (movie (motion adj picture)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:13 |
| L20 | 14 | 725/9-21.ccls. and (movie adj rating) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:18 |
| L21 | 7 | "725"/$7.ccls. and ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:08 |
| L22 | 10 | 5 and ticket | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:22 |
| L23 | 138 | "705"/$7.ccls. and ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:09 |
| L24 | 4 | "705"/$7.ccls. and ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information)) with (combined aggregate$5 collective)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:08 |
| L25 | 58 | ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) and (movie theater) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:10 |

| L26 | 7 | ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) and (movie adj (theater theatre)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:11 |
|---|---|---|---|---|---|---|
| L27 | 1 | "725"/$7.ccls. and (collective near2 usage) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:11 |
| L28 | 92 | "725"/$7.ccls. and ((aggregat$5 collect$5 total) near2 usage) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:12 |
| L29 | 41 | "725"/$7.ccls. and ((aggregat$5 collect$5 total) near2 usage) and market$5 | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:13 |
| L30 | 13 | "725"/$7.ccls. and ((aggregat$5 collect$5 total) near2 sales) and market$5 | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:15 |
| L31 | 11 | "725"/$7.ccls. and (provid$5 with (market adj research)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:48 |
| L32 | 22 | "705"/10.ccls. and (provid$5 with (market adj research)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:36 |
| L33 | 13 | "705"/10.ccls. and (ticket adj sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:36 |
| L34 | 12 | "725"/$7.ccls. and (provid$5 with (market adj data statistics research))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:49 |
| L35 | 16 | "725"/$7.ccls. and ((request$5 download$5 query$5) with (market adj data statistics research))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 17:24 |
| L36 | 1 | "6233523".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/18 17:24 |
| S1 | 13781 | "725"/$7.ccls. (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/14 15:50 |
| S2 | 207 | "725"/$7.ccls. and (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/14 16:12 |
| S3 | 0 | ("2002/0059611").URPN. | USPAT | OR | ON | 2005/11/14 16:05 |
| S4 | 361 | "705"/$7.ccls. and (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/14 16:12 |
| S5 | 5 | "705"/15.ccls. and (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:06 |
| S6 | 8 | (US-20010054180-$ or US-20020059611-$).did. or (US-5801754-$ or US-5892535-$ or US-5924013-$ or US-6141530-$ or US-6633982-$ or US-6038545-$).did. | US-PGPUB; USPAT | OR | ON | 2005/11/14 16:15 |
| S7 | 6 | S6 and (ad ads advertis$5 trailer teaser preview) | US-PGPUB; USPAT | OR | ON | 2005/11/15 12:36 |

| S8 | 1 | "6038367".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/15 12:36 |
|---|---|---|---|---|---|---|
| S9 | 4 | "705"/15.ccls. and ((theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:42 |
| S10 | 275 | "725"/$7.ccls. and ((theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:42 |
| S11 | 141 | "725"/$7.ccls. and (movie with (theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:42 |
| S12 | 99 | "725"/$7.ccls. and (movie near2(theatre theater cinema)) and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:22 |
| S13 | 99 | "725"/$7.ccls. and (movie near2 (theatre theater cinema)) and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 14:26 |
| S14 | 8 | "725"/$7.ccls. and (movie near2 (theatre theater cinema)) and (download$5 with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 14:29 |
| S15 | 0 | "705"/15.ccls. and (movie near2 (theatre theater cinema)) and (download$5 with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 14:30 |
| S16 | 0 | "705"/15.ccls. and (movie near2 (theatre theater cinema)) and ((request$5 download$5) with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:13 |
| S17 | 4 | "705"/15.ccls. and ((request$5 dowload$5) with (advertis$5 teaser trailer ad ads)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:15 |
| S18 | 23 | "725"/$7.ccls. and ((request$5 dowload$5) with (advertis$5 teaser trailer ad ads)) and kiosk | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:25 |
| S19 | 105 | 725/32-36.ccls. and (merchant retail (movie adj (theater theatre)) cinema) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:07 |
| S20 | 79 | 725/32-36.ccls. and (merchant (retail adj store) (movie adj (theater theatre)) cinema) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:26 |
| S21 | 50 | 725/32-36.ccls. and ((retail adj store) (movie adj (theater theatre)) cinema) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:27 |

| S22 | 3 | 705/15.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
|---|---|---|---|---|---|---|
| S23 | 6 | 705/15.ccls. and (store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
| S24 | 6 | 705/15.ccls. and (public store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
| S25 | 14 | 705/15.ccls. and (public store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) with (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
| S26 | 1213 | 705/14.ccls. and (public store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) with (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:10 |
| S27 | 276 | 705/14.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:10 |
| S28 | 45 | 705/14.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (download$5 and (request$5 select$5))) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:17 |
| S29 | 1 | 725/14.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (download$5 and (request$5 select$5))) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:17 |
| S30 | 4 | 725/32.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (download$5 and (request$5 select$5))) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:18 |
| S31 | 24 | 725/32.ccls. and ((headend operator distributor broadcaster broadcastor) with (request$5 select$5) with (ad advertis$5 trailer teaser preview sample)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:21 |

| S32 | 31 | 725/34-36.ccls. and ((headend operator distributor broadcaster broadcastor) with (request$5 select$5) with (ad advertis$5 trailer teaser preview sample)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:21 |
|---|---|---|---|---|---|---|
| S33 | 126 | (movie adj (theatre theater)) with (advertis$5) | US-PGPUB; USPAT | OR | ON | 2005/11/16 16:36 |
| S34 | 128 | (movie adj (theatre theater)) with (advertis$5 marketing) | US-PGPUB; USPAT | OR | ON | 2005/11/16 16:36 |
| S35 | 156 | 725/36.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:41 |
| S36 | 93 | 725/36.ccls. and ((request$5 select$5) with (advertis$5 commercial$5 trailer ad teaser preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:42 |
| S37 | 48 | 725/36.ccls. and ((request$5) with (advertis$5 commercial$5 trailer ad teaser preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:42 |
| S38 | 32 | 725/36.ccls. and ((request$5) with (advertis$5 commercial$5 trailer ad teaser preview)) and server | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:52 |
| S39 | 156 | 725/36.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:52 |
| S40 | 1 | 725/36.ccls. and kiosk | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:53 |
| S41 | 15 | 725/36.ccls. and ((movie adj (theater theatre)) cinema retail) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:07 |
| S42 | 13 | "725"/$7.ccls. and ((producer owner) with (trailer preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:11 |
| S43 | 5 | "705"/14.ccls. and ((producer owner) with (trailer preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:12 |
| S44 | 10 | ((movie near2 (producer owner)) with (trailer preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:12 |
| S45 | 19 | ((movie near2 (producer owner)) with (trailer preview ad advertis$5 teaser)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:31 |
| S46 | 4 | (movie near2(theatre theater cinema)) and (trailer preview ad ads advertis$6) | EPO; JPO | OR | ON | 2005/11/17 14:22 |
| S47 | 4 | (movie near2 (theatre theater cinema)) and (trailer preview ad ads advertis$6) | EPO; JPO | OR | ON | 2005/11/17 14:23 |
| S48 | 97 | (movie near2 (theatre theater cinema)) | EPO; JPO | OR | ON | 2005/11/17 14:23 |
| S49 | 465 | (movie near2 (theatre theater)) cinema | EPO; JPO | OR | ON | 2005/11/17 14:23 |

| S50 | 22 | ((movie near2 (theatre theater)) cinema) and (trailer preview teaser ad advertis$5) | EPO; JPO | OR | ON | 2005/11/17 14:23 |
| S51 | 43 | ((movie with (producer owner)) with (trailer preview ad advertis$5 teaser)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 15:58 |
| S52 | 1 | "6038545".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/17 16:14 |
| S53 | 1 | "5918213".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/17 16:14 |
| S54 | 28 | (US-20010054180-$ or US-20020023274-$ or US-20020059611-$ or US-20020162113-$ or US-20030088463-$ or US-20010054001-$ or US-20040093608-$ or US-20040078269-$ or US-20040078268-$ or US-20020094787-$ or US-20020069107-$ or US-20010052841-$ or US-20030225641-$).did. or (US-4630108-$ or US-5392066-$ or US-5761601-$ or US-5801754-$ or US-5892535-$ or US-5909638-$ or US-5924013-$ or US-6038545-$ or US-6141530-$ or US-6633982-$ or US-6925444-$ or US-6698020-$ or US-6502242-$ or US-5412416-$ or US-6133908-$).did. | US-PGPUB; USPAT | OR | ON | 2005/11/17 16:54 |
| S55 | 7 | S54 and (ticket with sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 11:39 |
| S56 | 244 | 725/34-35.ccls. and ((request$5 download$5 select$5) with (advertis$5 ad trailer teaser preview commercials)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 11:40 |
| S57 | 39 | 725/34-35.ccls. and ((request$5 download$5 select$5) with (advertis$5 ad trailer teaser preview commercials)) and (theater retail) | US-PGPUB; USPAT | OR | ON | 2005/11/18 11:44 |
| S58 | 1 | "5794210".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/18 13:35 |



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

545          7590          11/28/2005

ROGER PITT
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 LEXINGTON AVENUE
33RD FLOOR
NEW YORK, NY  10022-6030

| EXAMINER |
|---|
| MA, JOHNNY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2617 | |

DATE MAILED: 11/28/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit |
| | Johnny Ma | 2617 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>09 September 2005</u>.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) *1-23* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-23* is/are rejected.

7)☒ Claim(s) *7* is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

Application/Control Number: 09/840,283                                          Page 2
Art Unit: 2617

# DETAILED ACTION

## *Response to Arguments*

1.     Applicant's arguments with respect to claims 1-9 and 12-22 have been considered

but are moot in view of the new ground(s) of rejection.

Applicant's arguments with respect to claims 10, 11, and 23 have been fully considered

but they are not persuasive. Regarding claim 10, Applicant argues "claim 10, specifically

recites projection of the movie for display to an audience in a theater."  However, the

previous Office Action discussed this limitation, "projecting said digital format using a

digital projector onto a screen for display to an audience (See Abecassis fig. 9 unit 959

Projector and col. 33 lines 29-39 "In commercial applications, such as a theater, a RAViT

936 may support a high definition projector 959 such as for example Hughes/JVC

Electronic HDTV projector." Figure 9 unit 959 clearly shows projecting a video on a

digital projector onto a screen for display to an audience" (Prior Office Action,  page 20).

Furthermore, claims 11 and 23 do not appear to be discussed in Applicant's arguments.

Applicant provides arguments regarding marketing materials.  However, the examiner

respectfully submits that claim 11, as claimed, does not recite such a limitation.  With

respect to claim 23, the claim recites "a third memory domain for receiving market data

in response to an order for said multimedia product."  The examiner respectfully submits

that this limitation does not require that the advertising material be used to market the

movie being marketed nor the provision of marketing data to potential exhibitors as

argued by the Applicant.  Rather the examiner respectfully submits that the market data is

met by that discussed in the previous rejection of claim 23, discussing the storing

Application/Control Number: 09/840,283                                Page 3
Art Unit: 2617

important market data (such as vital customer information) in response to an order for a

multimedia product.

### *Claim Rejections - 35 USC § 112*

2.      The following is a quotation of the second paragraph of 35 U.S.C. 112:

   The specification shall conclude with one or more claims particularly pointing out and distinctly
   claiming the subject matter which the applicant regards as his invention.

3.      Claims 3, 12, and 14 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter

which applicant regards as the invention.

        Regarding claims 3 and 14, the phrase "such as" renders the claim indefinite

because it is unclear whether the limitations following the phrase are part of the claimed

invention.  See MPEP § 2173.05(d).  However, for the purpose of examination, the

examiner will interpret "such as celluloid media, printed media, video cassettes, and

audio tape" to read "selected from the group consisting of celluloid media, printed media,

video cassettes, and audio tape."

        Claim 12 recites the limitation "calculate an amount owed by said customer for

<u>said product</u>" in lines 13-14.  There is insufficient antecedent basis for this limitation in

the claim.  However, for the purpose of examination, the examiner interprets "said

product" to read "said multimedia material."

### *Claim Objections*

4.      Claim 7 is objected to because of the following informalities:  "on said <u>sever</u>

system" should read "on said <u>server</u> system."  Appropriate correction is required.

### *Claim Rejections - 35 USC § 102*

Application/Control Number: 09/840,283                                          Page 4

Art Unit: 2617

> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

5.      Claim 11 is rejected under 35 U.S.C. 102(b) as being anticipated by Abecassis

(U.S. Patent # 6,038,367).

As for Claim 11, Abecassis teaches a system for distributing multimedia (see fig.

9 units 913 video provider system and unit 936 RAViT, col. 32 lines 22-38 "A video

provider system, for example 91 1, comprises: i) communications technologies 921 for

establishing a plurality of video and communications streams to a plurality of RAViT

931-936',") comprising:

a. a first central processing unit (see 01. 32 lines 26-31 "ii) processing hardware

and software 922 for retrieving from a RAVIT a subscriber's video preferences and

content preferences, and for automatically selecting, for each of the participating

subscribers, a content-on-demand video responsive to the video and content

preferences;"");

b. a first memory associated with said first central processing unit (see col. 32

lines 31-36 "iii) mass storage random access memory devices 923 for storing a

videobase comprising a plurality of any combination of conventional programs and

interactive games and services, variable content videos, and content-on-demand video

including the corresponding video maps;"");

c. a communications network accessible by said first central processing unit for

transferring data into and out of said first memory (It is interpreted that there is

inherently going to be a communication network between unit 922 and unit 923 to

transfer data);

Application/Control Number: 09/840,283                                                           Page 5
Art Unit: 2617

     d. an input device connected for data transfer to said first central processing unit,

said input device receiving multimedia and transferring it into said first memory via said

central processing unit (see fig. 9 unit 905 Satellite col. 32 lines 1-5 "Shown are wired

and non-wired video transmission infrastructures based on the use of one or a hybrid

combination of the following: fiber optic 901, coaxial cable 902, twisted copper wire 903,

microwave and radio 904, and satellite 905." Satellite 905 is interpreted to be an input

device connected for data transfer to said first central processing unit);

     e. a second central processing unit (see fig. 9 unit 936 RAViT and fig. 5 unit 511

System CPU. System CPU 511 is interpreted to be the second central processing unit);

     f. a second memory, said second memory associated with said second central

processing unit with said communications network being accessible by said second

central processing unit for transferring data into and out of said second memory (see fig.

5 unit 512 Memory, col. 20 lines 44-48 "RAVIT further comprises computing elements

and video processing elements readily found in multimedia devices and video electronic

systems such as, for example and not limited thereto: i) microprocessor 51 1., ii) memory

units 512', iii) video processor 513', and iv) video buffers 514."); and

     g. a digital feature film projector in data communication with said second central

processing unit for displaying a feature film onto a screen for presentation to an

audience, said feature film stored in digital form in said second memory after being

transferred via said communications network from said first memory (see fig. 9 unit 959

projector, col. 33 lines 29-40 "In commercial applications, such as a theater, a RAViT

936 may support a high definition projector 959 such as for example Hughes/JVC

Electronic HDTV projector."  It is interpreted that the data that is initially stored in the

Application/Control Number: 09/840,283                                      Page 6
Art Unit: 2617

server provider is transmitted via a communication network to the second processing unit

of the RAViT, which is stored in a second memory of RAViT and eventually transmitted

to projector 959 for display to an audience).

### *Claim Rejections - 35 USC § 103*

6.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

7.      Claims 1-7 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter

(US 2002/0162113 A1) in further view of Guido et al. (US 5,924,013), Bernard et al. (US

5,918,213), and Mandeberg et al. (US 6,038,545).

        As to claim 1, note the Hunter reference that discloses a system permitting the

display of video or still image content on selected displays of an electronic display

network according to customer dictates.  Note the Hunter reference discloses "[f]ollowing

scheduling and purchasing, the customer-ordered movie is transmitted to a server 300

associated with the customer's movie theater" (Hunter [0060]).  The claimed "receiving

multimedia material from a producer or owner of said material" is met by input module

470 "also serving to transmit movies in digital form to movie theaters having a server

100M and electronic movie display devices 30" (Hunter [0070]) wherein the movies

originate from a movie producer or content owner (Hunter [0063]).  Also note the Hunter

reference discloses "input module 470 transmits advertising content to displays 30…"

(Hunter [0070]).  However, the Hunter reference does not specifically disclose that the

input module 470 is a server.  Now note the Guido et al. reference that discloses a method

Application/Control Number: 09/840,283                                    Page 7
Art Unit: 2617

and apparatus for transmitting motion picture cinematic information for viewing in movie

theaters and ordering method thereof. The claimed "storing said material on a computer

readable storage medium" is met by central site 2 includes a digital storage unit 14 for

storing movies (Guido 3:37-62). The claimed "providing a server system accessible over

a communication network" is met by "[t]o order a movie, the second computer 40

initiates communication with the first computer 12 at the central site 2 via a

communication network 50, preferably a public or private telephone network" (Guido

4:36-38). The claimed "said server system accessing data from said computer readable

storage medium for transfer over said communication network" is met by the

transmission of the movie from central site to second computer wherein it is inherent that

the stored movie be read from digital storage for transmission (Guido 3:49-62; 54-5:33).

Therefore, the examiner submits that it would have been obvious to one of ordinary skill

in the art at the time the invention was made to modify the Hunter input module 470 for

providing movies and advertising to a movie theater with the Guido et al. server for

providing content for the purpose of providing a well known mechanism for providing

requested content to a requesting entity. Further note, the Hunter reference discloses

"[f]ollowing access, the customer reviews options concerning his order by reviewing the

available movies through a review Available Movies and Purchase module 260 that

permits the customer to see what movies are available" (Hunter [0060]). However, the

Hunter reference is silent as to providing samples. Now note the Bernard et al. reference

that discloses a system and method for automated remote previewing and purchasing of

music, video, software, and other multimedia products. The claimed "providing samples

over said server system of said multimedia material to potential purchasers" is met by

"where the product is movies, the purchaser can select a particular movie to preview

before actually purchasing or renting the movie.  In this scenario, a sample portion of the

movie, or an actual preview, is provided to the customer for his or her sampling"

(Bernard 3:30-36).  Therefore, the examiner submits that it would have been obvious to

one of ordinary skill in the art at the time the invention was made to modify the Hunter

reviewing of available movies with the Bernard et al. previewing of movies so "users can

sample portions of selected title to determine whether or not it is a product they would

actually like to...purchase" (Bernard 3:23-29).  The claimed "downloading upon request

over said server system said multimedia material" is met by the Hunter and Guido et al.

combination as discussed above wherein "[f]ollowing scheduling and purchasing, the

customer-ordered movie is transmitted to a server 300 associated with the customer's

movie theater" (Hunter [0061]).  The claimed "providing advertising material to

purchasers over said communication network" is met by "FIG. 4 illustrates another

system 420 including a network connecting both electronic displays 30 intended for

advertising in high traffic areas and electronic movie display devices 230 intended for use

as movie 'screens' in digital movie theaters.  According to this embodiment of the

invention, input module 470 transmits advertising content to displays 30 in the manner

described above in connection with the embodiment of FIG. 1, while also serving to

transmit movies in digital form to movie theaters having a server"  (Hunter [0070]).

Note the Hunter reference discloses "commercial advertisers, such as consumer product

companies and the advertising agents that represent them, directly access a network of

multiple, large, high resolution electronic displays located in high traffic areas and

directly send their own advertisement electronically to the network to be displayed at

Application/Control Number: 09/840,283                                    Page 9
Art Unit: 2617

locations and times selected by the advertisers" (Hunter [0012]) wherein "[t]he displays

may be located in...movie theaters" (Hunter [0021]).  However, the Hunter reference

does not specifically disclose that the advertisements are associated with the multimedia

material.  Now note the Mandeberg et al. reference that discloses system, methods and

computer program products for generating digital multimedia store displays and menu

boards.  The claimed advertising material "allowing purchasers to locally market and sell

said multimedia material" and "said purchaser publishing said advertising material" is

met by "[p]romotional applications may include in-store marketing efforts which are

targeted to motivate desired consumer behavior by increasing consumer awareness.  For

example, digital multimedia presentations may highlight product availability or specific

in-store incentives to motivate product purchase" (Mandeberg 5:12-27) wherein "[s]tores

may include...movie theaters" (Mandeberg 1:18-21) and "customization may take place

at the individual store" (Mandeberg 2:30-48).  Therefore, the examiner submits that it

would have been obvious to one of ordinary skill in the art at the time the invention was

made to modify the Hunter advertising in movie theaters with the Mandeberg et al.

advertising of store specific products for the purpose of raising consumer awareness

about movies currently being presented at the movie theater and motivate consumption.

The claimed "said purchaser being an exhibitor exhibiting said multimedia material in a

public theater to a number of individuals" is met by "[a] customer of system 220, a

responsible party representing the movie theater and referred to herein as a movie theater

operator, may access a central information processing station of the system...that permits

the customer to see what movies are available, and thereafter schedule and purchase a

movie for display utilizing one or more of the customer's electronic movie display

Application/Control Number: 09/840,283                                      Page 10
Art Unit: 2617

devices 230" (Hunter [0060]). However, the Hunter reference does not specifically

disclose "in exchange for a paid admission or a broadcast exhibitor." Nevertheless, the

examiner gives Official Notice that it is notoriously well known in the art for patrons to

pay an admission fee to attend presentations at a movie theater so that a movie theater

may generate revenue and thus continue to provide screening services to patrons.

Therefore, the examiner submits that it would have been obvious to one of ordinary skill

in the art at the time the invention was made to modify the Hunter movie theater

presentation accordingly for the above stated advantages.

    As to claim 2, please see rejection of claim 1.

    As to claim 3, the claimed "wherein receiving multimedia material includes

receiving non-digital media [selected from the group consisting of celluloid media,

printed media, video cassettes, and audio tape]." Note, the Hunter reference discloses

"[t]he movie theater operator is a customer of a system that permits the customer to

review movies that are available in digital form and thereafter schedule and purchase a

movie for display on the digital movie screens located at the customer's theater" (Hunter

[0013]). However, the Hunter reference is silent as to the medium over which such

multimedia material is received. Now note the Guido et al. reference that discloses

"wherein receiving multimedia material includes receiving non-digital media [selected

from the group consisting of celluloid media, printed media, video cassettes, and audio

tape]" wherein "[t]he central site includes a converter 8 which converts each frame of

cinemagraphic movie film into a corresponding collection of digital data" (Guido 3:41-

43) for storage (Guido 3:41-62; 6:1-3). Therefore, the examiner submits that it would

have been obvious to one of ordinary skill in the art at the time the invention was made to

Application/Control Number: 09/840,283                                    Page 11
Art Unit: 2617

modify the Hunter available movies from a central location with the Guido et al. receipt

and processing of celluloid media for the purpose of providing a medium for transferring

multimedia material to the central location for purchase by movie theater operators.

As to claim 4, the claimed "including the step of digitizing said non-digital media

for storage on said computer readable storage medium" is met by that discussed in the

rejection of claim 3.

As to claim 5, the claimed "including providing a server system accessible over a

public communication system" is met by that discussed in the rejection of claim 1

wherein the Guido et al. reference discloses server access over a public or private

telephone network" (Guido 4:36-38).

As to claim 6, the claimed "including downloading digital material from said

server system for digital display to an audience" is met by "means for transmitting digital

movie content to the movie theaters...The server (storage device) at each movie theater is

programmed at the time the theater owner places an order for a movie to receive and store

the particular movie when it is transmitted so that it can be available for screening at the

theater at the desired time" (Hunter [0062]).

As to claim 7, the claimed "including providing downloadable advertising

materials on said [server] system" is met by the Hunter and Guido et al. combination as

discussed in the rejection of claim 1, wherein advertising content is transmitted to the

movie theater (Hunter [0021,0023]).

8.    Claims 8 and 9 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Hunter (US 2002/0162113 A1) in further view of Guido et al. (US 5,924,013), Bernard et

Application/Control Number: 09/840,283                                      Page 12
Art Unit: 2617

al. (US 5,918,213), Mandeberg et al. (US 6,038,545), Sprogis (US 2004/0093608 A1),
and Vinson et al. (US 2003/0172374 A1).

As to claim 8, the claimed "further comprising collecting [...] information from
exhibitor recipients of said multimedia material" is met by "[t]he operating system
preferably has a modem that may be queried by the system's billing system on a periodic
basis to bill the account" (Hunter [0063]) "[t]he system may also include means for
generating royalty payment information for use in paying the content providers for the
display of their movies" (Hunter [0013]). However, the Hunter reference does not
specifically disclose that the collected information comprises sales information. Now
note the Werner reference Sprogis reference that discloses collecting box office sales
information to calculate audience exposure and for billing purposes (Sprogis [0029]).
Therefore, the examiner submits that it would have been obvious to one of ordinary skill
in the art at the time the invention was made to modify the Hunter collecting of
information for billing with the Sprogis collection of ticket sales for the purpose
providing accurate royalty payments to producers based on actual consumer
consumption. Further note, the Hunter reference discloses "[i]nformation from
verification archives module 150 is utilized by a demographic analysis module 170 to
generate information for reports to be sent to customers after their advertisements have
run" (Hunter [0036]). The Hunter and Sprogis combination teaches maintaining sales
information. However, the Hunter reference is silent as to "and providing sales and
marketing data based upon information from said users of said server system." Now note
the Vinson et al. reference that discloses providing viewing behaviors data to users upon
request (Vinson [0018,0089]). Therefore, the examiner submits that it would have been

Application/Control Number: 09/840,283                                          Page 13
Art Unit: 2617

obvious to one of ordinary skill in the art at the time the invention was made to modify

the Hunter and Sprogis sales data with the Vinson et al. reporting of viewing behaviors

data for the purpose of providing the movie theater operator marketing information in

which to make better business decisions regarding the scheduling and selection of motion

pictures to present.

As to claim 9, the claimed "including providing marketing data based upon actual

users of said server system" is met by that discussed in the rejection of claim 8.

9.      Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Abecassis

(U.S. Patent # 6,038,367) in view of Sood (U.S. Patent # 6,233,523).

As for Claim 10, Abecassis teaches a method of distributing movies (see

Abecassis col. 2 lines 30-36 "it is an object of the systems and methods herein disclosed

to deliver to a viewer an automatically customized version of a single edition of the

viewer-selected video responsive to the viewer's content preferences for the level of detail

and explicitness in a range of content categories.") comprising:

c. transferring a digital format to a theater via a communications network and

storing said digital format on a computer readable memory located at said theater (see

Abecassis fig. 5 unit 500 RAViT and unit 503, 504, and 505 storage systems and col. 18

lines 41-67 "The viewer interface above detailed resides in a viewer's Random Access

Video Technologies device ("RAViT"). A RAMT permits the viewer to retrieve content-

on-demand videos and other services from media locally accessible or within the RAViT,

or from a remote video services provider . . . A fully featured RAViT 500 comprises . . .

iii) fixed storage sub-system 503, iv) removable storage sub-system 504, v) compact

portable storage sub-system 505;"RAViT is interpreted to be a theater that receives

Application/Control Number: 09/840,283                                    Page 14
Art Unit: 2617

digital movies for projection to users. Storage systems 503-505 are interpreted to be

storage systems for the theater; and

     d. projecting said digital format using a digital projector onto a screen for display

to an audience (see Abecassis fig. 9 unit 959 Projector and col. 33 lines 29-39 "In

commercial applications, such as a theater, a RAMT 936 may support a high definition

projector 959 such as for example Hughes/JVC Electronic HDTV projector." Figure 9

unit 959 clearly shows projecting a video on a digital projector onto a screen for display

to an audience). However, Abecassis does not expressly teach:

     a. receiving a movie on celluloid; and

     b. scanning said movie converting it into a digital format, storing said digital

     format in a computer readable memory.

     In the same field of endeavor, Sood teaches a method for converting data on a

celluloid into a digital format. See Sood col. 3 lines 40-45 "Film cameras or still cameras

may be used. Although conventional cameras based on celluloid film may be used in

principle, the products of which are digitized at a later point of time, digital video

Cameras are Preferred for two reasons.  Firstly, it is more beneficial to take digital

pictures directly and secondly, their data carriers may be reused for other trips" In light of

the teaching of Sood, it would have been obvious to one of ordinary skill in the art to

modify the teaching of Abecassis to include receiving a movie in celluloid and converting

the data into a digital format to store in a computer readable memory. One of ordinary

skill in the art at the time the invention was made would have been motivated to do this in

order to transmit a movie that is originally captured on a celluloid to the RAMT theater

system of Abecassis in a customized and edited version (see Abecassis col. 2 lines 30-36

Application/Control Number: 09/840,283                                    Page 15
Art Unit: 2617

"it is an object of the systems and methods herein disclosed to deliver to a viewer an
automatically customized version of a single edition of the viewer-selected video
responsive to the viewer's content preferences for the level of detail and explicitness in a
range of content categories."）

10.    Claims 12-18 are rejected under 35 U.S.C. 103(a) as being unpatentable over
Hunter (US 2002/0162113 A1) in further view of Guido et al. (US 5,924,013), and
Mandeberg et al. (US 6,038,545).

As to claim 12, note the Hunter reference that discloses a system permitting the
display of video or still image content on selected displays of an electronic display
network according to customer dictates.  Note the Hunter reference discloses "[f]ollowing
scheduling and purchasing, the customer-ordered movie is transmitted to a server 300
associated with the customer's movie theater" (Hunter [0060]).  The claimed  "receiving
multimedia material from a producer or owner of said material"  is met by input module
470 "also serving to transmit movies in digital form to movie theaters having a server
100M and electronic movie display devices 30" (Hunter [0070]) wherein the movies
originate from a movie producer or content owner (Hunter [0063]).  Further note, the
Hunter reference discloses "[a]ccording to this embodiment of the invention, input
module 470 transmits advertising content to displays 30..while also serving to transmit
movies" (Hunter [0070]) wherein "the customer transmits the advertising content…for
receipt by the system's Video & Still Image Review and Input module 70" (Hunter
[0022]) and "[t]he video & still image review and input module 70 permits a system
security employee to conduct a content review…prior to the content being read to the
server 100 associated with each display 30 where the content being transmitted to the

server 100 will be displayed" (Hunter [0023]). However, the Hunter reference does not specifically disclose that the input module 470 is a server. Now note the Guido et al. reference that discloses a method and apparatus for transmitting motion picture cinematic information for viewing in movie theaters and ordering method thereof. The claimed storing material on a computer readable storage medium is met by central site 2 includes a digital storage unit 14 for storing movies (Guido 3:37-62). The claimed "providing a server system accessible over a communication network" is met by "[t]o order a movie, the second computer 40 initiates communication with the first computer 12 at the central site 2 via a communication network 50" (Guido 4:36-38). The claimed said server system accessing data from said computer readable storage medium for transfer over said communication network is met by the transmission of the movie from central site to second computer wherein it is inherent that the stored movie be read from digital storage for transmission (Guido 3:49-62; 54-5:33). Therefore, the examiner submits that it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the Hunter input module 470 for providing movies and advertising to a movie theater with the Guido et al. server for providing movie and advertising material for the purpose of providing a well known mechanism for providing content to a requesting entity. The claimed "said server system accessing said advertising material from said computer readable storage medium for transfer over said communication network" is met by the Hunter and Guido et al. combination as discussed above wherein advertisements are provided to the movie theater via a server. Note, the Hunter and Guido et al. combination discloses storing advertising material on a computer readable storage, as discussed above. Furthermore, the Hunter reference discloses "commercial advertisers,

Application/Control Number: 09/840,283                                                  Page 17
Art Unit: 2617

such as consumer product companies and the advertising agents that represent them,

directly access a network of multiple, large, high resolution electronic displays located in

high traffic areas and directly send their own advertisement electronically to the network

to be displayed at locations and times selected by the advertisers" (Hunter [0012])

wherein "[t]he displays may be located in...movie theaters" (Hunter [0021]). However,

the Hunter reference does not specifically disclose that the advertisements are associated

with the multimedia material. Now note the Mandeberg et al. reference that discloses

system, methods and computer program products for generating digital multimedia store

displays and menu boards. The claimed "advertising material associated with said

material is met by "[p]romotional applications may include in-store marketing efforts

which are targeted to motivate desired consumer behavior by increasing consumer

awareness. For example, digital multimedia presentations may highlight product

availability or specific in-store incentives to motivate product purchase" (Mandeberg

5:12-27) wherein "[s]tores may include...movie theaters" (Mandeberg 1:18-21) and

"customization may take place at the individual store" (Mandeberg 2:30-48). Therefore,

the examiner submits that it would have been obvious to one of ordinary skill in the art at

the time the invention was made to modify the Hunter and Guido et al. advertising in

movie theaters with the Mandeberg et al. advertising of store specific products for the

purpose of raising consumer awareness about movies currently being presented at the

movie theater and motivate consumption. The claimed "establishing an account for a

broadcast or live theater exhibitor" is met by "[t]he customer interface web server has a

commerce engine and permits the customer to obtain and enter security code and billing

code information into a Network Security Router/Access module 50...Following

Application/Control Number: 09/840,283                                           Page 18
Art Unit: 2617

access…" (Hunter [0060]).  The claimed "providing said multimedia material to said
exhibitor" is met by "[f]ollowing scheduling and purchasing, the customer-ordered movie
is transmitted to a server 300 associated with the customer's movie theater" (Hunter
[0061]).  The claimed "downloading said advertising material […] over said server
system" is met by the Hunter, Guido et al., and Mandeberg et al. combination as
discussed above wherein "the [advertising] content being read to the server 100
associated with each display 30 where the content being transmitted to the server 100 will
be displayed" (Hunter [0023]).  However, the Hunter et al. reference does not specifically
disclose "[downloading said advertising material] upon request from said customer for
said advertising material."  Returning to the Mandeberg et al. reference, it is noted that
"[t]he control and monitoring station 108 accesses the presentation database 104 to
identify the digital multimedia presentation which are available for distribution when an
operator creates a distribution package" (Mandeberg 9:49-52).  The Mandeberg et al.
reference further teaches "[downloading said advertising material] upon request form said
customer for said advertising material" wherein "[t]he actions taken by a store manager
using the control and monitoring station (on-site) 116 may result in communication with
either a store administration server (Central) 112 or a store administration server (On-
site) 120.  The store administration server (Central) 112 communicates site administration
input to the distribution server 106 where that input may affect presentation distribution
or presentation configuration prior to distribution" (Mandeberg 13:56-63),
"[p]resentations typically run without requiring any in-store personnel action, but may
include selection, scheduling, or configuration options which allow on-site personnel to
customize the presentations.  Therefore, the examiner submits that it would have been

Application/Control Number: 09/840,283                                    Page 19
Art Unit: 2617

obvious to one of ordinary skill in the art at the time the invention was made to further

modify the Hunter et al. and Guido et al. advertising material distribution system with the

Mandeberg et al. selection of advertisements for presentation for the purpose of allowing

on-site personnel to customize the presentations (Mandeberg 15:41-44) and thus the

capability to target specific advertisements to consumers to increase revenue.  The

claimed "following up to determine information necessary to calculate an amount owed

by said customer for said product"  and "charging the account of said exhibitor with the

amount owed" are met by "[t]he operating system preferably has a modem that may be

queried by the system's billing system on a periodic basis to bill the account" (Hunter

[0063]) wherein "[t]he system may also include means for generating royalty payment

information for use in paying the content providers for the display of their movies"

(Hunter [0013]).

As to claim 13, the claimed "including receiving multimedia material by

downloading via said communication network" is met by that discussed in the rejection

of claim 12.

As to claim 14, the claimed "wherein receiving multimedia material includes

receiving non-digital media [selected from the group consisting of celluloid media,

printed media, video cassettes, and audio tape]."   Note, the Hunter reference discloses

"[t]he movie theater operator is a customer of a system that permits the customer to

review movies that are available in digital form and thereafter schedule and purchase a

movie for display on the digital movie screens located at the customer's theater" (Hunter

[0013]).  However, the Hunter reference is silent as to the medium over which such

multimedia material is received.  Now note the Guido et al. reference that discloses

"wherein receiving multimedia material includes receiving non-digital media [selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape]" wherein "[t]he central site  includes a converter 8 which converts each frame of cinemagraphic movie film into a corresponding collection of digital data" (Guido 3:41-43) for storage (Guido 3:41-62; 6:1-3).  Therefore, the examiner submits that it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the Hunter available movies from a central location with the Guido et al. receipt and processing of celluloid media for the purpose of providing a medium for transferring multimedia material to the central location for purchase by movie theater operators.  The claimed "and wherein said multimedia material is provided to said exhibitor using an electronic communications network" is met by that discussed in the rejection of claim 12.

As to claim 15, the claimed "wherein said follow-up is implemented by sending an e-mail to said exhibitor."  Hunter does not expressly teach said follow-up is implemented by sending an e-mail to said customer.  However, Official Notice (MPEP § 2144.03) is taken that both the concepts and advantages of using e-mail in business transaction are well known and expected in the art.  At the time the invention was made, it would have been obvious to one with ordinary skill in the art to have used email to follow up with the customer because email is a fast and cost effective method of communication when Internet service is available.

As to claim 16, the claimed "wherein said follow-up is implemented by consulting publicly reported data respecting said exhibitor.  The Hunter reference does not expressly teach said follow-up is implemented by consulting publicly reported data respecting said customer.  However, Official Notice (MPEP § 2144.03) is taken that both

Application/Control Number: 09/840,283                                   Page 21
Art Unit: 2617

the concepts and advantages of using publicly reported data are well known and expected

in the art.  At the time the invention was made, it would have been obvious to one with

ordinary skill in the art to have implemented a follow up by consulting publicly reported

data respecting said customer's publicly listed telephone number or address publicly

reported data (such as a listed phone number or mailing address) are reliable means of

communication in a business transaction.

As to claim 17, the claimed "further comprising providing advertising material to

purchasers over said communication network" is met by that discussed in the rejection of

claim 12 wherein advertising is provided via a server.  The claimed "and exhibitors to

locally market and sell said multimedia material" is met by Hunter et al., Guido et al.,

Mandeberg et al. combination wherein advertisements are displayed in movie theaters

(Hunter [0021,0023]).

As to claim 18, the claimed "further comprising querying said exhibitor to

stimulate the sending of data from said exhibitor" is met by "[t]he operating system

preferably has a modem that may be queried by the system's billing system on a periodic

basis to bill the account" (Hunter [0063]).  However, the Hunter reference does not

specifically disclose recording said data into a database.  Nevertheless, the examiner

gives Official Notice that it is notoriously well known in the art to store billing

information in a database for the purpose of record keeping and to maintain the data in a

readily accessible manner to generate bills to clients.  Therefore, the examiner submits

that it would have been obvious to one of ordinary skill in the art at the time the invention

was made to modify the Hunter billing collection accordingly for the above stated

advantages.

Application/Control Number: 09/840,283                                          Page 22
Art Unit: 2617

11.    Claims 19-20 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Hunter (US 2002/0162113 A1) in further view of Guido et al. (US 5,924,013),

Mandeberg et al. (US 6,038,545), Sprogis (US 2004/0093608 A1), and Vinson et al. (US

2003/0172374 A1).

        As to claim 19, the claimed "comprising providing marketing data recorded in

said database to customers in response to a query from a exhibitor." The Hunter

reference discloses "[t]he operating system preferably has a modem that may be queried

by the system's billing system on a periodic basis to bill the account" (Hunter [0063])

"[t]he system may also include means for generating royalty payment information for use

in paying the content providers for the display of their movies" (Hunter [0013]).

However, the Hunter reference does not specifically disclose that the collected

information comprises sales information. Now note the Werner reference Sprogis

reference that discloses collecting box office sales information to calculate audience

exposure and for billing purposes (Sprogis [0029]). Therefore, the examiner submits that

it would have been obvious to one of ordinary skill in the art at the time the invention was

made to modify the Hunter collecting of information for billing with the Sprogis

collection of ticket sales for the purpose providing accurate royalty payments to

producers based on actual consumer consumption. Further note, the Hunter reference

discloses "[i]nformation from verification archives module 150 is utilized by a

demographic analysis module 170 to generate information for reports to be sent to

customers after their advertisements have run" (Hunter [0036]). The Hunter and Sprogis

combination teaches maintaining sales information. However, the Hunter reference is

silent as to "comprising providing marketing data recorded in said database to customers

Application/Control Number: 09/840,283                                    Page 23
Art Unit: 2617

in response to a query from a exhibitor." Now note the Vinson et al. reference that

discloses providing viewing behaviors data to users upon request (Vinson [0018,0089]).

Therefore, the examiner submits that it would have been obvious to one of ordinary skill

in the art at the time the invention was made to modify the Hunter and Sprogis sales data

with the Vinson et al. reporting of viewing behaviors data for the purpose of providing

the movie theater operator marketing information in which to make better business

decisions regarding the scheduling and selection of motion pictures to present.

As to claim 20, the claimed "including providing marketing data based upon

actual users of said server system," please see rejection of claim 19.

12.    Claim 21 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter

(US 2002/0162113 A1) in further view of Guido et al. (US 5,924,013), Bernard et al. (US

5,918,213), Mandeberg et al. (US 6,038,545), and Sprogis (US 2004/0093608 A1).

As to claim 21, note the Hunter reference that discloses a system permitting the

display of video or still image content on selected displays of an electronic display

network according to customer dictates. The claimed "receiving multimedia material

from a producer or owner of said material" is met by input module 470 "also serving to

transmit movies in digital form to movie theaters having a server 100M and electronic

movie display devices 30" (Hunter [0070]) wherein the movies originate from a movie

producer or content owner (Hunter [0063]). However, the Hunter reference does not

specifically disclose that the input module 470 is a server. Now note the Guido et al.

reference that discloses a method and apparatus for transmitting motion picture cinematic

information for viewing in movie theaters and ordering method thereof. The claimed

"storing said material on a computer readable storage medium" is met by central site 2

Application/Control Number: 09/840,283                                    Page 24
Art Unit: 2617

includes a digital storage unit 14 for storing movies (Guido 3:37-62). The claimed

"providing a server system accessible over a communication network" is met by "[t]o

order a movie, the second computer 40 initiates communication with the first computer

12 at the central site 2 via a communication network 50" (Guido 4:36-38). The claimed

"said server system accessing data form said computer readable storage medium for

transfer over said communication network" is met by the transmission of the movie from

central site to second computer wherein it is inherent that the stored movie be read from

digital storage for transmission (Guido 3:49-62; 54-5:33). Therefore, the examiner

submits that it would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the Hunter input module 470 for providing movies to a

movie theater with the Guido et al. server for providing movies for the purpose of

providing a well known mechanism for providing requested content to a requesting

entity. Further note, the Hunter reference discloses "[f]ollowing access, the customer

reviews options concerning his order by reviewing the available movies through a review

Available Movies and Purchase module 260 that permits the customer to see what movies

are available" (Hunter [0060]). However, the Hunter reference is silent as to providing

samples. Now note the Bernard et al. reference that discloses a system and method for

automated remote previewing and purchasing of music, video, software, and other

multimedia products. The claimed "providing samples over said server system of said

multimedia material to potential purchasers" is met by "where the product is movies, the

purchaser can select a particular movie to preview before actually purchasing or renting

the movie. In this scenario, a sample portion of the movie, or an actual preview, is

provided to the customer for his or her sampling" (Bernard 3:30-36). Therefore, the

Application/Control Number: 09/840,283                                  Page 25
Art Unit: 2617

examiner submits that it would have been obvious to one of ordinary skill in the art at the

time the invention was made to modify the Hunter reviewing of available movies with the

Bernard et al. previewing of movies so "users can sample portions of selected title to

determine whether or not it is a product they would actually like to...purchase" (Bernard

3:23-29). The claimed "downloading upon request over said server system said

multimedia material" is met by the Hunter and Guido et al. combination as discussed

above wherein "[f]ollowing scheduling and purchasing, the customer-ordered movie is

transmitted to a server 300 associated with the customer's movie theater" (Hunter

[0061]). Further note, the Hunter reference discloses "[t]he system may also include

means for generating royalty payment information for use in paying the content providers

for the display of their movies" (Hunter [0013]). Note the Hunter reference discloses

"[t]he operating system preferably has a modem that may be queried by the system's

billing system on a periodic basis to bill the account" (Hunter [0063]) "[t]he system may

also include means for generating royalty payment information for use in paying the

content providers for the display of their movies" (Hunter [0013]). However, the Hunter

reference does not specifically disclose "querying said customer to stimulate the sending

of ticket sales data from said customer.". Now note the Werner reference Sprogis

reference that discloses collecting box office sales information to calculate audience

exposure and for billing purposes (Sprogis [0029]). Therefore, the examiner submits that

it would have been obvious to one of ordinary skill in the art at the time the invention was

made to modify the Hunter collecting of information for billing with the Sprogis

collection of ticket sales for the purpose providing accurate royalty payments to

producers based on actual consumer consumption. However, the Hunter reference does

Application/Control Number: 09/840,283                                          Page 26
Art Unit: 2617

not specifically disclose recording said data into a database. Nevertheless, the examiner

gives Official Notice that it is notoriously well known in the art to store billing

information in a database for the purpose of record keeping and to maintain the data in a

readily accessible manner to generate bills to clients. Therefore, the examiner submits

that it would have been obvious to one of ordinary skill in the art at the time the invention

was made to modify the Hunter billing collection accordingly for the above stated

advantages.

13.    Claim 22 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter

(US 2002/0162113 A1) in further view of Guido et al. (US 5,924,013), Bernard et al. (US

5,918,213), Mandeberg et al. (US 6,038,545), Sprogis (US 2004/0093608 A1), and

Vinson et al. (US 2003/0172374 A1).

        As to claim 22, the claimed "comprising providing marketing data recorded in

said database to customers in response to a query from a customer." Note, the Hunter

reference discloses "[i]nformation from verification archives module 150 is utilized by a

demographic analysis module 170 to generate information for reports to be sent to

customers after their advertisements have run" (Hunter [0036]). The Hunter and Sprogis

combination teaches maintaining sales information. However, the Hunter reference is

silent as to "comprising providing marketing data recorded in said database to customers

in response to a query from a customer." Now note the Vinson et al. reference that

discloses providing viewing behaviors data to users upon request (Vinson [0018,0089]).

Therefore, the examiner submits that it would have been obvious to one of ordinary skill

in the art at the time the invention was made to modify the Hunter and Sprogis sales data

with the Vinson et al. reporting of viewing behaviors data for the purpose of providing

Application/Control Number: 09/840,283                                   Page 27
Art Unit: 2617

the movie theater operator marketing information in which to make better business

decisions regarding the scheduling and selection of motion pictures to present.

14.      Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over Abecassis

(U.S. Patent #6,038,367) in view of Bernard et al. (U.S. Patent # 5,918,213).

        As for Claim 23, the limitations of Claim 23 fall within the limitations of Claim

11. Claim 23 is analyzed and rejected as previously show on Claim 11. Claim 23 further

requires the limitation of having a third memory domain for receiving market data in

response to an order for said multimedia product. Abecassis does not expressly teach

having a third memory domain for receiving market data in response to an order for said

multimedia product. However, in the same field of endeavor, Bernard et al. teach

storing market data in response to an order for a multimedia product. See Bernard et al.

col. 4 line 67 - col. 5 line 5 "The system comprises an interface unit which provides

the front-end interface to the customers, an interactive transaction database for storing

important information regarding the system and its customers, and, optionally, a

customer service center for handling special situations which may arise from time to

time with customers." In light of the teaching of Bernard et al., it would have been

obvious to one of ordinary skill in the art at the time the invention was made to have

modified the teaching of Abecassis to include a third memory domain for receiving and

storing important market data (such as vital customer information) in response to an

order for a multimedia product. One of ordinary skill in the art would have been

motivated to have a third memory domain for storing market data in order to keep a

profile on the customers so the customer's personal preference can be stored in

memory and customers do not have to enter personal information again.

Application/Control Number: 09/840,283                                    Page 28
Art Unit: 2617

## *Conclusion*

15.    Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the

advisory action.  In no event, however, will the statutory period for reply expire later than

SIX MONTHS from the date of this final action.

16.    The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

The Avnet et al. reference (US 2002/0094787 A1) discloses a method and

apparatus for transmitting information from point-to-point.

The Nemirofsky reference (US 5,412,416) discloses a video media distribution

network apparatus and method.

The Morley et al. reference (US 2002/0056081 A1) discloses an apparatus and

method for decoding digital image and audio signals.

The Atkinson reference (US 2001/0054180 A1) discloses a system and method

for synchronizing output of media in public spaces.

Application/Control Number: 09/840,283                                      Page 29
Art Unit: 2617

The Werner reference (US 2002/0069107 A1) discloses a video presentation scheduling and control method and system.

The Rabowsky reference (US 6,141,530) discloses a system and method for digital electronic cinema delivery.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Johnny Ma whose telephone number is (571) 272-7351. The examiner can normally be reached on 8:00 am - 5:00 pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Chris Kelley can be reached on (571) 272-7331. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

jm

VIVEK SRIVASTAVA
PRIMARY EXAMINER

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| *Notice of References Cited* | | 09/840,283 | STILIADIS, NICHOLAS |
| | | Examiner | Art Unit | Page 1 of 2 |
| | | Johnny Ma | 2617 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-2002/0162113 | 10-2002 | Hunter, Charles Eric | 725/87 |
| * | B | US-5,924,013 | 07-1999 | Guido et al. | 725/67 |
| * | C | US-5,918,213 | 06-1999 | Bernard et al. | 705/26 |
| * | D | US-6,038,545 | 03-2000 | Mandeberg et al. | 705/15 |
| * | E | US-2004/0093608 | 05-2004 | Sprogis, David H. | 719/327 |
| * | F | US-2003/0172374 | 09-2003 | Vinson et al. | 725/9 |
| * | G | US-6,233,523 | 05-2001 | Sood, Ralf A. | 701/213 |
| * | H | US-6,038,367 | 03-2000 | Abecassis, Max | 386/46 |
| * | I | US-2002/0094787 | 07-2002 | Avnet et al. | 455/68 |
| * | J | US-5,412,416 | 05-1995 | Nemirofsky, Frank R. | 725/36 |
| * | K | US-2002/0056081 | 05-2002 | Morley  et al. | 725/1 |
| * | L | US-2001/0054180 | 12-2001 | Atkinson, Paul D. | 725/32 |
| * | M | US-2002/0069107 | 06-2002 | Werner, William B. | 705/14 |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                     **Notice of References Cited**                     Part of Paper No. 11162005

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | Page 2 of 2 |
| | Johnny Ma | 2617 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-6,141,530 | 10-2000 | Rabowsky, Irving | 725/116 |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Johnny Ma | 2617 | |

| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Final | Original | 5/16/05 | 11/18/05 | | | | | | | Final | Original | | | | | | | | Final | Original | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | √ | | | | | | | | 51 | | | | | | | | | 101 | | | | | | | |
| | 2 | √ | √ | | | | | | | | 52 | | | | | | | | | 102 | | | | | | | |
| | 3 | √ | √ | | | | | | | | 53 | | | | | | | | | 103 | | | | | | | |
| | 4 | √ | √ | | | | | | | | 54 | | | | | | | | | 104 | | | | | | | |
| | 5 | √ | √ | | | | | | | | 55 | | | | | | | | | 105 | | | | | | | |
| | 6 | √ | √ | | | | | | | | 56 | | | | | | | | | 106 | | | | | | | |
| | 7 | √ | √ | | | | | | | | 57 | | | | | | | | | 107 | | | | | | | |
| | 8 | √ | √ | | | | | | | | 58 | | | | | | | | | 108 | | | | | | | |
| | 9 | √ | √ | | | | | | | | 59 | | | | | | | | | 109 | | | | | | | |
| | 10 | √ | √ | | | | | | | | 60 | | | | | | | | | 110 | | | | | | | |
| | 11 | √ | √ | | | | | | | | 61 | | | | | | | | | 111 | | | | | | | |
| | 12 | √ | √ | | | | | | | | 62 | | | | | | | | | 112 | | | | | | | |
| | 13 | √ | √ | | | | | | | | 63 | | | | | | | | | 113 | | | | | | | |
| | 14 | √ | √ | | | | | | | | 64 | | | | | | | | | 114 | | | | | | | |
| | 15 | √ | √ | | | | | | | | 65 | | | | | | | | | 115 | | | | | | | |
| | 16 | √ | √ | | | | | | | | 66 | | | | | | | | | 116 | | | | | | | |
| | 17 | √ | √ | | | | | | | | 67 | | | | | | | | | 117 | | | | | | | |
| | 18 | √ | √ | | | | | | | | 68 | | | | | | | | | 118 | | | | | | | |
| | 19 | √ | √ | | | | | | | | 69 | | | | | | | | | 119 | | | | | | | |
| | 20 | √ | √ | | | | | | | | 70 | | | | | | | | | 120 | | | | | | | |
| | 21 | √ | √ | | | | | | | | 71 | | | | | | | | | 121 | | | | | | | |
| | 22 | √ | √ | | | | | | | | 72 | | | | | | | | | 122 | | | | | | | |
| | 23 | √ | √ | | | | | | | | 73 | | | | | | | | | 123 | | | | | | | |
| | 24 | | | | | | | | | | 74 | | | | | | | | | 124 | | | | | | | |
| | 25 | | | | | | | | | | 75 | | | | | | | | | 125 | | | | | | | |
| | 26 | | | | | | | | | | 76 | | | | | | | | | 126 | | | | | | | |
| | 27 | | | | | | | | | | 77 | | | | | | | | | 127 | | | | | | | |
| | 28 | | | | | | | | | | 78 | | | | | | | | | 128 | | | | | | | |
| | 29 | | | | | | | | | | 79 | | | | | | | | | 129 | | | | | | | |
| | 30 | | | | | | | | | | 80 | | | | | | | | | 130 | | | | | | | |
| | 31 | | | | | | | | | | 81 | | | | | | | | | 131 | | | | | | | |
| | 32 | | | | | | | | | | 82 | | | | | | | | | 132 | | | | | | | |
| | 33 | | | | | | | | | | 83 | | | | | | | | | 133 | | | | | | | |
| | 34 | | | | | | | | | | 84 | | | | | | | | | 134 | | | | | | | |
| | 35 | | | | | | | | | | 85 | | | | | | | | | 135 | | | | | | | |
| | 36 | | | | | | | | | | 86 | | | | | | | | | 136 | | | | | | | |
| | 37 | | | | | | | | | | 87 | | | | | | | | | 137 | | | | | | | |
| | 38 | | | | | | | | | | 88 | | | | | | | | | 138 | | | | | | | |
| | 39 | | | | | | | | | | 89 | | | | | | | | | 139 | | | | | | | |
| | 40 | | | | | | | | | | 90 | | | | | | | | | 140 | | | | | | | |
| | 41 | | | | | | | | | | 91 | | | | | | | | | 141 | | | | | | | |
| | 42 | | | | | | | | | | 92 | | | | | | | | | 142 | | | | | | | |
| | 43 | | | | | | | | | | 93 | | | | | | | | | 143 | | | | | | | |
| | 44 | | | | | | | | | | 94 | | | | | | | | | 144 | | | | | | | |
| | 45 | | | | | | | | | | 95 | | | | | | | | | 145 | | | | | | | |
| | 46 | | | | | | | | | | 96 | | | | | | | | | 146 | | | | | | | |
| | 47 | | | | | | | | | | 97 | | | | | | | | | 147 | | | | | | | |
| | 48 | | | | | | | | | | 98 | | | | | | | | | 148 | | | | | | | |
| | 49 | | | | | | | | | | 99 | | | | | | | | | 149 | | | | | | | |
| | 50 | | | | | | | | | | 100 | | | | | | | | | 150 | | | | | | | |

Part of Paper No.  11162005

*Search Notes*

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 09/840,283 | STILIADIS, NICHOLAS |
| Examiner | Art Unit | |
| Johnny Ma | 2617 | |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 725 | 36 | 11/17/2005 | JM |
| 705 | 10 | 11/18/2005 | JM |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| Consulted Andrew Koenig (725) | 11/17/2005 | JM |
| Search History Attached | 11/18/2005 | JM |
| | | |
| | | |
| | | |
| | | |
| | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

U.S. Patent and Trademark Office                    Part of Paper No.  11162005

Doc Code:

PTO/SB/31 (04-05)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| NOTICE OF APPEAL FROM THE EXAMINER TO THE BOARD OF PATENT APPEALS AND INTERFERENCES | Docket Number (Optional) 25804/1 |
|---|---|

| I hereby certify that this correspondence is being facsimile transmitted to the USPTO or deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to "Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on ___28 March 2006___ | In re Application of Nicholas STILIADIS |
|---|---|

| Signature _____ | Application Number 09/840,283 | Filed 04/23/01 |

| Typed or printed name ___Danielle E. Gamache___ | For MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |

| | Art Unit 2617 | Examiner MA, Johnny |

Applicant hereby **appeals** to the Board of Patent Appeals and Interferences from the last decision of the examiner.

The fee for this Notice of Appeal is (37 CFR 41.20(b)(1))      $      500.00

[X]  Applicant claims small entity status. See 37 CFR 1.27. Therefore, the fee shown above is reduced by half, and the resulting fee is:      $      250.00

[ ]  A check in the amount of the fee is enclosed.

[ ]  Payment by credit card. Form PTO-2038 is attached.

[ ]  The Director has already been authorized to charge fees in this application to a Deposit Account. I have enclosed a duplicate copy of this sheet.

[X]  The Director is hereby authorized to charge any fees which may be required, or credit any overpayment to Deposit Account No. ___500369___ . I have enclosed a duplicate copy of this sheet.

[X]  A petition for an extension of time under 37 CFR 1.136(a) (PTO/SB/22) is enclosed.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

I am the

[ ]  applicant/inventor.

[ ]  assignee of record of the entire interest.
See 37 CFR 3.71. Statement under 37 CFR 3.73(b) is enclosed.
(Form PTO/SB/96)

Signature

Anthony H. Handal
Typed or printed name

[X]  attorney or agent of record.
Registration      26,275

212-209-4942
Telephone number

[ ]  attorney or agent acting under 37 CFR 1.34.
Registration number if acting under 37 CFR 1.34. _____

28 March 2006
Date

04/04/2006 FFANAIA2 00000038 500369  09840283

01 FC:2401      250.00 DA

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

[X]  *Total of ___2___ forms are submitted.

This collection of information is required by 37 CFR 41.31. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11, 1.14 and 41.6. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, U.S. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.



**BROWN**RUDNICK

ANTHONY H. HANDAL
ATTORNEY AT LAW
direct dial: 212-209-4942
ahandal@brownrudnick.com

Seven
Times
Square
New York
New York
10036
*tel* 212.209.4800
*fax* 212.209.4801

March 28, 2006

MAIL STOP AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

RE:    Nicholas STILIADIS
U.S. Patent Application No. 09/840,283  Filed: April 23, 2001
(Based on USAN 60/201,118  Filed: May 2, 2000)
"MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

SIR:

We enclose herewith:

[X]    Notice of Appeal;
[X]    Petition for Extension of Term (1 month, SE);
[X]    Fee Transmittal ($310.00 w/authorization to charge deposit acct); and
[X]    Acknowledgement Postcard.

The Commissioner is hereby authorized to charge payment of fees associated with this communication or credit any overpayment to **Deposit Account No. 500369.**  The applicants hereby petition under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

Respectfully submitted,

Anthony H. Handal
Registration No. 26,275

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on March 28, 2006.

Anthony H. Handal (26,275)

Doc Code:

APR 0 8 2006

PTO/SB/17 (12-04v2)
Approved for use through 07/31/2006. OMB 0651-0032
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Effective on 12/08/2004.
Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R.

# FEE TRANSMITTAL
## for FY 2005

☒ Applicant claims small entity status. See 37 CFR 1.27

| TOTAL AMOUNT OF PAYMENT | ($) | $310.00 |

| **Complete if Known** | |
|---|---|
| Application Number | 09/840,283 |
| Filing Date | 04/23/01 |
| First Named Inventor | STILIADIS |
| Examiner Name | MA, J. |
| Art Unit | 2617 |
| Attorney Docket No. | 25804/1 |

## METHOD OF PAYMENT (check all that apply)

☐ Check   ☐ Credit Card   ☐ Money Order   ☐ None   ☐ Other (please identify): _____

☒ Deposit   Deposit Account Number: __500369__   Deposit Account Name: __Brown Rudnick__

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☒ Charge fee(s) indicated below        ☐ Charge fee(s) indicated below, **except for the filing fee**

☒ Charge any additional fee(s) or any underpayment of   ☒ Credit any overpayments
fee(s) under 37 CFR 1.16 and 1.17

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| Application Type | FILING FEES Fee ($) | Small Entity Fee ($) | SEARCH FEES Fee ($) | Small Entity Fee ($) | EXAMINATION FEES Fee ($) | Small Entity Fee ($) | Fees Paid($) |
|---|---|---|---|---|---|---|---|
| Utility | 300 | 150 | 500 | 250 | 200 | 100 | _____ |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | _____ |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | _____ |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | _____ |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 50 | 25 |
| Each independent claim over 3 (including Reissues) | 200 | 100 |
| Multiple dependent claims | 360 | 180 |

| Total Claims | Extra | Fee ($) | Fee Paid ($) | Multiple Dependent Claims Fee ($) | Fee Paid ($) |
|---|---|---|---|---|---|
| __0__ - 20 or HP = | __0__ | x __$25.00__ | = __$0.00__ | _____ | _____ |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| - 3 or HP = | x | __$100.00__ | = __$0.00__ |

HP = highest number of independent claims paid for, if greater than 3.

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listing under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| _____ - 100 = | __0__ | / 50 __0__ (round up to a whole | x __$125.00__ = | __$0.00__ |

### 4. OTHER FEE(S)

| | Fee Paid ($) |
|---|---|
| Non-English specification,   $130 fee (no small entity discount) | _____ |
| Other (e.g., late filing surcharge): Notice of Appeal (SE); Petition for Extension of Term (1m.) | $310.00 |

## SUBMITTED BY

| Signature | [signature] | Registration No. (Attorney/Agent) | 26,275 | Telephone | 212-209-4942 |
| Name (Print/Type) | Anthony H. Handal | | | Date | 28 March 2006 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) (Small Entity) | Docket No. 25804/1 |
|---|---|

In Re Application Of: **Nicholas STILIADIS**

*[stamp: O I P E IAPAT APR 0 3 2006 PATENT AND TRADEMARK OFFICE]*

| Application No. | Filing Date | Examiner | Customer No. | Group Art Unit | Confirmation No. |
|---|---|---|---|---|---|
| 09/840,283 | 04/23/01 | MA, Johnny | 21710 | 2617 | 3319 |

Invention:  **MULTIMEDIA FOR MARKETING AND DISTRIBUTION SYSTEM**

<u>COMMISSIONER FOR PATENTS</u>:

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a response to the Office Action of _____11/28/2005_____ in the above-identified application.
       *Date*

The requested extension is as follows (check time period desired):

☒ One month    ☐ Two months    ☐ Three months    ☐ Four months    ☐ Five months

from: **February 28, 2006**    until: **March 28, 2006**
      *Date*                        *Date*

☒ Applicant claims small entity status. See 37 CFR 1.27

The fee for the extension of time is    $60    and is to be paid as follows:

☐ A check in the amount of the fee is enclosed.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account No.    500369

☒ If an additional extension of time is required, please consider this a petition therefor and charge any additional fees which may be required to Deposit Account No.    500369

☐ Payment by credit card. Form PTO-2038 is attached.
**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

_____
*Signature*

(Anthony H. Handal
Reg. No. 26,275)

Dated:    **28 March 2006**

04/04/2006 FFANAIA2 00000038 500369    09840283
02 FC:2251    60.00 DA

I certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to the "Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on
**28 March 2006**
*(Date)*

*Danielle E. Gamache*
*Signature of Person Mailing Correspondence*

Danielle E. Gamache
*Typed or Printed Name of Person Mailing Correspondence*

cc:

P12SMALL/REV08





PATENT
Attorney Docket No. NS2

# THE UNITED STATES PATENT AND TRADEMARK OFFICE

| APPLICANT(S): | Nicholas STILIADIS | CONFIRMATION NO.: | 3319 |
| APPLICATION NO.: | 09/840,283 | GROUP ART UNIT: | 2623 |
| FILING DATE: | April 23, 2001 | EXAMINER: | MA, JOHNNY |
| TITLE: | MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM | | |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR WITHDRAWAL AS ATTORNEY OR AGENT AND CHANGE OF CORRESPONDENCE ADDRESS

Sir:

Please withdraw me as an agent for the above-identified patent application, and the attorneys (with registration numbers) listed below.

Anthony H. Handal          Reg. No. 26,275
Kelly D. Talcott           Reg. No. 39,852

The reason for this request is the attached copy of written instructions from an officer of the assignee of the above-identified patent application directing and authorizing the responsibility of the application to reside with the individual to whom a new correspondence address is provided below.

NY-434638 v1

Request for Withdrawal as Attorney or Agent
and Change of Correspondence Address
U.S. Application No. 09/840,283
Page 2 of 2

## CORRESPONDENCE ADDRESS

Change the correspondence address and direct all future correspondence to:

> Anthony H. Handal, Esq.
> Brown Rudnick Berlack Israels LLP
> Seven Times Square
> New York, NY  10036
> (212) 209-4942

Respectfully submitted,

Date:  April 19, 2006
Reg. No. 46,996

Roger Pitt
Agent for Assignee/Applicants
Kirkpatrick & Lockhart Nicholson
Tel. No.:  (212) 536-4867          Graham LLP
Fax No.:  (212) 536-3901          599 Lexington Ave.
New York, NY  10022

NOTE: *Withdrawal is effective when approved rather than when received.  Unless there are at least 30 days between approval of withdrawal and the expiration date of a time period for response or possible extension period, the request to withdraw is normally disapproved.*



**Kirkpatrick & Lockhart Nicholson Graham LLP**

599 Lexington Avenue
New York, NY 10022-6030
212.536.3900
Fax 212.536.3901
www.klng.com

April 19, 2006

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Re:    Nick STILIADIS
U.S. Patent Application No. 09/840,283   Filed: April 23, 2001
(Based on USAN 60/201,118 Filed May 2, 2000)
Attorney Docket No: NS2        Confirmation No. 3319
"MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

SIR:

We enclose herewith:

[X]    Request for Withdrawal as Attorney or Agent and Change of
Correspondence Address;

[X]    Copy of Written Instructions;

[X]    Acknowledgment Postcard.

The Commissioner is hereby authorized to charge payment of the fees associated with this communication or credit any overpayment to **Deposit Account No. 08-0570.**

The applicants hereby petition under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.

Respectfully submitted,

Roger Pitt
Reg. No. 46,996 Phone (212) 536-4867

---

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on April 19, 2006.

Roger Pitt Reg. No. 46,996

NY-434753 v1

12/09/2005 04:59 FAX  12127040196                                   010/029

11-01-'05 15:52  FROM-CINEMAVAULT          4163632305           T-812  P002/003 F-116

OTP05E
APR 24 2006
PATENT & TRADEMARK OFFICE

ANTHONY H. HANDAL
direct dial: 212.209.4842
ahandal@brownrudnick.com



Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

November 23, 2005

Mr. Nick Stiliadis
Cinemavault.com, Inc
Suite 1011 South Tower
175 Bloor Street East
Toronto, Ontario M4W 3R8
CANADA

RE:   New Firm Affiliation

Dear Nick:

    I am pleased to announce that I have joined the firm of Brown Rudnick as a partner in their New York office. Brown Rudnick has a long tradition of servicing technology companies, particularly those in the technology highway surrounding Boston where the firm is based. My transition to Brown Rudnick will broaden the support base for our clients, particularly in the life sciences, as well as adding an intellectual property litigation component to the New York office.

    Your matters will continue to be under the care of the same team members. Terms of engagement will remain unchanged. Added capabilities in the New York office will also enable us to handle routine matters with improved efficiency and broaden the strengths with which major assignments are performed. I look forward to continuing working with our clients, many of whom have been with us for over twenty years.

    One final formality. Please fax a signed copy of the enclosed, instructing my previous firm to send your files to the new firm. The fax number is 212-209-4801.

    With kindest regards, I remain

Very truly yours,

Anthony H. Handal

# 1400280 v1 - HANDALAH - 009999/0001



November 23, 2005
Page -2-

Please send all our files to the attention of Anthony H. Handal at Brown Rudnick Berlack Israels LLP, 47th Floor, 7 Times Square, New York, New York 10036.

Name: _____   — NICK STYLIADIS
Title:                                CFO
Company:                           CINEMAVAULT.COM INC

PTO/SB/30 (04-05)
Approved for use through 07/31/2006. OMB 0651-0031
U.S. Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

Doc Code:

**REQUEST FOR CONTINUED EXAMINATION (RCE) TRANSMITTAL**

Address to:
Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| | |
|---|---|
| Application Number | 09/840,283, |
| Filing Date | April 23, 2006 |
| First Named Inventor | STILIADIS |
| Art Unit | 2617 |
| Examiner Name | Johnny MA |
| Attorney Docket Number | NS2 (25804/1) |

---

This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. **Submission required under 37 CFR 1.114**  Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☒ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

      ii. ☐ Other _____

   b. ☒ Enclosed

      i. ☒ Amendment/Reply          iii. ☐ Information Disclosure Statement (IDS)

      ii. ☐ Affidavit(s)/Declaration(s)   iv. ☒ Other    Petition for Extension of Time ~ COPY

2. **Miscellaneous**

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. **Fees**  The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☒ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments to Deposit Account No. ___50-0369___ . I have enclosed a duplicate copy of this sheet.

      i. ☒ RCE fee required under 37 CFR 1.17(e)

      ii. ☐ Extension of time fee (37 CFR 1.136 and 1.17)     05/31/2006 HGUTEMA1 00000054 500369  09840283

      iii. ☐ Other _____                01 FC:2801         395.00 DA

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☐ Payment by credit card (Form PTO-2038 enclosed)

   **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

---

**SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED**

| Signature | [signature] | Date | May 25, 2005 |
|---|---|---|---|
| Name (Print / Type) | Anthony H. Handal | Registration No. | 26,275 |

---

**CERTIFICATE OF MAILING OR TRANSMISSION**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner For Patents, P.O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| Signature | [signature] | | |
|---|---|---|---|
| Name (Print / Type) | Danielle E. Gamachde | Date | May 25, 2006 |

---

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing the burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

**PATENT**
**Docket No.: NS2 (25804/1)**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Nicholas STILIADIS | Group: | 2617 |
| Application No.: | 09/840,283 | Confirmation No.: | 3319 |
| Filed: | April 23, 2001 | Examiner: Johnny MA | |
| For: | **MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM** | | |

---

**CERTIFICATE OF MAILING**

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to, Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on:

5/24/06
Date

By: _Tabitha Crosier_
Tabitha Crosier

---

### AMENDMENT

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Examiner:

In response to the Office Action dated November 28, 2005, please consider the following amendments and remarks set forth below. Applicant hereby petitions for any extension of time that may be required to maintain the pendency of this case, and any required fee, for such extension is to be charged to *Deposit Account No. 50-0369.*

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

**IN THE CLAIMS:**

Please amend Claims 1, 3, 7, 10, 11, 12, 14, 21 and 23 as follows:

1. (Currently Amended)  A method of marketing and distributing multimedia, the  method comprising:

a.      receiving multimedia material <u>and associated advertising material</u> from a producer or owner of said <u>multimedia</u> material;

b.      storing said <u>multimedia</u> material <u>and associated advertising material</u> on a computer readable storage medium <u>in a digital format</u>;

c.      providing a server system accessible over a communication network <u>said producer or owner being linked with the server system,</u> said server system accessing <u>said digital format</u> ~~data~~ from said computer readable storage medium for transfer <u>of said digital format</u> over said communication network;

d.      providing  samples <u>of said digital format from</u> ~~over~~ said server system <u>over said communication network</u> ~~of said multimedia material~~ to potential purchasers<u>, said purchasers being linked to the server system</u>;

e.      downloading<u>,</u> upon request <u>of said purchasers,</u> over <u>said communication network,</u> said <u>digital format of said multimedia material from said</u> server system ~~said multimedia material~~<u>; and</u>

f.      providing <u>said digital format of said</u> advertising material to <u>said</u> purchasers <u>from said server system</u> over said communication network allowing purchasers to locally market and sell said multimedia material;

~~e.~~      <u>wherein</u> said purchaser ~~being~~ <u>is</u> an exhibitor exhibiting said multimedia material in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor<u>.</u>~~; and~~

2

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

h.——said purchaser publishing said advertising material.

2. (Original)    The method of marketing and distributing multimedia of claim 1, including receiving multimedia material by downloading via said communication network.

3. (Currently Amended)  The method of marketing and distributing multimedia of claim 1, wherein receiving multimedia material includes receiving non-digital media such as selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape.

4. (Original)    The method of marketing and distributing multimedia of claim 3, including the step of digitizing said non-digital media for storage on said computer readable storage medium.

5. (Original)    The method of marketing and distributing multimedia of claim 1, including providing a server system accessible over a public communication system.

6. (Original)    The method of marketing and distributing multimedia of claim 1, including downloading digital material from said server system for digital display to an audience.

7. (Currently Amended)  The method of marketing and distributing multimedia of claim 1, including providing downloadable advertising materials on said sever server system.

8. (Previously Presented)  The method of marketing and distributing multimedia of claim 1, further comprising collecting sales information from exhibitor recipients of said multimedia

3

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

material and providing sales and marketing data based upon information from said users of said server system.

9. (Original)    The method of marketing and distributing multimedia of claim 8, including providing marketing data based upon actual users of said server system.

10. (Currently Amended)  A method of distributing movies comprising:

a.    receiving a movie on celluloid and associated advertising material;

b.    scanning said movie and converting it into a digital format, storing said movie in digital format and said associated advertising material in digital format in a computer readable memory;

c.    transferring said digital ~~format~~ formats to a theater via a communications network and storing said digital ~~format~~ formats on a computer readable memory located at said theater; and

d.    projecting said movie in said digital format using a digital projector onto a screen for display to an audience.

11. (Currently Amended)  A distribution system for distributing multimedia comprising:

a.    a first central processing unit;

b.    a first memory associated with said first central processing unit;

c.    a communications network accessible by said first central processing unit for transferring data into and out of said first memory;

d.    an input device connected for data transfer to said first central processing unit, said input device receiving multimedia material and associated advertising material, and transferring ~~it~~ said materials into said first memory in a digital format via said central processing unit;

4

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

e.    a second central processing unit;

f.    a second memory, said second memory associated with said second central processing unit, ~~with~~ said communications network being accessible by said second central processing unit for transferring ~~data~~ said digital format into and out of said second memory; and

g.    a digital feature film projector in data communication with said second central processing unit for displaying said digital format as a feature film onto a screen for presentation to an audience, said feature film being stored in said digital ~~form~~ format in said second memory after being transferred via said communications network from said first memory.

12.    (Currently Amended)  A method of marketing and distributing multimedia, the  method comprising:

a.    receiving multimedia material from a producer or owner of said multimedia material;

b.    storing advertising material associated with said multimedia material on a computer readable storage medium;

c.    providing a server system accessible over a communication network, said server system accessing said advertising material from said computer readable storage medium for transfer of said advertising material in a digital format from said server system over said communication network;

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material to said exhibitor downloading said advertising material upon request from said customer for said advertising material over said server system;

f.    following up to determine information necessary to calculate an amount owed by said customer for said ~~product~~ multimedia material; and

5

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

g.    charging the account of said exhibitor with the amount owed.

13. (Original)  The method of marketing and distributing multimedia of claim 12, including receiving multimedia material by downloading via said communication network.

14. (Currently Amended)  The method of marketing and distributing multimedia of claim 12, wherein receiving multimedia material includes receiving non-digital media ~~such as~~ <u>selected from the group consisting of</u> celluloid media, printed media, video cassettes, and audio tape, and wherein said multimedia material is provided to said exhibitor using an electronic communications network.

15. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein said follow-up is implemented by sending an e-mail to said exhibitor.

16. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein said follow-up is implemented by consulting publicly reported data respecting said exhibitor.

17. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, further comprising providing advertising material to purchasers over said communication network, and exhibitors to locally market and sell said multimedia material.

6

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

18. (Previously Presented)  The method of marketing and distributing multimedia of claim 17, further comprising querying said exhibitor to stimulate the sending of data from said exhibitor and recording said data into a database.

19. (Previously Presented)  The method of marketing and distributing multimedia of claim 18, comprising providing marketing data recorded in said database to customers in response to a query from a exhibitor.

20. (Original)  The method of marketing and distributing multimedia of claim 19, including providing marketing data based upon actual users of said server system.

21. (Currently Amended)  A method of marketing and distributing multimedia, the  method comprising:

a.      receiving multimedia material and associated advertising material from a producer or owner of said multimedia material;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

c.      providing a server system accessible over a communication network, said producer or owner being linked with the server system, said server system accessing data said digital format from said computer readable storage medium for transfer over said communication network;

d.      providing  samples over of said digital format from said server system of said multimedia material over said communication network to potential purchasers, said purchasers being linked to the server system;

7

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

e.     downloading, upon request of said purchasers, over said communication network, said

digital format of said multimedia material from said server system ~~said multimedia material~~; and

f.     querying said customer to stimulate the sending of ticket sales data from said customer;

and

g.     recording said data into a database.


22. (Original)   The method of marketing and distributing multimedia of claim 21, comprising

providing marketing data recorded in said database to customers in response to a query from a

customer.


23. (Currently Amended)   A distribution system for distributing multimedia comprising:

a.     a first central processing unit;

b.     a first memory domain associated with said first central processing unit;

c.     a communications network accessible by said first central processing unit for transferring

data into and out of said first memory domain in response to an order for a multimedia product;

d.     an input device connected for data transfer to said first central processing unit, said input

device receiving multimedia material and associated advertising material, and transferring said

materials ~~it~~ into said first memory domain in a digital format via said central processing unit;

e.     a second central processing unit;

f.     a second memory domain, said second memory domain associated with said second

central processing unit, ~~with~~ said communications network being accessible by said second

central processing unit for transferring said digital format ~~data~~ into and out of said second

memory domain;

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

g.    a third memory domain for receiving market data in response to an order for said multimedia product; and

h.    a digital feature film projector in data communication with said second central processing unit for displaying said digital format as a feature film onto a screen for presentation to an audience, said feature film being stored in said digital format form in said second memory after being transferred via said communications network from said first memory.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

# REMARKS

This application has been reviewed in light of the Office Action dated November 28, 2005. Claims 1-23 are pending in the application. Claims 1-23 are amended in a manner that Applicant believes overcome the rejections in the Office Action. Support for the amendments can be found throughout the specification and figures of the present disclosure and recite aspects of the disclosure that Applicant is believed to be entitled. Applicant submits that no new matter or issues are introduced by the amendments.

Initially, in the Office Action, Claims 3, 12 and 14 were rejected under 35 U.S.C. § 112, second paragraph. The Examiner also objected to Claim 7 because of informalities cited in the Office Action. Claims 3, 7, 12 and 14 are amended in a manner believed to overcome the rejections. Reconsideration and withdrawal of the rejections are respectfully requested.

Generally, the inventive system and method differ fundamentally from the cited prior art. The present inventive system delivers a multimedia product, and downstream marketing and advertising to purchasers. This dual marketing feature can be used, for example, to transmit a movie as well as advertising material for marketing the movie. Therefore, the present inventive system and method benefit from several advantages such as the capability to download movies and associated advertising to increase patron attendance, market locally, and create a customer database.

In the Office Action, Claim 11 is rejected under 35 U.S.C. § 102(b) over U.S. Patent No. 6,038,367 to Abecassis (Abecassis '367). However, it is respectfully submitted that amended independent claim 11 clearly and patentably distinguishes over the Abecassis '367 patent.

The Abecassis '367 patent discloses a video provider and subscriber network 900. (col. 31, lines 54-65, Fig. 9). The Abecassis '367 patent does not disclose distributing of multimedia and associated advertising. Providers 911, 912, 913 transmit a video and subscribers 931, 932, 933, 934, 935, 936 receive the video. In contrast, amended claim 11 of the present application recites, *inter alia*, "[a] distribution system for distributing multimedia comprising...an input device... receiving multimedia material and associated advertising material, and transferring said materials into said first memory in a digital format via said central processing unit...a digital

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

feature film projector in data communication with said second central processing unit for displaying said digital format as a feature film onto a screen for presentation to an audience, said feature film being stored in said digital format in said second memory after being transferred via said communications network from said first memory."

The Abecassis '367 patent in no way discloses or suggests a system as recited in amended claim 11. The Abecassis '367 patent does not disclose or suggest, *inter alia*, a distribution system for distributing multimedia including an input device that receives multimedia material and associated advertising material and transfers these materials into a memory of a first central processing unit in a digital format, and a digital feature film projector in data communication with a second central processing unit for displaying the digital format as a feature film onto a screen for presentation to an audience, the feature film being stored in the digital format in a second memory of the second central processing unit after being transferred via a communications network from the first memory. Rather, the Abecassis '367 patent only discloses the transmission of a video to a subscriber. The present inventive disclosure can transfer, for example, a movie and associated advertising, which results in several advantages such as increased patronage, local marketing, and the creation of consumer databases.

Because of the above distinctions and advantages of the present disclosure, it is respectfully submitted that amended independent claim 11 is patentable and not obvious over the Abecassis '367 patent. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claims 1-7 are rejected under 35 U.S.C. § 103(a) over U.S. Patent Publication No. 2002/0162113 to Hunter (Hunter '0162113) in view of U.S. Patent No. 5,924,013 to Guido et al. (Guido '013), U.S. Patent No. 5,918,213 to Bernard et al. (Bernard '213) and U.S. Patent No. 6,038,545 to Mandeberg et al. (Mandeberg '545). However, it is respectfully submitted that amended independent claim 1 and claims 2-7 ultimately depending therefrom clearly and patentably distinguish over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent and the Mandeberg '545 patent.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

The Hunter '0162113 publication discloses a system 20 for placement of advertisement displays 30 located in high vehicular and pedestrian traffic areas (paragraph 0021), and in a separate embodiment, a system 220 that connects movie display devices 230 located in movie theater (0059). In an alternate embodiment, a system 420 has an input module 470 that transmits advertising displays 30 and separately transmits movies to movie theater display devices 30M disposed in an alternate location (0070). The Hunter '0162113 publication does not disclose any content association between advertisement display 30 and the movies displayed from devices 30M.

To establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. See *In re Royka*, 490 F.2d 981, 180 USPQ 580, 582 (CCPA 1974); see also *CFMT Inc. v. Yieldup International Corp.*, 68 USPQ2d 1940, 1947 (Fed. Cir. 2003) and *Leinoff v. Louis Milona & Sons, Inc.*, 220 USPQ 845 (Fed. Cir. 1984). As indicated in the Office Action "the Hunter reference does not specifically disclose that input module 470 is a server."

The Examiner alleges that the Guido '013 patent cures this deficiency. However, to the contrary, the Guido '013 patent discloses a system that communicates a motion picture from a central site 2, via a satellite 4 to a movie theater 6 (col. 3, lines 31-61, Fig. 1). The digital data from a movie is routed to an RF transmitter 16 such that central site 2 is an uplink for RF communication with satellite 4 (col. 3, lines 33-36). To order a movie, a second computer 40 communicates with first computer 12 via a communication network 50. The digital signals of a movie are sent over satellite 4, and a movie theater 6 is the receiving site for the RF signals. Thus, the digital signals of the movie are transmitted over satellite 4, and not communication network 50.

The Examiner also discusses the Bernard '213 patent, which discloses an automated product purchasing and receiving system (col. 9, lines 58-62), whereby an order is placed and a fulfillment vendor 436 then processes and ships the order by mail (col. 24, lines 13-29). The Bernard '213 patent does not relate to purchasing multimedia for download over a communications network such as the Internet.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

Also discussed is the Mandeberg '545 patent, which discloses a system for generating digital multimedia store displays (col. 5, lines 45-60). In particular, these store displays include multimedia presentations such as a fast food restaurant menu board (col. 5, lines 17-20).

However, "[t]he mere fact that a worker in the art could rearrange the parts of the reference device to meet the terms of the claims is not by itself sufficient to support a finding of obviousness. The prior art must provide a motivation or reason for the worker in the art, without the benefit of appellant's specification, to make the necessary changes in the reference device." *Ex parte Chicago Rawhide Manufacturing Co.*, 223 USPQ 351, 353 (Bd. Pat. App. & Inter. 1984). None of the references cited in the Office Action provide a motivation for one skilled in the art to combine the references cited. In contrast to the teachings of the references cited in the Office Action, amended claim 11 of the present application recites, *inter alia*, "[a] method of marketing and distributing multimedia... receiving multimedia material and associated advertising material... storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format... providing a server system accessible over a communication network ... said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network... providing  samples of said digital format from said server system over said communication network to potential purchasers... downloading, upon request of said purchasers over said communication network, said digital format of said multimedia material from said server system; and... providing said digital format of said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material; wherein said purchaser is an exhibitor exhibiting said multimedia material in a public theater ..."

Therefore, the Hunter '0162113 publication, the Guido '013 patent, the Bernard '213 patent and the Mandeberg '545 patent in no way disclose or suggest a method as recited in amended claim 1. The Guido '013 patent, the Bernard '213 patent and the Mandeberg '545 patent do not cure the deficiencies of the Hunter '0162113 publication in that these references do not disclose a method of marketing and distributing multimedia including receiving multimedia material and associated advertising material, storing materials in a digital format, providing a

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

server system accessible over a communication network that accesses the digital format for transfer over the communication network, providing samples of the digital format over the communication network to potential purchasers, downloading, upon request of the purchasers over the communication network, the digital format of the multimedia material from the server system, and providing the digital format of the advertising material to purchasers from said server system over the communication network allowing purchasers to locally market and sell said multimedia material wherein the purchaser is an exhibitor exhibiting the multimedia material in a public theater.

Because of the above distinctions and advantages of the present disclosure, it is respectfully submitted that amended independent claim 1 and claims 2-7 ultimately depending therefrom are patentable and not obvious over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent and the Mandeberg '545 patent. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, Claims 8 and 9 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in view of the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, U.S. Patent Publication No. 2004/0093608 to Sprogis (Sprogis '0093608) and U.S. Patent Publication No. 2003/0172374 to Vinson (Vinson '0172374). However, it is respectfully submitted that claims 8 and 9, which depend from amended independent claim 1 clearly and patentably distinguish over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication.

The Hunter '0162113 publication, the Guido '013 patent, the Bernard '213 patent and the Mandeberg '545 patent have been discussed. The Sprogis '0093608 publication discloses a network system having computer storage for receiving and storing digital content of images for a movie theater (0010, 0029). The Vinson '0172374 publication discloses a content reaction display including a customer database of past viewing behaviors (0018, 0089).

The Hunter '0162113 publication, the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

in no way disclose or suggest a method as recited in amended claim 1. The Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication patent do not cure the deficiencies of the Hunter '0162113 publication in that these references do not disclose the method of amended claim 1 discussed above. Accordingly, it is respectfully submitted that amended independent claim 1 and claims 8 and 9 depending therefrom are patentable and not obvious over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, Claim 10 is rejected under 35 U.S.C. § 103(a) over the Abecassis '367 patent in view of U.S. Patent No. 6,233,523 to Sood (Sood '523). However, it is respectfully submitted that amended independent claim 10 clearly and patentably distinguishes over the Abecassis '367 patent in any combination with the Sood '523 patent.

The Abecassis '367 patent has been discussed. The Sood '523 patent discloses a method of collection and linking of potential data obtained by satellite localization (col. 2, lines 18-25). The Abecassis '367 patent and the Sood '523 patent in no way disclose or suggest a method as recited in amended claim 10. The Sood '523 patent does not cure the deficiencies of the Abecassis '367 patent in that the Abecassis '367 patent and the Sood '523 patent do not disclose the method of amended claim 10 discussed above. Accordingly, it is respectfully submitted that amended independent claim 10 is patentable and not obvious over the Abecassis '367 patent in any combination with the Sood '523 patent. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, Claims 12-18 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in view of the Guido '013 patent and the Mandeberg '545 patent. However, it is respectfully submitted that amended independent claim 12 and claims 13-18, which ultimately depend therefrom clearly and patentably distinguish over the Hunter '0162113 publication in any combination with the Guido '013 patent and the Mandeberg '545 patent.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

The Hunter '0162113 publication, the Guido '013 patent and the Mandeberg '545 patent in no way disclose or suggest a method as recited in amended claim 12. The Guido '013 patent, the Bernard '213 patent and the Mandeberg '545 patent do not cure the deficiencies of the Hunter '0162113 publication in that these references do not disclose a method of marketing and distributing multimedia including receiving multimedia material, storing advertising material associated with said multimedia material, providing a server system accessible over a communication network that accesses the advertising material for transfer in a digital format from the server system over the communication network, establishing an account for a broadcast, providing the multimedia material to the exhibitor downloading the advertising material upon request from a customer for the advertising material over the server system, following up to determine information necessary to calculate an amount owed by the customer for the multimedia material, and charging the account of the exhibitor with the amount owed.

Because of the above distinctions and advantages of the present disclosure, it is respectfully submitted that amended independent claim 12 and claims 13-18, which ultimately depend therefrom are patentable and not obvious over the Hunter '0162113 publication in any combination with the Guido '013 patent and the Mandeberg '545 patent. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, Claims 19 and 20 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in view of the Guido '013 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication. However, it is respectfully submitted that claims 19 and 20, which ultimately depend from amended independent claim 12 clearly and patentably distinguish over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication.

The Hunter '0162113 publication, the Guido '013 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication in no way disclose or suggest a method as recited in amended claim 12. The Guido '013 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication patent do not cure the deficiencies of the Hunter '0162113 publication in that these references do not disclose the

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

method of amended claim 12 as discussed above. Accordingly, it is respectfully submitted that claims 19 and 20, which ultimately depend from amended independent claim 12 are patentable and not obvious over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, Claim 21 is rejected under 35 U.S.C. § 103(a) as being unpatentable over the Hunter '0162113 publication in view of the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent and the Sprogis '0093608 publication. However, it is respectfully submitted that amended independent claim 21 clearly and patentably distinguishes over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent and the Sprogis '0093608 publication.

The Hunter '0162113 publication, the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent and the Sprogis '0093608 publication in no way disclose or suggest a method as recited in amended claim 21. The Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent and the Sprogis '0093608 publication do not cure the deficiencies of the Hunter '0162113 publication in that these references do not disclose a method of marketing and distributing multimedia including receiving multimedia material and associated advertising material, storing the material in a digital format, providing a server system accessible over a communication network that accesses the digital format for transfer over the communication network, providing  samples of the digital format from the server system over the communication network to potential purchasers, downloading, upon request of the purchasers, over the communication network, the digital format of the materials from the server system, querying the customer to stimulate the sending of ticket sales data from the customer and recording the data into a database.

Because of the above distinctions and advantages of the present disclosure, it is respectfully submitted that amended independent claim 21 is patentable and not obvious over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent and the Sprogis '0093608 publication. Reconsideration and withdrawal of the rejections are respectfully requested.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

In the Office Action, Claim 22 is rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in view of the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication. However, it is respectfully submitted that claim 22, which ultimately depends from amended independent claim 21 clearly and patentably distinguishes over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication.

The Hunter '0162113 publication, the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication in no way disclose or suggest a method as recited in amended claim 21. The Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication do not cure the deficiencies of the Hunter '0162113 publication in that these references do not disclose the method of amended claim 21, as described above. Accordingly, it is respectfully submitted that claim 22, which ultimately depends from amended independent claim 21 is patentable and not obvious over the Hunter '0162113 publication in any combination with the Guido '013 patent, the Bernard '213 patent, the Mandeberg '545 patent, the Sprogis '0093608 publication and the Vinson '0172374 publication. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, Claim 23 is rejected under 35 U.S.C. § 103(a) over the Abecassis '367 patent in view of the Bernard '213 patent. However, it is respectfully submitted that amended independent claim 23 clearly and patentably distinguishes over the Abecassis '367 patent in any combination with the Bernard '213 patent.

The Abecassis '367 patent and the Bernard '213 patent in no way disclose or suggest a method as recited in amended claim 23. The Bernard '213 patent does not cure the deficiencies of the Abecassis '367 patent in that the Abecassis '367 patent and the Bernard '213 patent do not disclose a distribution system for distributing multimedia including an input device that receives multimedia material and associated advertising material, and transferring the materials into a first memory domain of a first central processing unit in a digital format, a third memory domain for receiving market data in response to an order for the materials; and a digital feature film

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2617

projector in data communication with a second central processing unit for displaying the digital format as a feature film onto a screen for presentation to an audience, the feature film being stored in the digital format in a second memory after being transferred via the communications network from the first memory.

Because of the above distinctions and advantages of the present disclosure, it is respectfully submitted that amended independent claim 23 is patentable and not obvious over the Abecassis '367 patent in any combination with the Bernard '213 patent. Reconsideration and withdrawal of the rejections are respectfully requested.

In view of the foregoing amendments and remarks, it is respectfully submitted that claims 1-23 presently pending in the application are believed to be in condition for allowance and patentably distinguish over the art of record. An early notice thereof is earnestly solicited.

If the Examiner should have any questions concerning this communication or feels that an interview would be helpful, the Examiner is requested to call the Applicant's undersigned attorney.

Please charge any deficiency as well as any other fee(s) which may become due at any time during the pendency of this application, or credit any overpayment of such fee(s) to *Deposit Account No. 50-0369*. Also, in the event any extensions of time for responding are required for the pending application(s), please treat this paper as a petition to extend the time as required and charge *Deposit Account No. 50-0369* therefor.

Respectfully submitted,

Dated: 5/24/06

By: _____
Anthony H. Handal, Esq.
Reg. No. 26,275
Customer No. 21710
Attorney for Applicant
Brown Rudnick Berlack Israels LLP
Seven Times Square
New York, New York 10036
Tel: 212.209.4942
Fax: 212.209.4801

| PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a)<br>(Small Entity) | Docket No.<br>NS2 (25804/1) |
|---|---|

In Re Application Of:   Nicholas STILIADIS

| Application No.<br>09/840,283 | Filing Date<br>April 23, 2001 | Examiner<br>Johnny MA | Customer No.<br>21710 | Group Art Unit<br>2617 | Confirmation No.<br>3319 |
|---|---|---|---|---|---|

Invention:   "MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM"

COMMISSIONER FOR PATENTS:

This is a request under the provisions of 37 CFR 1.136(a) to extend the period for filing a response to the Office Action of _____ Nov. 28, 2006 _____ in the above-identified application.
       *Date*

The requested extension is as follows (check time period desired):

☐ One month ☒ Two months ☐ Three months ☐ Four months ☐ Five months

from: _____ **March 28, 2006** _____ until: _____ **May 28, 2006** _____
         *Date*             *Date*

☒ Applicant claims small entity status.  See 37 CFR 1.27

The fee for the extension of time is    **$225**    and is to be paid as follows:

☐ A check in the amount of the fee is enclosed.

☒ The Director is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account No.    50-0369

☒ If an additional extension of time is required, please consider this a petition therefor and charge any additional fees which may be required to Deposit Account No.    50-0369

☐ Payment by credit card. Form PTO-2038 is attached.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

Dated:   **May 24, 2006**

*Signature*

Anthony H. Handal, Esq.
Reg. No. 26,275

05/31/2006 JBALINAN 00000029 500369    09840283
01 FC:2252         225.00 DA

I certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to the "Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450" [37 CFR 1.8(a)] on
_____ May 24, 2006 _____.
*(Date)*

*Signature of Person Mailing Correspondence*

Tabitha Crosier

*Typed or Printed Name of Person Mailing Correspondence*

cc:

P12SMALL/REV08

Doc Code:

PTO/SB/17 (01-06)
Approved for use through 07/31/2006. OMB 0651-0032
Patent and Trademark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| FEE TRANSMITTAL<br>for FY 2006<br><br>*Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).*<br><br>☒ Applicant claims small entity status. See 37 CFR 1.27 | **Complete if Known** | |
|---|---|---|
| | Application Number | 09/840,283 |
| | Filing Date | April 23, 2006 |
| | First Named Inventor | STILIADIS |
| | Examiner Name | MA, Johnny |
| | Art Unit | 2617 |
| **TOTAL AMOUNT OF PAYMENT**   ($)   **$225.00** | Attorney Docket No. | NS2 (25804/1) |

## METHOD OF PAYMENT (check all that apply)

☐ Check    ☐ Credit Card    ☐ Money Order    ☐ None     ☐ Other (please identify): _____

☒ Deposit     Deposit Account Number: ___50-0369___     Deposit Account Name: ___Brown Rudnick LLP___

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

☒ Charge fee(s) indicated below        ☐ Charge fee(s) indicated below, except for the filing fee

☒ Charge any additional fee(s) or any underpayments of    ☒ Credit any overpayments
fee(s) under 37 CFR 1.16 and 1.17

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

## FEE CALCULATION (All the fees below are due upon filing or may be subject to a surcharge.)

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| | FILING FEES | | SEARCH FEES | | EXAMINATION FEES | | |
|---|---|---|---|---|---|---|---|
| **Application Type** | Fee ($) | Small Entity Fee ($) | Fee ($) | Small Entity Fee ($) | Fee ($) | Small Entity Fee ($) | Fees Paid($) |
| Utility | 300 | 150 | 500 | 250 | 200 | 100 | _____ |
| Design | 200 | 100 | 100 | 50 | 130 | 65 | |
| Plant | 200 | 100 | 300 | 150 | 160 | 80 | |
| Reissue | 300 | 150 | 500 | 250 | 600 | 300 | |
| Provisional | 200 | 100 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| Fee Description | | Fee ($) | Small Entity Fee ($) |
|---|---|---|---|
| Each claim over 20 (including Reissues) | | 50 | 25 |
| Each independent claim over 3 (including Reissues) | | 200 | 100 |
| Multiple dependent claims | | 360 | 180 |

| Total Claims | Extra Claims | Fee ($) | Fee Paid ($) | Multiple Dependent Claims | |
|---|---|---|---|---|---|
| | | | | Fee ($) | Fee Paid ($) |
| _____ - 20 or HP = _____ x | _____ | __$25.00__ = | __$0.00__ | _____ | _____ |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| _____ - 3 or HP = _____ x | _____ | __$100.00__ = | __$0.00__ |

HP = highest number of independent claims paid for, if greater than 3.

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listing under 37 CFR 1.52(e)), the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| _____ - 100 = | __0__ | / 50 __0__ (round up to a whole | x __$125.00__ = | __$0.00__ |

### 4. OTHER FEE(S)

| | Fee Paid ($) |
|---|---|
| Non-English specification, $130 fee (no small entity discount) | |
| Other (e.g., late filing surcharge): **Petition for Ext. of Time - 2 FURTHER months, SE** | $225.00 |

## SUBMITTED BY

| Signature | *[signature]* | Registration No.<br>(Attorney/Agent) | 26,275 | Telephone | 212.209.4942 |
|---|---|---|---|---|---|
| Name (Print/Type) | Anthony H. Handal, Esq. | | | Date | May 24, 2006 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



**BROWN**RUDNICK

Seven
Times
Square
New York
New York
10036
*tel* 212.209.4800
*fax* 212.209.4801

May 24, 2006

MAIL STOP AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Re:   Nicholas STILIADIS
      U.S. Patent Application No. 09/840,283   Filed: April 23, 2001
      Atty Docket: NS2 (25804/1)            Conf. No. 3319
      "MULTIMEDIA MARKETING DISTRIBUTION SYSTEM"

SIR:
We enclose herewith:
   [X]   Amendment (19 p.);
   [X]   Petition for Extension of Time (2 *further* mos.; SE);
   [X]   Fee Transmittal ($225 to be charged to **Deposit Account No. 500369** ); and
   [X]   Acknowledgement Postcard.


   The Commissioner is hereby authorized to charge payment of the fees associated with this communication or credit any overpayment to **Deposit Account No. 500369.**

   The applicant hereby petitions under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.


                                        Respectfully submitted,


                                        Anthony H. Handal, Esq.
                                        Reg. No. 26,275


I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on May 24, 2006.

Anthony H. Handal (Reg. No. 26,275)

## PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2000

Application or Docket Number

8984628 3

### CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 23 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 23 minus 20= | 3 |
| INDEPENDENT CLAIMS | minus 3 = | 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 355.00 | OR | BASIC FEE | 710.00 |
| X$ 9= | 27 | OR | X$18= | |
| X40= | 120 | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL | 502 | OR | TOTAL | |

### CLAIMS AS AMENDED - PART II

9-9-05

| AMENDMENT A | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|---|
| | Total | 23 | Minus | 23 | |
| | Independent | 6 | Minus | 6 | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

5-30-06

| AMENDMENT B | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|---|
| | Total | 23 | Minus | 23 | — |
| | Independent | 6 | Minus | 6 | — |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| AMENDMENT C | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|---|
| | Total | | Minus | | |
| | Independent | | Minus | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 8/00)

BEST AVAILABLE COPY

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-706/30103

PATENT
Attorney Docket No.: NS2

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APPLICANT(S):    Nicholas STILIADIS    CUSTOMER NO: 21710

SERIAL NO.:    09/840,283    FILED: 4-23-01

PATENT NO.:    ISSUED:

FOR: *MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM*

| CERTIFICATE OF MAILING |
|---|
| I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on: |
| By: _Danielle E. Gamache_  Date _6/30/06_ |

Commissioner for Patents
P.O. Box 1450
Alexandria VA  22313-1450

### CHANGE OF CORRESPONDENCE ADDRESS

Sir:

Please send all future correspondence for this application to:

Anthony H. Handal
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA  02111

Please direct all telephone calls to:

Anthony H. Handal, Esq.
212.209.4942

Respectfully submitted,

Anthony H. Handal, Reg. No. 26,275
Attorney for Applicant(s)
Customer No. 21710
BROWN RUDNICK BERLACK ISRAELS LLP
Seven Times Square
New York, NY 10036

# 8134222 v1 - HANDALAH - 025804/0001

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 3825 | 705/14.ccls. | US-PGPUB; USPAT | OR | ON | 2006/08/18 15:33 |
| L2 | 119 | "705"/14.ccls. and (movie with (theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:00 |
| L3 | 38 | "705"/14.ccls. and (bundl$3 with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:05 |
| L4 | 1317 | "705"/14.ccls. and ((order$3 buy$5) with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:05 |
| L5 | 505 | "705"/14.ccls. and ((buy$5) with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:05 |
| L6 | 37 | "705"/14.ccls. and ((buy$5) with associated with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:09 |
| L7 | 1 | ((buy$5 order) with associated with (movie adj trailer)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:09 |
| L8 | 1 | ((buy$5 bundl$5 order) with associated with (movie adj trailer)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:10 |
| L9 | 32 | ((buy$5 bundl$5 order) with (movie adj trailer)) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:18 |
| L10 | 553 | "associated advertising" | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:18 |
| L11 | 128 | "associated advertising" same (product multimedia movie) | US-PGPUB; USPAT | OR | ON | 2006/08/18 16:18 |
| S1 | 13781 | "725"/$7.ccls. (movie with (theatre cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/14 15:50 |
| S2 | 207 | "725"/$7.ccls. and (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/14 16:12 |
| S3 | 0 | ("2002/0059611").URPN. | USPAT | OR | ON | 2005/11/14 16:05 |
| S4 | 361 | "705"/$7.ccls. and (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/14 16:12 |
| S5 | 5 | "705"/15.ccls. and (movie with (theatre theater cinema)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:06 |
| S6 | 8 | (US-20010054180-$ or US-20020059611-$).did. or (US-5801754-$ or US-5892535-$ or US-5924013-$ or US-6141530-$ or US-6633982-$ or US-6038545-$).did. | US-PGPUB; USPAT | OR | ON | 2005/11/14 16:15 |
| S7 | 6 | S6 and (ad ads advertis$5 trailer teaser preview) | US-PGPUB; USPAT | OR | ON | 2005/11/15 12:36 |

# EAST Search History

| S8 | 1 | "6038367".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/15 12:36 |
|----|----|----|----|----|----|----|
| S9 | 4 | "705"/15.ccls. and ((theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:42 |
| S10 | 275 | "725"/$7.ccls. and ((theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 13:42 |
| S11 | 141 | "725"/$7.ccls. and (movie with (theatre theater cinema)) and movie and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2006/08/18 15:33 |
| S12 | 99 | "725"/$7.ccls. and (movie near2(theatre theater cinema)) and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:22 |
| S13 | 99 | "725"/$7.ccls. and (movie near2 (theatre theater cinema)) and (trailer preview ad ads advertis$6) | US-PGPUB; USPAT | OR | ON | 2005/11/15 14:26 |
| S14 | 8 | "725"/$7.ccls. and (movie near2 (theatre theater cinema)) and (download$5 with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 14:29 |
| S15 | 0 | "705"/15.ccls. and (movie near2 (theatre theater cinema)) and (download$5 with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 14:30 |
| S16 | 0 | "705"/15.ccls. and (movie near2 (theatre theater cinema)) and ((request$5 download$5) with (trailer preview ad ads advertis$6)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:13 |
| S17 | 4 | "705"/15.ccls. and ((request$5 dowload$5) with (advertis$5 teaser trailer ad ads)) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:15 |
| S18 | 23 | "725"/$7.ccls. and ((request$5 dowload$5) with (advertis$5 teaser trailer ad ads)) and kiosk | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:25 |
| S19 | 105 | 725/32-36.ccls. and (merchant retail (movie adj (theater theatre)) cinema) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:07 |
| S20 | 79 | 725/32-36.ccls. and (merchant (retail adj store) (movie adj (theater theatre)) cinema) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:26 |
| S21 | 50 | 725/32-36.ccls. and ((retail adj store) (movie adj (theater theatre)) cinema) | US-PGPUB; USPAT | OR | ON | 2005/11/15 16:27 |

# EAST Search History

| S22 | 3 | 705/15.ccls. and (retail subway theatre theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
|---|---|---|---|---|---|---|
| S23 | 6 | 705/15.ccls. and (store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
| S24 | 6 | 705/15.ccls. and (public store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
| S25 | 14 | 705/15.ccls. and (public store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) with (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:09 |
| S26 | 1213 | 705/14.ccls. and (public store retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) with (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:10 |
| S27 | 276 | 705/14.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (select$5 download$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:10 |
| S28 | 45 | 705/14.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (download$5 and (request$5 select$5))) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:17 |
| S29 | 1 | 725/14.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (download$5 and (request$5 select$5))) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:17 |
| S30 | 4 | 725/32.ccls. and (retail subway theater theatre cinema) and ((ad advertis$5 trailer preview teaser) near2 (download$5 and (request$5 select$5))) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:18 |
| S31 | 24 | 725/32.ccls. and ((headend operator distributor broadcaster broadcastor) with (request$5 select$5) with (ad advertis$5 trailer teaser preview sample)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:21 |

# EAST Search History

| S32 | 31 | 725/34-36.ccls. and ((headend operator distributor broadcaster broadcastor) with (request$5 select$5) with (ad advertis$5 trailer teaser preview sample)) | US-PGPUB; USPAT | OR | ON | 2005/11/16 15:21 |
|-----|-----|-----|-----|-----|-----|-----|
| S33 | 126 | (movie adj (theatre theater)) with (advertis$5) | US-PGPUB; USPAT | OR | ON | 2005/11/16 16:36 |
| S34 | 128 | (movie adj (theatre theater)) with (advertis$5 marketing) | US-PGPUB; USPAT | OR | ON | 2005/11/16 16:36 |
| S35 | 156 | 725/36.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:41 |
| S36 | 93 | 725/36.ccls. and ((request$5 select$5) with (advertis$5 commercial$5 trailer ad teaser preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:42 |
| S37 | 48 | 725/36.ccls. and ((request$5) with (advertis$5 commercial$5 trailer ad teaser preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:42 |
| S38 | 32 | 725/36.ccls. and ((request$5) with (advertis$5 commercial$5 trailer ad teaser preview) and server | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:52 |
| S39 | 156 | 725/36.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:52 |
| S40 | 1 | 725/36.ccls. and kiosk | US-PGPUB; USPAT | OR | ON | 2005/11/17 13:53 |
| S41 | 15 | 725/36.ccls. and ((movie adj (theater theatre)) cinema retail) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:07 |
| S42 | 13 | "725"/$7.ccls. and ((producer owner) with (trailer preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:11 |
| S43 | 5 | "705"/14.ccls. and ((producer owner) with (trailer preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:12 |
| S44 | 10 | ((movie near2 (producer owner)) with (trailer preview)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:12 |
| S45 | 19 | ((movie near2 (producer owner)) with (trailer preview ad advertis$5 teaser)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 14:31 |
| S46 | 4 | (movie near2(theatre theater cinema)) and (trailer preview ad ads advertis$6) | EPO; JPO | OR | ON | 2005/11/17 14:22 |
| S47 | 4 | (movie near2 (theatre theater cinema)) and (trailer preview ad ads advertis$6) | EPO; JPO | OR | ON | 2005/11/17 14:23 |
| S48 | 97 | (movie near2 (theatre theater cinema)) | EPO; JPO | OR | ON | 2005/11/17 14:23 |
| S49 | 465 | (movie near2 (theatre theater)) cinema | EPO; JPO | OR | ON | 2005/11/17 14:23 |

# EAST Search History

| S50 | 22 | ((movie near2 (theatre theater)) cinema) and (trailer preview teaser ad advertis$5) | EPO; JPO | OR | ON | 2005/11/17 14:23 |
|-----|-----|-----|-----|-----|-----|-----|
| S51 | 43 | ((movie with (producer owner)) with (trailer preview ad advertis$5 teaser)) | US-PGPUB; USPAT | OR | ON | 2005/11/17 15:58 |
| S52 | 1 | "6038545".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/17 16:14 |
| S53 | 1 | "5918213".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/17 16:14 |
| S54 | 28 | (US-20010054180-$ or US-20020023274-$ or US-20020059611-$ or US-20020162113-$ or US-20030088463-$ or US-20010054001-$ or US-20040093608-$ or US-20040078269-$ or US-20040078268-$ or US-20020094787-$ or US-20020069107-$ or US-20010052841-$ or US-20030225641-$).did. or (US-4630108-$ or US-5392066-$ or US-5761601-$ or US-5801754-$ or US-5892535-$ or US-5909638-$ or US-5924013-$ or US-6038545-$ or US-6141530-$ or US-6633982-$ or US-6925444-$ or US-6698020-$ or US-6502242-$ or US-5412416-$ or US-6133908-$).did. | US-PGPUB; USPAT | OR | ON | 2005/11/17 16:54 |
| S55 | 7 | S54 and (ticket with sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 11:39 |
| S56 | 244 | 725/34-35.ccls. and ((request$5 download$5 select$5) with (advertis$5 ad trailer teaser preview commercials)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 11:40 |
| S57 | 39 | 725/34-35.ccls. and ((request$5 download$5 select$5) with (advertis$5 ad trailer teaser preview commercials)) and (theater retail) | US-PGPUB; USPAT | OR | ON | 2005/11/18 11:44 |
| S58 | 1 | "5794210".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/18 13:35 |
| S59 | 2 | 705/14.ccls. and (marketing adj data) and (ticket adj sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 13:36 |
| S60 | 1 | "725"/$7.ccls. and (marketing adj data) and (ticket adj sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 13:36 |
| S61 | 164 | 705/14.ccls. and (marketing adj data) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:16 |

# EAST Search History

| S62 | 31 | 705/14.ccls. and ((marketing adj data) with (provid$5 request$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:17 |
|---|---|---|---|---|---|---|
| S63 | 31 | (US-20010054180-$ or US-20020023274-$ or US-20020059611-$ or US-20020162113-$ or US-20030088463-$ or US-20010054001-$ or US-20040093608-$ or US-20040078269-$ or US-20040078268-$ or US-20020094787-$ or US-20020069107-$ or US-20010052841-$ or US-20030225641-$ or US-20010037205-$).did. or (US-4630108-$ or US-5392066-$ or US-5761601-$ or US-5801754-$ or US-5892535-$ or US-5909638-$ or US-5924013-$ or US-6038545-$ or US-6141530-$ or US-6633982-$ or US-6925444-$ or US-6698020-$ or US-6502242-$ or US-5412416-$ or US-6133908-$ or US-6477704-$ or US-5890135-$).did. | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:49 |
| S64 | 13 | S63 and billing | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:33 |
| S65 | 265 | "725"/$7.ccls. and billing and reporting | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:33 |
| S66 | 43 | "725"/$7.ccls. and (billing with reporting) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:37 |
| S67 | 47 | "705"/14.ccls. and ((aggregat$5 combined) with (sales market) with (data information statistics)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:40 |
| S68 | 295 | (movie adj (theater theatre)) and ((sales usage market) near2 (data research statistics information)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:41 |
| S69 | 40 | (movie adj (theater theatre)) and (((sales usage market) near2 (data research statistics information)) with (request$5 provid$5)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:43 |
| S70 | 31 | 725/9-21.ccls. and 725/1,4-5.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:46 |
| S71 | 180 | 725/1,4-5.ccls. and server | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:46 |
| S72 | 24 | 725/1,4-5.ccls. and server and ((market sales usage) near3 (data statistics)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:46 |

# EAST Search History

| S73 | 22 | S63 and ((market usage sales) with (data information research statistics)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:57 |
|---|---|---|---|---|---|---|
| S74 | 1845 | 705/10.ccls. | US-PGPUB; USPAT | OR | ON | 2005/11/18 14:59 |
| S75 | 11 | 705/10.ccls. and (movie adj (theater theatre)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:01 |
| S76 | 226 | 705/10.ccls. and ((provid$5 request$5 access$5) with ((market sales usage) near2 (data information statistics))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:11 |
| S77 | 19 | 705/10.ccls. and ((provid$5 request$5 access$5) with ((market sales usage) near2 (data information statistics))) and (movie (motion adj picture)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:13 |
| S78 | 14 | 725/9-21.ccls. and (movie adj rating) | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:18 |
| S79 | 7 | "725"/$7.ccls. and ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:08 |
| S80 | 10 | S63 and ticket | US-PGPUB; USPAT | OR | ON | 2005/11/18 15:22 |
| S81 | 138 | "705"/$7.ccls. and ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:09 |
| S82 | 4 | "705"/$7.ccls. and ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information)) with (combined aggregate$5 collective)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:08 |
| S83 | 58 | ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) and (movie theater) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:10 |
| S84 | 7 | ((provider operator owner) with (request$5) with ((market$5 sales usage) near2 (data statistics information))) and (movie adj (theater theatre)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:11 |
| S85 | 1 | "725"/$7.ccls. and (collective near2 usage) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:11 |
| S86 | 92 | "725"/$7.ccls. and ((aggregat$5 collect$5 total) near2 usage) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:12 |

# EAST Search History

| S87 | 41 | "725"/$7.ccls. and ((aggregat$5 collect$5 total) near2 usage) and market$5 | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:13 |
|-----|-----|-----|-----|-----|-----|-----|
| S88 | 13 | "725"/$7.ccls. and ((aggregat$5 collect$5 total) near2 sales) and market$5 | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:15 |
| S89 | 11 | "725"/$7.ccls. and (provid$5 with (market adj research)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:48 |
| S90 | 22 | "705"/10.ccls. and (provid$5 with (market adj research)) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:36 |
| S91 | 13 | "705"/10.ccls. and (ticket adj sales) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:36 |
| S92 | 12 | "725"/$7.ccls. and (provid$5 with (market adj (data statistics research))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 16:49 |
| S93 | 16 | "725"/$7.ccls. and ((request$5 download$5 query$5) with (market adj (data statistics research))) | US-PGPUB; USPAT | OR | ON | 2005/11/18 17:24 |
| S94 | 1 | "6233523".pn. | US-PGPUB; USPAT | OR | ON | 2005/11/18 17:24 |

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

ROGER PITT
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
599 LEXINGTON AVENUE
33RD FLOOR
NEW YORK NY 10022-6030

**COPY MAILED**

AUG 2 1 2006

**OFFICE OF PETITIONS**

In re Application of                    :
Stiliadis                               :
Application No.  09/840,283             :     DECISION ON PETITION
Filed:  April 23, 2001                  :     TO WITHDRAW
Attorney Docket No.  NS2                :     FROM RECORD
                                        :

This is a decision on the Request to Withdraw as attorney or agent of record under 37 C.F.R. § 1.36(b), filed April 24, 2006.

The request is **NOT APPROVED**.

A grantable request to withdraw as attorney/agent of record must be signed by every attorney/agent seeking to withdraw or contain a clear indication that one attorney is signing on behalf of another/others.  A request to withdraw will not be approved unless at least 30 (thirty) days would remain between the date of approval and the later of the expiration date of a time to file a response or the expiration date of the maximum time period which can be extended under 37 C.F.R. § 1.136(a).

The Office cannot approve the request at this time since the reasons provided do not meet any of the conditions under the mandatory or permissive categories enumerated in 37 CFR 10.40. Section 10.40 of Title 37 of the Code of Federal Regulation states, "[a] practitioner shall not withdraw from employment in a proceeding before the Office without permission from the Office[.]"  More specifically, 37 CFR 10.40 states, "[i]f paragraph (b) of this section is not applicable, a practitioner may not request permission to withdraw in matter pending before the Office unless such request or such withdrawal is" for one the permissive reasons listed in 37 CFR 10.40(c).   The reasons set forth in the request, "the attached copy of written instructions from an overseas representative of the assignee", does not meet any the conditions set forth in 37 CFR 10.40.

In order to request or take action in a patent matter, the assignee must establish its ownership of the patent to the satisfaction of the Director.  In this regard, a Statement under 37 CFR 3.73(b) must have either:  (i) documentary evidence of a chain of title from the original owner to the

Application No. 09/840,283                                                                    Page 2

assignee (*e.g.*, copy of an executed assignment), and a statement affirming that the documentary evidence of the chain of title from the original owner to the assignee was or concurrently is being submitted for recordation pursuant to § 3.11; or (ii) a statement specifying where documentary evidence of a chain of title from the original owner to the assignee is recorded in the assignment records of the Office (*e.g.*, reel and frame number).

All future communications from the Office will continue to be directed to the above-listed address until otherwise notified by applicant.

Telephone inquiries concerning this decision should be directed to April Wise at 571-272-1642.

David Buco
Petitions Examiner
Office of Petitions

cc:    Anthony H. Handal, ESQ.
       Brown, Rudnick, Berlack & Israels, LLP
       Seven Times Square
       New York, NY 10036

2

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710        7590        08/23/2006

BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA  02111

| EXAMINER |
|---|
| MA, JOHNNY |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

DATE MAILED: 08/23/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Johnny Ma | 2623 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>24 May 2006</u>.
2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-23</u> is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-23</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.
10) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   a) ☐ All  b) ☐ Some * c) ☐ None of:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1) ☐ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail. Date. _____ .
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

Application/Control Number: 09/840,283                                    Page 2
Art Unit: 2623

## DETAILED ACTION

It is noted that applicant does not traverse the examiner's assertion of official notice,

therefore the well-known in the art statements that it is: well known in the art for patrons to pay

an admission fee to attend presentations at a movie theater; that both the concepts and

advantages of using e-mail in business transaction are well known and expected in the art; that

both the concepts and advantages of using publicly reported data are well known and expected in

the art; well known in the art to store billing information in a database; are taken to be admitted

prior art.

### *Response to Arguments*

1.      Applicant's arguments with respect to claims 1-23 have been considered but are moot in

view of the new ground(s) of rejection.

### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

3.      Claims 1, 2, 6, and 7 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Hunter (US 2002/0162113 A1 of record) in further view of Bernard et al. (US 5,918,213 of

record), and Tivix – The fully-integrated, global, on-line TV program marketplace ("Tivix,"

Applicant submitted prior art "18").

As to claim 1, note the Hunter reference that discloses a system permitting the display of

video or still image content on selected displays of an electronic display network according to

Application/Control Number: 09/840,283                                    Page 3
Art Unit: 2623

customer dictates wherein the Hunter reference discloses "[f]ollowing scheduling and

purchasing, the customer-ordered movie is transmitted to a server 300 associated with the

customer's movie theater" (Hunter [0060]). The claimed "receiving multimedia material […]

from a producer or owner of said multimedia material" is met by "the operators of digital movie

theaters have ongoing, continuous access to tens of thousands of movies that can be ordered in

digital form for display on selected 'screens' at their theaters at selected times" (Hunter [0013])

through a central information processing station (Hunter [0060]) wherein the movies originate

from a movie producer or content owner (Hunter [0063]). Note it is inherent that the central

processing station receive the multimedia material from the producer or owner of said material in

order for the central processing station to make the material available for purchase by movie

theater operators. Further note, the Hunter reference discloses a method of advertising (Hunter

[0012]) but is silent as to the utilization of associated advertisements. Now note the Tivis

reference that teaches "[a]fter purchasing a title, buyers can quickly, conveniently download

photos, scripts, music cue sheets, program synopses and cast bios [and] [a]uthorized buyers have

access to digitized program press kits, including photos, video promos, advertising, radio spots

and more" (Tivix, pg. 4). Therefore, the examiner submits that it would have been obvious to

one of ordinary skill in the art at the time the invention was made to modify the Hunter central

processing station for storing and selling movies with the Tivix associated advertisements for the

purpose of providing a buyer of the movies with advertising material in order to market the

purchased movie for achieving higher profitability from the purchased movie. Note that the

claimed "receiving […] associated advertising material" is met by the Hunter and Tivix

combination as discussed above wherein it is inherent that the advertising material be received

by the central processing station in order for it to be distributed. The claimed "storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format" is met by the Hunter and Tivix combination as discussed above wherein the central processing station stores data in digital form. The claimed "providing a server system accessible over a communication network" is met by "[a]customer of system 220, a responsible party representing the movie theater and referred to herein as a movie theater operator, may access a central information processing station of the system via the Internet through a Customer Interface Web Server 240" (Hunter [0060]). The claimed "said producer or owner being linked with the server system" is met by the provision of material by the producer or owner as discussed above. The claimed "said server system accessing said digital format from said computer readable storage medium for transfer over said communication network" is met by "[f]ollowing scheduling and purchasing, the customer-ordered movie is transmitted to a server 300 associated with the customer's movie theater" (Hunter 0061]) wherein the transmission of content may occur via the Internet (Hunter [0062, 0024-0033]). Further note, the Hunter reference discloses "[f]ollowing access, the customer reviews options concerning his order by reviewing the available movies through a review Available Movies and Purchase module 260 that permits the customer to see what movies are available" (Hunter [0060]). However, the Hunter reference is silent as to providing samples. Now note the Bernard et al. reference that discloses a system and method for automated remote previewing and purchasing of music, video, software, and other multimedia products. The claimed "providing samples of said digital format from said server system over said communication network to potential purchasers, said purchasers being linked to the server system" is met by "where the product is movies, the purchaser can select a particular

Application/Control Number: 09/840,283                                    Page 5
Art Unit: 2623

movie to preview before actually purchasing or renting the movie. In this scenario, a sample

portion of the movie, or an actual preview, is provided to the customer for his or her sampling"

(Bernard 3:30-36). Therefore, the examiner submits that it would have been obvious to one of

ordinary skill in the art at the time the invention was made to modify the Hunter reviewing of

available movies with the Bernard et al. previewing of movies so "users can sample portions of

selected title to determine whether or not it is a product they would actually like to...purchase"

(Bernard 3:23-29). The claimed "downloading upon request of said purchasers, over said

communication network, said digital format of said multimedia material from said server

system" is met by the Hunter and Tivix combination as discussed above wherein "[f]ollowing

scheduling and purchasing, the customer-ordered movie is transmitted to a server 300 associated

with the customer's movie theater" (Hunter [0061]). The claimed "providing said digital format

of said advertising material to said purchasers from said server system over said communication

network allowing purchasers to locally market and sell said multimedia material" is met by the

Hunter and Tivix combination as discussed above teaching the central processing station

providing movies and associated advertising in digital format wherein " [a]uthorized buyers have

access to digitized program press kits, including photos, video promos, advertising, radio spots

and more" (Tivix, pg. 4). The claimed "wherein purchaser is an exhibitor exhibiting said

multimedia material in a public theater to a number of individuals" is met by "[a] customer of

system 220, a responsible party representing the movie theater and referred to herein as a movie

theater operator, may access a central information processing station of the system...that permits

the customer to see what movies are available, and thereafter schedule and purchase a movie for

display utilizing one or more of the customer's electronic movie display devices 230" (Hunter

Application/Control Number: 09/840,283                                    Page 6
Art Unit: 2623

[0060]).  However, the Hunter reference does not specifically disclose "in exchange for a paid

admission or a broadcast exhibitor."  Nevertheless, the examiner gives Official Notice that it is

notoriously well known in the art for patrons to pay an admission fee to attend presentations at a

movie theater so that a movie theater may generate revenue and thus continue to provide

screening services to patrons.  Therefore, the examiner submits that it would have been obvious

to one of ordinary skill in the art at the time the invention was made to modify the Hunter movie

theater presentation accordingly for the above stated advantages.

     As to claim 2, please see rejection of claim 1.

     As to claim 6, the claimed "including downloading digital material from said server

system for digital display to an audience" is met by "means for transmitting digital movie

content to the movie theaters…The server (storage device) at each movie theater is programmed

at the time the theater owner places an order for a movie to receive and store the particular movie

when it is transmitted so that it can be available for screening at the theater at the desired time"

(Hunter [0062]).

     As to claim 7, the claimed "including providing downloadable advertising materials on

said server system" is met by the Hunter and Tivix combination as discussed in the rejection of

claim 1, wherein advertising content is transmitted to the movie theater (Hunter [0021,0023]).

4.    Claims 3-5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Bernard et al. (US 5,918,213 of record), Tivix –

The fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted

prior art "18"), and Guido et al. (US 5,924,013 of record).

Application/Control Number: 09/840,283                                          Page 7
Art Unit: 2623

As to claim 3, the claimed "wherein receiving multimedia material includes receiving non-digital media selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape."  Note, the Hunter reference discloses "[t]he movie theater operator is a customer of a system that permits the customer to review movies that are available in digital form and thereafter schedule and purchase a movie for display on the digital movie screens located at the customer's theater" (Hunter [0013]).  However, the Hunter reference is silent as to the medium over which such multimedia material is received.  Now note the Guido et al. reference that discloses "wherein receiving multimedia material includes receiving non-digital media [selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape]" wherein "[t]he central site  includes a converter 8 which converts each frame of cinemagraphic movie film into a corresponding collection of digital data" (Guido 3:41-43) for storage (Guido 3:41-62; 6:1-3).  Therefore, the examiner submits that it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the Hunter available movies from a central location with the Guido et al. receipt and processing of celluloid media for the purpose of providing a medium for transferring multimedia material to the central location for purchase by movie theater operators.

As to claim 4, the claimed "including the step of digitizing said non-digital media for storage on said computer readable storage medium" is met by that discussed in the rejection of claim 3.

As to claim 5, the claimed "including providing a server system accessible over a public communication system" is met by that discussed in the rejection of claim 1 wherein the Guido et

Application/Control Number: 09/840,283                                                    Page 8
Art Unit: 2623

al. reference discloses server access over a public or private telephone network" (Guido 4:36-38).

5.      Claims 8 and 9 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US 2002/0162113 A1) in further view of Tivix – The fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted prior art "18"), Bernard et al. (US 5,918,213), Sprogis (US 2004/0093608 A1), and Vinson et al. (US 2003/0172374 A1).

        As to claim 8, the claimed "further comprising collecting […] information from exhibitor recipients of said multimedia material" is met by "[t]he operating system preferably has a modem that may be queried by the system's billing system on a periodic basis to bill the account" (Hunter [0063]) "[t]he system may also include means for generating royalty payment information for use in paying the content providers for the display of their movies" (Hunter [0013]).  However, the Hunter reference does not specifically disclose that the collected information comprises sales information.  Now note the Sprogis reference that discloses collecting box office sales information to calculate audience exposure and for billing purposes (Sprogis [0029]).  Therefore, the examiner submits that it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the Hunter collecting of information for billing with the Sprogis collection of ticket sales for the purpose providing accurate royalty payments to producers based on actual consumer consumption.  Further note, the Hunter reference discloses "[i]nformation from verification archives module 150 is utilized by a demographic analysis module 170 to generate information for reports to be sent to customers after their advertisements have run" (Hunter [0036]).  The Hunter and Sprogis combination teaches maintaining sales information.  However, the Hunter reference is silent as to

Application/Control Number: 09/840,283                                                Page 9
Art Unit: 2623

"and providing sales and marketing data based upon information from said users of said server

system." Now note the Vinson et al. reference that discloses providing viewing behaviors data to

users upon request (Vinson [0018,0089]). Therefore, the examiner submits that it would have

been obvious to one of ordinary skill in the art at the time the invention was made to modify the

Hunter and Sprogis sales data with the Vinson et al. reporting of viewing behaviors data for the

purpose of providing the movie theater operator marketing information in which to make better

business decisions regarding the scheduling and selection of motion pictures to present.

　　　As to claim 9, the claimed "including providing marketing data based upon actual users

of said server system" is met by that discussed in the rejection of claim 8.

6.　　　Claims 10-11 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Sood (US 6,233,523 of record) and Tivix – The

fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted prior art

"18").

　　　As to claim 10, note the Hunter reference that teaches a system permitting the display of

video or still image content on selected displays of an electronic display network according to

customer dictates. The claimed "transferring said digital formats to a theater via a

communications network and storing said digital formats on a computer readable memory

located at said theater" is met by "[f]ollowing scheduling and purchasing, the customer-ordered

movie is transmitted to a server 300 associated with the customer's movie theater" (Hunter

[0061]) and the downloading of advertising to server 100 (Hunter [0023]). The claimed

"projecting said movie in said digital format using a digital projector onto a screen for display to

an audience" is met by "[t]he movie theater operator is a customer of a system that permits the

Application/Control Number: 09/840,283                                      Page 10
Art Unit: 2623

customer to review movies that are available in digital form and thereafter schedule and purchase

a movie for display on the digital movie screens located at the customer's movie theater" (Hunter

[0013]). Further note, the Hunter reference teaches "[a] customer of system 220, a responsible

party representing the movie theater operator, may access a central information processing

station of the system" for purchasing movies (Hunter [0060]). However, the Hunter reference is

silent as to the method movies are obtained by the central information processing station.

Now note the Sood reference that teaches a method for converting data on a celluloid into a

digital format teaching receipt of celluloid film which is digitized at a later point in time (Sood

3:40-45) which meets the claimed "receiving a movie on celluloid" and "scanning said movie

and converting it into a digital format." Therefore, the examiner submits that it would have been

obvious to one of ordinary skill in the art at the time the invention was made to modify the

Hunter central information processing station for storing a plurality of movies in digital format

with the Sood receipt of celluloid film and digitization for the purpose of providing a source and

method for acquiring movies for sale from the central processing station. However, the Hunter

and Sood combination is silent as to the receipt of associated advertising material. Now note the

Tivis reference that teaches "[a]fter purchasing a title, buyers can quickly, conveniently

download photos, scripts, music cue sheets, program synopses and cast bios [and] [a]uthorized

buyers have access to digitized program press kits, including photos, video promos, advertising,

radio spots and more" (Tivix, pg. 4). Therefore, the examiner submits that it would have been

obvious to one of ordinary skill in the art at the time the invention was made to modify the

Hunter central processing station for storing and selling movies with the Tivix associated

advertisements for the purpose of providing a buyer of the movies with advertising material in

Application/Control Number: 09/840,283                                      Page 11
Art Unit: 2623

order to market the purchased movie for achieving higher profitability from the purchased

movie. Note that the claimed "receiving [...] associated advertising material" is met by the

Hunter and Tivix combination as discussed above wherein it is inherent that the advertising

material be received by the central processing station in order for it to be distributed.

As to claim 11, note the Hunter reference that teaches a system permitting the display of

video or still image content on selected displays of an electronic display network according to

customer dictates. The claimed "a first central processing unit" and "a first memory associated

with said first central processing unit" are met by "[a] customer of system 220, a responsible

party representing the movie theater and referred to herein as a movie theater operator, may

access a central information processing station of the system via the Internet through a Customer

Interface Web Server 240" for accessing a plurality of available movies stored in digital form

(Hunter [0060, 0013]) wherein a central processing unit and memory are inherent to the web

server device. The claimed "a communications network accessible by said first central

processing unit for transferring data into and out of said first memory" is met by the transmission

of digital movie content to the movie theaters via a communications network such as the Internet

(Hunter [0062, 0024-0033]). The claimed "an input device connected for data transfer to said

first central processing unit," "said input device receiving multimedia material," "and

transferring said materials into said first memory in a digital format via said central processing

unit" is met by the central information processing station that stores a plurality of movies in

digital form (Hunter [0060]) wherein an input device is inherent to the central processing station

in order to provide digital content movies to movie theater operators. However, the Hunter

reference is silent as to the receipt of associated advertising material. Now note the Tivis

Application/Control Number: 09/840,283                                    Page 12
Art Unit: 2623

reference that teaches "[a]fter purchasing a title, buyers can quickly, conveniently download

photos, scripts, music cue sheets, program synopses and cast bios [and] [a]uthorized buyers have

access to digitized program press kits, including photos, video promos, advertising, radio spots

and more" (Tivix, pg. 4). Therefore, the examiner submits that it would have been obvious to

one of ordinary skill in the art at the time the invention was made to modify the Hunter central

processing station for storing and selling movies with the Tivix associated advertisements for the

purpose of providing a buyer of the movies with advertising material in order to market the

purchased movie for achieving higher profitability from the purchased movie. Note that the

claimed "said input device receiving [...] associated advertising material" is met by the Hunter

and Tivix combination as discussed above wherein it is inherent that the advertising material be

received by the central processing station in order for it to be distributed. The claimed "a second

central processing unit" and "a second memory, said second memory associated with said second

central processing unit" are met by server 300 associated with the customer's movie theater

(Hunter [0061]). The claimed "said communications network being accessible by said second

central processing unit for transferring said digital format into and out of said second memory" is

met by the communications network for receiving the movie at the server associated with a

movie theater and the communications network for display of the movie onto the display (Hunter

[0061, 0065-0069, 0013]. The claimed "a digital feature film projector in data communication

with said second central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience" is met by a digital feature film projector connected to

server 300 for display of the movie (Hunter [0061, 0065-0069, 0013]). The claimed "said

feature film being stored in said digital format in said second memory after being transferred via

Application/Control Number: 09/840,283                                    Page 13
Art Unit: 2623

said communications network from said first memory" is met by "[f]ollowing scheduling and

purchasing, the customer-ordered movie is transmitted to a server 300 associated with the

customer's movie theater" (Hunter [0061]) wherein a memory is inherent to the receipt of the

transmitted movie by server 300.

7.      Claims 12-18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Guido et al. (US 5,924,013 of record), and Tivix

– The fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted

prior art "18").

        As to claim 12, note the Hunter reference that discloses a system permitting the display of

video or still image content on selected displays of an electronic display network according to

customer dictates wherein "[f]ollowing scheduling and purchasing, the customer-ordered movie

is transmitted to a server 300 associated with the customer's movie theater" (Hunter [0060]).

The claimed  "receiving multimedia material from a producer or owner of said multimedia

material"  is met by input module 470 "also serving to transmit movies in digital form to movie

theaters having a server 100M and electronic movie display devices 30" (Hunter [0070]) wherein

the movies originate from a movie producer or content owner (Hunter [0063]).  Further note, the

Hunter reference discloses "[a]ccording to this embodiment of the invention, input module 470

transmits advertising content to displays 30..while also serving to transmit movies" (Hunter

[0070]) wherein "the customer transmits the advertising content…for receipt by the system's

Video & Still Image Review and Input module 70" (Hunter [0022]) and "[t]he video & still

image review and input module 70 permits a system security employee to conduct a content

review…prior to the content being read to the server 100 associated with each display 30 where

Application/Control Number: 09/840,283                                    Page 14
Art Unit: 2623

the content being transmitted to the server 100 will be displayed" (Hunter [0023]). However, the

Hunter reference does not specifically disclose that the input module 470 is a server. Now note

the Guido et al. reference that discloses a method and apparatus for transmitting motion picture

cinematic information for viewing in movie theaters and ordering method thereof. The claimed

storing material on a computer readable storage medium is met by central site 2 includes a digital

storage unit 14 for storing movies (Guido 3:37-62). The claimed "providing a server system

accessible over a communication network" is met by "[t]o order a movie, the second computer

40 initiates communication with the first computer 12 at the central site 2 via a communication

network 50" (Guido 4:36-38). The claimed said server system accessing data from said

computer readable storage medium for transfer of said material in a digital format from said

server system over said communication network is met by the transmission of the movie from

central site to second computer wherein it is inherent that the stored movie be read from digital

storage for transmission (Guido 3:49-62; 54-5:33). Therefore, the examiner submits that it

would have been obvious to one of ordinary skill in the art at the time the invention was made to

modify the Hunter input module 470 for providing movies and advertising to a movie theater

with the Guido et al. server for providing movie and advertising material for the purpose of

providing a well known mechanism for providing content to a requesting entity. The claimed

"said server system accessing said advertising material from said computer readable storage

medium for transfer of said advertising material in a digital format from said server system over

said communication network" is met by the Hunter and Guido et al. combination as discussed

above wherein advertisements are provided to the movie theater via a server. Note, the Hunter

and Guido et al. combination discloses storing advertising material on a computer readable

Application/Control Number: 09/840,283                                Page 15
Art Unit: 2623

storage, as discussed above. Furthermore, the Hunter reference discloses "commercial

advertisers, such as consumer product companies and the advertising agents that represent them,

directly access a network of multiple, large, high resolution electronic displays located in high

traffic areas and directly send their own advertisement electronically to the network to be

displayed at locations and times selected by the advertisers" (Hunter [0012]) wherein "[t]he

displays may be located in...movie theaters" (Hunter [0021]). However, the Hunter reference

does not specifically disclose that the advertisements are associated with the multimedia

material. Now note the Tivis reference that teaches "[a]fter purchasing a title, buyers can

quickly, conveniently download photos, scripts, music cue sheets, program synopses and cast

bios [and] [a]uthorized buyers have access to digitized program press kits, including photos,

video promos, advertising, radio spots and more" (Tivix, pg. 4). Therefore, the examiner

submits that it would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the Hunter advertising in movie theaters with the Tivix associated

advertisements for the purpose of raising consumer awareness about movies currently being

presented at the movie theater and motivate consumption. . Note that the claimed "receiving

[...] associated advertising material" is met by the Hunter and Tivix combination as discussed

above wherein it is inherent that the advertising material be received by the central processing

station in order for it to be distributed. The claimed "establishing an account for a broadcast or

live theater exhibitor" is met by "[t]he customer interface web server has a commerce engine and

permits the customer to obtain and enter security code and billing code information into a

Network Security Router/Access module 50...Following access..." (Hunter [0060]). The

claimed "providing said multimedia material to said exhibitor" is met by "[f]ollowing scheduling

Application/Control Number: 09/840,283                                    Page 16
Art Unit: 2623

and purchasing, the customer-ordered movie is transmitted to a server 300 associated with the

customer's movie theater" (Hunter [0061]). The claimed "downloading said advertising material

[…] over said server system" is met by the Hunter, Guido et al., and Tivix. combination as

discussed above wherein "the [advertising] content being read to the server 100 associated with

each display 30 where the content being transmitted to the server 100 will be displayed" (Hunter

[0023]). The claimed "[downloading said advertising material] upon request from said customer

for said advertising material" is met by the Hunter and Tivix combination as discussed above

wherein the Tivix reference teaches granting access to associated advertisements to the purchaser

of the movie. The claimed "following up to determine information necessary to calculate an

amount owed by said customer for said multimedia material" and "charging the account of said

exhibitor with the amount owed" are met by "[t]he operating system preferably has a modem that

may be queried by the system's billing system on a periodic basis to bill the account" (Hunter

[0063]) wherein "[t]he system may also include means for generating royalty payment

information for use in paying the content providers for the display of their movies" (Hunter

[0013]).

As to claim 13, the claimed "including receiving multimedia material by downloading via

said communication network" is met by that discussed in the rejection of claim 12.

As to claim 14, the claimed "wherein receiving multimedia material includes receiving

non-digital media [selected from the group consisting of celluloid media, printed media, video

cassettes, and audio tape]." Note, the Hunter reference discloses "[t]he movie theater operator is

a customer of a system that permits the customer to review movies that are available in digital

form and thereafter schedule and purchase a movie for display on the digital movie screens

Application/Control Number: 09/840,283                                Page 17
Art Unit: 2623

located at the customer's theater" (Hunter [0013]).  However, the Hunter reference is silent as to
the medium over which such multimedia material is received.  Now note the Guido et al.
reference that discloses "wherein receiving multimedia material includes receiving non-digital
media [selected from the group consisting of celluloid media, printed media, video cassettes, and
audio tape]" wherein "[t]he central site  includes a converter 8 which converts each frame of
cinemagraphic movie film into a corresponding collection of digital data" (Guido 3:41-43) for
storage (Guido 3:41-62; 6:1-3).  Therefore, the examiner submits that it would have been
obvious to one of ordinary skill in the art at the time the invention was made to modify the
Hunter available movies from a central location with the Guido et al. receipt and processing of
celluloid media for the purpose of providing a medium for transferring multimedia material to
the central location for purchase by movie theater operators.  The claimed "and wherein said
multimedia material is provided to said exhibitor using an electronic communications network"
is met by that discussed in the rejection of claim 12.

     As to claim 15, the claimed "wherein said follow-up is implemented by sending an e-mail
to said exhibitor."  Hunter does not expressly teach said follow-up is implemented by sending an
e-mail to said customer.  However, Official Notice (MPEP § 2144.03) is taken that both the
concepts and advantages of using e-mail in business transaction are well known and expected in
the art.  At the time the invention was made, it would have been obvious to one with ordinary
skill in the art to have used email to follow up with the customer because email is a fast and cost
effective method of communication when Internet service is available.

     As to claim 16, the claimed "wherein said follow-up is implemented by consulting
publicly reported data respecting said exhibitor.  The Hunter reference does not expressly teach

Application/Control Number: 09/840,283                                    Page 18
Art Unit: 2623

said follow-up is implemented by consulting publicly reported data respecting said customer.

However, Official Notice (MPEP § 2144.03) is taken that both the concepts and advantages of

using publicly reported data are well known and expected in the art. At the time the invention

was made, it would have been obvious to one with ordinary skill in the art to have implemented a

follow up by consulting publicly reported data respecting said customer's publicly listed

telephone number or address publicly reported data (such as a listed phone number or mailing

address) are reliable means of communication in a business transaction.

        As to claim 17, the claimed "further comprising providing advertising material to

purchasers over said communication network" is met by that discussed in the rejection of claim

12 wherein advertising is provided via a server. The claimed "and exhibitors to locally market

and sell said multimedia material" is met by Hunter et al., Guido et al., and Tivix combination

wherein advertisements are displayed in movie theaters (Hunter [0021,0023]).

        As to claim 18, the claimed "further comprising querying said exhibitor to stimulate the

sending of data from said exhibitor" is met by "[t]he operating system preferably has a modem

that may be queried by the system's billing system on a periodic basis to bill the account"

(Hunter [0063]). However, the Hunter reference does not specifically disclose recording said

data into a database. Nevertheless, the examiner gives Official Notice that it is notoriously well

known in the art to store billing information in a database for the purpose of record keeping and

to maintain the data in a readily accessible manner to generate bills to clients. Therefore, the

examiner submits that it would have been obvious to one of ordinary skill in the art at the time

the invention was made to modify the Hunter billing collection accordingly for the above stated

advantages.

Application/Control Number: 09/840,283                                    Page 19
Art Unit: 2623

8.      Claims 19-20 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Guido et al. (US 5,924,013 of record), Tivix –

The fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted

prior art "18"), Sprogis (US 2004/0093608 A1 of record), and Vinson et al. (US 2003/0172374

A1 of record).

        As to claim 19, the claimed "comprising providing marketing data recorded in said

database to customers in response to a query from a exhibitor." The Hunter reference discloses

"[t]he operating system preferably has a modem that may be queried by the system's billing

system on a periodic basis to bill the account" (Hunter [0063]) "[t]he system may also include

means for generating royalty payment information for use in paying the content providers for the

display of their movies" (Hunter [0013]). However, the Hunter reference does not specifically

disclose that the collected information comprises sales information. Now note the Sprogis

reference that discloses collecting box office sales information to calculate audience exposure

and for billing purposes (Sprogis [0029]). Therefore, the examiner submits that it would have

been obvious to one of ordinary skill in the art at the time the invention was made to modify the

Hunter collecting of information for billing with the Sprogis collection of ticket sales for the

purpose providing accurate royalty payments to producers based on actual consumer

consumption. Further note, the Hunter reference discloses "[i]nformation from verification

archives module 150 is utilized by a demographic analysis module 170 to generate information

for reports to be sent to customers after their advertisements have run" (Hunter [0036]). The

Hunter and Sprogis combination teaches maintaining sales information. However, the Hunter

reference is silent as to "comprising providing marketing data recorded in said database to

Application/Control Number: 09/840,283                                          Page 20
Art Unit: 2623

customers in response to a query from a exhibitor." Now note the Vinson et al. reference that

discloses providing viewing behaviors data to users upon request (Vinson [0018,0089]).

Therefore, the examiner submits that it would have been obvious to one of ordinary skill in the

art at the time the invention was made to modify the Hunter and Sprogis sales data with the

Vinson et al. reporting of viewing behaviors data for the purpose of providing the movie theater

operator marketing information in which to make better business decisions regarding the

scheduling and selection of motion pictures to present.

As to claim 20, the claimed "including providing marketing data based upon actual users

of said server system," please see rejection of claim 19.

9.      Claim 21 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Bernard et al. (US 5,918,213 of record), Tivix –

The fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted

prior art "18"), and Sprogis (US 2004/0093608 A1 of record).

As to claim 21, note the Hunter reference that discloses a system permitting the display of

video or still image content on selected displays of an electronic display network according to

customer dictates. The claimed "receiving multimedia material [...] from a producer or owner of

said material" is met by "the operators of digital movie theaters have ongoing, continuous access

to tens of thousands of movies that can be ordered in digital form for display on selected

'screens' at their theaters at selected times" (Hunter [0013]) through a central information

processing station (Hunter [0060]) wherein the movies originate from a movie producer or

content owner (Hunter [0063]). Note it is inherent that the central processing station receive the

multimedia material from the producer or owner of said material in order for the central

Application/Control Number: 09/840,283                                    Page 21
Art Unit: 2623

processing station to make the material available for purchase by movie theater operators.

Further note, the Hunter reference discloses a method of advertising (Hunter [0012]) but is silent

as to the utilization of associated advertisements.  Now note the Tivis reference that teaches

"[a]fter purchasing a title, buyers can quickly, conveniently download photos, scripts, music cue

sheets, program synopses and cast bios [and] [a]uthorized buyers have access to digitized

program press kits, including photos, video promos, advertising, radio spots and more" (Tivix,

pg. 4).  Therefore, the examiner submits that it would have been obvious to one of ordinary skill

in the art at the time the invention was made to modify the Hunter central processing station for

storing and selling movies with the Tivix associated advertisements for the purpose of providing

a buyer of the movies with advertising material in order to market the purchased movie for

achieving higher profitability from the purchased movie.  Note that the claimed "receiving [...]

associated advertising material" is met by the Hunter and Tivix combination as discussed above

wherein it is inherent that the advertising material be received by the central processing station in

order for it to be distributed.  The claimed "storing said multimedia material and associated

advertising material on a computer readable storage medium in a digital format" is met by the

Hunter and Tivix combination as discussed above.  The claimed "providing a server system

accessible over a communication network" is met by "[a]customer of system 220, a responsible

party representing the movie theater and referred to herein as a movie theater operator, may

access a central information processing station of the system via the Internet through a Customer

Interface Web Server 240" (Hunter [0060]).  The claimed "said producer or owner being linked

with the server system" is met by the provision of material by the producer or owner as discussed

above.  The claimed "said server system accessing said digital format from said computer

Application/Control Number: 09/840,283                                    Page 22
Art Unit: 2623

readable storage medium for transfer over said communication network" is met by "[f]ollowing

scheduling and purchasing, the customer-ordered movie is transmitted to a server 300 associated

with the customer's movie theater" (Hunter 0061]) wherein the transmission of content may

occur via the Internet (Hunter [0062, 0024-0033]). Further note, the Hunter reference discloses

"[f]ollowing access, the customer reviews options concerning his order by reviewing the

available movies through a review Available Movies and Purchase module 260 that permits the

customer to see what movies are available" (Hunter [0060]). However, the Hunter reference is

silent as to providing samples. Now note the Bernard et al. reference that discloses a system and

method for automated remote previewing and purchasing of music, video, software, and other

multimedia products. The claimed "providing samples of said digital format from said server

system over said communication network to potential purchasers, said purchasers being linked to

the server system" is met by "where the product is movies, the purchaser can select a particular

movie to preview before actually purchasing or renting the movie. In this scenario, a sample

portion of the movie, or an actual preview, is provided to the customer for his or her sampling"

(Bernard 3:30-36). Therefore, the examiner submits that it would have been obvious to one of

ordinary skill in the art at the time the invention was made to modify the Hunter reviewing of

available movies with the Bernard et al. previewing of movies so "users can sample portions of

selected title to determine whether or not it is a product they would actually like to...purchase"

(Bernard 3:23-29). The claimed "downloading upon request of said purchasers, over said

communication network, said digital format of said multimedia material from said server

system" is met by the Hunter and Tivix combination as discussed above wherein "[f]ollowing

scheduling and purchasing, the customer-ordered movie is transmitted to a server 300 associated

Application/Control Number: 09/840,283                                    Page 23
Art Unit: 2623

with the customer's movie theater" (Hunter [0061]).  Further note, the Hunter reference discloses

"[t]he system may also include means for generating royalty payment information for use in

paying the content providers for the display of their movies" (Hunter [0013]).  Note the Hunter

reference discloses "[t]he operating system preferably has a modem that may be queried by the

system's billing system on a periodic basis to bill the account" (Hunter [0063]) "[t]he system

may also include means for generating royalty payment information for use in paying the content

providers for the display of their movies" (Hunter [0013]).  However, the Hunter reference does

not specifically disclose "querying said customer to stimulate the sending of ticket sales data

from said customer.".  Now note the Sprogis reference that discloses collecting box office sales

information to calculate audience exposure and for billing purposes (Sprogis [0029]).  Therefore,

the examiner submits that it would have been obvious to one of ordinary skill in the art at the

time the invention was made to modify the Hunter collecting of information for billing with the

Sprogis collection of ticket sales for the purpose providing accurate royalty payments to

producers based on actual consumer consumption.  However, the Hunter reference does not

specifically disclose recording said data into a database.  Nevertheless, the examiner gives

Official Notice that it is notoriously well known in the art to store billing information in a

database for the purpose of record keeping and to maintain the data in a readily accessible

manner to generate bills to clients.  Therefore, the examiner submits that it would have been

obvious to one of ordinary skill in the art at the time the invention was made to modify the

Hunter billing collection accordingly for the above stated advantages.

10.    Claim 22 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Bernard et al. (US 5,918,213 of record), Tivix –

Application/Control Number: 09/840,283                                         Page 24
Art Unit: 2623

The fully-integrated, global, on-line TV program marketplace ("Tivix," Applicant submitted

prior art "18"), Sprogis (US 2004/0093608 A1 of record), and Vinson et al. (US 2003/0172374

A1 of record).

    As to claim 22, the claimed "comprising providing marketing data recorded in said

database to customers in response to a query from a customer."  Note, the Hunter reference

discloses "[i]nformation from verification archives module 150 is utilized by a demographic

analysis module 170 to generate information for reports to be sent to customers after their

advertisements have run" (Hunter [0036]).  The Hunter and Sprogis combination teaches

maintaining sales information.  However, the Hunter reference is silent as to "comprising

providing marketing data recorded in said database to customers in response to a query from a

customer."  Now note the Vinson et al. reference that discloses providing viewing behaviors data

to users upon request (Vinson [0018,0089]). Therefore, the examiner submits that it would have

been obvious to one of ordinary skill in the art at the time the invention was made to modify the

Hunter and Sprogis sales data with the Vinson et al. reporting of viewing behaviors data for the

purpose of providing the movie theater operator marketing information in which to make better

business decisions regarding the scheduling and selection of motion pictures to present.

11.    Claim 23 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US

2002/0162113 A1 of record) in further view of Tivix – The fully-integrated, global, on-line TV

program marketplace ("Tivix," Applicant submitted prior art "18") and Bernard et al. (US

5,918,213 of record).

    As for Claim 23, the limitations of Claim 23 fall within the limitations of Claim 11.

Claim 23 is analyzed and rejected as previously show on Claim 11. Claim 23 further

Application/Control Number: 09/840,283                                     Page 25
Art Unit: 2623

requires the limitation of having a third memory domain for receiving market data in

response to an order for said multimedia product. Hunter does not expressly teach

having a third memory domain for receiving market data in response to an order for said

multimedia product. However, in the same field of endeavor, Bernard et al. teach

storing market data in response to an order for a multimedia product. See Bernard et al. col. 4

line 67 - col. 5 line 5 "The system comprises an interface unit which provides

the front-end interface to the customers, an interactive transaction database for storing

important information regarding the system and its customers, and, optionally, a

customer service center for handling special situations which may arise from time to

time with customers." In light of the teaching of Bernard et al., it would have been obvious to

one of ordinary skill in the art at the time the invention was made to have modified the teaching

of Hunter to include a third memory domain for receiving and storing important market data

(such as vital customer information) in response to an order for a multimedia product. One of

ordinary skill in the art would have been motivated to have a third memory domain for storing

market data in order to keep a profile on the customers so the customer's personal preference can

be stored in memory and customers do not have to enter personal information again.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Johnny Ma whose telephone number is (571) 272-7351.  The

examiner can normally be reached on 8:00 am - 5:00 pm.

Application/Control Number: 09/840,283                                      Page 26
Art Unit: 2623

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Chris Kelley can be reached on (571) 272-7331. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

jm

CHRIS KELLEY
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2600

| *Search Notes*  | Application/Control No.<br><br>09840283 | Applicant(s)/Patent Under Reexamination<br><br>STILIADIS, NICHOLAS |
|---|---|---|
| | Examiner<br>Ma, Johnny | Art Unit<br>2623 |

| Notes | Date | Examiner |
|---|---|---|
| Updated Search | 8/18/2006 | jm |
| Updated Search History Attached | 08/18/2006 | jm |

| U.S. Patent and Trademark Office | Part of Paper No.:    20060818 |
|---|---|

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit |
| | Ma, Johnny | 2623 |

| ✓ | **Rejected** | – | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant          ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 8/18/06 | | | | | | | | |
| | 1 | ✓ | | | | | | | | |
| | 2 | ✓ | | | | | | | | |
| | 3 | ✓ | | | | | | | | |
| | 4 | ✓ | | | | | | | | |
| | 5 | ✓ | | | | | | | | |
| | 6 | ✓ | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |
| | 15 | ✓ | | | | | | | | |
| | 16 | ✓ | | | | | | | | |
| | 17 | ✓ | | | | | | | | |
| | 18 | ✓ | | | | | | | | |
| | 19 | ✓ | | | | | | | | |
| | 20 | ✓ | | | | | | | | |
| | 21 | ✓ | | | | | | | | |
| | 22 | ✓ | | | | | | | | |
| | 23 | ✓ | | | | | | | | |



November 16, 2006

MAIL STOP AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Seven
Times
Square
New York
New York
10036
*tel* 212.209.4800
*fax* 212.209.4801

    Re:   Nicholas STILIADIS
          U.S. Patent Application No. 09/840,283   Filed: April 23, 2001
          Atty Docket: NS2 (25804/1)        Conf. No. 3319
          <u>"MULTIMEDIA MARKETING DISTRIBUTION SYSTEM"</u>

SIR:
We enclose herewith:
        [X]    Amendment (6p.);
        [X]    Attachment (1p.); and
        [X]    Acknowledgement Postcard.


        The Commissioner is hereby authorized to charge payment of the fees associated with this communication or credit any overpayment to **Deposit Account No. 500369.**

        The applicant hereby petitions under 37 CFR 1.136 or other applicable rule to have the response period extended the number of months necessary to render the attached communication timely if a petition is required.


                    Respectfully submitted,

                    Anthony H. Handal, Esq.
                    Reg. No. 26,275


I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope, postage prepaid, addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on <u>November 16, 2006.</u>

Anthony H. Handal (Reg. No. 26,275)

Brown Rudnick Berlack Israels LLP   *an international law firm*   Boston | Dublin | Hartford | London | New York | Providence | Washington





**PATENT**
**Docket No.: NS2 (25804/1)**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Nicholas STILIADIS | Group: | 2623 |
| Application No.: | 09/840,283 | Confirmation No.: | 3319 |
| Filed: | April 23, 2001 | Examiner: Johnny MA | |

For: **MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM**

---

**CERTIFICATE OF MAILING**

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to, Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on:

11/6/06
Date

By: _Danielle Gamache_
Danielle Gamache

---

### AMENDMENT

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Examiner:

In response to the Office Action dated August 23, 2006, please consider the following amendments and remarks set forth below. Applicant hereby petitions for any extension of time that may be required to maintain the pendency of this case, and any required fee, for such extension is to be charged to *Deposit Account No. 50-0369.*

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

## IN THE SPECIFICATION:

Please delete the first full paragraph on page 1, starting at line 1 of the present application corresponding to "CROSS-REFERENCE TO RELATED APPLICATIONS," and replace it with the following paragraph:

### CROSS-REFERENCE TO RELATED APPLICATIONS

This patent application claims the benefit of U.S. Provisional Patent Application Serial No. 60/201,118, filed on May 2, 2000, the disclosure of which is hereby incorporated herein by reference thereto.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

# R E M A R K S

This application has been reviewed in light of the Office Action dated August 23, 2006. Claims 1-23 are pending in the application.

Initially, the specification of the present application is amended to correct a typographical error, in connection with the "CROSS-REFERENCE TO RELATED APPLICATIONS" paragraph. Reference to U.S. Provisional Patent Application Serial No. 60/201,118, from the which the present application claims the benefit of priority, is amended to reflect the proper filing date thereof.

In the Office Action, Claims 1, 2, 6 and 7 are rejected under 35 U.S.C. § 103(a) over U.S. Patent Publication No. 2002/0162113 A1 to Hunter (Hunter '0162113) in further view of U.S. Patent No. 5,918,213 to Bernard et al. (Bernard '213) and the publication "TIVIX Product Brochure 'Streamlining'", #18 (date unknown), submitted with Information Disclosure Citation dated August 16, 2001 in the present application (Tivix). However, it is respectfully submitted that the Tivix publication has no indication of date and thus there is no evidence that it is prior art to the present application and as such, the rejection of Claims 1, 2, 6 and 7 should be withdrawn, as discussed below.

With regard to the Tivix publication, this document has no known publication date. Moreover, pursuant to a search of the internet archive website WAYBACKMACHINE, which is displayed from the URL: http://web.archive.org, it appears that the website associated with the URL: www.tivix.com did not exist prior to May 10, 2000 (see attached results from internet archive search).

The effective filing date of the present application is May 2, 2000, based on the priority and proper claim of benefit to U.S. Provisional Patent Application Serial No. 60/201,118. Therefore, the effective filing date of the present application, May 2, 2000, apparently predates the existence of the URL: www.tivix.com and the Tivix publication, which can be no earlier than May 10, 2000.

With regard to this rejection, the Office Action notes "the Hunter reference … is silent as to the utilization of associated advertisements."  The Office Action relies on the Tivix

3

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

publication in an attempt to cure the deficiencies of Hunter '0162113 publication. However, the Tivix publication is not prior art to the present application, as discussed. Accordingly, the present rejection is not proper and must be withdrawn. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claims 3-5 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of the Bernard '213 patent, the TIVIX publication and U.S. Patent No. 5,924,013 to Guido et al. (Guido '013). However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claims 3-5 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claims 8 and 9 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of the TIVIX publication, the Bernard '213 patent, U.S. Patent Publication No. 2004/0093608 to Sprogis (Sprogis '0093608) and U.S. Patent Publication No. 2003/0172374 to Vinson (Vinson '0172374). However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claims 8 and 9 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claims 10-11 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of U.S. Patent No. 6,233,523 to Sood (Sood '523) and the TIVIX publication. However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claims 10-11 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claims 12-18 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of the Guido '013 patent and the TIVIX publication. However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claims 12-18 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

In the Office Action, Claims 19-20 are rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view the Guido '013 patent, the TIVIX publication, the Sprogis '0093608 publication and the Vinson '0172374 publication. However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claims 19-20 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claim 21 is rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of the Bernard '213 patent, the TIVIX publication and the Sprogis '0093608 publication. However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claim 21 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claim 22 is rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of the Bernard '213 patent, the TIVIX publication, the Sprogis '0093608 publication and the Vinson '0172374 publication. However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claim 22 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In the Office Action, Claim 23 is rejected under 35 U.S.C. § 103(a) over the Hunter '0162113 publication in further view of the TIVIX publication and the Bernard '213 patent. However, it is respectfully submitted that the Tivix publication is not prior art to the present application and as such, the rejection of Claim 23 is not proper and must be withdrawn, as discussed. Reconsideration and withdrawal of the rejection are respectfully requested.

In view of the foregoing amendments and remarks, it is respectfully submitted that claims 1-23 presently pending in the application are believed to be in condition for allowance and patentably distinguish over the art of record. An early notice thereof is earnestly solicited.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

If the Examiner should have any questions concerning this communication or feels that an interview would be helpful, the Examiner is requested to call the Applicant's undersigned attorney.

Please charge any deficiency as well as any other fee(s) which may become due at any time during the pendency of this application, or credit any overpayment of such fee(s) to *Deposit Account No. 50-0369*. Also, in the event any extensions of time for responding are required for the pending application(s), please treat this paper as a petition to extend the time as required and charge *Deposit Account No. 50-0369* therefor.

Respectfully submitted,

Dated: _____     By: _____

Anthony H. Handal, Esq.
Reg. No. 26,275
Customer No. 21710
Attorney for Applicant
Brown Rudnick Berlack Israels LLP
Seven Times Square
New York, New York 10036
Tel: 212.209.4942
Fax: 212.209.4801



**INTERNET ARCHIVE**

Enter Web Address: http://    All        Take Me Back    Adv. Search Compare Ar

Searched for **http://tivix.com**                                    **58** Results

\* denotes when site was updated.

# Search Results for Jan 01, 1996 - Nov 14, 2006

| 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 |
|------|------|------|------|------|------|------|------|------|
| 0 | 0 | 0 | 0 | 11 pages | 12 pages | 17 pages | 11 pages | 3 pages |
| pages | pages | pages | pages | | | | | |

|  |  |  |  | May 10, 2000 * | Jan 19, 2001 | Jan 22, 2002 | Feb 06, 2003 * | Nov 30, 2004 * | N |
|--|--|--|--|----------------|--------------|--------------|----------------|----------------|---|
|  |  |  |  | Jun 12, 2000 * | Feb 01, 2001 * | Mar 26, 2002 * | Feb 08, 2003 * | Dec 03, 2004 | N |
|  |  |  |  | Jun 19, 2000 | Feb 01, 2001 * | Mar 31, 2002 | Feb 13, 2003 | Dec 07, 2004 | D |
|  |  |  |  | Jul 11, 2000 * | Mar 31, 2001 * | Apr 01, 2002 * | Feb 13, 2003 * | | |
|  |  |  |  | Jul 11, 2000 * | Apr 01, 2001 | May 28, 2002 * | Mar 23, 2003 | | |
|  |  |  |  | Jul 11, 2000 * | Apr 02, 2001 | May 29, 2002 * | Mar 24, 2003 * | | |
|  |  |  |  | Aug 16, 2000 | Apr 05, 2001 | Jun 02, 2002 | Apr 05, 2003 | | |
|  |  |  |  | Oct 02, 2000 | Apr 19, 2001 | Jul 21, 2002 * | Apr 08, 2003 * | | |
|  |  |  |  | Nov 10, 2000 * | May 17, 2001 * | Aug 02, 2002 | May 24, 2003 | | |
|  |  |  |  | Nov 17, 2000 * | Jul 21, 2001 * | Aug 10, 2002 * | Jun 02, 2003 | | |
|  |  |  |  | Dec 06, 2000 * | Sep 24, 2001 * | Sep 25, 2002 * | Jun 24, 2003 * | | |
|  |  |  |  | | Nov 30, 2001 * | Sep 28, 2002 * | | | |
|  |  |  |  | | | Sep 30, 2002 | | | |
|  |  |  |  | | | Nov 21, 2002 * | | | |
|  |  |  |  | | | Nov 21, 2002 * | | | |
|  |  |  |  | | | Nov 28, 2002 * | | | |
|  |  |  |  | | | Nov 30, 2002 * | | | |

---

Home | Help

Internet Archive | Terms of Use | Privacy Policy

# EAST Search History

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L4 | 1944 | celluloid | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/01/22 14:33 |
| L5 | 18 | celluloid with digitize? | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/01/22 15:02 |
| L6 | 34 | celluloid same digitize? | US-PGPUB; USPAT; EPO; JPO; DERWENT; IBM_TDB | OR | ON | 2007/01/22 15:02 |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710        7590        02/08/2007

BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA 02111

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

| SHORTENED STATUTORY PERIOD OF RESPONSE | MAIL DATE | DELIVERY MODE |
|---|---|---|
| 3 MONTHS | 02/08/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

If NO period for reply is specified above, the maximum statutory period will apply and will expire 6 MONTHS from the mailing date of this communication.

PTOL-90A (Rev. 10/06)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Dominic D. Saltarelli | 2623 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>20 November 2006</u>.

2a)☒ This action is **FINAL.**     2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4)☒ Claim(s) <u>1-23</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-23</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

Application/Control Number: 09/840,283                                    Page 2
Art Unit: 2623

## DETAILED ACTION

### *Response to Arguments*

1.      Applicant's arguments with respect to claims 1-23 have been considered but are

moot in view of the new grounds of rejection.

### *Claim Rejections - 35 USC § 103*

2.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

3.      Claims 1, 2, 5-9, 11-13, 15-20, and 23 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Hunter (US 2002/0162113 A1, of record) in view of Applicant's

own originally filed specification and Bernard et al. (5,918,213, of record) [Bernard].

Regarding claims 1, 11, 12, and 23, Hunter discloses a method of

marketing and distributing multimedia, the method comprising:

receiving multimedia material from an owner of said multimedia material

(an inherent step, as the movies being offered for sale must have first been

acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in

digital format (the stored movies which a customer reviews and selects for

purchase, paragraph 0060);

Application/Control Number: 09/840,283                                    Page 3
Art Unit: 2623

  providing a server system accessible over a communication network, said owner being linked with the server system (as it is their product which is being sold, paragraph 0063), said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network (paragraphs 0062-0063);

  downloading, upon request of purchasers, over said communication network, said digital format of said multimedia material from said server system (paragraph 0062);

  wherein said purchaser is an exhibitor exhibiting said multimedia material in a public theater to a number of individuals in exchange for a paid admission (paragraph 0059); and

  following up to determine information necessary to calculate an amount owed by said purchaser for said multimedia material and charging the account of said exhibitor with the amount owned (paragraph 0063).

  Hunter fails to disclose receiving associated advertising material from a producer or owner of said multimedia, providing samples of said digital format from said server system over said communication network to potential purchasers, providing in digital format said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material.

  Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material to purchasers to

Application/Control Number: 09/840,283                                    Page 4
Art Unit: 2623

locally market and sell said multimedia material (page 12, lines 5-17).  Because

Hunter also teaches digitally transmitting advertising material as well as

multimedia material to purchasers of multimedia material (paragraph 0070), a

practitioner of ordinary skill in the art would be motivated to receive advertising

material from said owners and send the advertising material in digital format to

purchasers to allow the purchasers to locally market and sell said multimedia

material, as the cost reducing benefits of all digital domain transmissions taught

by Hunter (paragraph 0008-0009) would be then equally applied to both the

advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter to include receiving associated

advertising material from an owner of said multimedia and providing in digital

format said advertising material to said purchasers from said server system over

said communication network allowing purchasers to locally market and sell said

multimedia material, for the benefit of reducing the costs normally associated

with the distribution and promotion of said multimedia material.

Hunter still fails to disclose providing samples of said digital format from

said server system over said communication network to potential purchasers.

In an analogous art, Bernard teaches providing samples of multimedia

content to potential purchasers (col. 3, lines 19-41) to provide assistance in

choosing which material to purchase.

Application/Control Number: 09/840,283                                    Page 5
Art Unit: 2623

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include providing samples of multimedia content to potential purchasers, as taught by Bernard, for the benefit of providing helpful assistance to the purchaser in choosing which material to purchase.

Regarding claims 2 and 13, Hunter and Bernard disclose the method of claims 1 and 12, including receiving multimedia material by downloading via said communication network (Hunter, paragraphs 0062-0063).

Regarding claim 5, Hunter and Bernard disclose the method of claim 1, including providing a server system accessible over a public communication system (Hunter teaches accessing the server over the Internet, paragraph 0063).

Regarding claim 6, Hunter and Bernard disclose the method of claim 1, including downloading digital material from said server system for digital display to an audience (Hunter, paragraph 0059).

Regarding claims 7 and 17, Hunter and Bernard disclose the method of claims 1 and 12, including providing downloadable advertising materials on said server system (Hunter, paragraph 0070).

Application/Control Number: 09/840,283                                          Page 6
Art Unit: 2623

      Regarding claims 8 and 9, Hunter and Bernard disclose the method of
claim 1, including collecting sales information for exhibitor recipients of said
multimedia material and providing sales and marketing data based upon
information from said users of said server system (Hunter teaches a billing
system that tracks orders from purchasers, paragraph 0063).

      Regarding claims 15 and 16, Hunter and Bernard disclose the method of
claim 12, but fails to disclose said follow up is implemented by either sending an
e-mail to said exhibitor or by consulting publicly reported data respecting said
exhibitor.

      In the previous office action mailed on August 23, 2006, the examiner
relied upon official notice to teach these claimed limitations. In the subsequent
response mailed to the office on November 20, 2006, the applicant did not
choose to traverse said instances of official notice, and thus are take to be an
admission of the facts herein, as per MPEP 2144.03.

      Therefore, it would have been obvious at the time to a person of ordinary
skill in the art to modify the method disclosed by Hunter and Bernard to include
said follow up is implemented by either sending an e-mail to said exhibitor or by
consulting publicly reported data respecting said exhibitor.

      Regarding claim 18, Hunter and Bernard disclose the method of claim 17,
including querying said exhibitor to stimulate the sending of data from said

Application/Control Number: 09/840,283                                      Page 7
Art Unit: 2623

exhibitor and recording said data into a database (Hunter teaches a user

interface through which customers make selections and schedule purchases,

paragraph 0060).


Regarding claims 19 and 20, Hunter and Bernard disclose the method of

claim 18, including providing marketing data recorded in said database to

customers in response to a query from an exhibitor (who is an actual user of said

server system, see Hunter, paragraph 0060, where customers have tool that

allows them to see listings of all movies available).


4.    Claims 3, 4, 10, and 14 are rejected under 35 U.S.C. 103(a) as being

unpatentable over Hunter, Applicant's own originally filed specification, and Bernard, as

applied to claims 1 and 12 above, and further in view of Siefert (5,564,043).

Regarding claims 3, 4, 10, and 14 Hunter and Bernard disclose the

method of claims 1 and 12, but fail to disclose the receiving multimedia material

includes receiving non-digital media including celluloid media and printed media.

In an analogous art, Siefert discloses receiving and digitizing celluloid

media and printed media in order to provide it over a communications network

(col. 5, lines 14-25).

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter and Bernard to include receiving

non-digital media including celluloid media and printed media, as taught by

Siefert, ensuring that all material is provided in digital format for transmission,

regardless of the original source media.

5.    Claims 21 and 22 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Hunter, Applicant's own originally filed specification, Bernard, and Sprogis (US

2004/0093608 A1, of record).

Regarding claim 21, Hunter discloses a method of marketing and

distributing multimedia, the method comprising:

receiving multimedia material from an owner of said multimedia material

(an inherent step, as the movies being offered for sale must have first been

acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in

digital format (the stored movies which a customer reviews and selects for

purchase, paragraph 0060);

providing a server system accessible over a communication network, said

owner being linked with the server system (as it is their product which is being

sold, paragraph 0063), said server system accessing said digital format from said

computer readable storage medium for transfer of said digital format over said

communication network (paragraphs 0062-0063);

downloading, upon request of purchasers, over said communication

network, said digital format of said multimedia material from said server system

(paragraph 0062);

Application/Control Number: 09/840,283                                    Page 9
Art Unit: 2623

Hunter fails to disclose receiving associated advertising material from a
producer or owner of said multimedia, providing samples of said digital format
from said server system over said communication network to potential
purchasers, querying said customer to stimulate the sending of ticket sales data
from said customer and recording said data into a database.

Applicant's own originally filed specification states that it is conventional
for owners of multimedia material to provide advertising material to purchasers to
locally market and sell said multimedia material (page 12, lines 5-17). Because
Hunter also teaches digitally transmitting advertising material as well as
multimedia material to purchasers of multimedia material (paragraph 0070), a
practitioner of ordinary skill in the art would be motivated to receive this
advertising material from said owners as well, as the cost reducing benefits of all
digital domain transmissions taught by Hunter (paragraph 0008-0009) would be
then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the
art to modify the method disclosed by Hunter to include receiving associated
advertising material from an owner of said multimedia material, for the benefit of
reducing the costs normally associated with the distribution and promotion of said
multimedia material.

Hunter still fails to disclose providing samples of said digital format from
said server system over said communication network to potential purchasers and

Application/Control Number: 09/840,283                                    Page 10
Art Unit: 2623

querying said customer to stimulate the sending of ticket sales data from said

customer and recording said data into a database.

In an analogous art, Bernard teaches providing samples of multimedia

content to potential purchasers (col. 3, lines 19-41) to provide assistance in

choosing which material to purchase.

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter to include providing samples of

multimedia content to potential purchasers, as taught by Bernard, for the benefit

of providing helpful assistance to the purchaser in choosing which material to

purchase.

Hunter and Bernard fail to disclose querying said customer to stimulate

the sending of ticket sales data from said customer and recording said data into a

database.

In an analogous art, Sprogis discloses receiving and logging tickets sales

information from theaters for billing and market research purposes (paragraph

29).

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method of Hunter and Bernard to include querying said

customer to stimulate the sending of ticket sales data from said customer and

recording said data into a database, as taught by Sprogis, for the benefit of

collecting detailed information for billing and market research purposes, such as

royalty payments and calculating the success of various films.

Application/Control Number: 09/840,283                                    Page 11
Art Unit: 2623

    Regarding claim 22, Hunter, Bernard, and Sprogis disclose the method of

claim 21, including providing marketing data recorded in said database to

customers in response to a query from a customer (allowing advertisers to

segment their markets, Sprogis, paragraph 0032).


### Conclusion

6.    **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

    A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

7.    The following are suggested formats for either a Certificate of Mailing or
Certificate of Transmission under 37 CFR 1.8(a).  The certification may be included with
all correspondence concerning this application or proceeding to establish a date of
mailing or transmission under 37 CFR 1.8(a).  Proper use of this procedure will result in
such communication being considered as timely if the established date is within the
required period for reply.  The Certificate should be signed by the individual actually
depositing or transmitting the correspondence or by an individual who, upon information
and belief, expects the correspondence to be mailed or transmitted in the normal course
of business by another no later than the date indicated.

Application/Control Number: 09/840,283                                Page 12
Art Unit: 2623

## Certificate of Mailing

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

on _____.
  (Date)

Typed or printed name of person signing this certificate:

_____

Signature: _____

Registration Number: _____

## Certificate of Transmission

I hereby certify that this correspondence is being facsimile transmitted to the United States Patent and Trademark Office, Fax No. (   )_____ - _____ on _____.
  (Date)

Typed or printed name of person signing this certificate:

_____

Signature: _____

Registration Number: _____

Please refer to 37 CFR 1.6(d) and 1.8(a)(2) for filing limitations concerning facsimile transmissions and mailing, respectively.

Application/Control Number: 09/840,283                                      Page 13
Art Unit: 2623

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Dominic D. Saltarelli whose telephone number is (571)

272-7302. The examiner can normally be reached on Monday - Friday 9:00am -

6:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Miller can be reached on (571) 272-7353. The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

DS

JOHN MILLER
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2600

| Notice of References Cited | Application/Control No. 09/840,283 | Applicant(s)/Patent Under Reexamination STILIADIS, NICHOLAS | |
|---|---|---|---|
| | Examiner Dominic D. Saltarelli | Art Unit 2623 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,564,043 | 10-1996 | Siefert, David M. | 707/103R |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. 09840283 | Applicant(s)/Patent Under Reexamination STILIADIS, NICHOLAS |
|---|---|---|
| | Examiner Ma, Johnny | Art Unit 2623 |

| ✓ | Rejected | | - | Cancelled | | N | Non-Elected | | A | Appeal |
|---|---|---|---|---|---|---|---|---|---|---|
| = | Allowed | | ÷ | Restricted | | I | Interference | | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/18/2006 | 1/22/0? | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | | | | | | | |
| | 3 | ✓ | | | | | | | |
| | 4 | ✓ | | | | | | | |
| | 5 | ✓ | | | | | | | |
| | 6 | ✓ | | | | | | | |
| | 7 | ✓ | | | | | | | |
| | 8 | ✓ | | | | | | | |
| | 9 | ✓ | | | | | | | |
| | 10 | ✓ | | | | | | | |
| | 11 | ✓ | | | | | | | |
| | 12 | ✓ | | | | | | | |
| | 13 | ✓ | | | | | | | |
| | 14 | ✓ | | | | | | | |
| | 15 | ✓ | | | | | | | |
| | 16 | ✓ | | | | | | | |
| | 17 | ✓ | | | | | | | |
| | 18 | ✓ | | | | | | | |
| | 19 | ✓ | | | | | | | |
| | 20 | ✓ | | | | | | | |
| | 21 | ✓ | | | | | | | |
| | 22 | ✓ | | | | | | | |
| | 23 | ✓ | ✓ | | | | | | |

Part of Paper No. : 20060818

| ***Search Notes*** | Application/Control No.

09840283 | Applicant(s)/Patent Under Reexamination

STILIADIS, NICHOLAS |
|---|---|---|
| ‖‖‖‖‖‖‖‖‖‖‖ | Examiner

~~Ma, Johnny~~ *Saltarelli* | Art Unit

2623 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| updated | | 1/22/08 | DS |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Updated Search | 8/18/2006 | jm |
| Updated Search History Attached | 08/18/2006 | jm |
| updated EAST | 1/22/07 | DS |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710     7590     08/06/2007
BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA 02111

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/06/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Interview Summary** | 09/840,283 | STILIADIS, NICHOLAS | |
| | **Examiner** | **Art Unit** | |
| | Dominic D. Saltarelli | 2623 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Dominic D. Saltarelli_.                    (3)_____.

(2) _Shelly Dorn_.                              (4)_____.

Date of Interview: _03 August 2007_.

Type:  a)☒ Telephonic   b)☐ Video Conference
     c)☐ Personal [copy given to: 1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes    e)☒ No.
    If Yes, brief description: _____.

Claim(s) discussed: _n/a_.

Identification of prior art discussed: _Hunter (2002/0162113)_.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Applicant sought advice regarding possible claim amendments, and the examiner indicated that no such amendments which would lead to patentability were readily apparent._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MEPP Section 713.04). If a reply to the last office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an Attachment to a signed Office action.

_Examiner's signature, if required_

U.S. Patent and Trademark Office
PTOL-413 (Rev. 04-03)                    **Interview Summary**                    Paper No. 20070803

PTO/SB/30 (04-07)
Approved for use through 09/30/2007. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# Request for Continued Examination (RCE) Transmittal

Address to:
Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| | |
|---|---|
| Application Number | 09/840,283 |
| Filing Date | April 23, 2001 |
| First Named Inventor | Nicholas STILIADIS |
| Art Unit | 2617 |
| Examiner Name | Dominic D. Salterelli |
| Attorney Docket Number | NS2 (25804/1) |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. **Submission required under 37 CFR 1.114** Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

        i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

        ii. ☐ Other _____

   b. ☑ Enclosed

        i. ☑ Amendment/Reply         iii. ☐ Information Disclosure Statement (IDS)

        ii. ☐ Affidavit(s)/ Declaration(s)      iv. ☐ Other _____

2. **Miscellaneous**

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. **Fees** The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☑ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. 500369. I have enclosed a duplicate copy of this sheet.

        i. ☑ RCE fee required under 37 CFR 1.17(e)

        ii. ☑ Extension of time fee (37 CFR 1.136 and 1.17)

        iii. ☐ Other _____

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☐ Payment by credit card (Form PTO-2038 enclosed)

   **WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

**SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED**

| Signature | _[signature]_ | Date | August 8, 2007 |
|---|---|---|---|
| Name (Print/Type) | Anthony H. Handal, Esq. | Registration No. | 26,275 |

**CERTIFICATE OF MAILING OR TRANSMISSION**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| Signature | _[signature]_ | | |
|---|---|---|---|
| Name (Print/Type) | Michelle A. Aiello | Date | August 8, 2007 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

OIPE
AUG 1 0 2007
PATENT & TRADEMARK

09840283

08/13/2007 HLE333  00000021 500369  395.00 DA
01 FC:2801

| COMBINED AMENDMENT & PETITION FOR EXTENSION OF TIME UNDER 37 CFR 1.136(a) (Small Entity) | Docket No. NS2 (25804/1) |
|---|---|

In Re Application Of:  **Nicholas STILLIADIS**

| Application No. | Filing Date | Examiner | Customer No. | Group Art Unit | Confirmation No. |
|---|---|---|---|---|---|
| 09/840,283 | April 23, 2001 | Saltarelli, Dominic D. | 21710 | 2623 | 3319 |

Invention: **MULTIMEDIA MARKETING DISTRIBUTION SYSTEM**

*[stamp: AUG 10 2007 — PATENT & TRADEMARK OFFICE]*

### COMMISSIONER FOR PATENTS:

This is a combined amendment and petition under the provisions of 37 CFR 1.136(a) to extend the period for filing a response to the Office Action of ___**February 8, 2007**___ in the above-identified application.
<br><center>Date</center>

The requested extension is as follows (check time period desired):

☐ One month    ☐ Two months    ☒ Three months    ☐ Four months    ☐ Five months

from: ___**May 8, 2007**___         until: ___**August 8, 2007**___
<br>Date                                               Date

Applicant claims small entity status.  See 37 CFR 1.27.

The fee for the amendment and extension of time has been calculated as shown below:

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST # PREV. PAID FOR | | NUMBER EXTRA CLAIMS PRESENT | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| TOTAL CLAIMS | 23 | - | 23 | = | 0 | x | $25.00 | $0.00 |
| INDEP. CLAIMS | 6 | - | 6 | = | 0 | x | $100.00 | $0.00 |
| | | | | | FEE FOR AMENDMENT | | | $0.00 |
| | | | | | FEE FOR EXTENSION OF TIME | | | $510.00 |
| | | | **TOTAL FEE FOR AMENDMENT AND EXTENSION OF TIME** | | | | | $510.00 |

CLAIMS AS AMENDED

08/13/2007 HLE333  00000021 500369  09840283
02 FC:2253      510.00 DA

P28SMALL/REV06

PATENT
Docket No.: NS2 (25804/1)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:     Nicholas STILIADIS     Group:     2617

Application No.:     09/840,283     Confirmation No.:     3319

Filed:     April 23, 2001     Examiner: Dominic D. Salterelli

For:     **MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM**

---

**CERTIFICATE OF MAILING**

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to, Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on:

8/8/07
/Date

By: _____
Michelle A. Aiello

---

## AMENDMENT

MAIL STOP RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Examiner:

In response to the Office Action dated February 8, 2007, please consider the following amendments and remarks set forth below. Applicant hereby petitions for any extension of time that may be required to maintain the pendency of this case, and any required fee, for such extension is to be charged to *Deposit Account No. 50-0369.*

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

## IN THE CLAIMS:

Please amend Claims # as follows:

1.  (Currently Amended)  A method of marketing and distributing multimedia, the method comprising:

a.      receiving multimedia material and <u>content</u> associated advertising material from a producer or owner of said multimedia material;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

<u>c.      inputting multimedia material information;</u>

c̶.̶ <u>d.</u>    providing a server system accessible over a communication network said producer or owner being linked with the server system, said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network;

<u>e.      providing a search function for said multimedia material and said associated advertising material;</u>

d̶.̶ f.    providing  samples of said digital format from said server system over said communication network to potential purchasers, said purchasers being linked to the server system;

e̶.̶ g.    downloading, upon request of said purchasers, over said communication network, said digital format of said multimedia material from said server system; and

f̶.̶ h.    providing said digital format of said advertising material that is <u>linked to said multimedia material</u> to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material;

2

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

g.      wherein said purchaser is an exhibitor exhibiting said multimedia material in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor.


2. (Original)    The method of marketing and distributing multimedia of claim 1, including receiving multimedia material by downloading via said communication network.


3. (Previously Presented)  The method of marketing and distributing multimedia of claim 1, wherein receiving multimedia material includes receiving non-digital media selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape.


4. (Original)    The method of marketing and distributing multimedia of claim 3, including the step of digitizing said non-digital media for storage on said computer readable storage medium.


5. (Original)    The method of marketing and distributing multimedia of claim 1, including providing a server system accessible over a public communication system.


6. (Original)    The method of marketing and distributing multimedia of claim 1, including downloading digital material from said server system for digital display to an audience.


7. (Previously Presented)  The method of marketing and distributing multimedia of claim 1, including providing downloadable advertising materials on said server system.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

8. (Previously Presented)  The method of marketing and distributing multimedia of claim 1, further comprising collecting sales information from exhibitor recipients of said multimedia material and providing sales and marketing data based upon information from said users of said server system.


9. (Original)    The method of marketing and distributing multimedia of claim 8, including providing marketing data based upon actual users of said server system.


10. (Currently Amended)  A method of distributing movies comprising:

a.       receiving a movie on celluloid and associated advertising material together from said movie owner;

b.       scanning said movie and converting it into a digital format, storing said movie in digital format and said associated advertising material in digital format in a computer readable memory, such that said advertising material and said movie are linked;

c.       inputting licensing information about said movie;

c.       transferring said digital formats to a theater via a communications network and storing said digital formats on a computer readable memory located at said theater; and

d.       projecting said movie in said digital format using a digital projector onto a screen for display to an audience.


11. (Previously Presented)  A distribution system for distributing multimedia comprising:

a.       a first central processing unit;

b.       a first memory associated with said first central processing unit;

4

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

c.    a communications network accessible by said first central processing unit for transferring data into and out of said first memory;

d.    an input device connected for data transfer to said first central processing unit, said input device receiving multimedia material and associated advertising material, and transferring said materials into said first memory in a digital format via said central processing unit;

e.    a second central processing unit;

f.    a second memory, said second memory associated with said second central processing unit, said communications network being accessible by said second central processing unit for transferring said digital format into and out of said second memory; and

g.    a digital feature film projector in data communication with said second central processing unit for displaying said digital format as a feature film onto a screen for presentation to an audience, said feature film being stored in said digital format in said second memory after being transferred via said communications network from said first memory.


12.    (Previously Presented)  A method of marketing and distributing multimedia, the  method comprising:

a.    receiving multimedia material from a producer or owner of said multimedia material;

b.    storing advertising material associated with said multimedia material on a computer readable storage medium;

c.    providing a server system accessible over a communication network, said server system accessing said advertising material from said computer readable storage medium for transfer of said advertising material in a digital format from said server system over said communication network;

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material <u>that is linked to said advertising material</u> to said exhibitor downloading said advertising material upon request from said customer for said advertising material over said server system;

f.    following up to determine information necessary to calculate an amount owed by said customer for said multimedia material; and

g.    charging the account of said exhibitor with the amount owed.

13. (Original)  The method of marketing and distributing multimedia of claim 12, including receiving multimedia material by downloading via said communication network.

14. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein receiving multimedia material includes receiving non-digital media selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape, and wherein said multimedia material is provided to said exhibitor using an electronic communications network.

15. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein said follow-up is implemented by sending an e-mail to said exhibitor.

16. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein said follow-up is implemented by consulting publicly reported data respecting said exhibitor.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

17. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, further comprising providing advertising material to purchasers over said communication network, and exhibitors to locally market and sell said multimedia material.

18. (Previously Presented)  The method of marketing and distributing multimedia of claim 17, further comprising querying said exhibitor to stimulate the sending of data from said exhibitor and recording said data into a database.

19. (Previously Presented)  The method of marketing and distributing multimedia of claim 18, comprising providing marketing data recorded in said database to customers in response to a query from a exhibitor.

20. (Original)  The method of marketing and distributing multimedia of claim 19, including providing marketing data based upon actual users of said server system.

21. (Previously Presented)  A method of marketing and distributing multimedia, the  method comprising:

a.      receiving multimedia material and associated advertising material from a producer or owner of said multimedia material;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

c.    providing a server system accessible over a communication network, said producer or owner being linked with the server system, said server system accessing said digital format from said computer readable storage medium for transfer over said communication network;

d.    providing samples of said digital format from said server system over said communication network to potential purchasers, said purchasers being linked to the server system;

e.    downloading, upon request of said purchasers, over said communication network, said digital format of said multimedia material from said server system; and

f.    querying said customer to stimulate the sending of ticket sales data from said customer; and

g.    recording said data into a database.

22. (Original)   The method of marketing and distributing multimedia of claim 21, comprising providing marketing data recorded in said database to customers in response to a query from a customer.

23. (Currently Amended)  A distribution system for distributing multimedia comprising:

a.    a first central processing unit;

b.    a first memory domain associated with said first central processing unit;

c.    a communications network accessible by said first central processing unit for transferring data into and out of said first memory domain in response to an order for a multimedia product;

d.    an input device connected for data transfer to said first central processing unit, said input device receiving multimedia material and content associated advertising material, and

8

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

transferring said materials into said first memory domain in a digital format via said central processing unit;

e.      a second central processing unit;

f.      a second memory domain, said second memory domain associated with said second central processing unit, said communications network being accessible by said second central processing unit for transferring said digital format into and out of said second memory domain;

g.      a third memory domain for receiving market data in response to an order for said multimedia product; and

h.      a digital feature film projector in data communication with said second central processing unit for displaying said digital format as a feature film onto a screen for presentation to an audience, said feature film being stored in said digital format in said second memory after being transferred via said communications network from said first memory.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

## R E M A R K S

This application has been reviewed in light of the Office Action dated February 8, 2007. Claims 1-23 are pending in the application. Claims 1-23 are amended in a manner that Applicant believes overcome the rejections in the Office Action. Support for the amendments can be found throughout the specification and figures of the present disclosure and recite aspects of the disclosure to which Applicant is believed to be entitled. Applicant submits that no new matter or issues are introduced by the amendments.

Generally, the inventive system and method differ fundamentally from the cited prior art. The present inventive system delivers a multimedia product, and downstream marketing and advertising to purchasers. This dual marketing feature can be used, for example, to transmit a movie as well as advertising material for marketing the movie. Therefore, the present inventive system and method benefit from several advantages such as the capability to download movies and associated advertising to increase patron attendance, market locally, and create a customer database.

In this amendment, the Applicant has attempted to precisely claim the invention, seeking only to protect the patentable aspects of its contribution to the art. Applicant did not invent and the pending claims to not control the downloading of audiovisual material. Certainly, the claims allow competitors to continue to perform the various operations taught by the prior art in the manner of the prior art. Applicant merely seeks to protect its contribution to the technology. Moreover, the allowance of the subject claims to Applicant's invention helps make Applicant a more viable competitor by protecting the fruits of its investment in technology and, thus, encourages competition stimulates development of more attractive or alternative technologies. Likewise, to the extent that different parties have attractive contributions to make to the technology, crosslicensing is encouraged, as is further investment in the technology by other competitors to enable them to participate in such corroborative activities.

Indeed, Applicant and Examiner agree respecting novelty, the first requirement for patentability. The existence of novelty, guarantees that the pending claims will not affect the freedom of others to practice prior art, for example, by the continuing availability of separate transmission to others. A unitary system such as the proposed invention which has the capability

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

of sending different advertising to different locations allows for the integration of different advertisements and provides the ability to analyze effectiveness for future marketing.

As far as obvious this is concerned, then existing technology had the ability to implement all but video transport aspect of the invention since, perhaps, 1990. Nevertheless, for over a dozen years, the prior art failed to create the highly advantageous system of Applicant's invention. Certainly, if the claimed invention were obvious, and a complete conception would have entered the prior art, particularly given the number of individuals working in the information technology sector and the intense competition to stake out various business franchises in this field.

Turning to the specifics of the instant Office Action, Claims 1, 2, 5-9, 11-13, 15-20, and 23 were rejected under 35 U.S.C. § 103(a) over U.S. Patent Publication No. 2002/0162113 to Hunter ("Hunter") in view of Applicant's originally filed specification and U.S. Patent No. 5,918,213 to Bernard et al. ("Bernard"). However, it is respectfully submitted that amended independent claims 1, 11, 12 and 23 and claims that ultimately depending therefrom clearly and patentably distinguish over the Hunter publication in any combination with Applicant's originally filed application and the Bernard patent.

The Hunter publication discloses a system 20 for placement of advertisement displays 30 located in high vehicular and pedestrian traffic areas (paragraph 0021), and in a separate embodiment, a system 220 that connects movie display devices 230 located in movie theater (0059). In an alternate embodiment, a system 420 has an input module 470 that transmits advertising displays 30 and separately transmits movies to movie theater display devices 30M disposed in an alternate location (0070). The Hunter publication does not disclose any content association between advertisement display 30 and the movies displayed from devices 30M. Claim 1 of Applicant's claimed invention requires that the advertising material be content associated with the multimedia material and that the advertising be linked to the multimedia material.

Similarly, Hunter does not disclose receiving advertising from the owner of the multimedia or film or storing the advertising in digital format. Hunter also fails to disclose the

11

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

step of inputting multimedia information capable of being searched.  Furthermore, Hunter does not disclose providing a search function for said multimedia material and said associated advertising material as required by claim 1 of Applicant's claimed invention.

The Examiner states that Applicant's own specification states that it is conventional for owners of multimedia material to provide advertising material to purchasers to locally market and sell said multimedia material (office action, page 3-4).  Applicant respectfully disagrees with Examiner's characterization of Applicants specification.  Applicant's specification states that material "that are normally transported physically from the owner, such as the producer or other owner of rights, to the person licensing the movie, are digitized and stored in storage media 28 in accordance with the invention." Applicant's specification thus clearly only states that materials are merely physically transported in the prior art.

To establish *prima facie* obviousness of a claimed invention, all the claim limitations must be taught or suggested by the prior art. See *In re Royka*, 490 F.2d 981, 180 USPQ 580, 582 (CCPA 1974); see also *CFMT Inc. v. Yieldup International Corp.*, 68 USPQ2d 1940, 1947 (Fed. Cir. 2003) and *Leinoff v. Louis Milona & Sons, Inc.*, 220 USPQ 845 (Fed. Cir. 1984).  As indicated in the Office Action "the Hunter reference does not specifically disclose

The Examiner also discusses Bernard, which discloses an automated product purchasing and receiving system (col. 9, lines 58-62), whereby an order is placed and a fulfillment vendor 436 then processes and ships the order by mail (col. 24, lines 13-29).  Bernard does not relate to purchasing multimedia for download over a communications network such as the Internet.

Bernard does not cure the deficiencies of Hunter.  Like Hunter, Bernard fails to disclose any content association between advertisement display 30 and the movies displayed from devices 30M, receiving advertising from the owner of the multimedia or film, storing the advertising in digital format, inputting multimedia information capable of being searched or providing a search function for said multimedia material and said associated advertising material as required by Applicant's claimed invention. Claims 2 and claims 5-9 depend from claim 1 and for the same reasons as stated above are not made obvious by Hunter in view of Applicants own specification or Bernard.

12

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

Claim 11 requires an input device connected for data transfer to said first central processing unit, said input device receiving multimedia material and associated advertising material. Neither Hunter nor Bernard disclose an input device that receives multimedia material and associated advertising material. Hunter discloses multimedia or advertising but not receiving both or that the advertising material is associated with the multimedia.

Referring to claims 12, 13 and 15-20, as previously discussed with respect to claim 1, neither Hunter nor Bernard disclose receiving multimedia material from a producer or owner of said multimedia material, storing advertising material associated with said multimedia material or providing said multimedia material that is linked to said advertising material (emphasis added). Claim 13 and claims 15-20 depend from claim 12 and for the same reasons are not obviated by Hunter in view of Bernard.

Claim 23 of Applicant's claimed invention requires multimedia and content associated advertising. Neither Hunter nor Bernard disclose content associated advertising.

Because of the above distinctions and advantages of the present disclosure, it is respectfully submitted that amended independent claims 1, 11, 12 and 23 and the claims ultimately depending therefrom are patentable and not obvious over Hunter in any combination with Applicant's originally filed application and Bernard. Reconsideration and withdrawal of the rejections are respectfully requested.

In the Office Action, claims 3, 4, 10, and 14 are rejected under 35 U.S.C. § 103(a) over Hunter in view of Applicant's originally filed specification and Bernard as applied to claims 1 and 12, in further view of U.S. Patent No. 5,564,043 to Siefert ("Siefert"). As previously discussed with respect to claim 1, Hunter, Applicant's specification and Bernard fail to disclose any content association between advertisement display 30 and the movies displayed from devices 30M, receiving advertising from the owner of the multimedia or film, storing the advertising in digital format, inputting multimedia information capable of being searched or providing a search function for said multimedia material and said associated advertising material as required by Applicant's claimed invention.

Furthermore, as stated by the Examiner, claims 3, 4, 10 and 14 fail to disclose the receiving multimedia material includes receiving non-digital celluloid media and printed media.

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

The Examiner discusses Seifert which discloses a system for managing resources, which can take the form of computer-compatible information, such as data files and programs, and non-computer-compatible information, such as data contained on microfiche, and physical objects (abstract). Seifert is directed to managing resources not to purchasing multimedia for download over a communications network such as the Internet.

Referring to claim 10, as currently amended claim 10 requires receiving a movie on celluloid and associated advertising material together from the movie owner; scanning the movie and converting it into a digital format, storing said movie in digital format and said associated advertising material in digital format in a computer readable memory, such that said advertising material and said movie are linked and inputting licensing information about the movie (emphasis added). Hunter merely discloses movie producers making content available via satellite transmission system [0063] and fails to disclose receiving a movie on celluloid and associated advertising material, scanning the movie and associated advertising material such the advertising material and movie are linked. Furthermore, Hunter fails to disclose inputting licensing information about the movie. Neither Bernard, Siefert nor Applicant's originally filed specification cure these deficiencies.

Claims 3 and 4 depend from claim 1 and claim 14 depends from claim 12. For the reasons stated above no combination of Hunter, Bernard, Applicant's own invention or Seifert make obvious Applicant's claimed invention. Reconsideration and withdrawal of the rejections are respectfully requested.

In view of the foregoing amendments and remarks, it is respectfully submitted that claims 1-23 presently pending in the application are in condition for allowance and patentably distinguish over the art of record. An early notice thereof is earnestly solicited.

If the Examiner should have any questions concerning this communication or feels that an interview would be helpful, the Examiner is requested to call the Applicant's undersigned attorney.

14

Application Serial No. 09/840,283
Filed: April 23, 2001
Group Art Unit: 2623

Please charge any deficiency as well as any other fee(s) which may become due at any time during the pendency of this application, or credit any overpayment of such fee(s) to *Deposit Account No. 50-0369*. Also, in the event any extensions of time for responding are required for the pending application(s), please treat this paper as a petition to extend the time as required and charge *Deposit Account No. 50-0369* therefor.

Respectfully submitted,

Dated: 8/8/07

By: _____
Anthony H. Handal, Esq.
Reg. No. 26,275
Attorney for Applicant
Customer No. 21710
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel: 212.209.4942
Fax: 617-856-8201

# 1509942 v2

15

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2000

Application or Docket Number

09846283

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 23 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 23 minus 20 = | 3 |
| INDEPENDENT CLAIMS | minus 3 = | 3 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

SMALL ENTITY TYPE ☐ OR OTHER THAN SMALL ENTITY

| RATE | FEE | | RATE | FEE |
|---|---|---|---|---|
| BASIC FEE | 355.00 | | BASIC FEE | 710.00 |
| X$9= | 27 | OR | X$18= | |
| X40= | 120 | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL | 502 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

9-9-05

### AMENDMENT A

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 23 | Minus | 23 | |
| Independent | 6 | Minus | 6 | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

SMALL ENTITY OR OTHER THAN SMALL ENTITY

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

5-30-06

### AMENDMENT B

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 23 | Minus | 23 | |
| Independent | 6 | Minus | 6 | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

RCE
8110-07

### AMENDMENT C

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | same | Minus | same | |
| Independent | | Minus | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 8/00)

BEST AVAILABLE COPY

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
*U.S. GPO: 2000-460-706/20103



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710        7590        10/16/2007
BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA 02111

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/16/2007 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 09/840,283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | Dominic D. Saltarelli | 2623 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>10 August 2007</u>.

2a)☐ This action is **FINAL.**      2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-23</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-23</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All    b)☐ Some * c)☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

5) ☐ Notice of Informal Patent Application

6) ☐ Other: _____.

Application/Control Number: 09/840,283                                    Page 2
Art Unit: 2623

## DETAILED ACTION

### Continued Examination Under 37 CFR 1.114

1.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on August

10, 2007 has been entered.

### Response to Arguments

2.      Applicant's arguments filed August 10, 2007 have been fully considered but they

are not persuasive.

        First, applicant argues that the Hunter publication does not disclose any

content association between received advertisement content and received

movies (applicant's remarks, page 11, third paragraph, page 13, and page 14,

second paragraph), and asserts the examiner has mischaracterized the originally

filed specification when relying upon it to modify Hunter to meet the claimed

invention, claiming the originally filed specification only asserts that materials are

merely physically transported in the prior art (applicant's remarks, page 12).

        In response, the cited section of the originally filed specification (page 12,

lines 5-17), which is relied upon as evidence that it is common business practice

for producers or owners of movies provide advertising materials that are linked to

Application/Control Number: 09/840,283                                    Page 3
Art Unit: 2623

a provided movie along with a provided movie to the person licensing the movie,
is as follows:

One embodiment of the invention will now be described in connection with
the input of a movie entitled "ABC". Initially, this movie is received on seventy-
millimeter film (celluloid). The producer or owner of the movie also provides the
operator of the inventive web site with advertising posters, newspaper
advertisements, radio promotional spots on audiocassette or compact disc,
television promotional spots on video cassette or videodisc, trailers on celluloid
or video cassette, a film strip comprising a coming events announcement, and
text, such as all or portions of the scripts and critic's review. All of the materials
and other types of materials that are **normally transported physically from the
owner, such as the producer or other owner of rights, to the person
licensing the movie**, are digitized and stored in storage media 28 in accordance
with the invention. [*emphasis added*]

As shown, applicant's clearly admit that linked advertisement materials
used to advertise a movie are known to be provided by owners to licensee's
along with the movie itself, and applicant's consider their invention merely to be
the digitization of said advertisement materials and movies in order that both may
be provided electronically instead of physically. Given that the business model of
providing linked advertisement material along with movies is known in the art, the
next question is would applicant's invention of digitizing said content have been
obvious to a person of ordinary skill in the art. The Hunter reference, which

Application/Control Number: 09/840,283                                           Page 4
Art Unit: 2623

teaches digitizing content in the very same environment as applicant's invention, is evidence that such digitization for the purpose of distribution is both known an desirable. Thus, given the state of the art disclosed by Hunter, who teaches both the means and desirability of digitizing both movie and advertising content for electronic distribution, in addition to the established business practice of providing movies and the advertising materials used to market said movies together with the movies, applicant's invention is considered to be obvious over the prior art, as all of the claimed elements are present, Hunter provides the motivation to combine them, and there is a reasonable expectation of success, because no changes to the technology are necessary, as the claimed invention is merely the application of a known business model using known technology to achieve an expected result.

Second, applicant argues that Hunter does not disclose inputting multimedia information to enable a search function and providing the search function.

In response, these are amended limitations, and the manner by which Hunter addresses these newly added limitations are provided in the rejection of claim 1 below.

Application/Control Number: 09/840,283                                             Page 5
Art Unit: 2623

       Third, applicant argues that Bernard is non-analogous art because Bernard does not relate to purchasing multimedia for download over a communications network (applicant's remarks, page 12, third paragraph).

       In response to applicant's argument that Bernard is nonanalogous art, it has been held that a prior art reference must either be in the field of applicant's endeavor or, if not, then be reasonably pertinent to the particular problem with which the applicant was concerned, in order to be relied upon as a basis for rejection of the claimed invention.  See *In re Oetiker*, 977 F.2d 1443, 24 USPQ2d 1443 (Fed. Cir. 1992).  In this case, Bernard pertains to the problem of marketing and attempting sell multimedia content to a customer, the very same problem Hunter addresses.

       Fourth, applicant argues that Seifert is also non-analogous art because Seifert is directed to managing resources, and not to purchasing multimedia for download over a communications network (applicant's remarks, page 14, first paragraph).

       In response to applicant's argument that Seifert is non-analogous art, it has been held that a prior art reference must either be in the field of applicant's endeavor or, if not, then be reasonably pertinent to the particular problem with which the applicant was concerned, in order to be relied upon as a basis for rejection of the claimed invention.  See *In re Oetiker*, 977 F.2d 1443, 24 USPQ2d 1443 (Fed. Cir. 1992).  In this case, just as stated, Seifert is concerned

Application/Control Number: 09/840,283                                          Page 6
Art Unit: 2623

with resource management, most notably the digitization of content printed on

celluloid (movies) for transport, an essential component of the Hunter disclosure,

who receives movies and distributes them digitally.

### Claim Objections

3.      Claim 10 is objected to because of the following informalities:  Lines 3-4 state

"said movie owner", which should be changed to --a movie owner--.

4.      Claim 12 is objected to because of the following informalities:  Claim 12 is

marked with an improper status identifier.  The proper status identifier for claim 12 is

(Currently Amended).  Appropriate correction is required.

### Claim Rejections - 35 USC § 103

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6.      Claims 1, 2, and 5-9 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Hunter (US 2002/0162113 A1, of record) in view of Applicant's own originally filed

specification and Bernard et al. (5,918,213, of record) [Bernard].

Regarding claim 1, Hunter discloses a method of marketing and

distributing multimedia, the method comprising:

Application/Control Number: 09/840,283                                      Page 7
Art Unit: 2623

receiving multimedia material from an owner of said multimedia material (an inherent step, as the movies being offered for sale must have first been acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in digital format (the stored movies which a customer reviews and selects for purchase, paragraph 0060);

inputting multimedia material information (also an inherent step, as a customer selects desired content from an interface where multimedia content is identified with previously input metadata, paragraph 0060 "Following access, the customer reviews options concerning his order by reviewing the available movies through a Review Available Movies and Purchase module 260 that permits the customer to see what movies are available...");

providing a server system accessible over a communication network, said owner being linked with the server system (as it is their product which is being sold, paragraph 0063), said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network (paragraphs 0062-0063);

providing a search function for said multimedia material (paragraph 0060, "Review Available Movies", which allows a customer to search for available titles);

Application/Control Number: 09/840,283                                         Page 8
Art Unit: 2623

downloading, upon request of purchasers, over said communication

network, said digital format of said multimedia material from said server system

(paragraph 0062); and

wherein said purchaser is an exhibitor exhibiting said multimedia material

in a public theater to a number of individuals in exchange for a paid admission

(paragraph 0059).

Hunter fails to disclose receiving content associated advertising material

from a producer or owner of said multimedia that is linked to said multimedia

material, providing samples of said digital format from said server system over

said communication network to potential purchasers, providing in digital format

said advertising material that is linked to said multimedia material to said

purchasers from said server system over said communication network allowing

purchasers to locally market and sell said multimedia material.

Applicant's own originally filed specification states that it is conventional

for owners of multimedia material to provide advertising material linked to said

multimedia material to purchasers to locally market and sell said multimedia

material (page 12, lines 5-17).  Because Hunter also teaches digitally transmitting

advertising material as well as multimedia material to purchasers of multimedia

material (paragraph 0070), a practitioner of ordinary skill in the art would be

motivated to receive advertising material from said owners and send the

advertising material in digital format to purchasers to allow the purchasers to

locally market and sell said multimedia material, as the cost reducing benefits of

Application/Control Number: 09/840,283                                          Page 9
Art Unit: 2623

all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia and providing in digital format said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material, for the benefit of reducing the costs normally associated with the distribution and promotion of said multimedia material.

Hunter still fails to disclose providing samples of said digital format from said server system over said communication network to potential purchasers.

In an analogous art, Bernard teaches providing samples of multimedia content to potential purchasers (col. 3, lines 19-41) to provide assistance in choosing which material to purchase.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include providing samples of multimedia content to potential purchasers, as taught by Bernard, for the benefit of providing helpful assistance to the purchaser in choosing which material to purchase.

Application/Control Number: 09/840,283                                      Page 10
Art Unit: 2623

Regarding claim 2, Hunter and Bernard disclose the method of claim 1, including receiving multimedia material by downloading via said communication network (Hunter, paragraphs 0062-0063).

Regarding claim 5, Hunter and Bernard disclose the method of claim 1, including providing a server system accessible over a public communication system (Hunter teaches accessing the server over the Internet, paragraph 0063).

Regarding claim 6, Hunter and Bernard disclose the method of claim 1, including downloading digital material from said server system for digital display to an audience (Hunter, paragraph 0059).

Regarding claim 7, Hunter and Bernard disclose the method of claim 1, including providing downloadable advertising materials on said server system (Hunter, paragraph 0070).

Regarding claims 8 and 9, Hunter and Bernard disclose the method of claim 1, including collecting sales information for exhibitor recipients of said multimedia material and providing sales and marketing data based upon information from said users of said server system (Hunter teaches a billing system that tracks orders from purchasers, paragraph 0063).

Application/Control Number: 09/840,283                                    Page 11
Art Unit: 2623

7.    Claims 3 and 4 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Hunter, Applicant's own originally filed specification, and Bernard, as applied to claim 1

above, and further in view of Siefert (5,564,043, of record).

        Regarding claims 3 and 4, Hunter and Bernard disclose the method of

claim 1, but fail to disclose the receiving multimedia material includes receiving

non-digital media including celluloid media and printed media.

        In an analogous art, Siefert discloses receiving and digitizing celluloid

media and printed media in order to provide it over a communications network

(col. 5, lines 14-25).

        It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter and Bernard to include receiving

non-digital media including celluloid media and printed media, as taught by

Siefert, ensuring that all material is provided in digital format for transmission,

regardless of the original source media.


8.    Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter

in view of Applicant's own originally filed specification and Siefert.

        Regarding claim 10, Hunter discloses a method of distributing movies

comprising:

        receiving a movie from a movie owner (an inherent step, as the movies

being offered for sale must have first been acquired from the owners of the

respective material, paragraph 0060);

Application/Control Number: 09/840,283                                    Page 12
Art Unit: 2623

    storing said movie in digital format in a computer readable memory (the movie content is digital, paragraph 0062);

    inputting licensing information about said movie (for billing purposes, paragraph 0063);

    transferring said digital formats to a theater via a communications network and storing said digital formats on a computer readable memory located at said theater (paragraph 0062); and

    projecting said moving in said digital format using a digital projector onto a screen for display to an audience (paragraph 0059).

    Hunter fails to disclose the movie is received on celluloid and also receiving advertising material that is linked to said movie.

    Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material linked to said multimedia material to purchasers to locally market and sell said multimedia material (page 12, lines 5-17). Because Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a practitioner of ordinary skill in the art would be motivated to receive advertising material from said owners and send the advertising material in digital format to purchasers to allow the purchasers to locally market and sell said multimedia material, as the cost reducing benefits of all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

Application/Control Number: 09/840,283                                    Page 13
Art Unit: 2623

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia and providing in digital format said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material, for the benefit of reducing the costs normally associated with the distribution and promotion of said multimedia material.

Hunter still fails to disclose the movie is received on celluloid.

In an analogous art, Siefert discloses receiving and digitizing celluloid media and printed media in order to provide it over a communications network (col. 5, lines 14-25).

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving celluloid media, as taught by Siefert, the conventional means for distributing movies, ensuring that all material is provided in digital format for transmission, regardless of the original source media.

9.    Claims 11-13, 15-20, and 23 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter in view of Applicant's own originally filed specification.

Regarding claims 11 and 23, Hunter discloses a distribution system for distributing multimedia comprising:

Application/Control Number: 09/840,283                                    Page 14
Art Unit: 2623

a first central processing unit (which controls the system from which
customers purchase movies, paragraph 0060);

a first memory associated with said first central processing unit (which
stores the movies available to purchase, paragraph 0060);

a communications network accessible by said first central processing unit
for transferring data into and out of said first memory (the network by which
movies are received and delivered, paragraph 0062);

an input device connected for data transfer to said first central processing
unit, said input device receiving multimedia material and transferring said
materials into said first memory in a digital format via said central processing unit
(an inherent step, as the movies available for purchase must first have been
received from the producers of said content);

a second central processing unit (the customer's system, paragraph
0061);

a second memory, said second memory associated with said second
central processing unit, said communications network being accessible by said
second central processing unit for transferring said digital format into and out of
said second memory (the memory in which a movie is stored after it is ordered
and transmitted from the provider's system, paragraph 0061);

a third memory domain for receiving market data in response to an order
for said multimedia product (the memory domain which stores the purchase order

Application/Control Number: 09/840,283                                    Page 15
Art Unit: 2623

and scheduling information necessary for transmitting a movie to a customer
after the customer purchases the movie, paragraph 0060-0061);

a digital feature film projector in data communication with said second
central processing unit for displaying said digital format as a feature film onto a
screen for presentation to an audience, said feature film being stored in said
digital format in said second memory after being transferred via said
communications network from said first memory (paragraph 0059).

Hunter fails to disclose receiving associated advertising material as well.

Applicant's own originally filed specification states that it is conventional
for owners of multimedia material to provide advertising material linked to said
multimedia material to purchasers to locally market and sell said multimedia
material (page 12, lines 5-17).  Because Hunter also teaches digitally transmitting
advertising material as well as multimedia material to purchasers of multimedia
material (paragraph 0070), a practitioner of ordinary skill in the art would be
motivated to receive advertising material from said owners and send the
advertising material in digital format to purchasers to allow the purchasers to
locally market and sell said multimedia material, as the cost reducing benefits of
all digital domain transmissions taught by Hunter (paragraph 0008-0009) would
be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the
art to modify the system disclosed by Hunter to include receiving associated
advertising material from an owner of said multimedia and providing in digital

Application/Control Number: 09/840,283                                      Page 16
Art Unit: 2623

format said advertising material to said purchasers from said server system over
said communication network allowing purchasers to locally market and sell said
multimedia material, for the benefit of reducing the costs normally associated
with the distribution and promotion of said multimedia material.


Regarding claim 12, Hunter discloses a method of marketing and
distributing multimedia, the method comprising:

receiving multimedia material from an owner of said multimedia material
(an inherent step, as the movies being offered for sale must have first been
acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in
digital format (the stored movies which a customer reviews and selects for
purchase, paragraph 0060);

providing a server system accessible over a communication network, said
owner being linked with the server system (as it is their product which is being
sold, paragraph 0063), said server system accessing said digital format from said
computer readable storage medium for transfer of said digital format over said
communication network (paragraphs 0062-0063);

establishing an account (by which customers are billed, paragraph 0063)
for a broadcast or live theater exhibitor (paragraph 0059);

Application/Control Number: 09/840,283                                          Page 17
Art Unit: 2623

downloading, upon request of purchasers, over said communication

network, said digital format of said multimedia material from said server system

(paragraph 0062);

following up to determine information necessary to calculate an amount

owed by said purchaser for said multimedia material and charging the account of

said exhibitor with the amount owned (paragraph 0063).

Hunter fails to disclose receiving content associated advertising material

from a producer or owner of said multimedia that is linked to said multimedia

material and providing in digital format said advertising material that is linked to

said multimedia material to said purchasers from said server system over said

communication network allowing purchasers to locally market and sell said

multimedia material.

Applicant's own originally filed specification states that it is conventional

for owners of multimedia material to provide advertising material linked to said

multimedia material to purchasers to locally market and sell said multimedia

material (page 12, lines 5-17). Because Hunter also teaches·digitally transmitting

advertising material as well as multimedia material to purchasers of multimedia

material (paragraph 0070), a practitioner of ordinary skill in the art would be

motivated to receive advertising material from said owners and send the

advertising material in digital format to purchasers to allow the purchasers to

locally market and sell said multimedia material, as the cost reducing benefits of

Application/Control Number: 09/840,283                                   Page 18

Art Unit: 2623

all digital domain transmissions taught by Hunter (paragraph 0008-0009) would

be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter to include receiving associated

advertising material from an owner of said multimedia and providing in digital

format said advertising material to said purchasers from said server system over

said communication network allowing purchasers to locally market and sell said

multimedia material, for the benefit of reducing the costs normally associated

with the distribution and promotion of said multimedia material.

Regarding claim 13, Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 12, including receiving multimedia

material by downloading via said communication network (Hunter, paragraphs

0062-0063).

Regarding claims 15 and 16, Hunter (in view of Applicant's own originally

filed specification) discloses the method of claim 12, but fails to disclose said

follow up is implemented by either sending an e-mail to said exhibitor or by

consulting publicly reported data respecting said exhibitor.

In a previous office action mailed on August 23, 2006, the examiner relied

upon official notice to teach these claimed limitations.  In the subsequent

response mailed to the office on November 20, 2006, the applicant did not

Application/Control Number: 09/840,283                                    Page 19
Art Unit: 2623

choose to traverse said instances of official notice, and thus are take to be an

admission of the facts herein, as per MPEP 2144.03.

Therefore, it would have been obvious at the time to a person of ordinary

skill in the art to modify the method disclosed by Hunter to include said follow up

is implemented by either sending an e-mail to said exhibitor or by consulting

publicly reported data respecting said exhibitor.


Regarding claim 17, Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 12, including providing downloadable

advertising materials on said server system (Hunter, paragraph 0070), and

exhibitors to locally market and sell said multimedia material (this is the express

purpose of the advertising material).


. Regarding claim 18, Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 17, including querying said exhibitor

to stimulate the sending of data from said exhibitor and recording said data into a

database (Hunter teaches a user interface through which customers make

selections and schedule purchases, paragraph 0060, the data received from said

customers being the scheduling and purchasing information received through the

user interface and stored in order to track and fill the order, paragraph 0061).

Application/Control Number: 09/840,283                                    Page 20
Art Unit: 2623

Regarding claims 19 and 20, Hunter (in view of Applicant's own originally

filed specification) discloses the method of claim 18, including providing

marketing data recorded in said database to customers in response to a query

from an exhibitor (who is an actual user of said server system, see Hunter,

paragraph 0060, where customers have tool that allows them to see listings of all

movies available in response to a search query, which is a marketing tool).


10.     Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter

and Applicant's own originally filed specification, as applied to claim 12 above, and

further in view of Siefert.

Regarding claim 14 Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 12, but fails to disclose the receiving

of multimedia material includes receiving non-digital media including celluloid

media and printed media.

In an analogous art, Siefert discloses receiving and digitizing celluloid

media and printed media in order to provide it over a communications network

(col. 5, lines 14-25).

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter to include receiving non-digital

media including celluloid media and printed media, as taught by Siefert, ensuring

that all material is provided in digital format for transmission, regardless of the

original source media.

Application/Control Number: 09/840,283                                   Page 21
Art Unit: 2623

11.    Claims 21 and 22 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Hunter, Applicant's own originally filed specification, Bernard, and Sprogis.

Regarding claim 21, Hunter discloses a method of marketing and

distributing multimedia, the method comprising:

receiving multimedia material from an owner of said multimedia material

(an inherent step, as the movies being offered for sale must have first been

acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in

digital format (the stored movies which a customer reviews and selects for

purchase, paragraph 0060);

providing a server system accessible over a communication network, said

owner being linked with the server system (as it is their product which is being

sold, paragraph 0063), said server system accessing said digital format from said

computer readable storage medium for transfer of said digital format over said

communication network (paragraphs 0062-0063);

downloading, upon request of purchasers, over said communication

network, said digital format of said multimedia material from said server system

(paragraph 0062);

Hunter fails to disclose receiving associated advertising material from a

producer or owner of said multimedia, providing samples of said digital format

from said server system over said communication network to potential

Application/Control Number: 09/840,283                                    Page 22
Art Unit: 2623

purchasers, querying said customer to stimulate the sending of ticket sales data

from said customer and recording said data into a database.

Applicant's own originally filed specification states that it is conventional

for owners of multimedia material to provide advertising material to purchasers to

locally market and sell said multimedia material (page 12, lines 5-17). Because

Hunter also teaches digitally transmitting advertising material as well as

multimedia material to purchasers of multimedia material (paragraph 0070), a

practitioner of ordinary skill in the art would be motivated to receive this

advertising material from said owners as well, as the cost reducing benefits of all

digital domain transmissions taught by Hunter (paragraph 0008-0009) would be

then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter to include receiving associated

advertising material from an owner of said multimedia material, for the benefit of

reducing the costs normally associated with the distribution and promotion of said

multimedia material.

Hunter still fails to disclose providing samples of said digital format from

said server system over said communication network to potential purchasers and

querying said customer to stimulate the sending of ticket sales data from said

customer and recording said data into a database.

Application/Control Number: 09/840,283                                    Page 23
Art Unit: 2623

In an analogous art, Bernard teaches providing samples of multimedia content to potential purchasers (col. 3, lines 19-41) to provide assistance in choosing which material to purchase.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include providing samples of multimedia content to potential purchasers, as taught by Bernard, for the benefit of providing helpful assistance to the purchaser in choosing which material to purchase.

Hunter and Bernard fail to disclose querying said customer to stimulate the sending of ticket sales data from said customer and recording said data into a database.

In an analogous art, Sprogis discloses receiving and logging tickets sales information from theaters for billing and market research purposes (paragraph 29).

It would have been obvious at the time to a person of ordinary skill in the art to modify the method of Hunter and Bernard to include querying said customer to stimulate the sending of ticket sales data from said customer and recording said data into a database, as taught by Sprogis, for the benefit of collecting detailed information for billing and market research purposes, such as royalty payments and calculating the success of various films.

Application/Control Number: 09/840,283                                    Page 24
Art Unit: 2623

> Regarding claim 22, Hunter, Bernard, and Sprogis disclose the method of
>
> claim 21, including providing marketing data recorded in said database to
>
> customers in response to a query from a customer (allowing advertisers to
>
> segment their markets, Sprogis, paragraph 0032).

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Dominic D. Saltarelli whose telephone number is (571)

272-7302. The examiner can normally be reached on Monday - Friday 9:00am -

6:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Miller can be reached on (571) 272-7353. The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

Application/Control Number: 09/840,283                                Page 25

Art Unit: 2623

DS

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit |
| | Saltarelli, Dominic | 2623 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/18/2006 | 10/12/2007 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | ✓ | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | ✓ | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | ✓ | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | ✓ | ✓ | | | | | | |
| | 16 | ✓ | ✓ | | | | | | |
| | 17 | ✓ | ✓ | | | | | | |
| | 18 | ✓ | ✓ | | | | | | |
| | 19 | ✓ | ✓ | | | | | | |
| | 20 | ✓ | ✓ | | | | | | |
| | 21 | ✓ | ✓ | | | | | | |
| | 22 | ✓ | ✓ | | | | | | |
| | 23 | ✓ | ✓ | | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit |
| | Saltarelli, Dominic | 2623 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| updated | | 10/12/07 | DS |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Updated Search | 8/18/2006 | jm |
| Updated Search History Attached | 08/18/2006 | jm |

### INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

U~NITED~ S~TATES~ P~ATENT AND~ T~RADEMARK~ O~FFICE~

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710          7590          01/18/2008
BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA 02111

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/18/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| **Interview Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Dominic D. Saltarelli | 2623 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Dominic D. Saltarelli_.                    (3)_____.

(2) _Anthony Handal_.                         (4)_____.

Date of Interview: _16 January 2008_.

Type:   a)☒  Telephonic   b)☐  Video Conference
        c)☐  Personal [copy given to:  1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
     If Yes, brief description: _____.

Claim(s) discussed: _1-23_.

Identification of prior art discussed: _n/a_.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Applicant briefly outlined the direction in which the application was going to be amended in order to better prepare the examiner for examining the application._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MEPP Section 713.04).  If a reply to the last office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an Attachment to a signed Office action.

Examiner's signature, if required

Docket No.: 25804/1US1
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283                  Confirmation No.: 3319

Filed: April 23, 2001                        Art Unit: 2623

For: MULTIMEDIA MARKETING AND               Examiner: D. D. Saltarelli
    DISTRIBUTION SYSTEM

## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

In response to the Office Action dated October 16, 2007, please amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

Application No. 09/840,283                 2                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

## AMENDMENTS TO THE CLAIMS

1.  (Currently Amended)  A method of marketing and distributing multimedia, the method comprising:

a.      receiving multimedia material having a particular content and content associated advertising material from a producer or owner of said multimedia material;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

[c      inputting multimedia material information;]

c[d].   providing a server system accessible over a communication network [said producer or owner being linked with the server system], said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network;

[e.     providing a search function for said multimedia material and said associated advertising material;]

d[f].   providing  samples of said digital format from said server system over said communication network to said  potential purchasers, said purchasers being linked to the server system through said communication network;

Application No. 09/840,283                3                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

e[g].    downloading to said purchasers, upon request of said purchasers, over

said communication network, said digital format of said multimedia material

from said server system; and

f[h].    providing said digital format of said advertising material that is linked to

said multimedia material to said purchasers from said server system over said

communication network allowing purchasers to locally market and sell said

multimedia material;

g.        wherein said purchaser is an exhibitor exhibiting said multimedia material

in a public theater to a number of individuals in exchange for a paid admission

or a broadcast exhibitor, said advertising material being shown to the public at a

time or in a place different from that of said multimedia material.


2. (Cancelled).


3. (Previously Presented)  The method of marketing and distributing multimedia

of claim 1, wherein receiving multimedia material includes receiving non-digital

media selected from the group consisting of celluloid media, printed media,

video cassettes, and audio tape.

Application No. 09/840,283                 4                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

4. (Original) The method of marketing and distributing multimedia of claim 3, including the step of digitizing said non-digital media for storage on said computer readable storage medium.

5. (Original) The method of marketing and distributing multimedia of claim 1, including providing a server system accessible over a public communication system.

6. (Cancelled).

7. (Cancelled).

8. (Previously Presented)  The method of marketing and distributing multimedia of claim 1, further comprising <u>automatically</u> collecting sales information from exhibitor recipients of said multimedia material and providing sales and marketing data <u>to exhibitors</u> based upon information from said [users of said server system] exhibitors.

Application No. 09/840,283                 5                 Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

9. (Original) The method of marketing and distributing multimedia of claim 8, including providing marketing data based upon actual [users] uses of said multimedia material.

10. (Currently Amended)  A method of distributing movies comprising:

a.      receiving a movie on celluloid and associated advertising material together from said movie owner;

b.      scanning said movie and converting it into a digital format, storing said movie in digital format and said associated advertising material in digital format in a computer readable memory, such that said advertising material and said movie are linked;

c.      inputting licensing information about said movie;

[[c]]d.      transferring said digital formats to a theater via a communications network and storing said digital formats on a computer readable memory located at said theater; and

[[d]]e. projecting said movie in said digital format using a digital projector onto a screen for display to an audience.

11. (Previously Presented)  A distribution system for distributing multimedia comprising:

Application No. 09/840,283                6                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

a.      a first central processing unit;

b.      a first memory associated with said first central processing unit;

c.      a communications network accessible by said first central processing unit

for transferring data into and out of said first memory;

d.      an input device connected for data transfer to said first central processing

unit, said input device receiving multimedia material and associated advertising

material, and transferring said materials into said first memory in a digital

format via said central processing unit;

e.      a second central processing unit;

f.      a second memory, said second memory associated with said second

central processing unit, said communications network being accessible by said

second central processing unit for transferring said digital format into and out of

said second memory; and

g.      a digital feature film projector in data communication with said second

central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience, said feature film being stored in said

digital format in said second memory after being transferred via said

communications network from said first memory.

Application No. 09/840,283                    7                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

12.    (Previously Presented)  A method of marketing and distributing

multimedia, the  method comprising:

a.    receiving multimedia material from a producer or owner of said

multimedia material <u>together with associated advertising material</u>;

b.    storing advertising material associated with said multimedia material on a

computer readable storage medium;

c.    providing a server system accessible over a communication network, said

server system accessing <u>said multimedia material and</u> said advertising material

from said computer readable storage medium for transfer of said advertising

material in a digital format from said server system over said communication

network;

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material [that is] <u>and said</u> linked [to said]

advertising material to said exhibitor, <u>by said exhibitor</u> downloading said

advertising material [upon request from said customer for said advertising

material] <u>and said multimedia material</u> over said server system;

f.    [following up] <u>communicating with said exhibitor</u> to determine

information necessary to calculate an amount owed by said <u>exhibitor</u> [customer]

for said multimedia material; and

g.    charging the account of said exhibitor with the amount owed.

Application No. 09/840,283                8                        Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

13. (Cancelled).

14. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein receiving multimedia material includes receiving non-digital media selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape, and wherein said multimedia material is provided to said exhibitor using an electronic communications network.

15. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein said <u>communicating</u> [follow-up] is implemented by <u>the automatic</u> sending <u>of</u> an e-mail to said exhibitor.

16. (Previously Presented)  The method of marketing and distributing multimedia of claim 12, wherein [said] follow-up is implemented by consulting publicly reported data respecting said exhibitor.

[17.  (Previously Presented)  The method of marketing and distributing multimedia of claim 12, further comprising providing advertising material to

Application No. 09/840,283                    9                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

purchasers over said communication network, and exhibitors to locally market

and sell said multimedia material.]

18. (Previously Presented)  The method of marketing and distributing

multimedia of claim 17, further comprising querying said exhibitor to stimulate

the sending of data from said exhibitor and recording said data into a database.

19. (Previously Presented)  The method of marketing and distributing

multimedia of claim 18, comprising providing marketing data recorded in said

database to customers in response to a query from a exhibitor.

20. (Cancelled).

21. (Previously Presented)  A method of marketing and distributing multimedia,

the  method comprising:

a.      receiving a motion picture [multimedia material] and associated

advertising material from a producer or owner of said multimedia material;

b.      storing said motion picture [multimedia material] and associated

advertising material on a computer readable storage medium in a digital format;

Application No. 09/840,283                10                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

c.      providing a server system accessible over a communication network, said

producer or owner being linked with the server system, said server system

accessing said digital format from said computer readable storage medium for

transfer over said communication network;

d.      providing  samples of said motion picture [digital format] from said server

system over said communication network to potential exhibitors [purchasers],

said  potential exhibitors [purchasers] being linked to the server system;

e.      downloading, upon request of said exhibitor [purchasers], over said

communication network, said digital format of said digital format of said motion

picture; [multimedia material] from said server system; [and]

f.      displaying said motion picture;

g.      displaying said advertising material at a time or in a place different from

the place or time of exhibition of said motion picture;

h[f].   querying said exhibitor [customer] to stimulate the sending of ticket sales

data from said exhibitor [customer];[and]

i[g].   recording said data into a database for billing purposes; and

j.      reporting recorded data to other exhibitors.

Application No. 09/840,283                 11                        Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

22. (Original)        The method of marketing and distributing multimedia of

claim 21, comprising providing marketing data recorded in said database to

customers in response to a query from a customer.


23.        (Cancelled).


24.        (New)  The method of claim 1, wherein the exhibitor of multimedia

material is the public showing of a motion picture.


25.        (New)  The method of claim 12, wherein said information comprise box

office information and further comprising transmitting box office information to

other exhibitors and potential exhibitors.


26.        (New)  The method of Claim 1, further comprising providing a search

function for said multimedia material and said associated advertising material.

Application No. 09/840,283                12                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

## REMARKS

In the outstanding office action, rejection was based upon a primary reference to Hunter and supplemental references to Bernard and Seifert. In response to this rejection, the claims have been amended in a manner which is believed to bring them clearly into condition for allowance.

At the outset, it is noted that the cited references do not address the problem being solved by the invention. While, they do show the use of a network for transmitting programming, as well as the use of that network for transmitting advertising, in other respects they fail to anticipate elements of the invention.

Certainly, the general concept of transmitting programming over a network for display in real-time, as taught by Hunter, is notoriously well-known. Indeed, as much it can be said about the earliest commercial television broadcasts in the late 1930s. Likewise, the transmission of advertising, albeit over small screens, is also approaching a century of implementation. The inventive method goes far beyond this, however.

In contrast to Hunter, in accordance with the invention, materials are uploaded for later display. In addition, advertising materials are transmitted for display on systems separate and apart from the movie display system, for example billboards, newspapers and television. This appears to be the clear meaning of paragraph 70 of Hunter. This paragraph does not disclose digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material, as is argued in the outstanding office action.

Application No. 09/840,283                    13                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

An individual, confronted with the system of Hunter and the prior art practice of transmitting such materials through the mail would simply implement electronic distribution of product in real-time and continue the practice of transmitting posters, advertising and so forth through the mail. Information gathering would continue to be done using standard systems. While Hunter does discuss using the transmissions to mechanically generate royalty charges and billing information, there is not a remote suggestion of gathering market data and providing that to subscribers, as in the present invention.

The distribution of advertising over the Hunter network merely represents a separate use for the network.

Hunter merely recognizes that it is possible to implement a network which can feed advertising material to a plurality of billboards, for example outdoor billboard displays.

In contrast, the present invention involves distribution of materials and content through one channel (the Internet), display on another channel (television advertising, poster display, etc.), and gathering of marketing information. Significantly, these aspects of the invention are not taught or suggested by the secondary references.

Bernard is directed to a system for purchasing multimedia over the Internet. While the patent does make mention of telephone caller receiving information from salespeople, this is different from the present invention where the system, on the basis of use, generates marketing data. The capability, in accordance with the present invention, is to compare demographic information,

Application No. 09/840,283                14                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

particular television advertisements used, success rates in terms of movie theater attendance, and so forth and provide the same to theater operators, thus better informing their marketing decisions.

Turning to Seifert, the same as merely an electronic library content sharing system. It certainly does not address any of the above noted deficiencies of Hunter and Bernard.

Accordingly, significant aspects of the claims are not remotely taught by the art of record. For example, claim 1, as amended, currently claims the transmission of data from the server to the distributor with separate, in time or place, display of the advertising material. Claim 8, which depends from claim 1 clearly recites a sharing of market data between exhibitors based on use of the inventive method.

Claim 1 also positively recites the transmission of multimedia, such as a motion picture, and associated advertising material which is acknowledged in the outstanding office action as not being taught by the prior art. Accordingly, it is believed that claim 1 is most clearly in condition for allowance.

The inventive method is in contrast to the prior art which merely involves electronically transporting materials in a catalog or doing what is essentially a broadcast transmission to advertising billboard signs or theaters. Indeed, Hunter is focused on simply achieving multiple uses for the expensive high-bandwidth information distribution system. Hunter certainly does not anticipate the invention.

Application No. 09/840,283                    15                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

  Claim 21 is specific to motion picture distribution and includes a sampling mechanism, as is also recited in claim 1, transport and display of advertising and motion pictures at a different place for time and querying exhibitors to gather information which is used for billing purposes and is recited as being reported to other exhibitors.

  Accordingly, it is believed most clear that claim 21 is in condition for allowance.

  In view of the above amendment, applicant believes the pending application is in condition for allowance.

  Applicant believes no fee is due with this response. However, if a fee is due, please charge our Deposit Account No. 50-0369, under Order No. 25804/1US1 from which the undersigned is authorized to draw.

Dated: February 15, 2008   Respectfully submitted,
           Electronic signature:
           /s/ Anthony H. Handal/
           Anthony H. Handal
            Registration No.: 26,275
           BROWN RUDNICK BERLACK ISRAELS
            LLP
           Seven Times Square
           New York, New York  10036
           (212) 209-4942
           Attorney for Applicant

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 09840283 |
| **Filing Date:** | 23-Apr-2001 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| First Named Inventor/Applicant Name: | Nicholas Stiliadis |
| **Filer:** | Anthony H. Handal/Denise Nicholson |
| **Attorney Docket Number:** | NS2 |

Filed as Small Entity

## Utility      Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 1 month with $0 paid | 2251 | 1 | 60 | 60 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **60** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 2871312 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 21710 |
| **Filer:** | Anthony H. Handal/Denise Nicholson |
| **Filer Authorized By:** | Anthony H. Handal |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 15-FEB-2008 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 20:44:52 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $ 60 |
| RAM confirmation Number | 4106 |
| Deposit Account | 500369 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges) | |

# File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment - After Non-Final Rejection | 09840283R.pdf | 85935 <br><br> 251887a53f07be71bf447a8f6ec2618b6 3629e67 | no | 15 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 8141 <br><br> 9ff31369dc7384bd8e7dfcdbd8b1154a2 458b389 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | | 94076 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Docket No.: 25804/1US1
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

_____

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283        Confirmation No.: 3319

Filed: April 23, 2001        Art Unit: 2623

For: MULTIMEDIA MARKETING AND        Examiner: D. D. Saltarelli
      DISTRIBUTION SYSTEM
_____


## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

In response to the Office Action dated October 16, 2007, please amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                2                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

## AMENDMENTS TO THE CLAIMS

1.  (Currently Amended)  A method of marketing and distributing multimedia, the method comprising:

a.      receiving multimedia material <u>having a particular content</u> and content associated advertising material from a producer or owner of said multimedia material;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

[c      inputting multimedia material information;]

<u>c</u>[d].   providing a server system accessible over a communication network [said producer or owner being linked with the server system], said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network;

[e.      providing a search function for said multimedia material and said associated advertising material;]

<u>d</u>[f].   providing  samples of said digital format from said server system over said communication network to <u>said </u> potential purchasers, said purchasers being linked to the server system <u>through said communication network</u>;

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                3                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

e[g].   downloading to said purchasers, upon request of said purchasers, over

said communication network, said digital format of said multimedia material

from said server system; and

f[h].   providing said digital format of said advertising material that is linked to

said multimedia material to said purchasers from said server system over said

communication network allowing purchasers to locally market and sell said

multimedia material;

g.      wherein said purchaser is an exhibitor exhibiting said multimedia material

in a public theater to a number of individuals in exchange for a paid admission

or a broadcast exhibitor, said advertising material being shown to the public at a

time or in a place different from that of said multimedia material.


2. (Cancelled).


3. (Previously Presented)  The method of marketing and distributing multimedia

of claim 1, wherein receiving multimedia material includes receiving non-digital

media selected from the group consisting of celluloid media, printed media,

video cassettes, and audio tape.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                   4                   Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

4. (Original) The method of marketing and distributing multimedia of claim 3, including the step of digitizing said non-digital media for storage on said computer readable storage medium.

5. (Original) The method of marketing and distributing multimedia of claim 1, including providing a server system accessible over a public communication system.

6. (Cancelled).

7. (Cancelled).

8. (Previously Presented) The method of marketing and distributing multimedia of claim 1, further comprising <u>automatically</u> collecting sales information from exhibitor recipients of said multimedia material and providing sales and marketing data <u>to exhibitors</u> based upon information from said [users of said server system] exhibitors.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                5                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

9. (Original) The method of marketing and distributing multimedia of claim 8,

including providing marketing data based upon actual [users] uses of said

multimedia material.


10. (Currently Amended)  A method of distributing movies comprising:

a.        receiving a movie on celluloid and associated advertising material

together from said movie owner;

b.        scanning said movie and converting it into a digital format, storing said

movie in digital format and said associated advertising material in digital format

in a computer readable memory, such that said advertising material and said

movie are linked;

c.        inputting licensing information about said movie;

[[c]]d.        transferring said digital formats to a theater via a communications

network and storing said digital formats on a computer readable memory

located at said theater; and

[[d]]e. projecting said movie in said digital format using a digital projector onto a

screen for display to an audience.


11. (Previously Presented)  A distribution system for distributing multimedia

comprising:

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                    6                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

a.      a first central processing unit;

b.      a first memory associated with said first central processing unit;

c.      a communications network accessible by said first central processing unit

for transferring data into and out of said first memory;

d.      an input device connected for data transfer to said first central processing

unit, said input device receiving multimedia material and associated advertising

material, and transferring said materials into said first memory in a digital

format via said central processing unit;

e.      a second central processing unit;

f.      a second memory, said second memory associated with said second

central processing unit, said communications network being accessible by said

second central processing unit for transferring said digital format into and out of

said second memory; and

g.      a digital feature film projector in data communication with said second

central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience, said feature film being stored in said

digital format in said second memory after being transferred via said

communications network from said first memory.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                7                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

12.    (Previously Presented)  A method of marketing and distributing

multimedia, the  method comprising:

a.    receiving multimedia material from a producer or owner of said

multimedia material <u>together with associated advertising material</u>;

b.    storing advertising material associated with said multimedia material on a

computer readable storage medium;

c.    providing a server system accessible over a communication network, said

server system accessing <u>said multimedia material and</u> said advertising material

from said computer readable storage medium for transfer of said advertising

material in a digital format from said server system over said communication

network;

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material [that is] <u>and said</u> linked [to said]

advertising material to said exhibitor, <u>by said exhibitor</u> downloading said

advertising material [upon request from said customer for said advertising

material] <u>and said multimedia material</u> over said server system;

f.    [following up] <u>communicating with said exhibitor</u> to determine

information necessary to calculate an amount owed by said <u>exhibitor</u> [customer]

for said multimedia material; and

g.    charging the account of said exhibitor with the amount owed.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                    8                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007


13. (Cancelled).


14.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, wherein receiving multimedia material includes

receiving non-digital media selected from the group consisting of celluloid

media, printed media, video cassettes, and audio tape, and wherein said

multimedia material is provided to said exhibitor using an electronic

communications network.


15.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, wherein said <u>communicating</u> [follow-up] is

implemented by <u>the automatic</u> sending <u>of</u> an e-mail to said exhibitor.


16.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, wherein [said] follow-up is implemented by consulting

publicly reported data respecting said exhibitor.


[17.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, further comprising providing advertising material to

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                    9                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

purchasers over said communication network, and exhibitors to locally market

and sell said multimedia material.]

18.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 17, further comprising querying said exhibitor to stimulate

the sending of data from said exhibitor and recording said data into a database.

19.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 18, comprising providing marketing data recorded in said

database to customers in response to a query from a exhibitor.

20.  (Cancelled).

21.  (Previously Presented)  A method of marketing and distributing multimedia,

the  method comprising:

a.       receiving a motion picture [multimedia material] and associated

advertising material from a producer or owner of said multimedia material;

b.       storing said motion picture [multimedia material] and associated

advertising material on a computer readable storage medium in a digital format;

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                10                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

c.      providing a server system accessible over a communication network, said producer or owner being linked with the server system, said server system accessing said digital format from said computer readable storage medium for transfer over said communication network;

d.      providing  samples of said motion picture [digital format] from said server system over said communication network to potential exhibitors [purchasers], said  potential exhibitors [purchasers] being linked to the server system;

e.      downloading, upon request of said exhibitor [purchasers], over said communication network, said digital format of said digital format of said motion picture; [multimedia material] from said server system; [and]

f.      displaying said motion picture;

g.      displaying said advertising material at a time or in a place different from the place or time of exhibition of said motion picture;

h[f].   querying said exhibitor [customer] to stimulate the sending of ticket sales data from said exhibitor [customer];[and]

i[g].   recording said data into a database for billing purposes; and

j.      reporting recorded data to other exhibitors.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                11                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

22. (Original)       The method of marketing and distributing multimedia of

claim 21, comprising providing marketing data recorded in said database to

customers in response to a query from a customer.

23.       (Cancelled).

24.       (New)  The method of claim 1, wherein the exhibitor of multimedia

material is the public showing of a motion picture.

25.       (New)  The method of claim 12, wherein said information comprise box

office information and further comprising transmitting box office information to

other exhibitors and potential exhibitors.

26.       (New)  The method of Claim 1, further comprising providing a search

function for said multimedia material and said associated advertising material.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                12                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

## REMARKS

In the outstanding office action, rejection was based upon a primary reference to Hunter and supplemental references to Bernard and Seifert. In response to this rejection, the claims have been amended in a manner which is believed to bring them clearly into condition for allowance.

At the outset, it is noted that the cited references do not address the problem being solved by the invention. While, they do show the use of a network for transmitting programming, as well as the use of that network for transmitting advertising, in other respects they fail to anticipate elements of the invention.

Certainly, the general concept of transmitting programming over a network for display in real-time, as taught by Hunter, is notoriously well-known. Indeed, as much it can be said about the earliest commercial television broadcasts in the late 1930s. Likewise, the transmission of advertising, albeit over small screens, is also approaching a century of implementation. The inventive method goes far beyond this, however.

In contrast to Hunter, in accordance with the invention, materials are uploaded for later display. In addition, advertising materials are transmitted for display on systems separate and apart from the movie display system, for example billboards, newspapers and television. This appears to be the clear meaning of paragraph 70 of Hunter. This paragraph does not disclose digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material, as is argued in the outstanding office action.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                 13                 Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

An individual, confronted with the system of Hunter and the prior art practice of transmitting such materials through the mail would simply implement electronic distribution of product in real-time and continue the practice of transmitting posters, advertising and so forth through the mail. Information gathering would continue to be done using standard systems. While Hunter does discuss using the transmissions to mechanically generate royalty charges and billing information, there is not a remote suggestion of gathering market data and providing that to subscribers, as in the present invention.

The distribution of advertising over the Hunter network merely represents a separate use for the network.

Hunter merely recognizes that it is possible to implement a network which can feed advertising material to a plurality of billboards, for example outdoor billboard displays.

In contrast, the present invention involves distribution of materials and content through one channel (the Internet), display on another channel (television advertising, poster display, etc.), and gathering of marketing information. Significantly, these aspects of the invention are not taught or suggested by the secondary references.

Bernard is directed to a system for purchasing multimedia over the Internet. While the patent does make mention of telephone caller receiving information from salespeople, this is different from the present invention where the system, on the basis of use, generates marketing data. The capability, in accordance with the present invention, is to compare demographic information,

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                    14                    Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

particular television advertisements used, success rates in terms of movie theater attendance, and so forth and provide the same to theater operators, thus better informing their marketing decisions.

Turning to Seifert, the same as merely an electronic library content sharing system. It certainly does not address any of the above noted deficiencies of Hunter and Bernard.

Accordingly, significant aspects of the claims are not remotely taught by the art of record. For example, claim 1, as amended, currently claims the transmission of data from the server to the distributor with separate, in time or place, display of the advertising material. Claim 8, which depends from claim 1 clearly recites a sharing of market data between exhibitors based on use of the inventive method.

Claim 1 also positively recites the transmission of multimedia, such as a motion picture, and associated advertising material which is acknowledged in the outstanding office action as not being taught by the prior art. Accordingly, it is believed that claim 1 is most clearly in condition for allowance.

The inventive method is in contrast to the prior art which merely involves electronically transporting materials in a catalog or doing what is essentially a broadcast transmission to advertising billboard signs or theaters. Indeed, Hunter is focused on simply achieving multiple uses for the expensive high-bandwidth information distribution system. Hunter certainly does not anticipate the invention.

Copied from 09840283 on 03/21/2008

Application No. 09/840,283                15                Docket No.: 25804/1US1
Amendment dated January 16, 2008
Reply to Office Action of October 16, 2007

Claim 21 is specific to motion picture distribution and includes a sampling mechanism, as is also recited in claim 1, transport and display of advertising and motion pictures at a different place for time and querying exhibitors to gather information which is used for billing purposes and is recited as being reported to other exhibitors.

Accordingly, it is believed most clear that claim 21 is in condition for allowance.

In view of the above amendment, applicant believes the pending application is in condition for allowance.

Applicant believes no fee is due with this response. However, if a fee is due, please charge our Deposit Account No. 50-0369, under Order No. 25804/1US1 from which the undersigned is authorized to draw.

Dated: February 15, 2008                Respectfully submitted,
                                        Electronic signature:
                                        /s/Anthony H. Handal/
                                        Anthony H. Handal
                                            Registration No.: 26,275
                                        BROWN RUDNICK BERLACK ISRAELS
                                            LLP
                                        Seven Times Square
                                        New York, New York  10036
                                        (212) 209-4942
                                        Attorney for Applicant

Copied from 09840283 on 03/21/2008

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>09/840,283 | Filing Date<br>04/23/2001 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|
| FOR | NUMBER FILED<br>(Column 1) | NUMBER EXTRA<br>(Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | **02/15/2008** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 16 | Minus ** 23 | = 0 | X $ = | | X $50= | 0 |
| | Independent (37 CFR 1.16(h)) | * 5 | Minus ***6 | = 0 | X $ = | | X $210= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/Kimberly Cooper/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710        7590        02/25/2008
BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA 02111

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/25/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| | Application No. | Applicant(s) |
|---|---|---|
| **Notice of Non-Compliant Amendment (37 CFR 1.121)** | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Dominic D. Saltarelli | 2623 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

The amendment document filed on <u>15 February 2008</u> is considered non-compliant because it has failed to meet the requirements of 37 CFR 1.121 or 1.4. In order for the amendment document to be compliant, correction of the following item(s) is required.

THE FOLLOWING MARKED (X) ITEM(S) CAUSE THE AMENDMENT DOCUMENT TO BE NON-COMPLIANT:

- ☐ 1. Amendments to the specification:
  - ☐ A. Amended paragraph(s) do not include markings.
  - ☐ B. New paragraph(s) should not be underlined.
  - ☐ C. Other _____.

- ☐ 2. Abstract:
  - ☐ A. Not presented on a separate sheet. 37 CFR 1.72.
  - ☐ B. Other _____.

- ☐ 3. Amendments to the drawings:
  - ☐ A. The drawings are not properly identified in the top margin as "Replacement Sheet," "New Sheet," or "Annotated Sheet" as required by 37 CFR 1.121(d).
  - ☐ B. The practice of submitting proposed drawing correction has been eliminated. Replacement drawings showing amended figures, without markings, in compliance with 37 CFR 1.84 are required.
  - ☐ C. Other _____.

- ☒ 4. Amendments to the claims:
  - ☐ A. A complete listing of all of the claims is not present.
  - ☐ B. The listing of claims does not include the text of all pending claims (including withdrawn claims)
  - ☒ C. Each claim has not been provided with the proper status identifier, and as such, the individual status of each claim cannot be identified. Note: the status of every claim must be indicated after its claim number by using one of the following status identifiers: (Original), (Currently amended), (Canceled), (Previously presented), (New), (Not entered), (Withdrawn) and (Withdrawn-currently amended).
  - ☐ D. The claims of this amendment paper have not been presented in ascending numerical order.
  - ☐ E. Other: _____.

- ☐ 5. Other (e.g., the amendment is unsigned or not signed in accordance with 37 CFR 1.4):
  _____

For further explanation of the amendment format required by 37 CFR 1.121, see MPEP § 714.

TIME PERIODS FOR FILING A REPLY TO THIS NOTICE:

1. Applicant is given **no new time period** if the non-compliant amendment is an after-final amendment or an amendment filed after allowance. If applicant wishes to resubmit the non-compliant after-final amendment with corrections, the **entire corrected amendment** must be resubmitted.

2. Applicant is given **one month**, or thirty (30) days, whichever is longer, from the mail date of this notice to supply the correction, if the non-compliant amendment is one of the following: a preliminary amendment, a non-final amendment (including a submission for a request for continued examination (RCE) under 37 CFR 1.114), a supplemental amendment filed within a suspension period under 37 CFR 1.103(a) or (c), and an amendment filed in response to a *Quayle* action. If any of above boxes 1. to 4. are checked, the correction required is only the **corrected section** of the non-compliant amendment in compliance with 37 CFR 1.121.

   <u>Extensions of time</u> are available under 37 CFR 1.136(a) <u>only</u> if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action.

   <u>Failure to timely respond</u> to this notice will result in:
   **Abandonment** of the application if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action; or
   **Non-entry** of the amendment if the non-compliant amendment is a preliminary amendment or supplemental amendment.

| Dominic Saltarelli | 571-272-7302 |
|---|---|
| Legal Instruments Examiner (LIE), if applicable | Telephone No. |

| **Interview Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | Dominic D. Saltarelli | 2623 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Dominic D. Saltarelli_.                    (3)_____.

(2) _Tony Handal_.                              (4)_____.

Date of Interview: _22 February 2008_.

Type:  a)☒ Telephonic   b)☐  Video Conference
       c)☐ Personal [copy given to:  1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
   If Yes, brief description: _____.

Claim(s) discussed: _1 and 8_.

Identification of prior art discussed: _Hunter (2002/0162113)_.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Examiner pointed to minor technical errors in the amendment, and discussed possible claim amendments to further prosecution._

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MEPP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an Attachment to a signed Office action.

Examiner's signature, if required

Docket No.: 25804/1US1
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283      Confirmation No.: 3319

Filed: April 23, 2001      Art Unit: 2623

For: MULTIMEDIA MARKETING AND      Examiner: D. D. Saltarelli
        DISTRIBUTION SYSTEM

## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

In response to the Office Action dated February 22, 2008, please amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

Application No. 09/840,283                    2                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

## AMENDMENTS TO THE CLAIMS

1. (Currently Amended)  A method of marketing and distributing multimedia, the method comprising:

a.    receiving multimedia material [having a particular content] and [content associated] advertising material from a producer or owner of said multimedia material said advertising material being associated with said multimedia material;

b.    storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

[c    inputting multimedia material information;]

c[d].  providing a server system accessible over a communication network [said producer or owner being linked with the server system], said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network to potential purchasers;

[e.    providing a search function for said multimedia material and said associated advertising material;]

d[f].  providing  samples of said digital format from said server system over said communication network to said  potential purchasers, said purchasers being linked to the server system through said communication network;

Application No. 09/840,283                 3                 Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

e[g].    downloading to said purchasers, upon request of said purchasers, over

said communication network, said digital format of said multimedia material

from said server system said purchasers storing downloaded digital format of

said multimedia material; and

f[h].    providing said digital format of said advertising material that is linked to

said multimedia material to said purchasers from said server system over said

communication network, allowing purchasers to locally market and sell said

multimedia material, said purchasers downloading said digital format of said

advertising material that is associated with said multimedia material, said

purchasers storing the downloaded digital format of said advertising material;

g.    wherein said purchaser is an exhibitor exhibiting said stored digital format

of said multimedia material in a public theater to a number of individuals in

exchange for a paid admission or a broadcast exhibitor, said digital format of

said stored associated advertising material being shown to the public at a time or

in a place different from that of said multimedia material.


2. (Cancelled).


3. (Previously Presented)  The method of marketing and distributing multimedia

of claim 1, wherein receiving multimedia material includes receiving non-digital

Application No. 09/840,283                4                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

media selected from the group consisting of celluloid media, printed media,

video cassettes, and audio tape.

4. (Original) The method of marketing and distributing multimedia of claim 3,

including the step of digitizing said non-digital media for storage on said

computer readable storage medium.

5. (Original) The method of marketing and distributing multimedia of claim 1,

including providing a server system accessible over a public communication

system.

6. (Cancelled).

7. (Cancelled).

8. (Currently Amended). The method of marketing and distributing multimedia

of claim 1, further comprising <u>automatically</u> collecting sales information from

exhibitor recipients of said multimedia material and providing sales and

marketing data <u>to exhibitors</u> based upon information from said [users of said

server system] exhibitors.

Application No. 09/840,283                  5                        Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

9. (Currently Amended)  The method of marketing and distributing multimedia

of claim 8, [including] further comprising providing marketing data based upon

actual [users] uses of said multimedia material.

10. (Currently Amended)  A method of distributing movies comprising:

a.      receiving a movie on celluloid and associated advertising material

together from said movie owner;

b.      scanning said movie and converting it into a digital format, storing said

movie in digital format and said associated advertising material in digital format

in a computer readable memory, such that said advertising material and said

movie are linked;

c.      inputting licensing information about said movie;

[[c]]d.      transferring said digital formats of said movie and said associated

advertising material to a theater via a communications network; [and]

e.      storing said digital formats of said movie and said associated advertising

material on a computer readable memory located at said theater; and

[[d]]f. projecting said movie in said digital format using a digital projector onto a

screen for display to an audience.

Application No. 09/840,283                6                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

11. (Currently Amended)  A distribution system for distributing multimedia

comprising:

a.        a first central processing unit;

b.        a first memory associated with said first central processing unit;

c.        a communications network accessible by said first central processing unit

for transferring data into and out of said first memory;

d.        an input device connected for data transfer to said first central processing

unit, said input device receiving multimedia material and associated advertising

material, and transferring said materials into said first memory in a digital

format via said central processing unit;

e.        a second central processing unit;

f.        a second memory, said second memory associated with said second

central processing unit, said communications network being accessible by said

second central processing unit for transferring said digital format <u>of said</u>

<u>multimedia material</u> into and out of said second memory; [and]

g.        a digital feature film projector in data communication with said second

central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience <u>at a particular time and place</u>, said feature

film being stored in said digital format in said second memory after being

transferred via said communications network from said first memory[.]<u>;</u>

Application No. 09/840,283                7                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

h.      a third memory, said third memory associated with said second central

processing unit, said communications network being assessable by said second

central processing unit for transferring said digital format of said associated

advertising material into and out of said second memory; and

i.      displaying said associated advertising material at a time or place different

from said particular time or place.


12.    (Currently Amended)  A method of marketing and distributing

multimedia, [the  method] comprising:

a.      receiving multimedia material from a producer or owner of said

multimedia material together with associated advertising material;

b.      storing advertising material associated with said multimedia material on a

computer readable storage medium;

c.      providing a server system accessible over a communication network, said

server system accessing said multimedia material and said advertising material

from said computer readable storage medium for transfer of said advertising

material in a digital format from said server system over said communication

network;

d.      establishing an account for a broadcast or live theater exhibitor;

Application No. 09/840,283                    8                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

e.      providing said multimedia material to said exhibitor for storage on a
computer system and for later playback and exhibition at a particular time and
place [that is] and providing said linked [to said] advertising material to said
exhibitor for storage on a computer system and exhibition at a time or place
different from said particular time or place, [by] said exhibitor downloading said
advertising material [upon request from said customer for said advertising
material] and said multimedia material over said server system;

f.      [following up] communicating with said exhibitor to determine
information necessary to calculate an amount owed by said exhibitor [customer]
for said multimedia material; and

g.      charging the account of said exhibitor with the amount owed.


13. (Cancelled).


14. (Previously Presented)  The method of marketing and distributing
multimedia of claim 12, wherein receiving multimedia material includes
receiving non-digital media selected from the group consisting of celluloid
media, printed media, video cassettes, and audio tape, and wherein said
multimedia material is provided to said exhibitor using an electronic
communications network.

Application No. 09/840,283                9                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

15.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, wherein said <u>communicating</u> [follow-up] is

implemented by <u>the automatic</u> sending <u>of</u> an e-mail to said exhibitor.

16.  (Currently Amended)  The method of marketing and distributing

multimedia of claim 12, wherein [said] follow-up [is implemented by] <u>comprises</u>

consulting publicly reported data respecting said exhibitor.

17.  (Cancelled).

18.  (Currently Amended)  The method of marketing and distributing

multimedia of claim 1<u>2</u>[7], further comprising querying said exhibitor to

stimulate the sending of data from said exhibitor and recording said data into a

database.

19.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 18, comprising providing marketing data recorded in said

database to customers in response to a query from a exhibitor.

Application No. 09/840,283                    10                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

20. (Cancelled).


21. (Currently Amended)  A method of marketing and distributing multimedia, the  method comprising:

a.      receiving a motion picture [multimedia material] and associated advertising material from a producer or owner of said multimedia material;

b.      storing said motion picture [multimedia material] and associated advertising material on a computer readable storage medium in a digital format;

c.      providing a server system accessible over a communication network, said producer or owner being linked with the server system, said server system accessing said digital format from said computer readable storage medium for transfer over said communication network;

d.      providing  samples of said motion picture [digital format] from said server system over said communication network to [potential] exhibitors [purchasers], said  [potential] exhibitors [purchasers] being linked to the server system;

e.      downloading, upon request of said exhibitors [purchasers], over said communication network, said digital format of [said digital format of] said motion picture; [multimedia material] from said server system; [and]

f.      storing said downloaded motion picture and displaying said motion picture at a particular time and place;

Application No. 09/840,283                   11                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

g.     storing said downloaded associated advertising material and displaying said advertising material at a time or in a place different from the place or time of exhibition of said motion picture;

h[f].   querying said exhibitor [customer] to stimulate the sending of ticket sales data from said exhibitor [customer];[and]

i[g].   recording said data into a database for billing purposes; and

j.      reporting recorded data to other exhibitors.


22. (Currently Amended)       The method of marketing and distributing multimedia of claim 21, comprising providing marketing data recorded in said database to [customers] exhibitor in response to a query from an exhibitor [a customer].


23.     (Cancelled).


24.     (New)  The method of claim 1, wherein the [exhibitor] exhibition of multimedia material is the public showing of a motion picture.

Application No. 09/840,283                    12                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

25.    (New)  The method of claim 12, wherein said information comprises box

office information and further comprising transmitting box office information to

other exhibitors and potential exhibitors.


26.    (New)  The method of Claim 1, further comprising providing a search

function for said multimedia material and said associated advertising material.

Application No. 09/840,283                 13                 Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

## REMARKS

In the outstanding office action, rejection was based upon a primary reference to Hunter and supplemental references to Bernard and Seifert. In response to this rejection, the claims have been amended in a manner which is believed to bring them clearly into condition for allowance.

At the outset, it is noted that the cited references do not address the problem being solved by the invention. While, they do show the use of a network for transmitting programming, as well as the use of that network for transmitting advertising, in other respects they fail to anticipate elements of the invention.

Certainly, the general concept of transmitting programming over a network for display in real-time, as taught by Hunter, is notoriously well-known. Indeed, as much it can be said about the earliest commercial television broadcasts in the late 1930s. Likewise, the transmission of advertising, albeit over small screens, is also approaching a century of implementation. The inventive method goes far beyond this, however.

In contrast to Hunter, in accordance with the invention, materials are uploaded for later display. In addition, advertising materials are transmitted for display on systems separate and apart from the movie display system, for example billboards, newspapers and television. This appears to be the clear meaning of paragraph 70 of Hunter. This paragraph does not disclose digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material, as is argued in the outstanding office action.

Application No. 09/840,283                    14                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

An individual, confronted with the system of Hunter and the prior art practice of transmitting such materials through the mail would simply implement electronic distribution of product in real-time and continue the practice of transmitting posters, advertising and so forth through the mail. Information gathering would continue to be done using standard systems. While Hunter does discuss using the transmissions to mechanically generate royalty charges and billing information, there is not a remote suggestion of gathering market data and providing that to subscribers, as in the present invention.

The distribution of advertising over the Hunter network merely represents a separate use for the network.

Hunter merely recognizes that it is possible to implement a network which can feed advertising material to a plurality of billboards, for example outdoor billboard displays.

In contrast, the present invention involves distribution of materials and content through one channel (the Internet), display on another channel (television advertising, poster display, etc.), and gathering of marketing information. Significantly, these aspects of the invention are not taught or suggested by the secondary references.

Bernard is directed to a system for purchasing multimedia over the Internet. While the patent does make mention of telephone caller receiving information from salespeople, this is different from the present invention where the system, on the basis of use, generates marketing data. The capability, in accordance with the present invention, is to compare demographic information,

Application No. 09/840,283          15                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

particular television advertisements used, success rates in terms of movie theater attendance, and so forth and provide the same to theater operators, thus better informing their marketing decisions.

Turning to Seifert, the same as merely an electronic library content sharing system. It certainly does not address any of the above noted deficiencies of Hunter and Bernard.

Accordingly, significant aspects of the claims are not remotely taught by the art of record. For example, claim 1, as amended, currently claims the transmission of data from the server to the distributor with separate, in time or place, display of the advertising material. Claim 8, which depends from claim 1 clearly recites a sharing of market data between exhibitors based on use of the inventive method.

Claim 1 also positively recites the transmission of multimedia, such as a motion picture, and associated advertising material which is acknowledged in the outstanding office action as not being taught by the prior art. Accordingly, it is believed that claim 1 is most clearly in condition for allowance.

The inventive method is in contrast to the prior art which merely involves electronically transporting materials in a catalog or doing what is essentially a broadcast transmission to advertising billboard signs or theaters. Indeed, Hunter is focused on simply achieving multiple uses for the expensive high-bandwidth information distribution system. Hunter certainly does not anticipate the invention.

Application No. 09/840,283                16                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action of October 16, 2007

Claim 21 is specific to motion picture distribution and includes a sampling mechanism, as is also recited in claim 1, transport and display of advertising and motion pictures at a different place for time and querying exhibitors to gather information which is used for billing purposes and is recited as being reported to other exhibitors.

Accordingly, it is believed most clear that claim 21 is in condition for allowance.

In view of the above amendment, applicant believes the pending application is in condition for allowance.

Applicant believes no fee is due with this response. However, if a fee is due, please charge our Deposit Account No. 50-0369, under Order No. 25804/1US1 from which the undersigned is authorized to draw.

Dated: February 15, 2008          Respectfully submitted,
                                   Electronic signature:
                                   /s/Anthony H. Handal/
                                   Anthony H. Handal
                                       Registration No.: 26,275
                                   BROWN RUDNICK BERLACK ISRAELS
                                       LLP
                                   Seven Times Square
                                   New York, New York  10036
                                   (212) 209-4942
                                   Attorney for Applicant

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 09840283 |
| **Filing Date:** | 23-Apr-2001 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| First Named Inventor/Applicant Name: | Nicholas Stiliadis |
| **Filer:** | Anthony H. Handal/Denise Nicholson |
| **Attorney Docket Number:** | NS2 |

Filed as Small Entity

## Utility     Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| Claims in excess of 20 | 2202 | 3 | 25 | 75 |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **75** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3051579 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 21710 |
| **Filer:** | Anthony H. Handal/Denise Nicholson |
| **Filer Authorized By:** | Anthony H. Handal |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 25-MAR-2008 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 23:02:37 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $75 |
| RAM confirmation Number | 4264 |
| Deposit Account | 500369 |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment - After Non-Final Rejection | 25804AMD.pdf | 68964 <br><br> eab865b8ced807aff7aaf86a7c7d671335c9ce06 | no | 16 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 8140 <br><br> 58797279e061a16732a02bb719e5f45626d7a74e | no | 2 |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 77104 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Docket No.: 25804/1US1
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

_____

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283                    Confirmation No.: 3319

Filed: April 23, 2001                          Art Unit: 2623

For: MULTIMEDIA MARKETING AND                  Examiner: D. D. Saltarelli
     DISTRIBUTION SYSTEM
_____

## <u>SUPPLEMENTAL AMENDMENT IN RESPONSE TO</u>

## <u>NON-FINAL OFFICE ACTION</u>

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

     In response to the Office Action dated February 25, 2008, please accept this supplemental amendment to the above-identified U.S. patent application as follows:

     **Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

     **Remarks/Arguments** begin on page 12 of this paper.

Application No. 09/840,283                    2                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

## <u>AMENDMENTS TO THE CLAIMS</u>

1.  (Currently Amended)  A method of marketing and distributing multimedia, the method comprising:

a.      receiving multimedia material [having a particular content] and [content associated] advertising material from a producer or owner of said multimedia material <u>said advertising material being associated with said multimedia material</u>;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

[c      inputting multimedia material information;]

<u>c</u>[d].   providing a server system accessible over a communication network [said producer or owner being linked with the server system], said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network <u>to potential purchasers</u>;

[e.      providing a search function for said multimedia material and said associated advertising material;]

Application No. 09/840,283                3                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

d[f].   providing  samples of said digital format from said server system over

said communication network to said  potential purchasers, said purchasers being

linked to the server system through said communication network;

e[g].   downloading to said purchasers, upon request of said purchasers, over

said communication network, said digital format of said multimedia material

from said server system said purchasers storing downloaded digital format of

said multimedia material; and

f[h].   providing said digital format of said advertising material that is linked to

said multimedia material to said purchasers from said server system over said

communication network, allowing purchasers to locally market and sell said

multimedia material, said purchasers downloading said digital format of said

advertising material that is associated with said multimedia material, said

purchasers storing the downloaded digital format of said advertising material;

g.      wherein said purchaser is an exhibitor exhibiting said stored digital format

of said multimedia material in a public theater to a number of individuals in

exchange for a paid admission or a broadcast exhibitor, said digital format of

said stored associated advertising material being shown to the public at a time or

in a place different from that of said multimedia material.

Application No. 09/840,283                4                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

2. (Cancelled).

3. (Previously Presented)  The method of marketing and distributing multimedia of claim 1, wherein receiving multimedia material includes receiving non-digital media selected from the group consisting of celluloid media, printed media, video cassettes, and audio tape.

4. (Original) The method of marketing and distributing multimedia of claim 3, including the step of digitizing said non-digital media for storage on said computer readable storage medium.

5. (Original) The method of marketing and distributing multimedia of claim 1, including providing a server system accessible over a public communication system.

6. (Cancelled).

7. (Cancelled).

Application No. 09/840,283                     5                     Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

8.  (Currently Amended).  The method of marketing and distributing multimedia

of claim 1, further comprising <u>automatically</u> collecting sales information from

exhibitor recipients of said multimedia material and providing sales and

marketing data <u>to exhibitors</u> based upon information from said [users of said

server system] exhibitors.

9. (Currently Amended) The method of marketing and distributing multimedia

of claim 8, [including] further comprising providing marketing data based upon

actual [users] <u>uses</u> of said <u>multimedia material</u>.

10. (Currently Amended)  A method of distributing movies comprising:

a.      receiving a movie on celluloid and associated advertising material

together from said movie owner;

b.      scanning said movie and converting it into a digital format, storing said

movie in digital format and said associated advertising material in digital format

in a computer readable memory, such that said advertising material and said

movie are linked;

c.      inputting licensing information about said movie;

Application No. 09/840,283            6                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

[[c]]d.        transferring said digital formats of said movie and said associated advertising material to a theater via a communications network; [and]

e.        storing said digital formats of said movie and said associated advertising material on a computer readable memory located at said theater; and

[[d]]f. projecting said movie in said digital format using a digital projector onto a screen for display to an audience.

11. (Currently Amended)  A distribution system for distributing multimedia comprising:

a.        a first central processing unit;

b.        a first memory associated with said first central processing unit;

c.        a communications network accessible by said first central processing unit for transferring data into and out of said first memory;

d.        an input device connected for data transfer to said first central processing unit, said input device receiving multimedia material and associated advertising material, and transferring said materials into said first memory in a digital format via said central processing unit;

e.        a second central processing unit;

Application No. 09/840,283              7              Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

f.      a second memory, said second memory associated with said second

central processing unit, said communications network being accessible by said

second central processing unit for transferring said digital format of said

multimedia material into and out of said second memory; [and]

g.      a digital feature film projector in data communication with said second

central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience at a particular time and place, said feature

film being stored in said digital format in said second memory after being

transferred via said communications network from said first memory[.];

h.      a third memory, said third memory associated with said second central

processing unit, said communications network being assessable by said second

central processing unit for transferring said digital format of said associated

advertising material into and out of said second memory; and

i.      displaying said associated advertising material at a time or place different

from said particular time or place.

12.   (Currently Amended)  A method of marketing and distributing

multimedia, [the  method] comprising:

Application No. 09/840,283                8                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

a.    receiving multimedia material from a producer or owner of said

multimedia material together with associated advertising material;

b.    storing advertising material associated with said multimedia material on a

computer readable storage medium;

c.    providing a server system accessible over a communication network, said

server system accessing said multimedia material and said advertising material

from said computer readable storage medium for transfer of said advertising

material in a digital format from said server system over said communication

network;

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material to said exhibitor for storage on a

computer system and for later playback and exhibition at a particular time and

place [that is] and providing said linked [to said] advertising material to said

exhibitor for storage on a computer system and exhibition at a time or place

different from said particular time or place, [by] said exhibitor downloading said

advertising material [upon request from said customer for said advertising

material] and said multimedia material over said server system;

Application No. 09/840,283                9                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

f.      [following up] <u>communicating with said exhibitor</u> to determine

information necessary to calculate an amount owed by said <u>exhibitor</u> [customer]

for said multimedia material; and

g.      charging the account of said exhibitor with the amount owed.


13. (Cancelled).


14.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, wherein receiving multimedia material includes

receiving non-digital media selected from the group consisting of celluloid

media, printed media, video cassettes, and audio tape, and wherein said

multimedia material is provided to said exhibitor using an electronic

communications network.


15.  (Previously Presented)  The method of marketing and distributing

multimedia of claim 12, wherein said <u>communicating</u> [follow-up] is

implemented by <u>the automatic</u> sending <u>of</u> an e-mail to said exhibitor.

Application No. 09/840,283                 10                 Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

16. (Currently Amended)  The method of marketing and distributing multimedia of claim 12, wherein [said] follow-up [is implemented by] comprises consulting publicly reported data respecting said exhibitor.

17. (Cancelled).

18. (Currently Amended)  The method of marketing and distributing multimedia of claim 12[7], further comprising querying said exhibitor to stimulate the sending of data from said exhibitor and recording said data into a database.

19. (Previously Presented)  The method of marketing and distributing multimedia of claim 18, comprising providing marketing data recorded in said database to customers in response to a query from a exhibitor.

20. (Cancelled).

21. (Currently Amended)  A method of marketing and distributing multimedia, the  method comprising:

Application No. 09/840,283                11                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

a.    receiving a motion picture [multimedia material] and associated advertising material from a producer or owner of said multimedia material;

b.    storing said motion picture [multimedia material] and associated advertising material on a computer readable storage medium in a digital format;

c.    providing a server system accessible over a communication network, said producer or owner being linked with the server system, said server system accessing said digital format from said computer readable storage medium for transfer over said communication network;

d.    providing  samples of said motion picture [digital format] from said server system over said communication network to [potential] exhibitors [purchasers], said  [potential] exhibitors [purchasers] being linked to the server system;

e.    downloading, upon request of said exhibitors [purchasers], over said communication network, said digital format of [said digital format of] said motion picture; [multimedia material] from said server system; [and]

f.    storing said downloaded motion picture and displaying said motion picture at a particular time and place;

g.    storing said downloaded associated advertising material and displaying said advertising material at a time or in a place different from the place or time of exhibition of said motion picture;

Application No. 09/840,283                12                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008


h[f].   querying said exhibitor [customer] to stimulate the sending of ticket sales

data from said exhibitor [customer];[and]

i[g].   recording said data into a database for billing purposes; and

j.      reporting recorded data to other exhibitors.


22. (Currently Amended)        The method of marketing and distributing

multimedia of claim 21, comprising providing marketing data recorded in said

database to [customers] exhibitor in response to a query from an exhibitor [a

customer].


23.    (Cancelled).


24.    (New)  The method of claim 1, wherein the [exhibitor] exhibition of

multimedia material is the public showing of a motion picture.


25.    (New)  The method of claim 12, wherein said information comprises box

office information and further comprising transmitting box office information to

other exhibitors and potential exhibitors.

Application No. 09/840,283                    13                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

26.    (New)  The method of Claim 1, further comprising providing a search

function for said multimedia material and said associated advertising material.

## REMARKS

In the outstanding office action, rejection was based upon a primary

reference to Hunter and supplemental references to Bernard and Seifert.  In

response to this rejection, the claims have been amended in a manner which is

believed to bring them clearly into condition for allowance.

At the outset, it is noted that the cited references do not address the

problem being solved by the invention.  While, they do show the use of a

network for transmitting programming, as well as the use of that network for

transmitting advertising, in other respects they fail to anticipate elements of the

invention.

Certainly, the general concept of transmitting programming over a

network for display in real-time, as taught by Hunter, is notoriously well-

known.  Indeed, as much it can be said about the earliest commercial television

broadcasts in the late 1930s.  Likewise, the transmission of advertising, albeit

over small screens, is also approaching a century of implementation.  The

inventive method goes far beyond this, however.

In contrast to Hunter, in accordance with the invention, materials are

uploaded for later display.  In addition, advertising materials are transmitted for

display on systems separate and apart from the movie display system, for

example billboards, newspapers and television.  This appears to be the clear

Application No. 09/840,283              14                    Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

meaning of paragraph 70 of Hunter.  This paragraph does not disclose digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material, as is argued in the outstanding office action.

An individual, confronted with the system of Hunter and the prior art practice of transmitting such materials through the mail would simply implement electronic distribution of product in real-time and continue the practice of transmitting posters, advertising and so forth through the mail. Information gathering would continue to be done using standard systems. While Hunter does discuss using the transmissions to mechanically generate royalty charges and billing information, there is not a remote suggestion of gathering market data and providing that to subscribers, as in the present invention.

The distribution of advertising over the Hunter network merely represents a separate use for the network.

Hunter merely recognizes that it is possible to implement a network which can feed advertising material to a plurality of billboards, for example outdoor billboard displays.

In contrast, the present invention involves distribution of materials and content through one channel (the Internet), display on another channel (television advertising, poster display, etc.), and gathering of marketing information.  Significantly, these aspects of the invention are not taught or suggested by the secondary references.

Application No. 09/840,283                    15                        Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008


Bernard is directed to a system for purchasing multimedia over the Internet. While the patent does make mention of telephone caller receiving information from salespeople, this is different from the present invention where the system, on the basis of use, generates marketing data. The capability, in accordance with the present invention, is to compare demographic information, particular television advertisements used, success rates in terms of movie theater attendance, and so forth and provide the same to theater operators, thus better informing their marketing decisions.

Turning to Seifert, the same as merely an electronic library content sharing system. It certainly does not address any of the above noted deficiencies of Hunter and Bernard.

Accordingly, significant aspects of the claims are not remotely taught by the art of record. For example, claim 1, as amended, currently claims the transmission of data from the server to the distributor with separate, in time or place, display of the advertising material. Claim 8, which depends from claim 1 clearly recites a sharing of market data between exhibitors based on use of the inventive method.

Claim 1 also positively recites the transmission of multimedia, such as a motion picture, and associated advertising material which is acknowledged in the outstanding office action as not being taught by the prior art. Accordingly, it is believed that claim 1 is most clearly in condition for allowance.

The inventive method is in contrast to the prior art which merely involves electronically transporting materials in a catalog or doing what is

Application No. 09/840,283                16                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

essentially a broadcast transmission to advertising billboard signs or theaters. Indeed, Hunter is focused on simply achieving multiple uses for the expensive high-bandwidth information distribution system. Hunter certainly does not anticipate the invention.

Claim 21 is specific to motion picture distribution and includes a sampling mechanism, as is also recited in claim 1, transport and display of advertising and motion pictures at a different place for time and querying exhibitors to gather information which is used for billing purposes and is recited as being reported to other exhibitors.

Application No. 09/840,283                17                Docket No.: 25804/1US1
Amendment dated March 25, 2008
Reply to Office Action dated February 25, 2008

Accordingly, it is believed most clear that claim 21 is in condition for allowance.

In view of the above amendment, applicant believes the pending application is in condition for allowance.

Applicant believes no fee is due with this response.  However, if a fee is due, please charge our Deposit Account No. 50-0369, under Order No. 25804/1US1 from which the undersigned is authorized to draw.

Dated:  March 25, 2008                Respectfully submitted,
                                      Electronic signature:
                                      /s/Anthony H. Handal/
                                      Anthony H. Handal
                                         Registration No.: 26,275
                                      BROWN RUDNICK BERLACK ISRAELS
                                         LLP
                                      Seven Times Square
                                      New York, New York  10036
                                      (212) 209-4942
                                      Attorney for Applicant

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 3056769 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 21710 |
| **Filer:** | Anthony H. Handal/Denise Nicholson |
| **Filer Authorized By:** | Anthony H. Handal |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 26-MAR-2008 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 17:07:46 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes) /Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Supplemental Response or Supplemental Amendment | 25804SUPPAMD.pdf | 90378 <br> 242aea7927fa20554f7223bab0c06f098725dac1e | no | 17 |

**Warnings:**

**Information:**

Total Files Size (in bytes): 337

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>09/840,283 | Filing Date<br>04/23/2001 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|

| | (Column 1) | (Column 2) | | | |
|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|

| AMENDMENT | 03/26/2008 | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | X $ = | | X $50= | 0 |
| | Independent (37 CFR 1.16(h)) | * 5 | Minus | ***6 | = 0 | X $ = | | X $210= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than three, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/LAWANDA MILTON/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

21710          7590          06/05/2008
BROWN, RUDNICK, BERLACK & ISRAELS, LLP.
BOX IP, 18TH FLOOR
ONE FINANCIAL CENTER
BOSTON, MA 02111

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2623 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 06/05/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

| *Notice of Non-Compliant Amendment (37 CFR 1.121)* | Application No.<br>09/840,283 | Applicant(s)<br>STILIADIS, NICHOLAS |
|---|---|---|
| | Examiner<br>DOMINIC D. SALTARELLI | Art Unit<br>2623 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

The amendment document filed on _____ is considered non-compliant because it has failed to meet the requirements of 37 CFR 1.121 or 1.4. In order for the amendment document to be compliant, correction of the following item(s) is required.

THE FOLLOWING MARKED (X) ITEM(S) CAUSE THE AMENDMENT DOCUMENT TO BE NON-COMPLIANT:

☐ 1. Amendments to the specification:
    ☐ A. Amended paragraph(s) do not include markings.
    ☐ B. New paragraph(s) should not be underlined.
    ☐ C. Other _____.

☐ 2. Abstract:
    ☐ A. Not presented on a separate sheet. 37 CFR 1.72.
    ☐ B. Other _____.

☐ 3. Amendments to the drawings:
    ☐ A. The drawings are not properly identified in the top margin as "Replacement Sheet," "New Sheet," or "Annotated Sheet" as required by 37 CFR 1.121(d).
    ☐ B. The practice of submitting proposed drawing correction has been eliminated. Replacement drawings showing amended figures, without markings, in compliance with 37 CFR 1.84 are required.
    ☐ C. Other _____.

☐ 4. Amendments to the claims:
    ☐ A. A complete listing of all of the claims is not present.
    ☐ B. The listing of claims does not include the text of all pending claims (including withdrawn claims)
    ☐ C. Each claim has not been provided with the proper status identifier, and as such, the individual status of each claim cannot be identified. Note: the status of every claim must be indicated after its claim number by using one of the following status identifiers: (Original), (Currently amended), (Canceled), (Previously presented), (New), (Not entered), (Withdrawn) and (Withdrawn-currently amended).
    ☐ D. The claims of this amendment paper have not been presented in ascending numerical order.
    ☐ E. Other: _____.

☒ 5. Other (e.g., the amendment is unsigned or not signed in accordance with 37 CFR 1.4):
    <u>See Continuation Sheet</u>

For further explanation of the amendment format required by 37 CFR 1.121, see MEPE § 714.

TIME PERIODS FOR FILING A REPLY TO THIS NOTICE:

1. Applicant is given **no new time period** if the non-compliant amendment is an after-final amendment or an amendment filed after allowance. If applicant wishes to resubmit the non-compliant after-final amendment with corrections, the **entire corrected amendment** must be resubmitted.

2. Applicant is given **one month**, or thirty (30) days, whichever is longer, from the mail date of this notice to supply the correction, if the non-compliant amendment is one of the following: a preliminary amendment, a non-final amendment (including a submission for a request for continued examination (RCE) under 37 CFR 1.114), a supplemental amendment filed within a suspension period under 37 CFR 1.103(a) or (c), and an amendment filed in response to a *Quayle* action. If any of above boxes 1. to 4. are checked, the correction required is only the **corrected section** of the non-compliant amendment in compliance with 37 CFR 1.121.

    <u>Extensions of time</u> are available under 37 CFR 1.136(a) <u>only</u> if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action.

    <u>Failure to timely respond</u> to this notice will result in:
    **Abandonment** of the application if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action; or
    **Non-entry** of the amendment if the non-compliant amendment is a preliminary amendment or supplemental amendment.

| /Dominic Saltarelli/ | (571) 272-7302 |
|---|---|
| Legal Instruments Examiner (LIE), if applicable | Telephone No. |

**Continuation Sheet (PTOL-324)**                                                                                                  **Application No. 09/840,283**

Continuation of 5 Other:  Each section of the amendment does not begin on a separate sheet, as require by 37 CFR 1.121(h).

Docket 075288-00002
(Patent)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283              Confirmation No.: 3319

Filed: April 23, 2001                    Art Unit:   2623

For:  MULTIMEDIA MARKETING AND           Examiner:  D.D. Saltarelli
      DISTRIBUTION SYSTEM

## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### INTRODUCTORY COMMENTS

In response to the Office Action dated June 5, 2008, please amend the

above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which

begins on page 2 of this paper.

**Remarks/Arguments** being on page 14 of this paper.

Application No. 09/840,283          2          Docket No.: 075288-00002

Amendment dated October 6, 2008

Reply to Office Action of June 5, 2008

## AMENDMENTS TO THE CLAIMS

1. (Currently Amended) A method of marketing and distributing multimedia, the method comprising:

a.      receiving multimedia material [having a particular content] and [content associated] advertising material from a producer or owner of said multimedia material said advertising material being associated with said multimedia material;

b.      storing said multimedia material and associated advertising material on a computer readable storage medium in a digital format;

[c      inputting multimedia material information;]

c[d].   providing a server system accessible over a communication network [said producer or owner being linked with the server system], said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network to potential purchasers;

[e.      providing a search function for said multimedia material and said associated advertising material;]

Application No. 09/840,283                    3                    Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

d[f].   providing samples of said digital format from said server system over said communication network to <u>said</u> potential purchasers, said purchasers being linked to the server system <u>through said communication network</u>;

e[g].   downloading <u>to said purchasers</u>, upon request of said purchasers, over said communication network, said digital format of said multimedia material from said server system <u>said purchasers storing downloaded digital format of said multimedia material</u>; and

f[h].   providing said digital format of said advertising material that is linked to said multimedia material to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, <u>said purchasers downloading said digital format of said advertising material that is associated with said multimedia material, said purchasers storing the downloaded digital format of said advertising material</u>;

g.      wherein said purchaser is an exhibitor exhibiting said <u>stored digital format of said</u> multimedia material in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor<u>, said digital format of said stored associated advertising material being shown to the public at a time or in a place different from that of said multimedia material</u>.

Application No. 09/840,283                4                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008


2.      (Cancelled).


3.      (Previously Presented) The method of marketing and distributing
multimedia of claim 1, wherein receiving multimedia material includes receiving
non-digital media selected from the group consisting of celluloid media, printed
media, video cassettes, and audio tape.


4.      (Original) The method of marketing and distributing multimedia of claim
3, including the step of digitizing said non-digital media for storage on said
computer readable storage medium.


5.      (Original) The method of marketing and distributing multimedia of claim
1, including providing a server system accessible over a public communication
system.


6.      (Cancelled).


7.      (Cancelled).

Application No. 09/840,283                    5                    Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

8.      (Currently Amended). The method of marketing and distributing

multimedia of claim 1, further comprising <u>automatically</u> collecting sales

information from exhibitor recipients of said multimedia material and providing

sales and marketing data <u>to exhibitors</u> based upon information from said [users

of said server system] exhibitors.

9.      (Currently Amended) The method of marketing and distributing

multimedia of claim 8, [including] further comprising providing marketing data

based upon actual [users] <u>uses</u> of said <u>multimedia material</u>.

10.     (Currently Amended) A method of distributing movies comprising:

a.      receiving a movie on celluloid and associated advertising material together

from said movie owner;

b.      scanning said movie and converting it into a digital format, storing said

movie in digital format and said associated advertising material in digital format

in a computer readable memory, such that said advertising material and said

movie are linked;

c.      inputting licensing information about said movie;

Application No. 09/840,283                6                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008


[[c]]d. transferring said digital formats of said movie and said associated

advertising material to a theater via a communications network [and]

e.      storing said digital formats of said movie and said associated advertising

material on a computer readable memory located at said theater; and

[[d]]f. projecting said movie in said digital format using a digital projector onto a

screen for display to an audience.


11.     (Currently Amended) A distribution system for distributing multimedia

comprising:

a.      a first central processing unit;

b.      a first memory associated with said first central processing unit;

c.      a communications network accessible by said first central processing unit

for transferring data into and out of said first memory;

d.      an input device connected for data transfer to said first central processing

unit, said input device receiving multimedia material and associated advertising

material, and transferring said materials into said first memory in a digital

format via said central processing unit;

e.      a second central processing unit;

Application No. 09/840,283              7              Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

f.      a second memory, said second memory associated with said second

central processing unit, said communications network being accessible by said

second central processing unit for transferring said digital format of said

multimedia material into and out of said second memory; [and]

g.      a digital feature film projector in data communication with said second

central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience at a particular time and place, said feature

film being stored in said digital format in said second memory after being

transferred via said communications network from said first memory[.];

h.      a third memory, said third memory associated with said second central

processing unit, said communications network being assessable by said second

central processing unit for transferring said digital format of said associated

advertising material into and out of said second memory; and

i.      displaying said associated advertising material at a time or place different

from said particular time or place.


12. (Currently Amended) A method of marketing and distributing multimedia,

[the method] comprising:

Application No. 09/840,283                8                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

a.    receiving multimedia material from a producer or owner of said

multimedia material together with associated advertising material;

b.    storing advertising material associated with said multimedia material on a

computer readable storage medium;

c.    providing a server system accessible over a communication network, said

server system accessing said multimedia material and said advertising material

from said computer readable storage medium for transfer of said advertising

material in a digital format from said server system over said communication

network;

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material to said exhibitor for storage on a

computer system and for later playback and exhibition at a particular time and

place [that is] and providing said linked [to said] advertising material to said

exhibitor for storage on a computer system and exhibition at a time or place

different from said particular time or place, [by] said exhibitor downloading said

advertising material [upon request from said customer for said advertising

material] and said multimedia material over said server system;

Application No. 09/840,283                9                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008


f.    [following up] <u>communicating with said exhibitor</u> to determine

information necessary to calculate an amount owed by said <u>exhibitor</u> [customer]

for said multimedia material; and

g.    charging the account of said exhibitor with the amount owed.


13.    (Cancelled).


14.    (Previously Presented) The method of marketing and distributing

multimedia of claim 12, wherein receiving multimedia material includes

receiving non-digital media selected from the group consisting of celluloid

media, printed media, video cassettes, and audio tape, and wherein said

multimedia material is provided to said exhibitor using an electronic

communications network.


15.    (Currently Amended) The method of marketing and distributing

multimedia of claim 12, wherein said <u>communicating</u> [follow-up] is

implemented by <u>the automatic</u> sending <u>of</u> an e-mail to said exhibitor.

Application No. 09/840,283                    10                    Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

16.    (Currently Amended) The method of marketing and distributing multimedia of claim 12, wherein [said] follow-up [is implemented by] <u>comprises</u> consulting publicly reported data respecting said exhibitor.

17.    (Cancelled).

18.    (Currently Amended) The method of marketing and distributing multimedia of claim 12[7], further comprising querying said exhibitor to stimulate the sending of data from said exhibitor and recording said data into a database.

19.    (Previously Presented) The method of marketing and distributing multimedia of claim 18, comprising providing marketing data recorded in said database to customers in response to a query from a exhibitor.

20.    (Cancelled).

21.    (Currently Amended) A method of marketing and distributing multimedia, the method comprising:

Application No. 09/840,283                11                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

a.      receiving <u>a motion picture</u> [multimedia material] and associated

advertising material from a producer or owner of said multimedia material;

b.      storing said <u>motion picture</u> [multimedia material] and associated

advertising material on a computer readable storage medium in a digital format;

c.      providing a server system accessible over a communication network, said

producer or owner being linked with the server system, said server system

accessing said digital format from said computer readable storage medium for

transfer over said communication network;

d.      providing samples of said <u>motion picture</u> [digital format] from said server

system over said communication network to [potential] <u>exhibitors</u> [purchasers],

said [potential] <u>exhibitors</u> [purchasers] being linked to the server system;

e.      downloading, upon request of said <u>exhibitors</u> [purchasers], over said

communication network, said digital format of [said digital format of] said

<u>motion picture</u>; [multimedia material] from said server system; [and]

<u>f.      storing said downloaded motion picture and displaying said motion</u>

<u>picture at a particular time and place;</u>

<u>g.      storing said downloaded associated advertising material and displaying</u>

<u>said advertising material at a time or in a place different from the place or time of</u>

<u>exhibition of said motion picture;</u>

Application No. 09/840,283                    12                    Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008


h[f]. querying said <u>exhibitor</u> [customer] to stimulate the sending of ticket sales

data from said <u>exhibitor</u> [customer]; [and]

i[g]    recording said data into a database for billing purposes; and

j.      <u>reporting recorded data to other exhibitors.</u>


22.    (Currently Amended)    The method of marketing and distributing

multimedia of claim 21, comprising providing marketing data recorded in said

database to [customers] <u>exhibitor</u> in response to a query from <u>an exhibitor</u> [a

customer].


23.    (Cancelled).


24.    (New) The method of claim 1, wherein the [exhibitor] exhibition of

multimedia material is the public showing of a motion picture.


25.    (New) The method of claim 12, wherein said information comprises box

office information and further comprising transmitting box office information to

other exhibitors and potential exhibitors.

Application No. 09/840,283                13                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008


26.    (New) The method of Claim 1, further comprising providing a search

function for said multimedia material and said associated advertising material.

Application No. 09/840,283                    14                    Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

## REMARKS

In the outstanding office action, rejection was based upon a primary reference to Hunter and supplemental references to Bernard and Seifert. In response to this rejection, the claims have been amended in a manner which is believed to bring them clearly into condition for allowance.

At the outset, it is noted that the cited references do not address the problem being solved by the invention. While, they do show the use of a network for transmitting programming, as well as the use of that network for transmitting advertising, in other respects they fail to anticipate elements of the invention.

Certainly, the general concept of transmitting programming over a network for display in real-time, as taught by Hunter, is notoriously well-known. Indeed, as much it can be said about the earliest commercial television broadcasts in the late 1930s. Likewise, the transmission of advertising, albeit over small screens, is also approaching a century of implementation. The inventive method goes far beyond this, however.

Application No. 09/840,283                15                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

In contrast to Hunter, in accordance with the invention, materials are uploaded for later display. In addition, advertising materials are transmitted for display on systems separate and apart from the movie display system, for example billboards, newspapers and television. This appears to be the clear meaning of paragraph 70 of Hunter. This paragraph does not disclose digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material, as is argued in the outstanding office action.

An individual, confronted with the system of Hunter and the prior art practice of transmitting such materials through the mail would simply implement electronic distribution of product in real-time and continue the practice of transmitting posters, advertising and so forth through the mail. Information gathering would continue to be done using standard systems. While Hunter does discuss using the transmissions to mechanically generate royalty charges and billing information, there is not a remote suggestion of gathering market data and providing that to subscribers, as in the present invention.

The distribution of advertising over the Hunter network merely represents a separate use for the network.

Application No. 09/840,283                16                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

Hunter merely recognizes that it is possible to implement a network which can feed advertising material to a plurality of billboards, for example outdoor billboard displays.

In contrast, the present invention involves distribution of materials and content through one channel (the Internet), display on another channel (television advertising, poster display, etc.), and gathering of marketing information. Significantly, these aspects of the invention are not taught or suggested by the secondary references.

Bernard is directed to a system for purchasing multimedia over the Internet. While the patent does make mention of telephone caller receiving information from salespeople, this is different from the present invention where the system, on the basis of use, generates marketing data. The capability, in accordance with the present invention, is to compare demographic information, particular television advertisements used, success rates in terms of movie theater attendance, and so forth and provide the same to theater operators, thus better informing their marketing decisions.

Application No. 09/840,283                17                Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

Turning to Seifert, the same as merely an electronic library content sharing system. It certainly does not address any of the above noted deficiencies of Hunter and Bernard.

Accordingly, significant aspects of the claims are not remotely taught by the art of record. For example, claim 1, as amended, currently claims the transmission of data from the server to the distributor with separate, in time or place, display of the advertising material. Claim 8, which depends from claim 1 clearly recites a sharing of market data between exhibitors based on use of the inventive method.

Claim 1 also positively recites the transmission of multimedia, such as a motion picture, and associated advertising material which is acknowledged in the outstanding office action as not being taught by the prior art. Accordingly, it is believed that claim 1 is most clearly in condition for allowance.

The inventive method is in contrast to the prior art which merely involves electronically transporting materials in a catalog or doing what is essentially a

Application No. 09/840,283              18                    Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008

broadcast transmission to advertising billboard signs or theaters. Indeed, Hunter

is focused on simply achieving multiple uses for the expensive high-bandwidth

information distribution system. Hunter certainly does not anticipate the

invention.

Claim 21 is specific to motion picture distribution and includes a sampling

mechanism, as is also recited in claim 1, transport and display of advertising and

motion pictures at a different place for time and querying exhibitors to gather

information which is used for billing purposes and is recited as being reported to

other exhibitors.

Accordingly, it is believed most clear that claim 21 is in condition for

allowance.

In view of the above amendment, applicant believes the pending

application is in condition for allowance.

Application No. 09/840,283             19              Docket No.: 075288-00002
Amendment dated October 6, 2008
Reply to Office Action of June 5, 2008


The Commissioner is authorized to charge any additional fees required or

to credit any overpayment to Deposit Account No. 20-0809.

Dated:        October 6, 2008             Respectfully submitted,


                                          / Anthony H. Handal /
                                          Anthony H. Handal
                                          Registration No.: 26,275


THOMPSON HINE LLP
P.O. Box 8801
Dayton, Ohio  45401-8801
(212) 908-3912 (phone)
(212) 344-6101 (facsimile)

Docket 075288-00002
(Patent)

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

_____

In re Application of:
Nicholas Stiliadis

| | |
|---|---|
| Application No.: 09/840,283 | Confirmation No.: 3319 |
| Filed: April 23, 2001 | Art Unit:  2623 |
| For:  MULTIMEDIA MARKETING AND | Examiner:  D.D. Saltarelli |
|      DISTRIBUTION SYSTEM | |

_____

## <u>PETITION FOR THREE-MONTH EXTENSION OF TIME UNDER 37 CFR §1.136</u>

### *FILED VIA EFS-WEB*

COMMISSIONER FOR PATENTS
P.O. BOX 1450
ALEXANDRIA, VA  22313-1450

Sir:

It is hereby requested that the period for responding to the outstanding Office Action be extended through the date of filing of this Petition, fee payment, and accompanying Response.

The petition fee (37 CFR §1.17(a)(1)) is believed to be $510.00, for a three-month extension.  Fee payment is provided through electronic funds transfer (EFT).  However, if extensions of time under 37 CFR §1.17 other than those provided herewith are required to prevent abandonment of the present patent application, then such extensions of time are hereby petitioned.

Commissioner for Patents
October 6, 2008
Page 2

        The Commissioner is hereby authorized to charge any fee deficiency, or credit any

overpayment, to our Deposit Account No. 20-0809.


                                        Respectfully submitted,


                                        /s/Anthony H. Handal/
                                        Anthony H. Handal
                                        Attorney for Applicant
                                        Reg. No. 26,275


October 6, 2008_____

THOMPSON HINE LLP
P.O. Box 8801
Dayton, OH  45401-8801
(212) 908-3912

Docket 075288-00002
(Patent)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
_____

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283                    Confirmation No.: 3319

Filed: April 23, 2001                          Art Unit:  2623

For:  MULTIMEDIA MARKETING AND               Examiner:  D.D. Saltarelli
      DISTRIBUTION SYSTEM
_____

### PETITION FOR THREE-MONTH EXTENSION OF TIME UNDER 37 CFR §1.136

***FILED VIA EFS-WEB***

COMMISSIONER FOR PATENTS
P.O. BOX 1450
ALEXANDRIA, VA  22313-1450

Sir:

It is hereby requested that the period for responding to the outstanding Office Action be extended through the date of filing of this Petition, fee payment, and accompanying Response.

The petition fee (37 CFR §1.17(a)(1)) is believed to be $510.00, for a three-month extension.  Fee payment is provided through electronic funds transfer (EFT).  However, if extensions of time under 37 CFR §1.17 other than those provided herewith are required to prevent abandonment of the present patent application, then such extensions of time are hereby petitioned.

Commissioner for Patents
October 6, 2008
Page 2


      The Commissioner is hereby authorized to charge any fee deficiency, or credit any

overpayment, to our Deposit Account No. 20-0809.



                             Respectfully submitted,

                             /s/Anthony H. Handal/
                             Anthony H. Handal
                             Attorney for Applicant
                             Reg. No. 26,275

October 6, 2008

THOMPSON HINE LLP
P.O. Box 8801
Dayton, OH  45401-8801
(212) 908-3912

<u>PATENT</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of:

| | | |
|---|---|---|
| Applicants | : | STILIADIS, Nicholas |
| Serial No. | : | 09/840,283 |
| Filed | : | April 23, 2001 |
| Title | : | MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |
| Docket | : | 075288-00002 |
| Examiner | : | Saltarelli, D.D. |
| Art Unit | : | 3319 |
| Confirmation | : | 2623 |

Commissioner for Patents
Post Office Box 1450
Alexandria, Virginia 22313-1450

Sir:

### POWER OF ATTORNEY AND REVOCATION OF PRIOR POWERS

Nicholas Stiliadis is the applicant/owner of the above-captioned unassigned patent application. As applicant/owner, Nicholas Stiliadis hereby revokes all powers of attorney previously granted and hereby appoints the practitioners associated with:

### Customer No. 27,805

as attorneys with full power of substitution and revocation, to prosecute the above-captioned patent application and to transact all business in the Patent and Trademark Office connected therewith.

Please address all correspondence to the address associated with:

### Customer No. 27,805

Please direct all telephone calls to:

**Megan Dortenzo, Esq.**
**Anthony H. Handal, Esq.**
**Troy Prince, Esq.**
**Telephone: (216) 566-5500**

- 1 -

U.S. Ser. No. 09/840,283
Docket No. 075288.0002
Revocation and POA

### CERTIFICATE UNDER 37 C.F.R. § 3.73(b)

**Nicholas Stiliadis** certifies that it is the applicant/owner of the entire right, title and interest in the above-captioned patent application, and all divisions and continuations thereof.

The undersigned has reviewed all the documents in the chain of title of the above-captioned patent application and, to the best of undersigned's knowledge and belief, title is in Nicholas Stiliadis.

The undersigned (whose title is provided below) is empowered to sign this certificate on behalf of Nicholas Stiliadis.

The undersigned hereby declares that all statements made herein of the undersigned's knowledge are true, and that all statements made on information and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements, and the like so made, are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the above-captioned patent application or any patent issuing thereon.

By: _____

Name:     Nicholas Stiliadis

Date:       October 1, 2008

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 09840283 |
| **Filing Date:** | 23-Apr-2001 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas Stiliadis |
| **Filer:** | Anthony H. Handal/Denise P. Nicholson |
| **Attorney Docket Number:** | NS2 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 3 months with $0 paid | 2253 | 1 | 555 | 555 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **555** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4068739 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 21710 |
| **Filer:** | Anthony H. Handal/Denise P. Nicholson |
| **Filer Authorized By:** | Anthony H. Handal |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 06-OCT-2008 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 21:36:33 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Electronic Funds Transfer |
| Payment was successfully received in RAM | $ 555 |
| RAM confirmation Number | 4432 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | CINEMAVAULTRSP.pdf | 113847<br>6ab377194dea53cbdd766b6d5f7939e3f445a175 | no | 19 |

**Warnings:**

**Information:**

| 2 | Extension of Time | CINEMAVAULTEXT.pdf | 122715<br>df0ff82f35a79f7386fbd6d34c2479710e5c3cec | no | 2 |

**Warnings:**

**Information:**

| 3 | Power of Attorney | CINEMAVAULTPOA.pdf | 71671<br>2ab9371825504ded05ebd67792454982d37fee14 | no | 2 |

**Warnings:**

**Information:**

| 4 | Fee Worksheet (PTO-06) | fee-info.pdf | 29814<br>4ed44073fb2be177c94922580db446fc52a72896 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 338047 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>09/840,283 | Filing Date<br>04/23/2001 | ☐ To be Mailed |
|---|---|---|---|

### APPLICATION AS FILED – PART I

| | | | SMALL ENTITY ☐ | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|
| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | | | | SMALL ENTITY | OR | OTHER THAN<br>SMALL ENTITY |
|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| AMENDMENT | 10/06/2008 | | | | | | | |
| | Total (37 CFR 1.16(i)) | * 19 | Minus ** 20 | = 0 | X $ = | | OR | X $52= | 0 |
| | Independent (37 CFR 1.16(h)) | * 5 | Minus ***6 | = 0 | X $ = | | OR | X $220= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 0 |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | | OR | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | | OR | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/DIANE WILLIAMS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 |

**CONFIRMATION NO. 3319**

21710
BROWN RUDNICK LLP
ONE FINANCIAL CENTER
BOSTON, MA 02111

**POWER OF ATTORNEY NOTICE**


*OC000000033007500*

Date Mailed: 11/14/2008

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 10/06/2008.

• The Power of Attorney to you in this application has been revoked by the applicant. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

/dfwilliams/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

page 1 of 1

 United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 |

**CONFIRMATION NO. 3319**

27805
THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

**POA ACCEPTANCE LETTER**


*OC000000033007514*

Date Mailed: 11/14/2008

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 10/06/2008.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

/dfwilliams/
_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

27805          7590          12/03/2008
THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 12/03/2008 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | DOMINIC D. SALTARELLI | 2421 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>06 October 2008</u>.

2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1,3-5,8-12,14,15,18,19,21,22 and 24-26</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1,3-5,8-12,14,15,18,19,21,22 and 24-26</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1.☐ Certified copies of the priority documents have been received.

   2.☐ Certified copies of the priority documents have been received in Application No. _____.

   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5)☐ Notice of Informal Patent Application

6)☐ Other: _____.

Application/Control Number: 09/840,283                                    Page 2
Art Unit: 2421

## DETAILED ACTION

### *Response to Arguments*

1.      Applicant's arguments filed October 6, 2008 have been fully considered but they
are not persuasive.

First, applicant argues the distribution of advertising over the Hunter
network merely represents a separate use for the network, citing paragraph 0070
which shows the system can be used to send both advertisements to high traffic
areas and movies to digital movies theaters, with no necessary relationship
between them, and argues that an individual, when presented with the system
disclosed by Hunter and the prior art, would simply implement electronic
distribution of the movies in real time and continue to send the associated
advertising content through the mail.

In response, it first must be noted that the only difference in the uses of
the Hunter system between sending advertising material and movies is the
content of the data being transmitted and the destination of the data.
Structurally, there is no difference between sending advertisements and sending
movies as disclosed by Hunter.  Given this premises, the issue the examiner has
been addressing is whether it would have been obvious to use the existing
distribution system of Hunter to send both advertising material and movies to a
digital theater.  Hunter is clearly capable of doing so, leaving only the question of
whether doing so would be obvious.  It is the examiner's position, that given the
fact that the state of the art has been to deliver both a movie and the advertising

Application/Control Number: 09/840,283                                      Page 3
Art Unit: 2421

materials used to promote said movie at the same time (and has been for

decades, as disclosed in the article included herein, 'A History of Movie Posters'),

coupled with the fact that Hunter provides the structural capability of doing

exactly that in a digital communication in an advantageous manner, that it would

in fact have been obvious to make the proposed modification described herein.

Further, there is also the issue of speed of delivery. Mailing materials

takes longer to deliver than a digital communication, and having a movie

available long before the advertising materials is counter-intuitive. Hunter

discloses that thousands of movies per day are transmitted over the distribution

network, ensuring that any given movie would be available on the very day it is

ordered by a customer (Hunter, paragraph 0062). It is more desirable to send

the advertising materials along with an ordered film, as is conventional, so that

the theater can begin promoting the film once it is available, rather than having

the film available before they can promote it.


Second, applicant argues the applicability of the Bernard reference,

arguing that a caller receiving information from salespeople is different from the

present invention where the system, on the basis of use, generates marketing

data.

In response, the examiner fails to see the relevance of this argument.

Bernard was introduced solely to teach providing samples of a product to

potential purchasers, and is not relied upon for teaching generating and disseminating marketing data.

Third, applicant argues, regarding claim 1, that the amended limitation of displaying advertising material in a separate time or place than the multimedia content is not taught by the prior art.

In response, the proposed modification of Hunter encompasses just such a use, as the very purpose of advertisement materials is to promote a product such that a consumer would be stimulated to purchase it, which by necessity results in displaying the advertisement at a different time or place, otherwise it could hardly be called an advertisement.

Fourth, applicant argues, regarding claim 8, that the claim recites sharing market data between exhibitors.

In response to applicant's argument that the references fail to show certain features of applicant's invention, it is noted that the features upon which applicant relies (i.e., sharing market data between exhibitors) are not recited in the rejected claim(s). Although the claims are interpreted in light of the specification, limitations from the specification are not read into the claims. See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057 (Fed. Cir. 1993). The claim recites collecting sales information from and exhibitors and providing sales and marketing data to exhibitors. Said data could very well be from the same

Application/Control Number: 09/840,283                                    Page 5
Art Unit: 2421

exhibitor, who is simply viewing their own billing data and searching for new

movies to purchase.  Newly added claim 25 is the only claim which reasonably

suggests that data from one exhibitor is shared with another.


Lastly, applicant argues that the Hunter reference simply does not

anticipate the claimed invention.

In response, the outstanding rejection does not argue that Hunter

anticipated the claimed invention.  The outstanding rejection is made under 35

U.S.C. 103(a), with a showing that while the invention is not identically disclosed

or described as set forth under 35 U.S.C. 102, the differences between the

subject matter sought to be patented and the prior art are such that the subject

matter as a whole would have been obvious at the time the invention was made.


### Claim Objections

2.    Claim 10 is objected to because of the following informalities:  Lines 3-4 state

"said movie owner", which should be changed to --a movie owner--.  Appropriate

correction is required.


### Claim Rejections - 35 USC § 103

3.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the

Application/Control Number: 09/840,283

Art Unit: 2421

Page 6

invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.    Claims 1, 5, 8, 9, 24, and 26 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter (US 2002/0162113 A1, of record) in view of Applicant's own originally filed specification and Bernard et al. (5,918,213, of record) [Bernard].

Regarding claims 1 and 24, Hunter discloses a method of marketing and distributing multimedia, the method comprising:

receiving multimedia material from an owner of said multimedia material (an inherent step, as the movies being offered for sale must have first been acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in digital format (the stored movies which a customer reviews and selects for purchase, paragraph 0060);

providing a server system accessible over a communication network, said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network to potential purchasers (paragraphs 0062-0063);

downloading to said purchasers, upon request of purchasers, over said communication network, said digital format of said multimedia material from said server system, said purchasers storing downloaded digital format of said multimedia material (paragraph 0062); and

wherein said purchaser is an exhibitor exhibiting said stored digital format of said multimedia material in a public theater to a number of individuals in exchange for a paid admission (paragraph 0059).

Hunter fails to disclose receiving associated advertising material from a producer or owner of said multimedia that is linked to said multimedia material, providing samples of said digital format from said server system over said communication network to potential purchasers, providing in digital format said advertising material that is linked to said multimedia material to said purchasers from said server system over said communication network and storing said advertising material, allowing purchasers to locally market and sell said multimedia material by showing said advertising material to the public at a time or place different from that of said multimedia material.

Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material linked to said multimedia material to purchasers to locally market and sell said multimedia material (page 12, lines 5-17). Because Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a practitioner of ordinary skill in the art would be motivated to receive advertising material from said owners and send the advertising material in digital format to purchasers to allow the purchasers to locally market and sell said multimedia material, as the cost reducing benefits of

all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia and providing in digital format said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material, for the benefit of reducing the costs normally associated with the distribution and promotion of said multimedia material.

Hunter still fails to disclose providing samples of said digital format from said server system over said communication network to potential purchasers.

In an analogous art, Bernard teaches providing samples of multimedia content to potential purchasers (col. 3, lines 19-41) to provide assistance in choosing which material to purchase.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include providing samples of multimedia content to potential purchasers, as taught by Bernard, for the benefit of providing helpful assistance to the purchaser in choosing which material to purchase.

Application/Control Number: 09/840,283                                          Page 9
Art Unit: 2421

Regarding claim 5, Hunter and Bernard disclose the method of claim 1, including providing a server system accessible over a public communication system (Hunter teaches accessing the server over the Internet, paragraph 0063).

Regarding claims 8 and 9, Hunter and Bernard disclose the method of claim 1, including automatically collecting sales information for exhibitor recipients of said multimedia material and providing sales and marketing data to exhibitors based upon information from said exhibitors (Hunter teaches a billing system that tracks orders from purchasers, paragraph 0063).

Regarding claim 26, Hunter and Bernard disclose the method of claim 1, further comprising providing a search function for said multimedia material and said associated advertising material (Hunter, paragraph 0060).

5.    Claims 3 and 4 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter, Applicant's own originally filed specification, and Bernard, as applied to claim 1 above, and further in view of Siefert (5,564,043, of record).

Regarding claims 3 and 4, Hunter and Bernard disclose the method of claim 1, but fail to disclose the receiving multimedia material includes receiving non-digital media including celluloid media and printed media.

Application/Control Number: 09/840,283                                    Page 10
Art Unit: 2421

In an analogous art, Siefert discloses receiving and digitizing celluloid media and printed media in order to provide it over a communications network (col. 5, lines 14-25).

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter and Bernard to include receiving non-digital media including celluloid media and printed media, as taught by Siefert, ensuring that all material is provided in digital format for transmission, regardless of the original source media.

6.    Claim 10 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter in view of Applicant's own originally filed specification and Siefert.

Regarding claim 10, Hunter discloses a method of distributing movies comprising:

receiving a movie from a movie owner (an inherent step, as the movies being offered for sale must have first been acquired from the owners of the respective material, paragraph 0060);

storing said movie in digital format in a computer readable memory (the movie content is digital, paragraph 0062);

inputting licensing information about said movie (for billing purposes, paragraph 0063);

transferring said digital formats to a theater via a communications network and storing said digital formats on a computer readable memory located at said theater (paragraph 0062); and

projecting said moving in said digital format using a digital projector onto a screen for display to an audience (paragraph 0059).

Hunter fails to disclose the movie is received on celluloid and also receiving advertising material that is linked to said movie.

Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material linked to said multimedia material to purchasers to locally market and sell said multimedia material (page 12, lines 5-17). Because Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a practitioner of ordinary skill in the art would be motivated to receive advertising material from said owners and send the advertising material in digital format to purchasers to allow the purchasers to locally market and sell said multimedia material, as the cost reducing benefits of all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia and providing in digital format said advertising material to said purchasers from said server system over

said communication network allowing purchasers to locally market and sell said

multimedia material, for the benefit of reducing the costs normally associated

with the distribution and promotion of said multimedia material.

Hunter still fails to disclose the movie is received on celluloid.

In an analogous art, Siefert discloses receiving and digitizing celluloid

media and printed media in order to provide it over a communications network

(col. 5, lines 14-25).

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method disclosed by Hunter to include receiving celluloid media,

as taught by Siefert, the conventional means for distributing movies, ensuring

that all material is provided in digital format for transmission, regardless of the

original source media.

7.      Claims 11, 12, 15, 16, 18, 19, 23, and 25 are rejected under 35 U.S.C. 103(a) as

being unpatentable over Hunter in view of Applicant's own originally filed specification.

Regarding claims 11 and 23, Hunter discloses a distribution system for

distributing multimedia comprising:

a first central processing unit (which controls the system from which

customers purchase movies, paragraph 0060);

a first memory associated with said first central processing unit (which

stores the movies available to purchase, paragraph 0060);

Application/Control Number: 09/840,283                                       Page 13
Art Unit: 2421

a communications network accessible by said first central processing unit for transferring data into and out of said first memory (the network by which movies are received and delivered, paragraph 0062);

an input device connected for data transfer to said first central processing unit, said input device receiving multimedia material and transferring said materials into said first memory in a digital format via said central processing unit (an inherent step, as the movies available for purchase must first have been received from the producers of said content);

a second central processing unit (the customer's system, paragraph 0061);

a second memory, said second memory associated with said second central processing unit, said communications network being accessible by said second central processing unit for transferring said digital format into and out of said second memory (the memory in which a movie is stored after it is ordered and transmitted from the provider's system, paragraph 0061);

a third memory domain for receiving market data in response to an order for said multimedia product (the memory domain which stores the purchase order and scheduling information necessary for transmitting a movie to a customer after the customer purchases the movie, paragraph 0060-0061);

a digital feature film projector in data communication with said second central processing unit for displaying said digital format as a feature film onto a screen for presentation to an audience, said feature film being stored in said

Application/Control Number: 09/840,283                                    Page 14
Art Unit: 2421

digital format in said second memory after being transferred via said communications network from said first memory (paragraph 0059).

Hunter fails to disclose also receiving associated advertising material in memory for displaying at a time and place different than the multimedia material.

Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material linked to said multimedia material to purchasers to locally market and sell said multimedia material (page 12, lines 5-17). Because Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a practitioner of ordinary skill in the art would be motivated to receive advertising material from said owners and send the advertising material in digital format to purchasers to allow the purchasers to locally market and sell said multimedia material, as the cost reducing benefits of all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the art to modify the system disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia and providing in digital format said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material, for the benefit of reducing the costs normally associated with the distribution and promotion of said multimedia material.

Application/Control Number: 09/840,283                                    Page 15
Art Unit: 2421

Regarding claim 12, Hunter discloses a method of marketing and distributing multimedia, the method comprising:

receiving multimedia material from an owner of said multimedia material (an inherent step, as the movies being offered for sale must have first been acquired from the owners of the respective material, paragraph 0060);

storing multimedia material on a computer readable storage medium in digital format (the stored movies which a customer reviews and selects for purchase, paragraph 0060);

providing a server system accessible over a communication network, said owner being linked with the server system (as it is their product which is being sold, paragraph 0063), said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network (paragraphs 0062-0063);

establishing an account (by which customers are billed, paragraph 0063) for a broadcast or live theater exhibitor (paragraph 0059);

downloading, upon request of purchasers, over said communication network, said digital format of said multimedia material from said server system (paragraph 0062);

communicating with said exhibitor to determine information necessary to calculate an amount owed by said exhibitor for said multimedia material and charging the account of said exhibitor with the amount owned (paragraph 0063).

Application/Control Number: 09/840,283                                   Page 16
Art Unit: 2421

Hunter fails to disclose receiving content associated advertising material from a producer or owner of said multimedia that is linked to said multimedia material and providing in digital format said advertising material that is linked to said multimedia material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said multimedia material.

Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material linked to said multimedia material to purchasers to locally market and sell said multimedia material (page 12, lines 5-17).  Because Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a practitioner of ordinary skill in the art would be motivated to receive advertising material from said owners and send the advertising material in digital format to purchasers to allow the purchasers to locally market and sell said multimedia material, as the cost reducing benefits of all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia and providing in digital format said advertising material to said purchasers from said server system over said communication network allowing purchasers to locally market and sell said

multimedia material, for the benefit of reducing the costs normally associated

with the distribution and promotion of said multimedia material.

Regarding claims 15 and 16, Hunter (in view of Applicant's own originally

filed specification) discloses the method of claim 12, but fails to disclose said

communicating is implemented by either sending an e-mail to said exhibitor or by

consulting publicly reported data respecting said exhibitor.

However, it would have been obvious at the time to a person of ordinary

skill in the art to modify the method disclosed by Hunter to include said follow up

is implemented by either sending an e-mail to said exhibitor or by consulting

publicly reported data respecting said exhibitor.

Regarding claim 18, Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 12, including querying said exhibitor

to stimulate the sending of data from said exhibitor and recording said data into a

database (Hunter teaches a user interface through which customers make

selections and schedule purchases, paragraph 0060, the data received from said

customers being the scheduling and purchasing information received through the

user interface and stored in order to track and fill the order, paragraph 0061).

Regarding claim 19, Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 18, including providing marketing

Application/Control Number: 09/840,283                                    Page 18
Art Unit: 2421

data recorded in said database to customers in response to a query from an

exhibitor (who is an actual user of said server system, see Hunter, paragraph

0060, where customers have tool that allows them to see listings of all movies

available in response to a search query, which is a marketing tool).

Regarding claim 25, Hunter (in view of Applicant's own originally filed

specification) discloses the method of claim 12, but fails to disclose said

information comprises office information and further comprising transmitting box

office information to other exhibitors and potential exhibitors.

Examiner takes official notice that the reporting of ticket sales for

individual movies to inform interested parties as to the popularity of said movies

is notoriously well known in the art.

It would have been obvious at the time to a person of ordinary skill in the

art to modify the method of Hunter to include said information comprises office

information and further comprising transmitting box office information to other

exhibitors and potential exhibitors, for the benefit of informing said interested

parties as to the popularity of available films so that they may maximize their own

profitability by ordering the most popular movies.

8.      Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter

and Applicant's own originally filed specification, as applied to claim 12 above, and

further in view of Siefert.

Application/Control Number: 09/840,283                                    Page 19
Art Unit: 2421

Regarding claim 14 Hunter (in view of Applicant's own originally filed specification) discloses the method of claim 12, but fails to disclose the receiving of multimedia material includes receiving non-digital media including celluloid media and printed media.

In an analogous art, Siefert discloses receiving and digitizing celluloid media and printed media in order to provide it over a communications network (col. 5, lines 14-25).

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving non-digital media including celluloid media and printed media, as taught by Siefert, ensuring that all material is provided in digital format for transmission, regardless of the original source media.

9.    Claims 21 and 22 are rejected under 35 U.S.C. 103(a) as being unpatentable over Hunter, Applicant's own originally filed specification, Bernard, and Sprogis.

Regarding claim 21, Hunter discloses a method of marketing and distributing multimedia, the method comprising:

receiving a motion picture from an owner of said multimedia material (an inherent step, as the movies being offered for sale must have first been acquired from the owners of the respective material, paragraph 0060);

Application/Control Number: 09/840,283                                    Page 20
Art Unit: 2421

storing said motion picture on a computer readable storage medium in digital format (the stored movies which a customer reviews and selects for purchase, paragraph 0060);

providing a server system accessible over a communication network, said owner being linked with the server system (as it is their product which is being sold, paragraph 0063), said server system accessing said digital format from said computer readable storage medium for transfer of said digital format over said communication network (paragraphs 0062-0063);

downloading, upon request of exhibitors, over said communication network, said digital format of said motion picture from said server system (paragraph 0062); and

storing said downloaded motion picture and displaying said motion picture at a particular time and place (paragraph 0062).

Hunter fails to disclose receiving associated advertising material from a producer or owner of said multimedia, providing samples of said digital format from said server system over said communication network to potential purchasers, querying said customer to stimulate the sending of ticket sales data from said customer, recording said data into a database, and reporting recorded data to other exhibitors.

Applicant's own originally filed specification states that it is conventional for owners of multimedia material to provide advertising material to purchasers to locally market and sell said multimedia material (page 12, lines 5-17). Because

Hunter also teaches digitally transmitting advertising material as well as multimedia material to purchasers of multimedia material (paragraph 0070), a practitioner of ordinary skill in the art would be motivated to receive this advertising material from said owners as well, as the cost reducing benefits of all digital domain transmissions taught by Hunter (paragraph 0008-0009) would be then equally applied to both the advertising material and multimedia material.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include receiving associated advertising material from an owner of said multimedia material, for the benefit of reducing the costs normally associated with the distribution and promotion of said multimedia material.

Hunter still fails to disclose providing samples of said digital format from said server system over said communication network to potential purchasers and querying said customer to stimulate the sending of ticket sales data from said customer, recording said data into a database, and reporting recorded data to other exhibitors.

In an analogous art, Bernard teaches providing samples of multimedia content to potential purchasers (col. 3, lines 19-41) to provide assistance in choosing which material to purchase.

It would have been obvious at the time to a person of ordinary skill in the art to modify the method disclosed by Hunter to include providing samples of multimedia content to potential purchasers, as taught by Bernard, for the benefit

Application/Control Number: 09/840,283                                    Page 22
Art Unit: 2421

of providing helpful assistance to the purchaser in choosing which material to
purchase.

Hunter and Bernard fail to disclose querying said customer to stimulate
the sending of ticket sales data from said customer, recording said data into a
database, and reporting recorded data to other exhibitors.

In an analogous art, Sprogis discloses receiving and logging tickets sales
information from theaters for billing and market research purposes (paragraph
29).

It would have been obvious at the time to a person of ordinary skill in the
art to modify the method of Hunter and Bernard to include querying said
customer to stimulate the sending of ticket sales data from said customer and
recording said data into a database, as taught by Sprogis, for the benefit of
collecting detailed information for billing and market research purposes, such as
royalty payments and calculating the success of various films.  Exhibitors access
this recorded data when viewing their billing information for payment (Hunter,
paragraph 0063).


Regarding claim 22, Hunter, Bernard, and Sprogis disclose the method of
claim 21, including providing marketing data recorded in said database to
exhibitors in response to a query from an exhibitor (allowing advertisers to
segment their markets, Sprogis, paragraph 0032).

Application/Control Number: 09/840,283                                                          Page 23
Art Unit: 2421

## *Conclusion*

10.     The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure. Bruce Hershenson, "A History of Movie Posters", 1998

[http://www.reelclassics.com/Articles/General/posters-article.htm].


11.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.


        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to DOMINIC D. SALTARELLI whose telephone number is

(571)272-7302.  The examiner can normally be reached on Monday - Friday 9:00am -

6:00pm.

Application/Control Number: 09/840,283                                          Page 24
Art Unit: 2421

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, John Miller can be reached on (571) 272-7353.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Dominic D Saltarelli/
Examiner, Art Unit 2421

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | DOMINIC D. SALTARELLI | 2421 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US- | | | |
| | B | US- | | | |
| | C | US- | | | |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | Bruce Hershenson, "A History of Movie Posters", 1998 [http://www.reelclassics.com/Articles/General/posters-article.htm] |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Index of Claims* | Application/Control No. 09840283 | Applicant(s)/Patent Under Reexamination STILIADIS, NICHOLAS |
|---|---|---|
| | Examiner Saltarelli, Dominic | Art Unit 2421 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ **Claims renumbered in the same order as presented by applicant**   ☐ CPA   ☐ T.D.   ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/18/2006 | 10/12/2007 | 11/25/2008 | | | | | |
| | 1 | ✓ | ✓ | ✓ | | | | | |
| | 2 | ✓ | ✓ | - | | | | | |
| | 3 | ✓ | ✓ | - | | | | | |
| | 4 | ✓ | ✓ | ✓ | | | | | |
| | 5 | ✓ | ✓ | ✓ | | | | | |
| | 6 | ✓ | ✓ | - | | | | | |
| | 7 | ✓ | ✓ | - | | | | | |
| | 8 | ✓ | ✓ | ✓ | | | | | |
| | 9 | ✓ | ✓ | ✓ | | | | | |
| | 10 | ✓ | ✓ | ✓ | | | | | |
| | 11 | ✓ | ✓ | ✓ | | | | | |
| | 12 | ✓ | ✓ | ✓ | | | | | |
| | 13 | ✓ | ✓ | - | | | | | |
| | 14 | ✓ | ✓ | ✓ | | | | | |
| | 15 | ✓ | ✓ | ✓ | | | | | |
| | 16 | ✓ | ✓ | ✓ | | | | | |
| | 17 | ✓ | ✓ | - | | | | | |
| | 18 | ✓ | ✓ | ✓ | | | | | |
| | 19 | ✓ | ✓ | ✓ | | | | | |
| | 20 | ✓ | ✓ | - | | | | | |
| | 21 | ✓ | ✓ | ✓ | | | | | |
| | 22 | ✓ | ✓ | ✓ | | | | | |
| | 23 | ✓ | ✓ | - | | | | | |
| | 24 | | | ✓ | | | | | |
| | 25 | | | ✓ | | | | | |
| | 26 | | | ✓ | | | | | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | Saltarelli, Dominic | 2421 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| updated | | 10/12/07 | DS |
| updated | | 11/25/08 | DS |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Updated Search | 8/18/2006 | jm |
| Updated Search History Attached | 08/18/2006 | jm |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

/D. D. S./
Examiner.Art Unit 2421

Part of Paper No. :  20081125

Reel Classics: Article: A History of Movie Posters



Reel Classics *the classic movie site*

Merchandise   AV Gallery   Downloads   Giveaways   Site Specifics   Links   Contac

The Stars

The Films

Movie Makers

Articles

Features

Commentary





Reel Classics > Articles > General >

## Classic Movie Articles

General Topics | Specific Films | Tech-Talk | Personal Statements

**Article:**

### A History of Movie Posters

**by Bruce Hershenson, 1998**



*Today movie posters are valuable collectibles, but in the beginning, they were just one more way the big studios tried to convince audiences to go to the movies. Bruce Hershenson, a vintage poster dealer, explains the origins of movie poster collecting.*

Before 1940, each film studio maintained its own offices (or exchange) in every major city. The studios would send the films and their posters to all the exchanges and from there, they would be distributed to the surrounding theaters. The big city theaters would just go to the exchange and pick up the films and posters right before they would show them (for big films they might order extra posters in advance of the opening to create an elaborate display). Theaters in smaller towns would often receive their films via Greyhound bus, which back then serviced just about every town in the country. The films would be in containers that would have the posters (often just one or two one-sheets and a set of lobby cards) tucked in a pouch on the outside of the container.

Most theaters would show a film for 3 or 4 days (as part of a program that might include 2 features, a cartoon, a newsreel, and possibly a serial chapter), and then send it on (via bus) to the next theater. Often the theater manager would put the film on a late night bus right after his last showing and it would arrive at the next theater the following morning, in time to be displayed for that night's show. The film might go by bus through a circuit of many theaters before returning to an exchange. After the film returned to the exchange, it would go back out to other theaters, and often the posters had to be replaced, as they were torn and tattered from being put up and taken down several times.

This more than anything explains why posters from before 1940 are







Ad

O
P
O
an
P
sh
ww

extremely rare. Theater owners couldn't give their posters to collectors, no matter how hard they begged, because they were needed at the next theater. This whole system of having to deal with each studio separately might sound very inefficient, but remember that in the 1920s and 1930s many theaters were owned by the studios and so only showed that studio's product; and most of the independents would only get their films from a couple of studios, so it wasn't that complicated.

But if all the posters were returned with the films, how are there any posters at all from before 1940? For one thing, one type of poster, window cards (14" x 22") were bought in large quantities by an individual theater and (after they added their name and play dates to the top) distributed to store windows around town. Those were given away after the film was done playing. Another way they survive is in the backs of old picture frames, for framers would often use window cards (obtainable for free) as backing boards.

But as for other posters remaining today, a huge amount come from other countries, for those did not have to be returned to the U.S.; at the time, the value of the posters was less than the cost of the postage to return them. There have been huge finds of pre-1940 U.S. posters in Canada, Columbia, and many other countries.

In addition there have been some great finds in the U.S., such as the Cozy Theater Collection in Los Angeles. This was a theater that maintained its own exchange of posters from the early 1930s to the 1950s for distribution to Los Angeles theaters. In 1968 the theater owner offered his entire collection of posters (containing tens of thousands of posters and lobby cards, and hundreds of thousands of stills) for sale for $25,000, and it was hard to find a buyer! At today's prices, the collection would sell for millions of dollars.

Other than the huge finds (which probably account for 90% of the pre-1938 posters known), posters also are sometimes found in one other main way. In the 1910s and 1920s (and to a lesser extent in the 1930s), builders would often look for material to put within the walls of buildings (or under the floors) to serve as insulation. Some enterprising builders hooked up with poster exchanges to take large amounts of outdated posters and put them in the walls of their new homes. I know of at least ten occasions where someone has been remodeling their house in the 1990s and discovered posters in the walls or under the floor. Sometimes they are moldy and mildewed and require large amounts of restoration, but sometimes they are so tightly pressed together that they survive in relatively excellent condition.

The vast majority of pre-1938 posters known were found in one of the above ways. Very rarely a theater owner (such as the legendary Charles Dyas, who started collecting in 1922) might order extra posters to keep, or someone who had access to posters might keep a particular poster as a keepsake, but by and large absolutely everybody who handled posters viewed them as disposable advertising, much like newspapers. Old newspapers (like comics books or baseball cards) survive in quantity only because they were sold by the millions, and some people never throw out anything. Movie posters, on the other hand, were never obtainable by the general public. It does seem particularly amazing that the studios themselves never thought to maintain an archive of their posters. In recent years some of them have spent hundreds of thousands of dollars buying back a tiny percentage of the posters that they literally sold for pennies each!

I am not understating the rarity of pre-1938 posters when I say that for at least a large number of films not a single poster or lobby card is known, and for many others only lobby cards or window cards are known. It is very unusual to find a film from before 1938 from a major studio on which more than ten copies of a one-sheet is known. (Posters from lesser studios are often found in large quantity because when the studio goes out of business they often have hundreds of copies of each poster on hand. An example is the Norman Film Company, which made all-black cast films. A huge supply of these posters were found, and they are among the most common of all silent posters.)

The system of every studio maintaining its own supply of posters in every one of its branch offices became very cumbersome, and in 1940, National Screen Service was formed. Warehouses (called poster exchanges) were set up in most major cities across the U.S., and each studio contributed its posters from the last couple of years to get it started (Exchanges definitely had posters from 1937-39 in abundance, but nothing like the quantities they would have of post-1940 material. The exchanges had virtually nothing from before 1937, which explains the vast rarity difference between pre-1937 and post-1940 material.

For each new release in 1940, the printers put National Screen Service (NSS) numbers on the bottom right of every poster. For 1940 only, they used a first number that began with 40, followed by a slash mark and more numbers (for example 4011/524). The "40" referred to 1940, and the rest of the numbers referred to in what order the poster had been printed, to make it easier for people to find the posters when stored in a large warehouse (many films had similar or the same titles). In 1941, the simplified the code to be just "41", followed by a slash mark and three numbers (for example 41/245). This was unfortunate, for in the present day it has resulted in acknowledgeable collectors assuming that they had a limited edition poster (in the previous case, #41 out of an edition of 245). This system continued all the way through the late 1970s, and makes identifying the year of 1940-1979 posters extremely easy. It also makes identifying re-issues simple, for they would put the re-issue year in the NSS number, and put a big capital "R" in front of it. So in the above example, if the 1941 film, NSS #41/245, was re-issued in 1954, it would have a new number such as R54/621.

It appears each exchange received a huge number of each poster (at least). I say this for two reasons. One is the economics of full-color printing are such that once you get the presses rolling, it is very cheap to keep on printing, and it is much more expensive to reprint items. Thus, it just would not make sense to print less than say five or ten thousand of a full-color item. Second, when exchanges were bought out in the 1960s (see below), it was not at all uncommon for a single exchange to have well over 100 of a single item, even after years of distributing that item. Of course there was not an even distribution of items, but I think it fair to say that for most items that were in exchanges, hundreds of each survive today. I also think it fair to say that for most pre-1937 items less than ten of each survive today (with the exception of those items that were found in huge quantities, such as the Norman Film Company posters).

In the 1940s, the studios would charge a rental fee to the theater, which would return the poster after using it (hence the warning that has frightened collectors for years, beginning "This poster is the property of National Screen Service..."). At some point NSS realized that it was easier to just print more posters and sell them outright (probably this was due to rising postal rates. I

Case 1:25-cv-00038-JCG   Document 20-1   Filed 04/30/25   Page 473 of 607 PageID #:
605
Reel Classics: Article: A History of Movie Posters                                    Page 4 of 5

have owned many posters that were mailed folded in the 1940s, without an envelope, and the cost was three cents!) I have brochures from exchanges from the early 1960s, where they offer new one-sheets for 25 cents each, with other prices on other sizes. The brochure might say 1964 and 1965 one-sheets, 25 cents each, 1963 and earlier 15 cents each! This shows they had no clue that these posters had collectible value, but also that there were next to no collectors before the early 1960s (just like comic book collecting). The few collectors there were in the 1950s kept buying all the posters they could afford from exchanges and didn't talk about it.

Then in the mid-1960s, some enterprising individuals began to buy the individual poster exchanges. I have no idea what they paid, but I have no doubt it was an absolute "steal", as the exchanges thought they had warehouses full of practically worthless old paper. (Of course I admire these individuals, for that one business decision made them financially set for life. They saw an opportunity no one else saw, and they took advantage of it.) The new owners began offering old posters at "collector's prices", usually around $1.00 or $1.50 for an older one-sheet. They did next to no advertising, and they often sold a great deal to local collectors, who heard about them by word of mouth. Some individuals, such as Tannar Miles, would buy posters from the exchanges in huge quantities and try to double their money at collectible shows. (My own personal introduction to movie posters came in 1968 at an Oklahoma City collectibles show, where I, being a full-time comic book dealer, was intrigued by the many boxes of movie posters I saw at Tannar Miles' tables. I spent over $40 with him, a huge amount of money for me at the time, and I went home with a large box of posters and lobby sets).

But it didn't take long for the dealers to see that they were rapidly running out of the most popular titles (particularly horror and sci-fi) and they started raising prices on popular titles. The two exchanges that were best organized and sold the most posters to collectors were Theater Poster Exchange in Memphis, Tennessee, and Movie Poster Service in Canton, Oklahoma (both are still in business and both give excellent service). I remember seeing better quality posters priced at $20 in the early 1970s, and wondering how much higher prices could go! But it is important to realize that pre-1937 posters were always scarce, even in 1965. I remember seeing a Valentino lobby card in 1969, and the price was $20, when virtually no post-1940 item sold for as much. The price was high because even then, silent items were virtually unheard of. I have heard old-time collectors talk of the days when they bought Frankenstein and Dracula lobby sets from exchanges, but I know this never happened (maybe it was House of Frankenstein and House of Dracula and the stories got embellished over the years).

Sometime in the late 1970s, those who printed movie posters began printing huge numbers of extra posters which they did not fold in the regular way, but instead left unfolded ("rolled"). It is not clear to me if this was done with the studio's permission or knowledge, or if it was done independently by the printers. I would think it may well have started around the time of Star Wars or especially Return/Revenge of the Jedi, when these posters instantly began selling for collectible prices. Maybe someone contacted someone at the printers and "persuaded" them to print a bunch of extra posters. Unfortunately if this was done without the studio's knowledge, then we'll probably never know the full story, for the principals involved are unlikely to admit to it. At this time, several collectibles dealers became tied to whoever supplied rolled one-sheets, and began offering them to collectors. The odd thing is that it remained a very clandestine business, shrouded in mystery.

Even today, I have no idea who prints the rolled one sheets, how they can be contacted, how they can be purchased directly, and so forth. Of course those who act as middlemen for distributing these posters don't want the answers to get out, but it's just a matter of time before it happens.

© 1998 Bruce Hershenson

(Please email comments about this article to the author, Bruce Hershenson, at *mail@brucehershenson.com* or visit his website, at Bruce Hershenson Vintage Film Posters.)

**Return to the Index of General Classic Movie Articles.**

**Printer-friendly version.**    **Return to the top.**

Last updated: November 28, 2005.
Reel Classics is a registered trademark of Reel Classics, L.L.C.
© 1997-2005 Reel Classics, L.L.C.  All rights reserved  No copyright is claimed on non-original or licensed mat

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

27805        7590        03/17/2009
THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/17/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

| ***Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | DOMINIC D. SALTARELLI | 2421 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *DOMINIC D. SALTARELLI*.                    (3)_____.

(2) *Anthony Handal*.                    (4)_____.

Date of Interview: *13 March 2009*.

Type:  a)☒ Telephonic    b)☐ Video Conference
c)☐ Personal [copy given to: 1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:    d)☐ Yes    e)☒ No.
If Yes, brief description: _____.

Claim(s) discussed: *1*.

Identification of prior art discussed: *Hunter*.

Agreement with respect to the claims f)☐ was reached.  g)☒ was not reached.  h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *discussed possible claim amendments to put case in condition for allowance*.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

/Dominic D Saltarelli/
Examiner, Art Unit 2421

Docket No.: 075288-00002

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

---

In re Application of:
Nicholas Stiliadis

| | |
|---|---|
| Application No.: 09/840,283 | Confirmation No.: 3319 |
| Filed: April 23, 2001 | Art Unit: 2421 |
| For: MULTIMEDIA MARKETING AND<br>     DISTRIBUTION SYSTEM | Examiner: D.D. Saltarelli |

---

## AMENDMENT IN RESPONSE TO FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INTRODUCTORY COMMENTS

In response to the Final Office Action dated December 3, 2008, please

amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which

begins on page 2 of this paper.

**Remarks/Arguments** being on page 14 of this paper.

The Commissioner is authorized to charge any additional fees required or

to credit any overpayment to Deposit Account No. 20-0809.

171924.3

Application No. 09/840,283                           Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

## AMENDMENTS TO THE CLAIMS

1. (Currently amended) A method of marketing and distributing multimedia, the method comprising:

a.    receiving multimedia material and advertising material from a producer or owner of said multimedia material, said advertising material being associated with said multimedia material, said advertising material comprising audio and video components;

b.    storing said multimedia material and associated advertising material on a computer readable storage medium as correlated information in a digital format;

c.    providing a server system accessible over a communication network, said server system accessing said correlated information in a digital format from said computer readable storage medium for transfer of said correlated information in a digital format over said communication network to potential purchasers;

d.    providing samples of said correlated information in a digital format from said server system over said communication network to said potential purchasers, said purchasers being linked to the server system through said communication network;

e.    downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format

Application No. 09/840,283                              Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

corresponding to ~~of~~ said multimedia material from said server system, said

purchasers storing downloaded correlated information in a digital format ~~of~~

corresponding to said multimedia material; and

f.    providing said correlated information in a digital format ~~of~~ corresponding

to said advertising material that is ~~linked to~~ associated with said multimedia

material to said purchasers from said server system over said communication

network, allowing purchasers to locally market and sell said multimedia

material, said purchasers downloading said correlated information in a digital

format corresponding to ~~of~~ said advertising material that is associated with said

multimedia material, said purchasers storing the downloaded correlated

information in a digital format ~~of~~ corresponding to said advertising material; and

g.    wherein said purchaser is an exhibitor exhibiting said multimedia

material, after deriving said multimedia material from said stored correlated

information in a digital format corresponding to ~~of~~ said multimedia material, in a

public theater to a number of individuals in exchange for a paid admission or a

broadcast exhibitor, said advertising material, after deriving of said advertising

material from said correlated information in a digital format corresponding to ~~of~~

said stored associated advertising material, being shown to the public at a time

Application No. 09/840,283                          Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

or in a place different from ~~that of~~ the time or place at which said associated

multimedia material is displayed.

2.      (Cancelled).

3.      (Previously Presented) The method of marketing and distributing

multimedia of claim 1, wherein receiving multimedia material includes receiving

non-digital media selected from the group consisting of celluloid media, printed

media, video cassettes, and audio tape.

4.      (Currently Amended) The method of marketing and distributing

multimedia of claim 3, ~~including the step of~~ comprising digitizing said non-

digital media for storage on said computer readable storage medium.

5.      (Currently Amended) The method of marketing and distributing

multimedia of claim 1, ~~including~~ wherein ~~providing a~~ said server system is

accessed ~~accessible~~ over a public communications system.

6.      (Cancelled).

7.      (Cancelled).

8.      (Currently Amended). The method of marketing and distributing

multimedia of claim 1, further comprising automatically collecting sales

information from exhibitor recipients of various items of said multimedia

Application No. 09/840,283                           Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

material and providing sales and marketing <u>data, specific to said items of</u>

<u>multimedia material,</u> to exhibitors based upon information from said exhibitors.

9.      (Previously Presented) The method of marketing and distributing

multimedia of claim 8, further comprising providing marketing data based upon

actual uses of said multimedia material.

10.      (Currently Amended) A method of distributing movies <u>received from a</u>

<u>movie owner,</u> comprising:

a.      receiving a movie on celluloid and associated advertising material ~~together~~

from said movie owner<u>, said advertising material comprising a video component</u>

<u>and an audio component synchronized to said video component</u>;

b.      scanning said movie and converting it into a digital format, storing said

movie in digital format and said associated advertising material in digital format

in a computer readable memory, such that said advertising material and said

movie are linked;

c.      inputting licensing information about said movie;

d.      transferring said digital formats of said movie and said associated

advertising material to a theater via a communications network<u>;</u>

Application No. 09/840,283                              Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

e.      storing said digital formats of said movie and said associated advertising

material on a computer readable memory located at said theater; ~~and~~

f.      transmitting said licensing information to a potential exhibitor which

operates a theater; and

g.      projecting said movie in said digital format using a digital projector onto a

screen for display to an audience.

11.     (Currently Amended) A distribution system for distributing multimedia

comprising:

a.      a first central processing unit;

b.      a first memory associated with said first central processing unit;

c.      a communications network accessible by said first central processing unit

for transferring data into and out of said first memory;

d.      an input device connected for data transfer to said first central processing

unit, said input device receiving multimedia material and associated advertising

material, and transferring said materials into said first memory in a digital

format via said central processing unit, said advertising material comprising an

audiovisual work;

e.      a second central processing unit;

Application No. 09/840,283                                     Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

f.    a second memory, said second memory associated with said second

central processing unit, said communications network being accessible by said

second central processing unit for transferring said digital format of said

multimedia material into and out of said second memory;

g.    a digital feature film projector in data communication with said second

central processing unit for displaying said digital format as a feature film onto a

screen for presentation to an audience at a particular time and place, said feature

film being stored in said digital format in said second memory after being

transferred via said communications network from said first memory;

h.    a third memory, said third memory associated with said second central

processing unit, said communications network being accessible ~~assessable~~ by

said second central processing unit for transferring said digital format of said

associated advertising material into and out of said second memory; and

i.    displaying said associated advertising material at a time or place different

from said particular time or place.

12. (Currently Amended) A method of advertising ~~marketing~~ and distributing

multimedia, comprising:

171924.3                                    7

Application No. 09/840,283                                  Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008


a.    receiving multimedia material from a producer or owner of said

multimedia material together with associated advertising material, said

advertising material comprising audio and video components;

b.    storing said advertising material associated with said multimedia material

on a computer readable storage medium;

c.    providing a server system accessible over a communications network, said

server system accessing said multimedia material and said advertising material

from ~~said~~ computer readable storage medium for transfer of said advertising

material in a digital format from said server system over said communication

network;

d.    establishing an account for a broadcast or live theater exhibitor;

e.    providing said multimedia material to said exhibitor for storage on a

computer system, said multimedia material being ~~and for~~ later played back and

~~exhibition~~ exhibited at a particular time and place, and providing said linked

advertising material to said exhibitor for storage on a computer system, and said

advertising material being exhibited ~~exhibition~~ at a time or place different from

said particular time or place, said exhibitor downloading said advertising

material and said multimedia material over said server system;

Application No. 09/840,283                                          Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

f.      communicating with said exhibitor over said communications network to

determine information necessary to calculate an amount owed by said exhibitor

for said multimedia material; and

g.      charging the account of said exhibitor with the amount owed.

13.     (Cancelled).

14.     (Currently Amended) The method of advertising ~~marketing~~ and

distributing multimedia of claim 12, wherein receiving multimedia material

includes receiving non-digital media selected from the group consisting of

celluloid media, printed media, video cassettes, and audio tape, and wherein

said multimedia material is provided to said exhibitor using an electronic

communications network.

15.     (Currently Amended) The method of advertising ~~marketing~~ and

distributing multimedia of claim 12, wherein said communicating is

implemented by the automatic sending of an e-mail to said exhibitor.

16.     (Currently Amended) The method of advertising ~~marketing~~ and

distributing multimedia of claim 12, ~~wherein follow-up comprises~~ further

comprising consulting publicly reported data respecting said exhibitor.

17.     (Cancelled).

Application No. 09/840,283                              Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

18.    (Currently Amended) The method of advertising ~~marketing~~ and

distributing multimedia of claim 12, further comprising querying said exhibitor

to stimulate the sending of data from said exhibitor and recording said data into

a database.

19.    (Previously Presented) The method of marketing and distributing

multimedia of claim 18, comprising providing marketing data recorded in said

database to customers in response to a query from a exhibitor.

20.    (Cancelled).

21.    (Currently Amended) A method of marketing and distributing

multimedia, ~~the method~~ comprising:

a.    receiving a motion picture and associated advertising material from a

producer or owner of said multimedia material, said advertising material

comprising a motion picture sequence with associated sound;

b.    storing said motion picture and associated advertising material on a

computer readable storage medium in a digital format;

c.    providing a server system accessible over a communication network, said

producer or owner being linked with the server system, said server system

accessing said motion picture and associated advertising material stored in a

Application No. 09/840,283                                     Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

digital format from said computer readable storage medium for transfer over

said communication network;

d.      providing samples of said motion picture from said server system over

said communication network to exhibitors, said exhibitors being linked to the

server system;

e.      downloading, upon request of said exhibitors, over said communication

network, said <u>motion picture and associated advertising material stored in a</u>

digital format ~~of said motion picture;~~ from said server system;

f.      storing said downloaded motion picture and displaying said motion

picture at a particular time and place;

g.      storing said downloaded associated advertising material and displaying

said advertising material at a time or in a place different from the place or time of

exhibition of said motion picture;

h.      querying said exhibitor to stimulate the sending of ticket sales data from

said exhibitor ;

i.      recording said <u>ticket sales</u> data into a database for billing purposes; and

j.      reporting recorded <u>ticket sales</u> data to other exhibitors.

Application No. 09/840,283                    Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

22.    (Currently Amended)    The method of marketing and distributing multimedia of claim 21, comprising providing marketing data recorded in said database to an exhibitor in response to a query from said an exhibitor.

23.    (Cancelled).

24.    (Previously Presented) The method of claim 1, wherein the exhibition of multimedia material is the public showing of a motion picture.

25.    (Currently Amended) The method of claim 12, wherein said information comprises box office information and further comprising transmitting box office information to other exhibitors and/or potential exhibitors.

26.    (Previously Presented) The method of Claim 1, further comprising providing a search function for said multimedia material and said associated advertising material.

27.    (New) the method of claim 1, wherein said advertising material comprises a motion picture with accompanying synchronized sound.

28.    (New) the method of claim 1, wherein said advertising material comprises a motion picture with accompanying synchronized sound and a radio commercial.

Application No. 09/840,283                                    Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

29.     (New) The method of claim 1, wherein said advertising material comprises

a motion picture trailer or coming attraction motion picture segment with

accompanying sound.

30.     (New) The method of claim 29, wherein said advertising material further

comprises at least one element of advertising material selected from the group

consisting of graphics for a newspaper advertisement, a radio spot, a poster, a

coming attractions film segment, and handbills.

Application No. 09/840,283                                Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

## REMARKS

Applicant would first like to thank the examiner for the courtesy of an interview extended on March 13, 2009.  While no particular language was agreed upon at the interview, following the suggestion of the examiner that limiting advertising material to something more than a simple poster, and in particular to an audiovisual work such as a coming attractions motion picture sequence or a television commercial, was likely to be allowed, the applicant has made such amendment to all of the independent claims.

Even without this amendment, it is respectfully submitted that the claims were and are drawn to patentable subject matter. Limiting the claims in the manner the current amendment positively recites systems which are not remotely suggested by the prior art, which are not concerned with the problems solved by the present invention and thus, without the benefit of hindsight, cannot be changed and combined to approach the invention. Indeed, the long-standing availability of components and technological capabilities is itself an argument in favor of patentability in this particular case.

171924.3                                    14

Application No. 09/840,283                                    Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

It is important to keep in mind that this application was filed in 2001. And care must be taken to evaluate patentability as of that date. Of course, and application should not be prejudiced on the issue of obviousness by an early filing date . Viewpoints with respect to obviousness today, in 2009, must be carefully put aside in evaluating an application which was filed in 2001.

More particularly, it is noted that the repeated searches of the subject matter made by the PTO clearly define the patentability of the system invented by the applicant. As was noted in the last office action, no reference anticipates the invention. Thus, the only rejection is based on alleged obviousness.

It is important to recognize that the subject matter of the present invention carries substantial advantages which, if they were obvious, would have been recognized long before the invention was made. For example, the transfer of advertising materials and theatrical content by wire, allows one to easily test advertising material and redirect more effective materials based on box office reports as are reported in the disclosed system.

171924.3                                    15

Application No. 09/840,283                          Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

Despite the fact that many of the needed components and the technology for achieving implementation of other components was available years before the invention, and notwithstanding the advantages to be provided by the system, the art fails to show the same.

As has been noted before, by the early 1990s so-called T3 lines which have very large bandwidth and are thus capable of carrying a great deal of information such as the feature film and the advertising materials were commonplace. High resolution technology was also very well advanced, including pinhead sized black-and-white pictures in the 1960s. However, notwithstanding the availability of high resolution technology and the bandwidth to achieve the results of the present invention, the prior art, as exemplified by the patent to Hunter, merely talks about real-time transmission to screens, conceptually nothing more than a multiple closed circuit television system. The other patents cited by the examiner do not deal with the deficiencies of the Hunter reference.

In accordance with the above amendments, the claims claim various nonobvious aspects of the invention. The claims clearly define over the prior art

171924.3                                    16

Application No. 09/840,283                          Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008

by reciting that the advertising materials and multimedia (e.g. feature films) are shown at different times and or places.

This aspect of the claimed invention is clearly not met by the art of record, either alone or in combination. By the present amendments applicant has further limited the invention to particular types of advertising materials. Given this additional limitation, it is believed clear that the claims are now drawn to allowable subject matter.

In view of the above amendments and the discussion relating thereto, it is respectfully submitted that the present claims, as amended, are clearly drawn to patentable subject matter. If, for any reason, the Examiner believes that there are any remaining issues, he is invited to contact the undersigned at the telephone number below.

Dated:          April 3, 2009                    Respectfully submitted,

                                                 / Anthony H. Handal /
                                                 Anthony H. Handal
                                                 Registration No.: 26,275

171924.3                        17

Application No. 09/840,283                                    Docket No.: 075288-00002
Amendment dated April 3, 2009
Reply to Office Action of December 3, 2008


THOMPSON HINE LLP
P.O. Box 8801
Dayton, Ohio  45401-8801
(212) 908-3912 (phone)
(212) 344-6101 (facsimile)

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 09840283 |
| **Filing Date:** | 23-Apr-2001 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas Stiliadis |
| **Filer:** | Anthony H. Handal/Juan Arias |
| **Attorney Docket Number:** | NS2 |
| Filed as Small Entity | |

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| Extension - 1 month with $0 paid | 2251 | 1 | 65 | 65 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **65** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5093412 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | Mutimedia marketing and distribution system |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 27805 |
| **Filer:** | Anthony H. Handal/Juan Arias |
| **Filer Authorized By:** | Anthony H. Handal |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 03-APR-2009 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 15:27:00 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Electronic Funds Transfer |
| Payment was successfully received in RAM | $65 |
| RAM confirmation Number | 868 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | | StiliadisResponse.pdf | 612874<br><br>62aa9518dfa4fdb5bb4057099922101fa9679aa83 | yes | 18 |

| Multipart  Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Amendment After Final | 1 | 1 |
| Claims | 2 | 13 |
| Applicant Arguments/Remarks Made in an Amendment | 14 | 18 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (PTO-06) | fee-info.pdf | 29909<br><br>8f35005ca60471172a3a75316a6152d2b3c4b3e6 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 642783 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (07-06)
Approved for use through 1/31/2007. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 09/840,283 | 04/23/2001 | ☐ To be Mailed |

### APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) | | SMALL ENTITY ☐ OR | | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) | | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | | | |

\* If the difference in column 1 is less than zero, enter "0" in column 2.

| | | | | TOTAL | | TOTAL | |

### APPLICATION AS AMENDED – PART II

OTHER THAN

|  |  | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | OR | SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | 04/03/2009 | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 23 Minus | ** 20 | = 3 | X $ = | | OR X $50= | 150 |
| | Independent (37 CFR 1.16(h)) | * 5 Minus | *** 6 | = 0 | X $ = | | OR X $210= | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | 150 |

|  |  | (Column 1) | (Column 2) | (Column 3) | RATE ($) | ADDITIONAL FEE ($) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | | | |
| | Total (37 CFR 1.16(i)) | * Minus | ** | = | X $ = | | OR X $ = | |
| | Independent (37 CFR 1.16(h)) | * Minus | *** | = | X $ = | | OR X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | OR | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Legal Instrument Examiner:
/CATHERINE d. SMITH/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Document code: WFEE

United States Patent and Trademark Office
Sales Receipt for Accounting Date: 04/06/2009

CSMITH1    SALE #00000004    Mailroom Dt: 04/03/2009    200809    09840283
           01    FC : 1202            156.00 DA

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 27805 | 7590 | 04/08/2009 |

THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

DATE MAILED: 04/08/2009

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

TITLE OF INVENTION: MUTIMEDIA MARKETING AND DISTRIBUTION SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 07/08/2009 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail**

**or Fax**

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

27805        7590        04/08/2009

THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

TITLE OF INVENTION: MUTIMEDIA MARKETING AND DISTRIBUTION SYSTEM

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 07/08/2009 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| SALTARELLI, DOMINIC D | 2421 | 725-143000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

27805        7590        04/08/2009

THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

DATE MAILED: 04/08/2009

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 653 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 653 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85  (Rev. 08/07) Approved for use through 08/31/2010.

| *Notice of Allowability* | Application No. | Applicant(s) |
|---|---|---|
| | 09/840,283 | STILIADIS, NICHOLAS |
| | Examiner | Art Unit | |
| | DOMINIC D. SALTARELLI | 2421 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the amendment filed on April 3, 2009*.

2. ☒ The allowed claim(s) is/are *1,3-5,8-12,14-16,18,19,21,22 and 24-30*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the

            International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

        Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

/Dominic D Saltarelli/
Primary Examiner, Art Unit 2421

Application/Control Number: 09/840,283                                    Page 2
Art Unit: 2421

## EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

    Authorization for this examiner's amendment was given in a telephone interview

with Anthony Handel on April 6, 2009.

    The application has been amended as follows:

    Claim 1, line 3, has been amended to read "a.    receiving, by a server,

multimedia material and advertising material from a producer"

    Claim 10, line 3 has been amended to read "a.    receiving, by a server, a movie

on celluloid and associated advertising material"

    Claim 12, line 3, has been amended to read "a.    receiving, by a server,

multimedia material a producer or owner"

    Claim 21, line 3, has been amended to read "a.    receiving, by a server, a

motion picture and associated advertising material "


2.      The following is an examiner's statement of reasons for allowance: The state of

the prior art suggested providing static images as advertising material (specifically

movie posters) rather than full motion video segments with associated audio as

associated advertising material which is received along with a movie.

Application/Control Number: 09/840,283                                      Page 3
Art Unit: 2421

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to DOMINIC D. SALTARELLI whose telephone number is (571)272-7302.  The examiner can normally be reached on Monday - Friday 9:00am - 6:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, John Miller can be reached on (571) 272-7353.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/Dominic D Saltarelli/
Primary Examiner, Art Unit 2421

Application/Control Number: 09/840,283                                    Page 4
Art Unit: 2421

| | | |
|---|---|---|
| ***Index of Claims*** | **Application/Control No.**<br><br>09840283 | **Applicant(s)/Patent Under Reexamination**<br><br>STILIADIS, NICHOLAS |
| | **Examiner**<br><br>Saltarelli, Dominic | **Art Unit**<br><br>2421 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/18/2006 | 10/12/2007 | 11/25/2008 | | | | | | |
| 1 | 1 | ✓ | ✓ | ✓ | = | | | | | |
| | 2 | ✓ | ✓ | - | - | | | | | |
| 2 | 3 | ✓ | ✓ | ✓ | = | | | | | |
| 3 | 4 | ✓ | ✓ | ✓ | = | | | | | |
| 4 | 5 | ✓ | ✓ | ✓ | = | | | | | |
| | 6 | ✓ | ✓ | - | - | | | | | |
| | 7 | ✓ | ✓ | - | - | | | | | |
| 11 | 8 | ✓ | ✓ | ✓ | = | | | | | |
| 12 | 9 | ✓ | ✓ | ✓ | = | | | | | |
| 13 | 10 | ✓ | ✓ | ✓ | = | | | | | |
| 14 | 11 | ✓ | ✓ | ✓ | = | | | | | |
| 15 | 12 | ✓ | ✓ | ✓ | = | | | | | |
| | 13 | ✓ | ✓ | - | - | | | | | |
| 16 | 14 | ✓ | ✓ | ✓ | = | | | | | |
| 17 | 15 | ✓ | ✓ | ✓ | = | | | | | |
| 18 | 16 | ✓ | ✓ | ✓ | = | | | | | |
| | 17 | ✓ | ✓ | - | - | | | | | |
| 19 | 18 | ✓ | ✓ | ✓ | = | | | | | |
| 20 | 19 | ✓ | ✓ | ✓ | = | | | | | |
| | 20 | ✓ | ✓ | - | - | | | | | |
| 22 | 21 | ✓ | ✓ | ✓ | = | | | | | |
| 23 | 22 | ✓ | ✓ | ✓ | = | | | | | |
| | 23 | ✓ | ✓ | - | - | | | | | |
| 5 | 24 | | ✓ | = | | | | | | |
| 21 | 25 | | ✓ | = | | | | | | |
| 6 | 26 | | ✓ | = | | | | | | |
| 7 | 27 | | | = | | | | | | |
| 8 | 28 | | | = | | | | | | |
| 9 | 29 | | | = | | | | | | |
| 10 | 30 | | | = | | | | | | |

Part of Paper No. : 20090406

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | DOMINIC D SALTARELLI | 2421 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | CLAIMED | | | | | NON-CLAIMED | |
| 725 | 91 | H | 0 | 4 | N | 7 / 173 (2006.01.01) | | |
| | | H | 0 | 4 | N | 7 / 16 (2006.01.01) | | |

### CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 725 | 105 | 114 | 144 | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
| 1 | 1 | | 17 | | | | | | | | | | | | |
| | 2 | 19 | 18 | | | | | | | | | | | | |
| 2 | 3 | 20 | 19 | | | | | | | | | | | | |
| 3 | 4 | | 20 | | | | | | | | | | | | |
| 4 | 5 | 22 | 21 | | | | | | | | | | | | |
| | 6 | 23 | 22 | | | | | | | | | | | | |
| | 7 | | 23 | | | | | | | | | | | | |
| 11 | 8 | 5 | 24 | | | | | | | | | | | | |
| 12 | 9 | 21 | 25 | | | | | | | | | | | | |
| 13 | 10 | 6 | 26 | | | | | | | | | | | | |
| 14 | 11 | 7 | 27 | | | | | | | | | | | | |
| 15 | 12 | 8 | 28 | | | | | | | | | | | | |
| | 13 | 9 | 29 | | | | | | | | | | | | |
| 16 | 14 | 10 | 30 | | | | | | | | | | | | |
| 17 | 15 | | | | | | | | | | | | | | |
| 18 | 16 | | | | | | | | | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| | | 23 | |
| (Assistant Examiner) | (Date) | | |
| /DOMINIC D SALTARELLI/ Primary Examiner.Art Unit 2421 | 4/6/09 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

U.S. Patent and Trademark Office

Part of Paper No. 20090406

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | Saltarelli, Dominic | 2421 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| updated | | 10/12/07 | DS |
| updated | | 11/25/08 | DS |
| updated | | 4/6/09 | DS |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Updated Search | 8/18/2006 | jm |
| Updated Search History Attached | 08/18/2006 | jm |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 725 | 86,91,105,114,144 | 4/6/09 | DS |

| /D. D. S./ Examiner.Art Unit 2421 | |
|---|---|

U.S. Patent and Trademark Office

Part of Paper No. : 20090406



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 3319**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | 725 | 2421 | NS2 |
| | RULE | | | |

**APPLICANTS**
Nicholas Stiliadis, Toronto, CANADA;

** CONTINUING DATA ***************************
This appln claims benefit of 60/201,118 05/02/2000

** FOREIGN APPLICATIONS ***************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **
06/15/2001

| Foreign Priority claimed | ☐ Yes ☑ No | ☐ Met after Allowance | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☐ No | | CANADA | 10 | 23 | 6 |
| Verified and Acknowledged | /DOMINIC D SALTARELLI/ Examiner's Signature | Initials | | | | |

**ADDRESS**

THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801
UNITED STATES

**TITLE**

Mutimedia marketing and distribution system

| FILING FEE RECEIVED | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | |
|---|---|---|
| 798 | | ☐ All Fees |
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

OK TO ENTER: /DS/

Docket No.: 075288-00002

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:
Nicholas Stiliadis

Application No.: 09/840,283                    Confirmation No.: 3319

Filed: April 23, 2001                          Art Unit:  2421

For:  MULTIMEDIA MARKETING AND                 Examiner:  D.D. Saltarelli
      DISTRIBUTION SYSTEM

## AMENDMENT IN RESPONSE TO FINAL OFFICE ACTION

MS Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INTRODUCTORY COMMENTS

In response to the Final Office Action dated December 3, 2008, please

amend the above-identified U.S. patent application as follows:

**Amendments to the Claims** are reflected in the listing of claims which

begins on page 2 of this paper.

**Remarks/Arguments** being on page 14 of this paper.

The Commissioner is authorized to charge any additional fees required or

to credit any overpayment to Deposit Account No. 20-0809.

171924.3

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-09)
Approved for use through 02/28/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | | 09840283 |
| Filing Date | | 2001-04-23 |
| First Named Inventor | | Nicholas Stiliadis |
| Art Unit | | 2421 |
| Examiner Name | | Saltarelli, Dominic D. |
| Attorney Docket Number | | 075288-00002 |

| U.S.PATENTS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 5661517 | | 1997-08-26 | Budow et al. | |
| | 2 | 5918213 | | 1999-06-29 | Bernard et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |
| | 2 | | | | | |
| | 3 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]ⁱ | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 09840283 |
|---|---|---|
| | Filing Date | 2001-04-23 |
| | First Named Inventor | Nicholas Stiliadis |
| | Art Unit | 2421 |
| | Examiner Name | Saltarelli, Dominic D. |
| | Attorney Docket Number | 075288-00002 |

| | 1 | 00/07130 | WO | | 2000-02-10 | Grobler, Benjamin | | ☐ |
|---|---|---|---|---|---|---|---|---|
| | 2 | 95/05050 | WO | | 1995-02-16 | BV Technology, Inc. | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

**NON-PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc) date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 09840283 |
|---|---|---|
| | Filing Date | 2001-04-23 |
| | First Named Inventor | Nicholas Stiliadis |
| | Art Unit | 2421 |
| | Examiner Name | Saltarelli, Dominic D. |
| | Attorney Docket Number | 075288-00002 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☒ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Anthony H. Handal/ | Date (YYYY-MM-DD) | 2009-04-09 |
|---|---|---|---|
| Name/Print | Anthony H. Handal | Registration Number | 26,275 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**



**PCT**

WORLD INTELLECTUAL PROPERTY ORGANIZATION
International Bureau

INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

| (51) International Patent Classification 6 : | | (11) International Publication Number: | **WO 95/05050** |
| --- | --- | --- | --- |
| H04N 5/76 | A1 | (43) International Publication Date: | 16 February 1995 (16.02.95) |

| | |
| --- | --- |
| (21) International Application Number: PCT/US94/08798 | (81) Designated States: AU, CA, CN, JP, European patent (AT, BE, CH, DE, DK, ES, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE). |
| (22) International Filing Date: 2 August 1994 (02.08.94) | |
| (30) Priority Data:<br>08/102,413      5 August 1993 (05.08.93)      US | **Published**<br>*With international search report.*<br>*Before the expiration of the time limit for amending the claims and to be republished in the event of the receipt of amendments.* |
| (71) Applicant: BV TECHNOLOGY, INC. [US/US]; 1 Blockbuster Plaza, Fort Lauderdale, FL 33301 (US). | |
| (72) Inventor: ALLEN, Richard; 111 East Myrna Lane, Tempe, AZ 85284 (US). | |
| (74) Agents: HUTTNER, Constance, S. et al.; Skadden, Arps, Slate, Meagher & Flom, 919 Third Avenue, New York, NY 10022 (US). | |

(54) Title: APPARATUS AND METHOD FOR AN ON DEMAND DATA DELIVERY SYSTEM FOR THE PREVIEW, SELECTION, RETRIEVAL AND REPRODUCTION AT A REMOTE LOCATION OF PREVIOUSLY RECORDED OR PROGRAMMED MATERIALS

(57) Abstract

An on demand data delivery system is provided for the manufacture of original content recordings (30) at a remote location (77). A data capture facility (10) for retrieving data from an item of material is connected to a data resampling means (6) for compressing data which is accessible to a storage facility (60) connected to a central host server (20). The central host server (20) is connected to a communications network (50) for communications to a remote server (70) which controls a manufacturing control device (90) connected thereto. The manufacturing control device (90) duplicates original content recordings (30) on blank media upon receipt of a data representation of the original content recording (30) from the remote server (70) which retrieves said data representation for a selected original content recording (30) from the central host server (20) over the communications network (50).



*FOR THE PURPOSES OF INFORMATION ONLY*

Codes used to identify States party to the PCT on the front pages of pamphlets publishing international applications under the PCT.

| | | | | | | |
|---|---|---|---|---|---|---|
| AT | Austria | GB | United Kingdom | MR | Mauritania |
| AU | Australia | GE | Georgia | MW | Malawi |
| BB | Barbados | GN | Guinea | NE | Niger |
| BE | Belgium | GR | Greece | NL | Netherlands |
| BF | Burkina Faso | HU | Hungary | NO | Norway |
| BG | Bulgaria | IE | Ireland | NZ | New Zealand |
| BJ | Benin | IT | Italy | PL | Poland |
| BR | Brazil | JP | Japan | PT | Portugal |
| BY | Belarus | KE | Kenya | RO | Romania |
| CA | Canada | KG | Kyrgystan | RU | Russian Federation |
| CF | Central African Republic | KP | Democratic People's Republic | SD | Sudan |
| CG | Congo | | of Korea | SE | Sweden |
| CH | Switzerland | KR | Republic of Korea | SI | Slovenia |
| CI | Côte d'Ivoire | KZ | Kazakhstan | SK | Slovakia |
| CM | Cameroon | LI | Liechtenstein | SN | Senegal |
| CN | China | LK | Sri Lanka | TD | Chad |
| CS | Czechoslovakia | LU | Luxembourg | TG | Togo |
| CZ | Czech Republic | LV | Latvia | TJ | Tajikistan |
| DE | Germany | MC | Monaco | TT | Trinidad and Tobago |
| DK | Denmark | MD | Republic of Moldova | UA | Ukraine |
| ES | Spain | MG | Madagascar | US | United States of America |
| FI | Finland | ML | Mali | UZ | Uzbekistan |
| FR | France | MN | Mongolia | VN | Viet Nam |
| GA | Gabon | | | | |

WO 95/05050                                                    PCT/US94/08798

DESCRIPTION

APPARATUS AND METHOD FOR AN ON DEMAND DATA DELIVERY SYSTEM FOR
THE PREVIEW, SELECTION, RETRIEVAL AND REPRODUCTION AT A REMOTE
LOCATION OF PREVIOUSLY RECORDED OR PROGRAMMED MATERIALS

FIELD OF THE INVENTION

The present invention relates to an on demand data
delivery system for the preview, selection, retrieval and repro-
duction at remote locations of original recordings or programmed
entertainment and informational software together with related
textual and graphical material and artwork (hereinafter referred
to as "titles") on selected media including compact disks,
minidisks, analog and digital audio cassette tapes, video cas-
sette tapes, magnetic disks, magneto optical disks and video
game (EPROM and FLASHROM) cartridges.

BACKGROUND OF THE INVENTION

Current methods of inventory management in retail
stores for titles (such as music recordings and video game
software) held for resale fail to optimally satisfy consumer de-
mand and increase product cost.  These deficiencies result prin-
cipally from the cost of financing large inventories of titles
held for resale and the failure to accurately anticipate consum-
er demand for individual titles and implement proper inventory
management practices to satisfy such demand.  These problems can
have a significant adverse impact both on retailers and on the
producers and distributors of items sold at retail.

As currently structured, retailers typically  must
maintain a large in-store inventory of titles for resale in
order to be assured they have sufficient supply to satisfy con-
sumer demand for such items.  In addition, retailers often must
maintain a large in-store inventory of titles to provide a means
of displaying and merchandising titles within the retail envi-
ronment.  For example, consumers of products such as audio
compact discs or cassette tapes typically browse through a large
number of displayed titles to find a preferred selection and to
determine if there are other titles which they are not aware of
that they may desire to purchase.  Moreover, while such "brows-
ing rack" displays are presently the most widely practiced form
of in-store merchandising of consumer music and video game

1

titles, they offer limited merchandising and cross promotional opportunities other than grouping by general subject categories and alphabetizing the artist or game titles thereunder.

Often, however, large amounts of inventory are not
5  sold and must be discounted to a price which generates consumer interest. In addition, insufficient inventories of popular titles result in lost sales which may be subsequently made by a competitor or lost altogether due to a loss of consumer interest in the title originally sought to be purchased. Moreover,
10 particularly with respect to music titles, a large number of unrealized sales may result from a lack of inventory of older titles for which there is limited individual demand, but which in their aggregate could result in significant sales volume. There also tend to be unrealized sales when older titles no
15 longer carried in inventory (or stocked only in limited quanti- ties) become popular as a result of unexpected publicity or popularity of a title or artist resulting from receipt of an award by the artist for a recent work or past achievement or the use of a song in a newly released medium.
20       These "inventory management" issues have a significant impact on the producers and distributors of music, video game and other entertainment titles. In industries such as music and video game software, which are characterized by "hit" titles for which there may be very high consumer demand for a relatively
25 brief time cycle, accurate inventory management is particularly important. A misjudgment in the number of expected sales of a particular music or video game software title (and related deci- sions regarding number of units of such title produced and distributed) could result in missing a significant market oppor-
30 tunity (for a short-cycle "hit" title for which limited supply is available) or a loss situation (resulting from the investment of a significant amount of money in producing and distributing a title for which there is no consumer demand and, as a result, an unwanted overstock of product). Overstock in particular can be
35 a significant problem to producers and distributors of music and video game software titles that maintain policies of "buying back" or accepting returns without penalty of all or a portion of overstocked inventory or providing credits towards future product purchases by retailers.

2

Recognizing some of these shortfalls, systems have
previously been proposed for the reproduction of titles at a
point of sale location as they are purchased.  Although these
proposals have recognized some of the advantages in implementing
5   such a system, they have been impractical for commercial imple-
mentation due to their inability to deliver necessary data for
the reproduction of titles in an economically viable manner and
within practical time constraints.  For instance, United States
Patent No. 4,528,643 to Charles C. Freeny, Jr. (the "Freeny de-
10  vice") describes a system having a remote information control
machine for updating data stored in an information manufacturing
machine located at a point of sale location.  The information
manufacturing machine includes means for reproducing prerecorded
music titles on eight track tapes with data stored in its inter-
15  nal memory.  The Freeny device further provides that the infor-
mation manufacturing machine receive authorization from the
remote information control machine prior to the reproduction of
a music title at the point of sale locations.  The information
control machine in the Freeny device serves to receive captured
20  data, convert the data to a digital format and update the data
storage facility located within the information manufacture ma-
chine.  Data stored in a memory file unit within each informa-
tion manufacturing machine is provided with an encoding scheme
which serves as a security system for the unauthorized reception
25  of the data necessary for the manufacture of the material ob-
ject.

The Freeny device has several drawbacks which make the
system impractical for commercial implementation:  (1) the data
file for each title requires a large memory storage capacity,
30  (2) each remote location must have on site data storage for
every title to be manufactured, (3) data delivery to point of
sale locations for anything beyond a short authorization code
and other sale tracking data is impractical in cost and time re-
quirements, and (4) manufacturing time for titles not stored on
35  site in the data storage facility for a particular remote loca-
tion is slow (and commercially impractical for the consumer re-
tailing environment).

The implementation of a commercially practical on
demand data delivery system for the preview, selection, retriev-

3

al and reproduction at remote locations of titles on selected
media within the time constraints of a retail shopping experi-
ence would eliminate or substantially reduce the deficiencies in
current retail practices described above.  It would afford a

5   great commercial advantage both to retailers and producers using
the system.  In addition, the system would optimally satisfy
consumer demand by providing virtually limitless inventory of
popular titles which can be previewed and selected for purchase
through an easy to use terminal that provides a unique shopping

10  experience.  Moreover, it would eliminate the need to produce
and transport to remote locations previously recorded or pro-
grammed titles  for which there is little or no consumer demand,
resulting in a much more efficient use of energy and resources
than is possible with existing practices.

15          It is therefore an object of the invention to provide
a commercially practical on demand data delivery system for the
preview, selection, retrieval and reproduction at remote loca-
tions of above described titles and additional materials.  It is
a further object of this invention to provide a system which

20  permits for improved marketing, selection and previewing capa-
bilities without the need for maintaining large inventories of
materials at a point of sale location.

                    SUMMARY OF THE INVENTION
            The present invention is directed to a system for the

25  preview, selection, retrieval and reproduction at remote loca-
tions of titles on selected media and for maintaining, at one or
more primary storage facilities, accounting data associated with
the preview, selection and/or reproduction (and sale) transac-
tions.  As contemplated in one preferred embodiment of the

30  invention, data representing titles is "captured" and stored in
one or more primary storage facilities (and in certain cases
discussed below, at one or more remote locations where titles
are reproduced).  The captured data representing the title may
include a reproducible audio portion, a full motion video/audio

35  portion, a graphics and text portion, an accounting information
portion and an identification portion which are stored in an
item data file.

            The audio portion of the item data file is  mathemat-
ically resampled to remove unnecessary audio data (i.e., data

WO 95/05050                                                        PCT/US94/08798

outside a specified amplitude and frequency range). This mathe-
matical resampling reduces by a significant amount (up to 90%)
the data that is required to be stored and transmitted in con-
nection with the preview, selection, retrieval and reproduction
5   processes. As a result, it permits real time transfer of data
between a remote location and a primary storage facility and
makes the system function within realistic commercial time con-
straints.

          The system may incorporate statistical counting data
10  base files for determining which item data files are high use
files at any given remote locations. Based upon statistical
data information, such as the number of times a specific item
data file is retrieved by the remote location(s), the system
maintains high use item data files in the location which pro-
15  vides the most efficient/economical access to such item data
files, which may be located at either the remote locations or in
the fastest storage medium available away from the remote loca-
tions. This "caching" system may be used to reduce telecommuni-
cations costs and allow for economical use of on-site storage.
20  The system may also incorporate multiple storage medium facili-
ties having varying speeds of retrieval. The statistical count-
ing data may be used to place more active item data files on the
fastest storage medium and less active item data files on slower
speed storage medium facilities. The hierarchical storage
25  scheme facility may be located at a remote location, at a
primary storage facility or at both locations. Such a caching
system may be employed to make the most efficient use of avail-
able resources at either the remote locations or at the central
locations. The statistical counting data base files would be
30  updated frequently to reflect the most recent trends at speci-
fied locations. Moreover, item data files (for new "hit" ti-
tles, for example) could be provided with a predetermined sta-
tistical weight in order to optimize availability of data needed
for the system to meet consumer demand.
35        The system may also incorporate multiple consumer
interface terminals (located at remote locations) that allow
consumers to preview or "browse" a data base of titles and
select titles for purchase. The consumer interface terminal may
include a touch screen/monitor interface and sound amplification

5

devices which enable the consumer to preview titles in a unique
shopping experience.  Access to the consumer interface terminal
may be predicated upon a consumer providing unique demographic
and other identifiers which the system will compile together
5  with system activity data to create a consumer profile database.
This database could be used to promote to a specific consumer
those items which such consumer's previous system activities
indicate he or she  may be predisposed to purchase (or show
additional interest in).  This may be accomplished by having an
10 advertisement/promotion data base which may include data that is
displayed to those consumers having a predefined demographic or
purchasing habit.  In addition, the consumer profile database
will be a source of virtually real-time aggregate market data
indicating which consumer populations (grouped according to a
15 variety of demographic segments) are purchasing or previewing a
particular type of title.  The consumer interface terminal may
eliminate the need for maintaining a large inventory of physical
product at the remote location for merchandising.

        Once the item data file is retrieved based on either
20 consumer selection through the consumer interface terminal or
direct remote location request, the portion of the item data
file necessary for the specified function, either preview or
reproduction, is appropriately formatted and, in the case of
preview, directed to the consumer interface terminal, or, in the
25 case of reproduction, directed to the appropriate manufacturing
device for duplication of a title in a specified format.  The
instigation of the reproduction process initiates an accounting
process that includes updating the accounting system based on
the accounting information portion of the item data file.  This
30 accounting system regulates all debit and credit activity be-
tween title providers and remote locations.

                <u>BRIEF DESCRIPTION OF THE DRAWINGS</u>

        The present invention will be understood and appreci-
ated more fully from the following detailed description, taken
35 in conjunction with the drawings in which:

        Fig. 1 is a functional block diagram of a device
embodying the present invention;

6

Fig. 2 is a functional block diagram of a content
capture device used in a preferred embodiment of the present
invention;

Fig. 3 is a functional block diagram of a central host
5    server and its related components used in a preferred embodiment
of the present invention;

Fig. 4 is a functional block diagram of a retail host
server and its related components used in a preferred embodiment
of the present invention;

10    Fig. 5 is a functional block diagram of a manufactur-
ing device and its related components used in a preferred em-
bodiment of the present invention;

Fig. 6 is a functional block diagram of a consumer
interface terminal and its related components used in a pre-
15    ferred embodiment of the present invention;

Fig. 7 is schematic representation of an item data
file for a previously recorded material; and

Fig. 8 is a block diagram of a preferred embodiment of
a consumer interface terminal and its related components using
20    consumers' data profiles.

### DETAILED DESCRIPTION OF A PREFERRED EMBODIMENT

By way of example, the present invention is illustrat-
ed in terms of a system for use in a retail music store which
sells music recordings in multiple formats including, but not
25    limited to, compact disks and analog cassette tapes.  The system
of which a preferred embodiment is illustrated herein may be
used in a number of different applications which would be obvi-
ous to those skilled in the art.  The following examples are
provided for the purpose of aiding in explaining the present
30    invention.  The system's applications should not be limited to
the description provided herein.

Shown in figure 1 is a general block diagram of a
system embodying the present invention which allows a remote
location such as a retail store to operate without having to
35    maintain a large physical inventory of titles for distribution
and/or resale.  Generally speaking, the system shown in figure 1
permits a consumer (not shown) to select a specific title for
preview or reproduction at a remote location 77 whereby digital
information necessary for the preview or reproduction (on se-

lected media) of the selected title is sent over communications network 50 to a remote server 70. If the selected title is to be reproduced, the remote server 70 delivers necessary data for reproduction of the selected title to a manufacturing control

5 device 90 that controls a writing device corresponding to the selected product, i.e., CD writers 110, tape writers 130 or other format writers 140.

An item data file is generated for each title from corresponding items of material captured into the system. The

10 item data file in the preferred embodiment described herein includes all the information necessary for the preview and reproduction on selected media at a remote location of a selected title. The item data file in the storage facility 30 will be retrieved by a remote location 77 for either reproduction by the

15 manufacturing control device 90 or preview through the consumer interface terminal 160. In order to make the system commercially practical for purposes of transmitting data to remote locations 77 in realistic time periods, the audio data portion of the item of material is mathematically resampled and digitally

20 compressed during the content capture process to reduce its size and thus shorten the overall transmission time of the related item data file over the communications network 50. The mathematical resampling process produces a data stream representation of the audio portion of the item of material which may be re-

25 duced to a fraction of its original size. Since in its original, unsampled and uncompressed format the audio portion represents a major portion of all the data in the item data file, and thus corresponds to a significant data storage requirement for the system, the ability to significantly reduce its size, corre-

30 sponding storage space and transmission time results in an economic savings both in storage and in communication transmission costs and makes the system function within realistic commercial time constraints.

Likewise, other items of material including full

35 motion video/audio recordings and graphical/
textual materials and artwork, are compressed during the content capture process to reduce their size and shorten transmission time.

The item data files captured by the content capture facility 10 are then transferred to the central host computer 20 via local area network 100 where they are automatically cataloged and entered into a storage data base in the storage facility 30.  Although only one central host server 20 is shown, the content capture facility 10 could be connected to more than one such central host server 20.

The item data files entered into the storage facility 30 are made available to all of the remote locations 77 connected through the communications network 50.  For the purpose of simplicity only one remote location 77 is illustrated in figure 1.

The remote server 70 at the remote location 77 controls all preview, reproduction and management reporting tasks and the local area network 150 which connects the remote server 70 and the manufacturing control device 90 at the remote location 77.  The remote server 70 may be provided with a statistical counter data base to manage its storage facility 60 so that the most frequently requested item data files are stored locally and thus use of the communications network 50 is efficiently managed and optimized.  The information necessary for the statistical counter data base is constantly updated to reflect changes in remote location 77 activity patterns.  This, in conjunction with a dynamic caching control algorithm, may change the item data files held in storage facility 60 to reflect the most current statistical information gathered at the remote location 77.

The consumer preview capability at the remote location 77 is enabled by the remote server 70 which is connected to the consumer interface terminal 160 by the local area network 150.  Although only one consumer interface terminal 160 is shown, the system would preferably have a plurality of such interfaces sufficient to satisfy consumer demand.  The local area network 150 has sufficient bandwidth to adequately provide video and audio information to multiple consumer interface terminals 160 simultaneously.

The manufacturing process is directed from the remote server 70.  The remote server 70 controls the manufacturing control device 90 which in turn may be coupled to one or more

9

format manufacturing devices, i.e., a CD writing device 120, a
tape writing device 130, or to other format writers 140 (e.g.,
video tapes, DCC tapes or microchip recorded devices).  The
manufacturing control device 90 may also be connected to a
5    printing device 110, which is preferably a color printer or a
color copier which receives bit stream data, for printing graph-
ic output corresponding to a selected format for a reproducible
title.  The manufacturing control device 90 receives data from
the remote server 70 over the local area network 150, reformats
10    the mathematically resampled reproducible audio portion of the
item data file and provides the appropriate data to the writing
devices (110, 120, 130, or 140) in a form necessary to produce a
duplication of a title on a media usable by a consumer on a
standard playing device.

15          The remote server 70 allows for a management report-
ing/consumer transaction system 80 to maintain all accounting
and customer transaction data relating to all activities at
remote location 77 which give rise to any and all credit obliga-
tions.  Such data may be delivered to the central host 20 for
20    central roll-up and reporting.  The management reporting system
80 may be interfaced through one or more terminals 75.

            Shown in Figure 2 is a functional block diagram of a
content capture facility 10 used to capture a data representa-
tion of the items of material 14 used in the preview and repro-
25    duction of titles at the remote locations 77.  Such data from
the items of material might include analog signals that are
sampled and converted to digital data, digital bit stream input,
and graphic pictures and text that are scanned and converted to
digital data.

30          In a preferred embodiment of the present invention for
the herein described application, three types of data are cap-
tured at the capture facility 10.  They are audio data, full
motion video/audio data, and graphic data.  As part of the
content capture process, an item data file is created via the
35    item data file formation process 15 that associates these files
for each title (in this case an original music recording) and
also includes associated accounting information (needed to iden-
tify all entities to whom any payment of monies is required for

WO 95/05050                                                    PCT/US94/08798

reproductions of the reproducible item) and identification
information (needed to catalog the title for database usage).

The content capture device 9, which could consist of
an ISA (Industry Standard Bus Architecture) computer utilizing a
5    486-based CPU (Central Process Unit) from Intel, has two input
ports, analog input 2 and digital input 3, which receive data
from the appropriate reader devices.  In the case of analog
input 2 it receives input from analog reader 11.  In the case of
digital input 3 it receives input from digital reader 12 or
10   optical reader 13.  All of readers (11, 12, 13) read information
from the item of material 14.

The reproducible audio portion of the item of material
14 takes one of two paths when being captured by the content
capture facility 10.  If the reproducible audio information
15   portion is in analog form, such as magnetic tape, then it is
read by analog reader 11, which could be a magnetic tape player,
and transferred through analog input 2 to the analog-to-digital
converter 5 and after conversion to a digital bit stream, trans-
ferred to the spooling storage 4 within the content capture
20   device 9.  In a preferred embodiment, the digital audio bit
stream received from the analog-to-digital converter 5 is a 16
bit block data stream of binary data and is sampled at a minimum
of 40,000 times per second, corresponding to the Nyquist rate.
If the reproducible audio portion of the item of material 14 is
25   in digital form, such as D-1 or D-2 tape or digitally mastered
compact disk, then it is read by digital reader 12, which could
be a D-1, D-2 or compact disk player, and transferred through
digital input 3 to the spooling storage 4 within the content
capture device 9.

30   Mathematical resampling processor 6 within the content
capture device 9 is then directed to begin a mathematical
resampling of the reproducible audio portion held at the
spooling storage 4.  The mathematical resampling process 6
utilizes a psycho acoustics equation that saves all audible
35   information in a designed audio amplitude and frequency range,
i.e. the amplitude range of human hearing (20 HTZ - 20,000 HTZ).
The 16 bit block data stream of binary data representing the
reproducible audio portion is matched against a psycho acoustic
table with respect to its time, frequency and amplitude values.

11

Values that are determined to fall outside the 20 HTZ to 20,000 HTZ range are discarded and the data representation for the item is thereby reduced.  This process results in digital compression of the audio portion.  Algorithms for performing such compara-

5   tive functions are commercially available and include the DCC format from the Philips Corporation and the Dolby AC2 audio comparative algorithm.

Once this mathematical resampling process 6 takes place, the compressed audio portion is transferred to the

10  postresampling/compression storage 16, which may be a high speed magnetic hard disk or other storage medium.

The full motion video/audio portion of the item of material 14 can take one of two paths when being captured by the content capture facility 10.  If the full motion video/audio

15  portion is in analog form, such as VHS tape or laser disk, then it is read by analog reader 11, which could be a video cassette player or a laser disk player, and transferred through analog input 2 to the analog-to-digital converter 5 and after conver- sion the bit stream data is compressed by the video compression

20  process 7 and transferred to the spooling storage 4 within the content capture device 9.  If the full motion video portion is in digital form, such as D-1 or D-2 tape, then it is read by digital reader 12, which could be a D-1 or D-2 player, and transferred through digital input 3 to video compression process

25  7 is spooled to the spooling storage 4 within the content cap- ture device 9 after compression.  In the preferred embodiment, the video compression process 7 might take place using the MPEG1 video compression standard and could be facilitated using soft- ware, hardware or a combination of both.  At this point, all

30  compressed full motion video/audio files are transferred to the postresampling/compression storage 16.

The graphics portion of the item of material 14, which may include packaging artwork and insert materials, are read by optical reader 13, which could be an optical scanner, and trans-

35  ferred through digital input 3 to the spooling storage 4 within the content capture device 9.  The content capture device 9 initiates the graphic compression process 8 whereby the graphic data file held at the spooling storage 4 is compressed.  In the preferred embodiment, the graphic compression process 8 might

12

take place using the JPEG graphic compression standard and could
be facilitated using software, hardware or a combination of
both.  At this point, all compressed graphic files are trans-
ferred to the postresampling/compression storage 16.

5          Once files are transferred to the
postresampling/compression storage 16, they are ready for quali-
ty assurance inspection.  All files, audio, full motion vid-
eo/audio and graphics, are accessed over the local area network
100 by the software test station 11 and integrity tests are
10  performed on them.  Additionally, full motion video/audio and
graphics files are accessed over the local area network 100 by
the visual test station 12 where they are visually reviewed for
integrity and quality.  After the quality assurance process has
been completed all files remain in the
15  postresampling/compression storage 16 and are ready to be formed
into an item data file.  At this point content capture device 9
initiates the item data file formation process 15 whereby an
item data file is created that associates these files, as well
as the accounting information and identification information
20  files, for each title.  The complete item data file is then sent
via the local area network 100 to the central host server 20 for
storage on the storage facility 30.  Simultaneously, the master
item data file index 28 held at the central host server 20 is
updated to reflect the availability of the new item data file.
25  Additionally, this information is sent over the communications
channel 50 to all remote locations 77 on a regularly scheduled
basis to update the remote server index 78 and the local data-
base 168.

           Figure 3 is a functional block diagram of the central
30  host server 20 and the storage facility 30.  In a preferred
embodiment, the central host server 20 could be either an EISA
(Extended Industry Standard Architecture) or a microchannel
architecture based system, or other architecture with a high
speed system bus that moves information inside the computer from
35  storage to system memory 29 for processing and back to storage
or to output devices.  The system processor 22 within the cen-
tral host server 20 may be a single- or multiprocessor 486-based
system.  The central host server 20 is preferably an open archi-

13

tecture system so as to accept future additional peripheral
equipment.

Compressed item data files arrive into the central
host server 20 from the content capture facility 10 over the
5   local area network 100.  The system processor 22 catalogs the
information into an index 28 stored in system memory 29 that can
be recalled and then transferred through the I/O 23, which might
be a SCSI connection, to the storage facility 30.

In a preferred embodiment of the invention, statisti-
10  cally high use item data files are preferably maintained in the
storage facility 30 on high speed disk storage 31.  Statistical-
ly moderate use item data files are preferably maintained on
moderate speed optical storage 33.  All item data files are
preferably maintained on slow speed tape storage 34 for near
15  line access and redundant archival storage.  The accounting
royalty system 32 which will be accessed frequently by the cen-
tral host server 20 for maintaining accurate information for
accounts payable, accounts receivable, royalty accounting,
billing information, general ledger and blank media inventory is
20  preferably maintained on the high speed disk storage 31.

This hierarchical storage architecture puts frequently
access materials on higher speed storage medium which also tend
to be higher cost devices versus slower speed which tend to be
less expensive storage mediums.  Thus, a compromise between
25  access speed and cost may be achieved that is practical for a
given circumstance or use.

The central host server 20 receives requests for item
data files from remote locations 77 via the communications
network 50.  After the system processor 22 determines the loca-
30  tion of the desired item data file, the central host server 20
retrieves the item data file and transfers it through the commu-
nications network interface 24 to the remote location 77 over
the communications network 50.

In a preferred embodiment, the central host server 20
35  is connected by a communications network 50, which might be
supported by either fiber optic or satellite transmission ser-
vices, to the remote locations 77.  The communications network
50 will utilize packet technology operating at preferably not
less than 45 million bits per second.  After the central host

14

server 20 receives a request for an item data file, the index 28
is updated to reflect the request and the location of the item
data file.  The requested item data files are retrieved from the
storage facility 30 via the I/O 23 and  packetized according to
5   one of a number of well known schemes wherein large data files
are segmented with header and trailer information attached that
identifies the packet and serves as instructions for reassem-
bling the data file.  The packetized segments of the item data
file are then sent through the communications network interface
10  24 over the communications network 50 to the requesting remote
location 77.

The updated index 28 may, based on this new request
activity, relocate the item data file to its statistically
preferred storage medium within the storage facility 30.  For
15  example, increased requests for an item data file stored on
optical storage 33 (moderate use) may cause the relocation of
this item data file to high speed disk storage 31 (high use).

Figure 4 is a functional block diagram of the remote
server 70 and the storage facility 60.  In a preferred embodi-
20  ment, the remote server 70 could be either an EISA (Extended
Industry Standard Architecture) or a microchannel architecture
based system, or other architecture with a high speed system bus
that moves information inside the computer from storage to
system memory 79 for processing and back to storage or to output
25  devices.  The system processor 72 within the remote server 70
may be a single or multiprocessor 486-based system.  The remote
server 70 is preferably an open architecture system so as to
accept future additional peripheral equipment.  The remote
server 70 is the controller for communications to the central
30  host server 20.  The primary function of the remote server 70 is
to process requests for item data files received from the con-
sumer interface terminals 160 and the terminals 75 (for direc-
tion to the manufacturing control device 90), locate such item
data files regardless of their location, i.e., whether they
35  reside on storage facility 60 connected to the remote server 70
or on storage facility 30 connected to the central host server
20, and to direct such item data files to their appropriate
point of request.

15

WO 95/05050                                          PCT/US94/08798

Terminal 75, which is attached to remote server 70, can be used to access and manipulate information in management reporting/consumer transaction subsystem 80, as well as to direct manufacturing requests to manufacturing control device

5  90.  Such requests may include remanufacturing or replacement of unsatisfactory product.

Based on remote location 77 activity and item data file requests, packetized file segments arrive over the communications network 50 from the central host server 20.  Upon

10  arrival through the communications network interface 74, the packetized segments are stripped of their header and trailer information and concatenated based on the instructions carried in the header and trailer to reform the original item data file delivered by the central host server 20.  The system processor

15  72 catalogs the item data file request into the index 78 stored in system memory 79 and then directs the item data files to the appropriate requesting device, either the consumer interface terminal 160 or the manufacturing control device 90, through the local area network interface 71 and over the local area network

20  150.  Additionally, if the statistically counter within the index 78 determines that the item data file should be stored on the storage facility 60, then the system processor 72 directs the item data file through the I/O 73 to the appropriate storage device at the storage facility 60.

25  In the preferred embodiment of the invention, the storage facility 60 allows for a small cache of the most demanded item data files to be maintained at the remote location 77 and managed by the remote server 70.  The remainder of the item data files available through the system and required by the

30  remote location 77 would be delivered over the communications network 50 from the central host server 20.

Within the storage facility 60, statistically high use item data files are maintained on high speed disk storage 61. Statistically moderate use item data files are maintained on

35  optical storage 62.  Data of low demand is discarded from the storage facility 60 when the statistical counter within the index 78 overwrites it with an item data file of higher use. The remote location 77 does not require all potential levels of

storage medium in the storage facility 60 and could be operated
with little or no remote location 77 storage.

The management reporting/consumer transaction process
80 tracks remote location 77 activity and is used to update data
5   within royalty accounting 32 at the central host server 20.  The
royalty accounting 32 is updated upon duplication of an original
content recording at the remote location 77 based on information
contained within the accounting information portion of the item
data file.

10      Figure 5 is a function block diagram of the manufac-
turing subsystem that includes the manufacturing control device
90 and the product writing devices, printing device 110, CD
writers 120, tape writers 130 and other format writers 140.  The
primary function of the manufacturing control device 90 is the
15  processing of item data files for the duplication of titles.  In
the herein described embodiment, the manufacturing control
device 90 does not request or locate item data files, but simply
receives them.

Manufacturing requests may be directed by remote
20  personnel by way of a data input terminal 75 connected to the
remote server 70 which are then sent through the local area
network interface 91, over the local area network 150, to the
manufacturing control device 90.

The appropriate portions of the item data file needed
25  to produce a duplication of the title are received by the manu-
facturing control device 90 from the remote server 70 over the
local area network 150 through the local area network interface
91.  The system processor 92 directs the audio portion of the
item data file to the mathematical resampling process 93 where
30  an algorithm reformats the data into a reproducible audible
signal which has been reextended with the desired frequency,
amplitude range and psycho acoustics to play in real time.

If the desired product format is an analog cassette
tape, then the resampled audio portion is directed to the digi-
35  tal noise reduction process 95 where its digital streams are
noise reduced by a digital equation noise reduction algorithm
utilizing a Digital Signal Processor (DSP).  From there the
noise reduced and resampled audio portion is directed to the
tape writer driver device 96 where it is segmented into two

17

parts which represent the reproducible audio programming for sides A and B of a conventional analog cassette tape. Once segmented, the programming for side B is reversed, both sides are then converted from digital to analog signals and the two
5    file segments are then sent to the analog tape writer 130 to be written simultaneously. The analog cassette tape is produced by a high speed tape writer 130 (such as the 16 times real-time Otari device) utilizing outside the shell blank magnetic tape media loaded into a "C-O" cassette shell. A "C-O" is an empty
10   cassette tape shell with leader only before loading.

       After the mathematical resampling process 93, if the desired product format is a compact disk, then the resampled audio portion is directed to the CD writer driver device 97 where it is processed and sent to the high speed CD writer 120
15   (such as the 2-times real-time Kodak CD-R device). The CD writer produces the duplication of the title on a blank CD-R media, also commercially available from Kodak as well as TDK, Mitsui Toatsu and others.

       If the desired product format is an other format, then
20   the resampled audio portion is directed to the other format writer driver device 98 where it is processed and sent to the high speed other format writer 140 and reproduced on writable other format blank media.

       The system processor 92 directs the text and graphics
25   portion of the item data file to the graphics decompressor process 94 where it is expanded to its original content size. This process could be accomplished using the JPEG decompression algorithm. The decompressed information is sent to the printing device 110 for reproduction. The printing device 110 could be
30   any of a number of commercially available color copiers such as the Canon 550 or the Xerox 5750 that can be configured to re-ceive binary file input. In a preferred embodiment, the repro-duction of the text and graphics information occurs in conjunc-tion with the production of the above mentioned audio portion.

35      Figure 6 is a functional block diagram of a consumer interface terminal 160. In a preferred embodiment, the consumer interface terminal 160 could be an EISA (Extended Industry Standard Architecture), ISA (Industry Standard Architecture), microchannel architecture based system or other architecture

WO 95/05050                                                    PCT/US94/08798

with a high speed system bus that moves information inside the
computer for processing.  The system processor 162 within the
consumer interface terminal may be an X86-based system.  The
consumer interface terminal 160 is preferably an open archi-
5  tecture system so as to accept future additional peripheral
equipment.

        The consumer interface terminal 160 allows review of a
database of titles and facilitates search for a particular title
via several criteria (i.e. artist, label, producer, etc.).
10  After identifying the title of interest through the search
method, the consumer interface terminal 160 allows for the pre-
view of segments of the graphics portion of the item data file
representing that title, preview segments of the audio portion
of the same item data file, preview of segments of the full
15  motion video/audio portion of the same item data file, and
selection of such title for purchase in a desired format.

        All database search and preview request actions at the
consumer interface terminal take place through the touch/screen
monitor interface 167.  Local database 168, which contains
20  textual identification information for each item data file
available on the system whether located at the storage facility
60 or stored at the storage facility 30, directs requests for
specific segments of the item data file through the local area
network interface 161 over the local area network 150 to the
25  remote server 70.  The local database 168 is updated to reflect
additions to the index 28 at the central host server 20 to
insure that the consumer interface terminal 160 has access to
all available item data files.

        As part of the search process the local database 168
30  will request a segment of the graphic portion of the item data
file from the remote server 70.  Upon receipt of the requested
segment of the graphic portion of the item data file from the
remote server 70 over the local area network 150 and through the
local area network interface 161, the system processor 162
35  directs the segment of graphics portion of the item data file to
the graphics decompression process 169 where it is expanded to
its original content size.  This process could be accomplished
using the JPEG decompression algorithm.  The decompressed graph-

ic information is sent to the touch screen/monitor interface 167 for display.

In the event that the request from the local database 168 is for a segment of the audio portion of the item data file,
5 then upon receipt of the requested segment of the audio portion of the item data file from the remote server 70 over the local area network 150 through the local area network interface 161, the system processor 162 directs the segment of the audio portion of the item data file to the mathematical resampling pro-
10 cess 163 where an algorithm reformats the data into a reproducible audible signal which has been reextended with the desired frequency, amplitude range and psycho acoustics to represent the original audio item of material and play in real time. The resampled segment of the audio portion of the item data file is
15 then sent to the audio card 165 which produces an audible signal which is then amplified by the amplification device 166 for playback through any of a number of speaker devices. The audio card 165 could be a Sound Blaster/16 or a Turtlebeach Sound Card. The amplification device 166 could be any of a number of
20 commercially available sound amplifiers such as those available through consumer electronics companies such as Yamaha, Sony and Panasonic.

In the event that the request from the local database 168 is for a segment of the full motion video/audio portion of
25 the item data file, then upon receipt of the requested segment of the full motion video/audio portion of the item data file from the remote server 70 over the local area network 150 through the local area network interface 161, the system processor 162 directs the segment of the full motion video/audio
30 portion of the item data file to the full motion video/audio decompression process 164 where it is expanded to its original size. This process could be accomplished using the MPEG1 decompression algorithm. The decompressed full motion video/audio information is sent to the touch screen/monitor interface 167
35 for video display and to the amplification device 166 for simultaneous playback through speaker devices.

All purchase request actions by the consumer (not shown) take place through the touch screen/monitor interface 167. Local database 168 directs such requests for duplication

20

of titles in a specified format through the local area network
interface 161 over the local area network 150 and through the
remote server 70 to be staged on terminal 75 for processing.

Figure 7 shows a representation of an item data file
5   250 which is the result of the content capture facility 10
whereby items of material representing a title are processed for
inclusion in the system.

As part of the item data file formation process 15, an
identification data file 251 is generated that catalogs basic
10  information, such as title, artist, publisher, and date of
origin, about the title represented by the items of material.
This identification data file 251 serves to update the index 27
at the central host server 20, and subsequently to update the
local database 168 within the consumer interface terminal 160.

15      Information regarding the payment of monies associated
with the duplication of the title is entered in conjunction with
the item data file formation process 15 within the content
capture device 9 and identified as the accounting information
file 252.  This accounting information file 252 is referenced
20  during the manufacturing process to insure that all obligations
due because of the duplication of the title, such as royalty
obligations, are appropriately logged and accounted for.

The data required to duplicate the audio portion of
the title is captured during the content capture process from
25  the appropriate item of material and identified as the reproduc-
ible audio file 253 of the item data file 250.

The data required to reproduce the graphics portion of
the title is captured during the content capture process from
the appropriate item of material and identified as the graphics
30  file 254 of the item data file 250.  The graphics file 254 may
include information regarding specific printer device commands
to insure proper reproduction.

The information captured during the content capture
process from the full motion video/audit item of material is
35  identified within the item data file as the full motion vid-
eo/audio file 255.  This full motion video/audio file 255 is
used primarily for the purposes of preview at the consumer
interface terminal 160.

21

WO 95/05050                                                    PCT/US94/08798

Figure 8 is a functional block diagram of a preferred embodiment of the invention in which the consumer interface terminal 160 is enhanced by the addition of a consumer identifier 300. This embodiment includes a smart interface capability

5 which allows for the creation of unique consumer identification data files that would serve to enable the targeted direction of specific and identifiable messages which may include advertising and promotion. Through a dynamic process, the unique consumer identification data files are continually updated based on

10 consumer activities via the consumer interface terminal 160, and such updated consumer identification data files may direct new and unique messages over time.

To access the consumer interface terminal 160 in this embodiment, the consumer would be required to uniquely identify

15 themselves through the consumer identifier process 300. Such unique identification could be facilitated by use of magnetic stripe or bar-code technology which includes a corresponding identification reader device 366, or with a unique personal identification code entered through the touch screen/monitor

20 interface 367. The consumer receives his unique identifier after providing certain unique profile information, including, but not limited to, name, address, gender, age, income range and entertainment and personal preference information. Such information is input through terminal 75 to remote server 70 to form

25 a unique consumer profile data file that is sent over the communications network 50 to the central host server 20 for storage in the master customer database 365 within storage facility 30.

The consumer identifies themselves through the consumer identifier process 300 within the consumer interface terminal

30 160. This consumer identifier process 300 includes sending a request through the local area network interface 361 and over the local area network 150 to the remote server 70 for the retrieval of the unique consumer profile data file stored at the master customer database 365. This request is processed by the

35 remote server 70 and sent over the communications network 50 to the central host server 20 which retrieves the unique consumer profile data file from the master customer database 365 within the storage facility 30 and returns said file over the communications network 50 to the remote server 70 which directs it to

22

WO 95/05050                                                    PCT/US94/08798

the temporary customer database 364 within the storage facility 60.

Once the unique consumer profile data file has been stored at the temporary customer database 364, it is used in

5  conjunction with the advertising/promotion database 363 to direct unique messages within the advertising/promotion database 363 to the consumer, based on compiled information contained in the unique customer profile data file, as directed by the remote server 70. Such messages would be sent by the remote server 70

10  over the local area network 150 to the consumer interface terminal 160 for display through the touch screen/monitor interface 367 as part of the consumer shopping and preview experience. These messages, which could include public service announcements, commercial advertisements and promotions, notifications

15  of special events and/or factoids, could be used during any period where the consumer is waiting for an item data file request to be retrieved.

Information from the unique consumer profile data file may also be used by the local database 168 to facilitate the

20  consumer search process.  This might include notifying the consumer, based on information within the unique consumer profile data file, of a given item data file currently available, i.e., the consumer may have purchased duplications of multiple titles by a given artist, and said given artist may have re-

25  cently released a new title which the local database 168 can now make available.

While the unique consumer profile data file resides in the temporary customer database 364, it is updated to reflect consumer activity at the consumer interface terminal 160 such as

30  item data file preview and  purchase.

After the consumer shopping and preview experience is complete, the updated unique consumer profile data file stored in the temporary customer database 364 is sent by the remote server 70 over the communications network 50 to the central host

35  server 20 to update the master customer database 365 within the storage facility 30.

The master customer database 365 may be shared by all remote locations 77 through the central host server 20 via the communications network 50 to insure accurate identification of

consumers at multiple remote locations 77 within the system, thus enabling completely accurate compilation of unique consumer activity.

The above embodiments are provided only for the pur-
5   pose of explaining specific applications of the applicant's claimed invention and it will be appreciated by those skilled in the art that the applicant's invention is not limited to what has been particularly shown and described hereinabove.  There are many other applications for the system which are not herein
10  described but which would become obvious to those skilled in the art in view of the herein described invention.  For instance, the system could be used to premanufacture duplications of original content recordings on selected media at the remote locations if the statistical counter data field for such origi-
15  nal content recordings exceeds a predetermined value.  For exam-
ple, if a new original content recording for an artist is re-
leased, the remote server at the remote location could dedicate time to the remote locations' manufacturing control device for the duplication of the original content recording of the new re-
20  lease.  Alternatively, the system could simply use just-in-time inventory principles and manufacture products at the remote locations as they are selected by consumers for purchase.  Such a system would be preferred if the remote location was provided with sufficient consumer interface terminals and writing devices
25  to meet demand.

The accounting system used in the hereinabove de-
scribed system may also be implemented in a number of different ways.  For example, the accounting system located in the central host facility could be used as a reference for determining when
30  payment and credit obligations are generated, i.e., to whom money is owed for duplication of original content recordings. The actual accounting system could be maintained at either the central location, or at the remote locations.  The accounting system at the remote location could also serve to track any and
35  all payment obligations arising out of activity by the manufac-
turing control device.

The herein described storage facilities could also be reorganized in a number of different ways without straying from the invention.  For example, different configurations of data

storage equipment could be provided at both the remote locations and at the central locations in order to implement the caching system which is described herein.  In addition, many of the compression, decompression and data manipulation facilities de-

5  scribed herein could be performed through either software, hardware or a combination of both.  Such distinctions are not crucial to the spirit of the claimed invention and should not be so limited.  The modification between software and hardware logic is well known to those skilled in the art.  The scope of the

10  applicant's invention is defined only by the claims which follow.

WO 95/05050                                          PCT/US94/08798

1                              <u>CLAIMS</u>
2          1.   A method for transmitting an item data file
3  including an audio portion and corresponding informational data
4  portion to a remote location for a selected use at the remote
5  location, and for maintaining an accounting information file
6  associated with the use of the item data file at the remote
7  location, said method comprising the steps of:
8          capturing the audio portion and the corresponding
9  informational data portion for the item data file;
10         mathematically resampling the audio portion of the
11 captured data to remove audio data having a frequency value out-
12 side a preestablished frequency range from the audio portion of
13 the captured data;
14         storing the captured data including the mathematically
15 resampled audio portion and the corresponding informational data
16 portion in the item data file on a primary storage facility;
17         selecting the item data file to be transmitted to the
18 remote location for the use at the remote location;
19         retrieving the item data file from the primary storage
20 facility;
21         reformatting the retrieved item data file into a
22 recordable stream of data corresponding to the selected use of
23 the item data file at the remote location;
24         recording the recordable stream of data on a media
25 corresponding to the selected use; and
26         recording accounting information associated with the
27 use of the selected item of material at the remote location,
28         whereby the selected use of the item data file at the
29 remote location results in the recording of the accounting
30 information for the selected item data file in the accounting
31 information file.
1          2.   The method of claim 1 defined further to include
2  a central server connected to the primary storage facility and a
3  communications network for connecting the central server to a
4  remote server located at the remote location, wherein the method
5  further includes the steps of:
6          maintaining a directory of a plurality of unique item
7  data files stored in the primary storage facility in the central
8  host server;

9      updating the directory of the plurality of unique item
10    data files stored in the primary storage facility each time a
11    new unique item data file is stored in the primary storage
12    facility; and
13      communicating the updated directory of unique item
14    data files to the remote server over the communications network.
1      3.    The method of claim 1 further defined to include
2    a communications network for delivering a selected portion of
3    the selected item data file from the primary storage facility to
4    the remote location, wherein the step of delivering the selected
5    portion of the selected item data file to the remote location
6    comprises the steps of:
7      segmenting the selected portion of the selected item
8    data file stored in the primary storage facility into a plurali-
9    ty of segments;
10      packetizing each of the plurality of segments by
11    adding a header data portion and a trailer data portion to each
12    of said plurality of segments to form a plurality of correspond-
13    ing packets for each of the plurality of segments; and
14      delivering the corresponding packets to the remote
15    location from the primary storage facility over the communica-
16    tions network.
1      4.    The method of claim 3 wherein the method further
2    includes the steps of:
3      receiving the corresponding packets over the communi-
4    cations network at the remote location;
5      stripping the header data portion and the trailer data
6    portion from the received corresponding packets; and
7      concatenating the stripped plurality of packets for
8    each of the plurality of segments to reform the selected portion
9    of the item data file from the primary storage facility.
1      5.    The method of claim 1 further defined to include
2    a plurality of unique item data files stored in a high speed
3    secondary storage facility located at the remote location and
4    having a limited storage capacity, said method defined further
5    to include the steps of:
6      maintaining a statistical data file including a sta-
7    tistical indicator for each of the plurality of unique item data
8    files stored in the high speed secondary storage facility corre-

27

WO 95/05050                                                    PCT/US94/08798

9    sponding to a probability of retrieval at the remote location
10   within a specified future time period for each of the plurality
11   of unique item data files; and

12         adding the item data file retrieved from the primary
13   storage facility to the high speed secondary storage when the
14   statistical indicator for the retrieved item data file is great-
15   er than a predetermined minimum value within a future time
16   period.

1         6.    The method of claim 5 further defined to comprise
2   the step of:

3         eliminating a one of the plurality of unique item data
4   files stored on the high speed secondary storage facility when
5   the high speed secondary storage facility has reached a prede-
6   termined value of its limited storage capacity and the statisti-
7   cal indicator corresponding to the one of the plurality of
8   unique item data files is lower than the statistical indicator
9   of the retrieved item data file.

1         7.    The method of claim 5 further including the step
2   of using the item data file to premanufacture a number of repro-
3   ductions of a title represented by the item data file in a se-
4   lected format at the remote location when the statistical indi-
5   cator is greater than a predetermined statistical indicator
6   value.

1         8.    The method of claim 5 further defined to include
2   a slower speed secondary storage facility at the remote location
3   wherein the method further comprises the step of moving a one of
4   the plurality of unique item data files stored on the high speed
5   secondary storage facility to the slower speed secondary storage
6   facility when the high speed secondary storage facility has
7   reached a predetermined value of its limited storage capacity
8   and the statistical indicator for the one of the plurality of
9   unique item data file is lower than said retrieved item data
10   file.

1         9.    The method of claim 5 further defined to include
2   means for transmitting a nonselected item data file to the
3   remote location, said nonselected item data file having a prede-
4   fined statistical indicator associated therewith, wherein the
5   method further includes the steps of:

6            receiving the nonselected item data file at the remote

7    location; and

8            updating the statistical data file to include the

9    predetermined statistical indicator associated with the non-

10    selected item of previously recorded material.

1            10.  The method of claim 5 defined to further include

2    the step of updating the statistical data file at predetermined

3    intervals.

1            11.  A consumer interface terminal for selecting an

2    output of at least a portion of a unique item data file to be

3    previewed from a plurality of available unique item data files

4    stored in a primary storage facility storing data including an

5    audio portion, a graphics portion and a full motion video/audio

6    portion for each of the plurality of available unique item data

7    files, said consumer interface being coupled to a remote server

8    and comprising:

9            a communication line coupling the consumer interface

10    terminal to the remote server;

11            selection means for selecting the at least a portion

12    of unique item data files from the plurality of available unique

13    item data files;

14            processing means coupled to said selection means and

15    said communication line for retrieving over the communication

16    line the selected at least a portion of a unique item data file

17    stored in the primary storage facility, reformatting the audio

18    portion, the graphics portion and the full motion video/audio

19    portion of said at least a portion of a unique item data file;

20    and

21            an audio-visual display coupled to said processing

22    means for receiving the reformatted audio portion, graphics

23    portion and full motion video/audio portion of said at least a

24    portion of a unique item data file and displaying the refor-

25    matted audio portion, graphics portion and full motion vid-

26    eo/audio portion of said at least a portion of a unique item

27    data file on the audio-visual display.

1            12.  The consumer interface terminal of claim 11,

2    wherein the selection means is a touch screen/monitor device.

1            13.  The consumer interface terminal of claim 11

2    wherein the output to be previewed is selected by one of a plu-

3   rality of users identified in a user profile data file, said
4   consumer interface terminal further comprising a user identifi-
5   cation data entry device for identifying which one of the plu-
6   rality of users in the user profile data file is using the
7   consumer interface terminal; and
8           user history database means for storing a demographic
9   profile for each of the plurality of users.
1           14.   The consumer interface terminal of claim 13
2   wherein the user profile data file includes a demographic pro-
3   file and a prior purchasing history for each of the plurality of
4   users, said consumer interface terminal further comprising:
5           an advertising output database including audio-visual
6   data for displaying an audio-visual advertisement on the audio-
7   video display before or after the output of the selected at
8   least one reproducible item to be previewed.
1           15.   The consumer interface terminal of claim 14
2   further comprising an advertisement profile selection means for
3   displaying selected ones of the audio-visual advertisements to
4   users having a specified demographic profile.
1           16.   The consumer interface terminal of claim 15
2   further comprising recording means for recording the number of
3   times the output of the selected ones of the audio-visual adver-
4   tisements are displayed on the audio-visual display.
1           17.   The consumer interface terminal of claim 11
2   wherein the remote server is connected to a manufacturing con-
3   trol device for duplication of an original content recording
4   through the use of a corresponding at least a portion of a
5   unique item data file upon receipt of the corresponding at least
6   a portion of a unique item data file, said consumer interface
7   terminal further comprising:
8           purchase selection means for selecting the original
9   content recording duplicated at the manufacturing control de-
10  vice; and
11          payment means for receiving payment and for authoriz-
12  ing the remote server to deliver the corresponding at least a
13  portion of a unique item data file to the manufacturing control
14  device for the duplication of the selected original content
15  recording.

1      18.  An on demand data delivery system for delivering
2   data over a communication network for the duplication at a
3   remote facility of selected ones of a plurality of original
4   content recordings, said on demand data delivery system com-
5   prising:

6          a central data center comprising a data capture facil-
7   ity for capturing data for each of the plurality of original
8   content recordings, data resampling means coupled to said data
9   capture facility for mathematically resampling the audio portion
10  of the captured data for each of the plurality of original
11  content recordings wherein audio data outside a preestablished
12  frequency range is removed from the audio portion of the cap-
13  tured data, storage means coupled to said data resampling means
14  for generating an item data file including the mathematically
15  resampled captured data, accounting data and information data
16  for each of the plurality of original content recordings and for
17  storing the item data file, a central host server coupled to
18  said storage means and to said communication network for re-
19  trieving ones of the plurality of item data files corresponding
20  to the selected ones of the plurality of original content re-
21  cordings to be manufactured at the remote facility from the
22  storage means and for communicating said ones of retrieved item
23  data files over the communication network;

24         a remote facility comprising selection means for se-
25  lecting the selected ones of the original content recordings to
26  be manufactured at the remote facility, a remote server coupled
27  to the selection means and the communication network for re-
28  trieving the selected ones of the plurality of item data files
29  corresponding to the selected original content recordings to be
30  manufactured at the remote facility;

31         high speed manufacturing means for manufacturing the
32  selected ones of the original content recordings upon receipt of
33  a data stream necessary for the manufacture of the selected ones
34  of the original content recordings; and

35         manufacturing interface means coupled to the remote
36  server and the high speed manufacturing means for receiving the
37  ones of the item data files corresponding to the selected ones
38  of the original content recordings to be manufactured at the
39  remote facility, converting the received ones of the item data

40    files to the data stream necessary for the manufacture of the

41    selected ones of the original content recordings, and commu-

42    nicating said data stream necessary for the manufacture of the

43    selected ones of original content recordings to the high speed

44    manufacturing means,

45        whereby the high speed manufacturing means manufac-

46    tures the selected ones of the original content recordings at

47    the remote facility.

1        19.   The on demand data delivery system in claim 18,

2    further comprising a consumer interface terminal coupled to the

3    remote server for displaying output of at least a portion of an

4    original content recording, selected by a consumer, said consum-

5    er interface terminal comprising consumers selection means for

6    selecting the at least a portion of an original content record-

7    ing from a plurality of available original content recordings,

8    communication means for retrieving an item data file correspond-

9    ing to the selected original content recording from the remote

10    server to the consumer interface terminal and for reformatting

11    said retrieved data into a reformatted data stream, and display

12    means coupled to said communication means for receiving the

13    reformatted data stream and for displaying the output of the

14    formatted data stream whereby the output of the selected origi-

15    nal content recording is displayed.

1        20.   The on demand data delivery system of claim 19

2    wherein the consumer interface terminal further comprises con-

3    sumer identification means for identifying a user making a

4    selection via the selection means of the consumer interface

5    terminal, user profile recording means for recording a user

6    demographic profile of the user and for tracking a prior selec-

7    tion history of the user, and display prompt means for display-

8    ing a non-selected output having a predetermined user profile

9    requirement corresponding to the user demographic profile.

10        21.   The on demand data delivery system of claim 19

11    wherein the central host server further comprises a data commu-

12    nication processor, a processor control means for segmenting the

13    selected item data files into a plurality of segments and

14    packetizing the segments by adding a header portion and a trail-

15    er portion to form a plurality of corresponding packets for each

16    of said plurality of segments, and a communication driver for

32

WO 95/05050                                    PCT/US94/08798

17    transmitting the plurality of corresponding packets to the
18    remote server over the communication network.

1          22.   The on demand data delivery system of claim 21
2    wherein the remote server further comprises a receiver coupled
3    to the communication network to receive the plurality of corre-
4    sponding packets, a processor coupled to said receiver, a second
5    processor control means for stripping the header portion and the
6    trailer portion from the plurality of corresponding packets and
7    concatenating the reformed segments to reform the retrieved ones
8    of item data files.

1          23.   The on demand data delivery system of claim 18
2    wherein the remote facility further comprise:
3          a high speed secondary storage facility having a
4    limited storage capacity coupled to said remote server;
5          a statistical data file including a statistical indi-
6    cator for each item data file selected at the remote location in
7    a specified time period; and
8          data manipulation processor means for storing item
9    data files on the high speed secondary storage facility for
10   which the statistical indicator is greater than a predetermined
11   minimum value.

1          24.   The on demand data delivery system of claim 23
2    wherein the data manipulation processor means further provides
3    the removal of item data files stored on the high speed second-
4    ary storage facility when the statistical data file indicates
5    that the high speed secondary storage facility has reached a
6    pre-determined capacity value and the statistical indicator for
7    the previously stored item data file is less than a new item
8    data file.

1          25.   The on demand data delivery system of claim 24
2    further including a slower speed secondary storage facility
3    wherein item data files removed from the high speed secondary
4    storage are stored.

1          26.   A data capture and storage device for capturing
2    data from an item of material including an audio portion and a
3    graphics portion, said device comprising:
4          an audio portion capture device for capturing the
5    audio portion of the item of material;

33

6    a communication driver coupled to the audio portion
7 capture device for the receiving and communicating the captured
8 audio portion of the item of material;

9    mathematical resampling means coupled to the communi-
10 cation line for receiving the captured audio portion from the
11 communication driver and removing audio data from the capture
12 audio portion having a frequency range outside a preestablished
13 range;

14    graphics reader and compression means for capturing
15 the graphics associated with the item and compressing the cap-
16 tured graphics portion; and

17    an item data file formulation means for recording the
18 mathematically resampled audio portion of the item of material
19 and the compressed graphics portion of the item of material.

1    27.  The data capture and storage device of claim 26
2 wherein the item of material further includes a video portion,
3 said data capture and storage device further comprising:

4    video capture and compression means for capturing the
5 video portion of the item of material and for compressing the
6 captured video portion; and

7    storage means for storing the compressed video portion
8 in the item data file.

1    28.  The data capture and storage device of claim 27
2 wherein the item data file includes a plurality of formats
3 associated therewith and the item data file further includes an
4 informational portion identifying a set of manufacturing in-
5 structions for each of the associated formats for the item data
6 file.

1    29.  The data capture and storage device of claim 28
2 wherein the item data file includes an accounting information
3 portion identifying a credit data obligation for the duplication
4 of an original content recording represented by the item data
5 file.

6    30.  A system for duplicating one of a plurality of
7 original content recordings at a remote location comprising:

8    a data capture facility for capturing data represent-
9 ing each of the plurality of available original content record-
10 ings;

11      a central mass storage facility coupled to the data
12  capture facility for storing the captured representative data
13  for each of the plurality of available original content record-
14  ings;

15      a central host server coupled to said central mass
16  storage facility for delivering a plurality of segmented repre-
17  sentative data corresponding to the one of the original content
18  recordings upon receipt of a data request command;

19      a communications network coupled to the central host
20  server for retrieving and packetizing the representative data
21  and delivering it to a predefined destination;

22      a remote server at the remote location coupled to the
23  communications network for sending the data request command to
24  the central host server over the communications network upon
25  receipt of a selection command, for receiving the segmented
26  representative data and for producing a corresponding bit stream
27  data representation thereof;

28      manufacturing means coupled to the remote server for
29  duplicating the reproduction of the one of the plurality of
30  available original content recordings from the bit stream data
31  representation thereof; and

32      selection means coupled to the remote server for se-
33  lecting the one of the plurality of original content recordings
34  and for generating and sending the selection command to the
35  remote server corresponding to the selected one of the plurality
36  of available original content recordings;

37      whereby selection of the one of the plurality of
38  original content recordings at the selection means results in
39  the manufacture of a duplication of the selected one of the
40  plurality of original content recordings at the remote location.

1       31.  A method for transmitting an item data file of an
2   original content recording to a remote location and for main-
3   taining an accounting information file associated with a use of
4   the item data file at the remote location, said method compris-
5   ing the steps of:

6       capturing data representation of information related
7   to and representative of an original content recording, said
8   data representation of information including an audio portion,

WO 95/05050                                              PCT/US94/08798

9  full motion video/audio portion, graphics portion, accounting
10  information portion and identification information portion;

11            mathematically resampling the audio portion of the
12  captured data representation to remove audio data from the audio
13  portion of the captured data representation having a frequency
14  range that is outside of a preestablished frequency range;

15            associating the captured data representations into a
16  unique item data file;

17            storing the captured item data file on a primary
18  storage facility;

19            selecting the item data file to be transmitted to the
20  remote location for the use at the remote location;

21            retrieving the item data file from the primary storage
22  facility;

23            transmitting the item data file to the remote loca-
24  tion;

25            receiving the item data file at the remote location;

26            reformatting the retrieved item data file into a
27  recordable stream of data corresponding to the selected use of
28  the item data file at the remote location; and

29            directing the recordable stream of data on a media
30  corresponding to the selected use;

31            whereby the selected use of the item data file at the
32  remote location results in the recording of the accounting
33  information as specified in the selected item data file.

36



FIG. 1
1/7

WO 95/05050                                                                    PCT/US94/08798



**FIG. 2**

2/7

WO 95/05050                                    PCT/US94/08798



FIG. 3

WO 95/05050

PCT/US94/08798



FIG. 4

WO 95/05050

PCT/US94/08798



FIG. 5



**FIG. 6**

| ITEM DATA FILE | | | 250 | |
|---|---|---|---|---|
| IDENTIFICATION FILE | ACCOUNTING INFORMATION FILE | REPRODUCIBLE AUDIO FILE | GRAPHICS FILE | FULL MOTION VIDEO/ AUDIO FILE |
| 251 | 252 | 253 | 254 | 255 |

**FIG. 7**



FIG. 8

SUBSTITUTE SHEET (RULE 26)

7/7

WO 95/05050

PCT/US94/08798

## INTERNATIONAL SEARCH REPORT

| International application No. |
|---|
| PCT/US94/08798 |

| A. | CLASSIFICATION OF SUBJECT MATTER |
|---|---|

IPC(6)  :H04N 5/76
US CL  : 364/403

According to International Patent Classification (IPC) or to both national classification and IPC

| B. | FIELDS SEARCHED |
|---|---|

Minimum documentation searched (classification system followed by classification symbols)

  U.S.  :  364/403, 406, 478, 479; 360/14.1, 14.2, 14.3, 15; 369/84, 85; 455/3.1, 4.1, 4.2, 6.3,; 348/7

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

| C. | DOCUMENTS CONSIDERED TO BE RELEVANT | |
|---|---|---|

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| P | US, A, 5,247,347 (LITTERAL ET AL.) 21 September 1993, figures 1 and 2 and their discussion, columns 7-12. | 1-31 |
| Y | US, A, 3,990,710 (Hughes) 09 NOVEMBER 1976, figures 3, 8 and 9, and columns 5-9. | 1-31 |

☐  Further documents are listed in the continuation of Box C.      ☐  See patent family annex.

| * | Special categories of cited documents: | "T" | later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
|---|---|---|---|
| "A" | document defining the general state of the art which is not considered to be part of particular relevance | | |
| "E" | earlier document published on or after the international filing date | "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) | "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "O" | document referring to an oral disclosure, use, exhibition or other means | | |
| "P" | document published prior to the international filing date but later than the priority date claimed | "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 28 SEPTEMBER 1994 | 0 3 JAN 1995 |

| Name and mailing address of the ISA/US | Authorized officer |
|---|---|
| Commissioner of Patents and Trademarks Box PCT Washington, D.C. 20231 | DONALD McELHENY JR. |
| Facsimile No.    (703) 305-3230 | Telephone No.    (703) 305-3894 |

Form PCT/ISA/210 (second sheet)(July 1992)*



**PCT**

WORLD INTELLECTUAL PROPERTY ORGANIZATION
International Bureau

INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

| (51) International Patent Classification [7] : | | (11) International Publication Number: | **WO 00/07130** |
| G06F 17/60, G07F 17/16, G11B 20/00 | A1 | (43) International Publication Date: | 10 February 2000 (10.02.00) |

(21) International Application Number: PCT/ZA99/00056

(22) International Filing Date: 29 July 1999 (29.07.99)

(30) Priority Data:
98/6868          31 July 1998 (31.07.98)          ZA

(71)(72) Applicant and Inventor: GROBLER, Benjamin, Filmalter [ZA/ZA]; 92 Soutpansberg Road, Riviera, 0084 Pretoria (ZA).

(74) Agents: DUNLOP, Alan, J., S. et al.; Hahn & Hahn Inc., 222 Richard Street, Hatfield, 0083 Pretoria (ZA).

(81) Designated States: AE, AL, AM, AT, AT (Utility model), AU, AZ, BA, BB, BG, BR, BY, CA, CH, CN, CU, CZ, CZ (Utility model), DE, DE (Utility model), DK, DK (Utility model), EE, EE (Utility model), ES, FI, FI (Utility model), GB, GD, GE, GH, GM, HR, HU, ID, IL, IN, IS, JP, KE, KG, KP, KR, KZ, LC, LK, LR, LS, LT, LU, LV, MD, MG, MK, MN, MW, MX, NO, NZ, PL, PT, RO, RU, SD, SE, SG, SI, SK, SL, TJ, TM, TR, TT, UA, UG, US, UZ, VN, YU, ZA, ZW, ARIPO patent (GH, GM, KE, LS, MW, SD, SL, SZ, UG, ZW), Eurasian patent (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), European patent (AT, BE, CH, CY, DE, DK, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE), OAPI patent (BF, BJ, CF, CG, CI, CM, GA, GN, GW, ML, MR, NE, SN, TD, TG).

**Published**
*With international search report.*

(54) Title:  DATA VENDING SYSTEM



(57) Abstract

The invention provides a data vending system (10) including the storing data, such as digitised music and/or video and/or computer programs on one or more main computer i.e. the data depot (12). The data on the data depot (12) being indexed to be searchable in terms of index number, name of author, name of producer, title, content, cost, duration, theme, or the like. One or more vendors (14, 16, 18), at locations remote to the main computer of the data depot (12), are provided with data dispensing devices (20, 22, 24), able to communicate with the main computer by satellite link–up, by telephone or data line, by radio, or the like (21). The dispensing devices will typically be in the form of a local file server having a number of server stations (20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3), or terminals where a customer can search the depot (12) index and select data of his or her choice. Each item selected will have a code and a price.

*FOR THE PURPOSES OF INFORMATION ONLY*

Codes used to identify States party to the PCT on the front pages of pamphlets publishing international applications under the PCT.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AL | Albania | ES | Spain | LS | Lesotho | SI | Slovenia |
| AM | Armenia | FI | Finland | LT | Lithuania | SK | Slovakia |
| AT | Austria | FR | France | LU | Luxembourg | SN | Senegal |
| AU | Australia | GA | Gabon | LV | Latvia | SZ | Swaziland |
| AZ | Azerbaijan | GB | United Kingdom | MC | Monaco | TD | Chad |
| BA | Bosnia and Herzegovina | GE | Georgia | MD | Republic of Moldova | TG | Togo |
| BB | Barbados | GH | Ghana | MG | Madagascar | TJ | Tajikistan |
| BE | Belgium | GN | Guinea | MK | The former Yugoslav | TM | Turkmenistan |
| BF | Burkina Faso | GR | Greece | | Republic of Macedonia | TR | Turkey |
| BG | Bulgaria | HU | Hungary | ML | Mali | TT | Trinidad and Tobago |
| BJ | Benin | IE | Ireland | MN | Mongolia | UA | Ukraine |
| BR | Brazil | IL | Israel | MR | Mauritania | UG | Uganda |
| BY | Belarus | IS | Iceland | MW | Malawi | US | United States of America |
| CA | Canada | IT | Italy | MX | Mexico | UZ | Uzbekistan |
| CF | Central African Republic | JP | Japan | NE | Niger | VN | Viet Nam |
| CG | Congo | KE | Kenya | NL | Netherlands | YU | Yugoslavia |
| CH | Switzerland | KG | Kyrgyzstan | NO | Norway | ZW | Zimbabwe |
| CI | Côte d'Ivoire | KP | Democratic People's | NZ | New Zealand | | |
| CM | Cameroon | | Republic of Korea | PL | Poland | | |
| CN | China | KR | Republic of Korea | PT | Portugal | | |
| CU | Cuba | KZ | Kazakstan | RO | Romania | | |
| CZ | Czech Republic | LC | Saint Lucia | RU | Russian Federation | | |
| DE | Germany | LI | Liechtenstein | SD | Sudan | | |
| DK | Denmark | LK | Sri Lanka | SE | Sweden | | |
| EE | Estonia | LR | Liberia | SG | Singapore | | |

5

# DATA VENDING SYSTEM

10

**Field of the Invention**

This invention relates to a data vending system.

15

**Background to the Invention**

The inventor is aware that presently copyright royalty losses are incurred due to unauthorised copying of data, such as music, videos, computer programs, and the like.   This copying usually takes the form of one or more unauthorised copies being made from an original or authorised copy.

One of the reasons for the unauthorised copying is that consumers are unable to purchase just the data they want, and are often offered either a bundle including the data they require or they must do without.

A further reason for the copying is that recording media are freely available and that any person may record data on such media, without prior authorisation by the copyright owner or his licensee(s).

WO 00/07130                                                    PCT/ZA99/00056

Yet a further reason for the unauthorised copying is the availability of data of the type mentioned above over the internet, for example, from music sites which allow the downloading of particular tracks of music either for free or for

5    payment.  Once the music has been downloaded from the internet by a user neither the internet site operator nor the owner of the copyright in such data has any control over its further copying.

In addition to the above problems, the authorised end user is also limited by

10   present data distribution systems in that if the data is lost or damaged the authorised user has to again purchase an authorised copy from the copyright owner or a licensed vendor.  This problem is particularly acute with data carried on magnetic or optical media such as tapes, diskettes, compact disks (CD's) and Digital Video Disks (DVD's), which are prone to loss and/or

15   damage.

**Summary of the Invention**

Thus, according to a first aspect of the invention, there is provided a data

20   vending system including:
-    a data depot;
-    a data dispensing device in communication with the depot;
-    a recordable data carrier configured for recording data from the data dispensing device; and
25   -    a database for storing user information for each recordable data carrier.

The data depot may include a computer located at a remote location on which data to be vended is stored or from which data to be vended is routed.

2

The data depot may have the data stored thereon indexed. The indexing may be by index number, name of author, name of producer, title, content, cost, duration, theme, or the like.

5

The index may be searchable.

The data depot may be a store of digitised or analogue music, video, games, information, or computer programs.

10

The data dispensing device may be in the form of a computer terminal in data transfer communication with the depot. Conveniently such data transfer may be by dedicated data lines, telephone lines, satellite link-up, radio transmission, or the like.

15

The computer terminal may be provided with localised data storage for storing an index of available data. The index may be a copy of a portion of the data depot index at a given time. The index on the computer terminal may be updated periodically from the data depot, typically when data is
20    transferred between the computer data depot and the computer terminal to complete a data vending transaction.

The computer terminal may be provided with data writing means for writing data to a data carrier. The computer terminal may be configured to download
25    data from the depot and transfer the data to the data carrier with or without storing it locally for later retrieval.

The computer terminal may include payment means for processing payment for the data vending transaction.

WO 00/07130                                                    PCT/ZA99/00056

The payment means may include a key pad configured to accept an identification code linked to an account to which the transaction may be debited.

5

The computer terminal may include a card reader for accepting payment by banking cards, such as credit cards, debit cards, savings cards, and the like.

The data carrier may be a single or multiple use recordable data carrier.

10

The data carrier may include key means, for example, a hardware or software key linked to a microprocessor. The data carrier may thus be activated and deactivated for receiving data and/or releasing data by means of the key means.

15

The data dispensing device may be provided with a verification mechanism for verifying the authenticity of the key means.

The key means may be located on the data dispensing device and a code may be required to authenticate a user. The key means may be in the form of a code at a remote location, the data dispensing device being communicable with the remote location for verification of the code input by a user at the data dispensing device.

20

25

Equally the verification mechanism and/or the key means may be at least partially located on the data depot.

The recordable data carrier may be configured to receive data only from a data dispensing device authorised for a particular data carrier or a particular class of data carrier.

30

WO 00/07130                                                        PCT/ZA99/00056

The recordable data carrier may be configured to be read by a data carrier reader authorised for a particular data carrier or a particular class of data carrier.

5

However, the recordable data carrier may be configured for receiving data from certain authorised data dispensing devices but to be read by any suitable reader, for example, a home entertainment centre.

10    The recordable data carrier may be configurable, through the data recorded thereon or otherwise, to permit reading of the data stored thereon for a predetermined period of time only, whereafter the data is either marked as stale and later deleted, or deleted immediately.

15    The above function may be controlled from a remote location by radio, satellite, data or telephone cable, or the like.  This functionality will permit the so called renting of data, rather than purchasing the use thereof for an indefinite period, and is particularly suited to games, music and video data.

20    The database for storing user information for each recordable data carrier may contain demographic data about the user/owner of the recordable data carrier, data purchased (either cumulatively or periodically, by title, by artist, etc), data rented and the rental period (either cumulatively or periodically, by title, by artist, etc), clients normal requirements, clients payment records, 
25    royalties payable to the copyright owner, favourite data, and the like.  It will be clear to those skilled in the art that the above list is not exhaustive and that any relevant data may be stored in such database.

The database may be stored in whole or in part on the data depot, on the 
30    data dispenser, on the data carrier, or on a combination of any of the aforementioned i.e. a decentralised database.

WO 00/07130                                                                PCT/ZA99/00056

According to a second aspect of the invention, there is provided a method of vending data, the method including:

- storing data to be vended;
- dispensing desired data packages from the depot;
5 - recording the dispensed data to a data carrier; and
- databasing details of the record carrier.

According to a further aspect of the invention there is provided a vending booth including a data dispensing device in communication with a data depot, 10 the data dispensing device being configured for dispensing data to a recordable data carrier configured for recording data from the data dispensing device and for exchanging data regarding the dispensed data with a database for storing user information for each recordable data carrier.

15 The booth may include electronic payment means in the form of a card or token reader configured to debit an account of a user responsive to the dispensing of data from the data dispensing device on the recordable data carrier.

20 The booth may be in the form of a vending machine type apparatus, similar to those currently used for other transactions.

**Description of the Drawings**
The invention will now be described, by way of example only, with reference 25 to the accompanying flow diagram.

A data vending system 10, broadly in accordance wit the invention, includes the storing data, such as digitised music and/or video and/or computer programs on one or more main computer i.e. the data depot 12. The data on 30 the data depot 12 being indexed to be searchable in terms of index number, name of author, name of producer, title, content, cost, duration, theme, or the like.

6

WO 00/07130                                                              PCT/ZA99/00056

One or more vendors 14, 16, 18, at locations remote to the main computer of the data depot 12, are provided with data dispensing devices 20 ,22 ,24, able to communicate with the main computer by satellite link-up, by telephone or data line, by radio, or the like 21.  The dispensing devices will typically be in
5   the form of a local file server having a number of server stations 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, or terminals where a customer can search the depot 12 index and select data of his or her choice.  Each item selected will have a code and a price.

10   Thus a list of selections will have an overall price which the user tenders. The terminal may include a card reader 26 for accepting payment by banking cards, such as credit cards, debit cards, savings cards, and the like.

The terminal 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, is provided
15   with data writing means 28 for writing data to a data carrier 30.

The terminal 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3,  is configured to download data from the depot 12 and transfer them to the data carrier 30 with or without storing it locally on the terminal 20.1, 20.2, 20.3, 22.1, 22.2,
20   22.3, 24.1, 24.2, 24.3, for later retrieval.

The data carrier 30 may be a single or multiple use recordable data carrier, such as a removable hard disk, a CD-ROM, a DVD, an eeeprom, or the like. One envisaged embodiment is a cassette holding a number of CD-ROMs and
25   a controller for performing the other functions, and managing the data on the CD-ROMs.

The data carrier 30 includes key means 32 , for example, a hardware or software key linked to a microprocessor.  The data carrier 30 is thus activated
30   and deactivated for receiving data by means of the key means 32.  Typically this functionality will be performed with the use of PIN (Personal Identification Numbers) or passwords, or the like, cell-phone fashion.

The data dispensing device 20, 22, 24 and/or the data depot 12 is provided with a verification mechanism for verifying the authenticity of the key 32.

5    The recordable data carrier 32 is configured to receive data only from a data dispensing device 20, 22, 24, authorised for a particular data carrier 32 i.e. at the premises of an authorised  vendor 14, 16, 18, and to be read by any suitable reader, for example, a home entertainment centre 34.

10   Once a selection has been paid for the data corresponding to that selection is downloaded from the main computer of the data depot 12, via the terminal 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, onto the data carrier 30.

The vendor 14, 16 ,18 thus does not require large data storage facilities nor, 15   as with conventional record bars, video shops and software outlets, large stock holding tying up floor space and capital.

The recordable data carrier 30 is configurable, through the data recorded thereon or otherwise, to permit reading of the data stored thereon for a 20   predetermined period of time only, whereafter the data is either marked as stale and later deleted, or deleted immediately.   The above function is monitored from the dispensing terminal 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, and requires periodic communication with a terminal 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, to keep the data carrier alive. 25   This permits tight control to be exercised over the copyright in the data on the data carrier 30 as any unauthorised data on the data carrier 30 can be deleted by the terminal 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, during the periodic communication.

WO 00/07130                                                    PCT/ZA99/00056

This functionality   permits the so called renting of data, rather than purchasing the use thereof for an indefinite period, and is particularly suited to music and video data as well as ensuring regular contact between the vendor and the user for sales purposes.

A database 40 for storing user information for each recordable data carrier 30 contains demographic data about the user/owner of the recordable data carrier, data purchased (either cumulatively or periodically, by title, by artist, etc), data rented and the rental period (purchased (either cumulatively or periodically, by title, by artist, etc), clients normal requirements, clients payment records, royalties payable to the copyright owner, favourite data, and the like.

Thus, a copyright owner 42 may access the database 40 to determine the royalties collected so far and due to him, the client base he has, changing trends, and the like.

The database 40 may be stored on the data depot 12, on the data dispenser 20.1, 20.2, 20.3, 22.1, 22.2, 22.3, 24.1, 24.2, 24.3, on the data carrier 30, or on a combination of any of the aforementioned i.e. a decentralised database.

The inventor envisages that the system could be operated as a franchise operation with a main computer operator i.e. the wholesaler, and a number of vendors i.e. the retailer, much like present record bars and the like.

The inventor believes that the invention is advantageous in that it will permit a user who has once purchased some data, and has subsequently lost the data carrier or who has deleted the relevant data, to re-record the data without repurchasing it.

Furthermore, the inventor believes that it is an advantage of the invention that a user can purchase or rent the data e.g. music, video etc. for a predetermined period of time, and pay therefor accordingly with the copyright

5    owner being credited with royalties accordingly.

WO 00/07130                                    PCT/ZA99/00056

**Claims**

1.    A data vending system including:

-    a data depot;

-    a data dispensing device in communication with the data depot;

-    a recordable data carrier configured for recording data from the data dispensing device; and

-    a database for storing user information for each recordable data carrier.

2.    A data vending system as claimed in claim 1, wherein the data depot includes a computer located at a remote location on which data to be vended is stored.

3.    A data vending system as claimed in claim 1, wherein the data depot includes a computer located at a remote location from which data to be vended is routed.

4.    A data vending system as claimed in any one of the preceding claims wherein the data depot has the data stored thereon indexed.

5.    A data vending system as claimed in claim 4, wherein the indexing is by one or more indexing keys selected from an index number, name of author, name of producer, title, content, cost, duration, theme, or the like.

6.    A data vending system as claimed in claim 5 wherein the index is searchable from the data dispensing device.

7.    A data vending system as claimed in claim 5 or claim 6, wherein the index is searchable from the recordable data carrier.

WO 00/07130                                                                PCT/ZA99/00056

8.      A data vending system as claimed in any one of the preceding claims, wherein the data depot is a store of one or more data type selected from digitised or analogue music, video, games, information, and computer programs.

9.      A data vending system as claimed in any one of the preceding claims, wherein the data dispensing device is in the form of a computer terminal in data transfer communication with the data depot by means of data transfer means.

10.     A data vending system as claimed in claim 9, wherein the data transfer means is in the form of one or more of dedicated data lines, telephone lines, satellite link-up, radio transmission, or broadband cable.

11.     A data vending system as claimed in claim 9 or claim 10, wherein the computer terminal is provided with localised data storage for storing an index of available data.

12.     A data vending system as claimed in any one of claims 9 to 11, wherein the computer terminal is provided with data writing means for writing data to a data carrier.

13.     A data vending system as claimed in any one of claims 9 to 12, wherein the computer terminal is configured to download data from the depot and transfer the data to the data carrier with or without storing it locally for later retrieval.

14.     A data vending system as claimed in any one of claims 9 to 13, wherein the computer terminal includes payment means for processing payment for the data vending transaction.

WO 00/07130                                                        PCT/ZA99/00056

15.    A data vending system as claimed in claim 14, wherein the payment means includes a key pad configured to accept an identification code linked to an account to which the transaction may be debited.

16.    A data vending system as claimed in claim 14 or claim 15, wherein the computer terminal includes a card reader for accepting payment by banking cards, such as credit cards, debit cards, savings cards, and the                                                                      like.

17.    A data vending system as claimed in any one of claims 14 to 16, wherein a royalty payment to the copyright owner and/or licensee is included in the transaction amount.

18.    A data vending system as claimed in claim 17, wherein the royalty payment is transferred automatically to the copyright owner and/or licensee

19.    A data vending system as claimed in any one of the preceding claims, wherein the data carrier is a single use recordable data carrier.

20.    A data vending system as claimed in any one of the preceding claims, wherein the data carrier is a multiple use recordable data carrier.

21.    A data vending system as claimed in any one of the preceding claims, wherein the data carrier includes key means for activating and/or deactivating the data carrier for receiving data and/or releasing data.

22.    A data vending system as claimed in claim 21, wherein the key means includes a hardware or software key linked to a microprocessor operatively associated with the data carrier.

WO 00/07130

PCT/ZA99/00056

23.    A data vending system as claimed in claim 22, wherein the data dispensing device is provided with a verification mechanism for verifying the authenticity of the key means.

24.    A data vending system as claimed in any one of claims 21 to 23, wherein the key means  is located on the data dispensing device and a code is required to be inputted into the data dispensing device to authenticate a user prior to data being transferred from the data dispensing device to the data carrier.

25.    A data vending system as claimed in any one of claims 21 to 23, wherein the key means is in the form of a code at a remote location, the data dispensing device being communicable with the remote location for verification of the code input by a user at the data dispensing device.

26.    A data vending system as claimed in any one of claims 21 to 25, wherein  the verification mechanism and/or the key means are at least partially located on the data depot.

27.    A data vending system as claimed in any one of the preceding claims, wherein the recordable data carrier is configured to receive data only from a data dispensing device authorised for a particular data carrier.

28.     A data vending system as claimed in any one of the preceding claims, wherein the recordable data carrier is configured to receive data only from a data dispensing device authorised for a particular class of data carrier.

29. A data vending system as claimed in any one of the preceding claims, wherein the recordable data carrier is configured to be read only by a data carrier reader authorised for a particular data carrier.

30. A data vending system as claimed in any one of the preceding claims, wherein the recordable data carrier is configured to be read only by a data carrier reader authorised for a particular class of data carrier.

31. A data vending system as claimed in any one of the preceding claims, wherein the recordable data carrier is configured for receiving data only from certain authorised data dispensing devices but to be read by any suitable reader.

32. A data vending system as claimed in any one of claims 27 to 31, wherein the recordable data carrier is configured by the provision of a code which is scrambled periodically when the data carrier is in data communication with the data depot.

33. A data vending system as claimed in any one of the preceding claims, wherein the recordable data carrier is configurable, through the data recorded thereon or otherwise, to permit reading of the data stored thereon for a predetermined period of time only, whereafter the data is either marked as stale and later deleted, or deleted immediately, or scrambled.

34. A data vending system as claimed in claim 30, wherein the marking of the data as stale and/or the deletion and/or scrambling thereof is initiated from a remote location by radio, satellite, data or telephone cable, or the like.

WO 00/07130                                                                    PCT/ZA99/00056

35.    A data vending system as claimed in any one of the preceding claims, wherein the database for storing user information for each recordable data carrier contains data selected from the group including demographic data about the user/owner of the recordable data carrier, data purchased (either cumulatively or periodically, by title, by artist, etc), data rented and the rental period (either cumulatively or periodically, by title, by artist, etc), clients normal requirements, clients payment records, royalties payable to the copyright owner, and favourite data.

36.    A data vending system as claimed in any one of the preceding claims, wherein a portion of the database is stored on one or more of the data depot, the data dispenser, and the data carrier.

37.    A method of vending data, the method including:
-      storing data to be vended;
-      dispensing desired data packages from the depot;
-      recording the dispensed data to a data carrier;  and
-      databasing details of each data carrier.

38.    A vending booth including a data dispensing device in communication with a data depot, the data dispensing device being configured for dispensing data to a recordable data carrier configured for recording data from the data dispensing device and for exchanging data regarding the dispensed data with a database for storing user information for each recordable data carrier.

39.    A vending booth as claimed in claim 38, wherein the booth includes electronic payment means in the form of a card or token reader configured to debit an account of a user responsive to the dispensing of data from the data dispensing device on the recordable data carrier.

40.   A vending booth as claimed in claim 38 or claim 39, wherein the booth is in the form of a vending machine type apparatus, similar to those currently used for other vending transactions, adapted to vending data by having a data writing means provided thereon.

5

41.   A data vending system substantially as herein described and illustrated.

42.   A method of vending data, substantially as herein described and illustrated.

10

43.   A vending booth, substantially as herein described and illustrated.

44.   A new data vending system, a new method of vending data, or a new vending booth substantially as herein described.

15

WO 00/07130                                    PCT/ZA99/00056

1/1



## INTERNATIONAL SEARCH REPORT

International Application No

ı . ;/ZA 99/00056

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 7    G06F17/60    G07F17/16    G11B20/00

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 7    G06F    G11B    G07F

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and. where practical. search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category° | Citation of document. with indication. where appropriate. of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | GB 2 305 339 A (ACKROYD ET AL)<br>2 April 1997 (1997-04-02)<br>the whole document<br>--- | 1-44 |
| X | EP 0 649 121 A (INTERNATIONAL BUSINESS<br>MACHINES CORPORATION)<br>19 April 1995 (1995-04-19)<br>page 4, line 13 –page 6, line 43<br>page 15, line 4 –page 17, line 46<br>page 41, line 8 –page 44, line 4<br>--- | 1-44 |
| A | US 4 528 643 A (FREENY, JR.)<br>9 July 1985 (1985-07-09)<br>the whole document<br>--- | 1-44 |
| A | WO 97 30425 A (GHISOLFI)<br>21 August 1997 (1997-08-21)<br>the whole document<br>--- | 1-44 |
|  | -/-- | |

[X] Further documents are listed in the continuation of box C.      [X] Patent family members are listed in annex.

° Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents. such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 22 November 1999 | 26/11/1999 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office. P B. 5818 Patentlaan 2<br>NL – 2280 HV Rijswijk<br>Tel. (+31–70) 340–2040, Tx. 31 651 epo nl.<br>Fax: (+31–70) 340–3016 | Abram, R |

Form PCT/ISA/210 (second sheet) (July 1992)

1

## INTERNATIONAL SEARCH REPORT

International Application No

PCT/ZA 99/00056

C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| A | GB 2 199 984 A (BAI PUBLISHERS)<br>20 July 1988 (1988-07-20)<br>page 1, line 9 -page 2, line 2<br>page 3, line 3 - line 8<br>page 4, line 1 - line 19<br>page 9, line 7 -page 10, line 10<br>----- | 1-44 |

Form PCT/ISA/210 (continuation of second sheet) (July 1992)

1

## INTERNATIONAL SEARCH REPORT

Information on patent family members

| International Application No |
|---|
| PCT/ZA 99/00056 |

| Patent document cited in search report | | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|---|
| GB 2305339 | A | 02-04-1997 | NONE | | |
| EP 649121 | A | 19-04-1995 | JP | 7175868 A | 14-07-1995 |
| | | | JP | 10207965 A | 07-08-1998 |
| | | | KR | 143358 B | 17-08-1998 |
| | | | US | 5734719 A | 31-03-1998 |
| US 4528643 | A | 09-07-1985 | EP | 0195098 A | 24-09-1986 |
| | | | AT | 57287 T | 15-10-1990 |
| WO 9730425 | A | 21-08-1997 | IT | MI960289 A | 18-08-1997 |
| GB 2199984 | A | 20-07-1988 | US | 5041921 A | 20-08-1991 |
| | | | CA | 1327395 A | 01-03-1994 |
| | | | DE | 3800065 A | 24-11-1988 |
| | | | FR | 2611299 A | 26-08-1988 |
| | | | JP | 63261589 A | 28-10-1991 |
| | | | US | 5418654 A | 23-05-1995 |
| | | | US | 5502601 A | 26-03-1996 |
| | | | US | 5900830 A | 04-05-1999 |
| | | | US | 5233477 A | 03-08-1993 |
| | | | US | 5365381 A | 15-11-1994 |
| | | | US | 5021893 A | 04-06-1991 |

Form PCT/ISA/210 (patent family annex) (July 1992)

# Electronic Acknowledgement Receipt

| EFS ID: | 5128239 |
|---|---|
| Application Number: | 09840283 |
| International Application Number: | |
| Confirmation Number: | 3319 |
| Title of Invention: | MUTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |
| First Named Inventor/Applicant Name: | Nicholas  Stiliadis |
| Customer Number: | 27805 |
| Filer: | Anthony H. Handal/Juan Arias |
| Filer Authorized By: | Anthony H. Handal |
| Attorney Docket Number: | NS2 |
| Receipt Date: | 09-APR-2009 |
| Filing Date: | 23-APR-2001 |
| Time Stamp: | 15:29:59 |
| Application Type: | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | CinemavaultIDS.pdf | 3279006 <br> 29138fe437c69404cf4a42a0a77440492abc08f2 | yes | 74 |

**Multipart  Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Transmittal Letter | 1 | 2 |
| Information Disclosure Statement (IDS) Filed (SB/08) | 3 | 5 |
| Foreign Reference | 6 | 51 |
| Foreign Reference | 52 | 74 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 3279006 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants    :    Nicholas Stiliadis
Appln. No.   :    09/840,283
Filed         :    April 23, 2001
Title         :    MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM
Docket No.    :    075288-00002

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## INFORMATION DISCLOSURE STATEMENT (IDS)

Dear Sir,

Today, April 9, 2009, Applicant and its undersigned counsel became aware of the cited references in connection with the prosecution of the European Counterpart Application, EP 1384125.

Pursuant to 37 C.F.R. 1.56, 1.97 and 1.98, Applicant wishes to call the references listed on the attached PTO/SB08 form to the attention of the Examiner.

In accordance with 37 C.F.R 1.97(g) ,the filing of this Information Disclosure Statement shall not be construed to mean that a search has been made or that no other material information as defined in 37 C.F.R 1.56(a) exists.  In accordance with 37 C.F.R 1.97(h), the filing of this information Disclosure Statement shall not be construed to be an admission that any patent, publication or other information referred to therein is "prior art" for this invention unless specifically designated as such.

Application Serial No.:  09/840,283
Docket No.:  075288-00002

<u>Remarks</u>

Applicant believes that no fee is required for submission of this statement. However, if a fee is required, the Commissioner is authorized to deduct such fee from the undersigned's Deposit Account No. 20-0809.  Please deduct any additional fees, or credit any over payment to the above-noted Deposit Account.

Respectfully submitted:

Date:  April 9, 2009

By:  ___/Anthony H. Handal/_____
      Anthony H. Handal
      Reg. No.  26,275

THOMPSON HINE LLP
335 Madison Avenue
New York, NY 10017-4611
Telephone:  (212) 692-3547
Facsimile:  (212) 344-6101

- 2 -

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 09840283 |
| **Filing Date:** | 23-Apr-2001 |
| **Title of Invention:** | MUTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |
| **First Named Inventor/Applicant Name:** | Nicholas Stiliadis |
| **Filer:** | Anthony H. Handal/Juan Arias |
| **Attorney Docket Number:** | NS2 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| Utility Appl issue fee | 1501 | 1 | 1510 | 1510 |
| Publ. Fee- early, voluntary, or normal | 1504 | 1 | 300 | 300 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | **Total in USD ($)** | | **1810** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5280583 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | MUTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 27805 |
| **Filer:** | Anthony H. Handal/Juan Arias |
| **Filer Authorized By:** | Anthony H. Handal |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 05-MAY-2009 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 16:46:31 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Electronic Funds Transfer |
| Payment was successfully received in RAM | $1810 |
| RAM confirmation Number | 3028 |
| Deposit Account | |
| Authorized User | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|

| 1 | Issue Fee Payment (PTO-85B) | Cinemavault1.pdf | 60608<br><br>bb6ebff597637f0dfd0dc04c4aa31ec60b6a<br>eaa1 | no | 1 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| 2 | Fee Worksheet (PTO-875) | fee-info.pdf | 31962<br><br>0c82def75ea107ddce61eeef2eea579fd103<br>140d | no | 2 |
|---|---|---|---|---|---|

| **Warnings:** |
|---|

| **Information:** |
|---|

| **Total Files Size (in bytes):** | 92570 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

or <u>Fax</u>  (571) 273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Thompson Hine LLP
Intellectual Property Group
P.O. Box 8801
Dayton, OH 45401-8801

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | 075288-00002 | 3319 |

TITLE OF INVENTION:

### N vmgjn f ejb n bsl f ujoh boe ejt usjcvujpo t zt uf n

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $1,810 | 07/08/2009 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| Tbnbtf nj Epn jojd E/ | 3532 | 836.254111 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Thompson Hine LLP
2 Anthony H. Handal
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Nicholas Stiliadis

(B) RESIDENCE: (CITY and STATE or COUNTRY)

Toronto, Canada

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☑ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are enclosed:

☑ Issue Fee
☑ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies ___

4b. Payment of Fee(s):

☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☑ The Director is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number   20-0809

5. Change in Entity Status (from status indicated above)

☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.     ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

The Director of the USPTO is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.
NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature  /Anthony H. Handal/     Date  May 5, 2009

Typed or printed name  Anthony H. Handal     Registration No.  26,275

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08-08) Approved for use through 08/31/2010. OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 04/23/2001 | Nicholas Stiliadis | NS2 | 3319 |

27805         7590         07/13/2009
THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

| EXAMINER |
|---|
| SALTARELLI, DOMINIC D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/13/2009 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

| ***Supplemental Notice of Allowability*** | **Application No.** 09/840,283 | **Applicant(s)** STILIADIS, NICHOLAS |
|---|---|---|
| | **Examiner** DOMINIC D. SALTARELLI | **Art Unit** 2421 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the amendment filed on April 3, 2009*.

2. ☒ The allowed claim(s) is/are *1,3-5,8-12,14-16,18,19,21,22 and 24-30*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All    b) ☐ Some*    c) ☐ None    of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____.

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____.

/Dominic D Saltarelli/
Primary Examiner, Art Unit 2421

Application/Control Number: 09/840,283                                        Page 2
Art Unit: 2421

## EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

        Authorization for this examiner's amendment was given in a telephone interview

with Anthony Handel on April 6, 2009.

        The application has been amended as follows:

        Claim 1, line 3, has been amended to read "a.     receiving, by a server,

multimedia material and advertising material from a producer"

        Claim 10, line 3 has been amended to read "a.     receiving, by a server, a movie

on celluloid and associated advertising material"

        Claim 12, line 3, has been amended to read "a.     receiving, by a server,

multimedia material a producer or owner"

        Claim 21, line 3, has been amended to read "a.     receiving, by a server, a

motion picture and associated advertising material "


2.      The following is an examiner's statement of reasons for allowance: The state of

the prior art suggested providing static images as advertising material (specifically

movie posters) rather than full motion video segments with associated audio as

associated advertising material which is received along with a movie.

Application/Control Number: 09/840,283                                      Page 3
Art Unit: 2421

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to DOMINIC D. SALTARELLI whose telephone number is (571)272-7302. The examiner can normally be reached on Monday - Friday 9:00am - 6:00pm.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, John Miller can be reached on (571) 272-7353. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Dominic D Saltarelli/
Primary Examiner, Art Unit 2421

Application/Control Number: 09/840,283                                    Page 4
Art Unit: 2421

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-09)
Approved for use through 02/28/2009. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| Application Number | 09840283 |
| Filing Date | 2001-04-23 |
| First Named Inventor | Nicholas Stiliadis |
| Art Unit | 2421 |
| Examiner Name | Saltarelli, Dominic D. |
| Attorney Docket  Number | 075288-00002 |

| U.S.PATENTS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | 5661517 | | 1997-08-26 | Budow et al. | |
| | 2 | 5918213 | | 1999-06-29 | Bernard et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

| U.S.PATENT APPLICATION PUBLICATIONS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
| | 1 | | | | | |
| | 2 | | | | | |
| | 3 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

| FOREIGN PATENT DOCUMENTS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /DS/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 09840283 |
|---|---|---|
| | Filing Date | 2001-04-23 |
| | First Named Inventor | Nicholas Stiliadis |
| | Art Unit | 2421 |
| | Examiner Name | Saltarelli, Dominic D. |
| | Attorney Docket Number | 075288-00002 |

| | 1 | 00/07130 | WO | | 2000-02-10 | Grobler, Benjamin | | ☐ |
|---|---|---|---|---|---|---|---|---|
| | 2 | 95/05050 | WO | | 1995-02-16 | BV Technology, Inc. | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

**NON-PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc) date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /Dominic Saltarelli/ | Date Considered | 07/02/2009 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /DS/

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | DOMINIC D SALTARELLI | 2421 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/18/2006 | 10/12/2007 | 11/25/2008 | | | | | |
| 1 | 1 | ✓ | ✓ | ✓ | = | | | | |
| | 2 | ✓ | ✓ | - | - | | | | |
| 2 | 3 | ✓ | ✓ | ✓ | = | | | | |
| 3 | 4 | ✓ | ✓ | ✓ | = | | | | |
| 4 | 5 | ✓ | ✓ | ✓ | = | | | | |
| | 6 | ✓ | ✓ | - | - | | | | |
| | 7 | ✓ | ✓ | - | - | | | | |
| 11 | 8 | ✓ | ✓ | ✓ | = | | | | |
| 12 | 9 | ✓ | ✓ | ✓ | = | | | | |
| 13 | 10 | ✓ | ✓ | ✓ | = | | | | |
| 14 | 11 | ✓ | ✓ | ✓ | = | | | | |
| 15 | 12 | ✓ | ✓ | ✓ | = | | | | |
| | 13 | ✓ | ✓ | - | - | | | | |
| 16 | 14 | ✓ | ✓ | ✓ | = | | | | |
| 17 | 15 | ✓ | ✓ | ✓ | = | | | | |
| 18 | 16 | ✓ | ✓ | ✓ | = | | | | |
| | 17 | ✓ | ✓ | - | - | | | | |
| 19 | 18 | ✓ | ✓ | ✓ | = | | | | |
| 20 | 19 | ✓ | ✓ | ✓ | = | | | | |
| | 20 | ✓ | ✓ | - | - | | | | |
| 22 | 21 | ✓ | ✓ | ✓ | = | | | | |
| 23 | 22 | ✓ | ✓ | ✓ | = | | | | |
| | 23 | ✓ | ✓ | - | - | | | | |
| 5 | 24 | | | ✓ | = | | | | |
| 21 | 25 | | | ✓ | = | | | | |
| 6 | 26 | | | ✓ | = | | | | |
| 7 | 27 | | | | = | | | | |
| 8 | 28 | | | | = | | | | |
| 9 | 29 | | | | = | | | | |
| 10 | 30 | | | | = | | | | |

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | DOMINIC D SALTARELLI | 2421 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | **NON-CLAIMED** | |
| 725 | 91 | H | 0 | 4 | N | 7 / 173 | | |
| | | H | 0 | 4 | N | 7 / 16 | | |

**CROSS REFERENCE(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | | |
|---|---|---|---|---|---|---|---|
| 725 | 105 | 114 | 144 | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | |

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 17 | | | | | | | | | | | | |
| | 2 | 19 | 18 | | | | | | | | | | | | |
| 2 | 3 | 20 | 19 | | | | | | | | | | | | |
| 3 | 4 | | 20 | | | | | | | | | | | | |
| 4 | 5 | 22 | 21 | | | | | | | | | | | | |
| | 6 | 23 | 22 | | | | | | | | | | | | |
| | 7 | | 23 | | | | | | | | | | | | |
| 11 | 8 | 5 | 24 | | | | | | | | | | | | |
| 12 | 9 | 21 | 25 | | | | | | | | | | | | |
| 13 | 10 | 6 | 26 | | | | | | | | | | | | |
| 14 | 11 | 7 | 27 | | | | | | | | | | | | |
| 15 | 12 | 8 | 28 | | | | | | | | | | | | |
| | 13 | 9 | 29 | | | | | | | | | | | | |
| 16 | 14 | 10 | 30 | | | | | | | | | | | | |
| 17 | 15 | | | | | | | | | | | | | | |
| 18 | 16 | | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 23 | |
| (Assistant Examiner) | (Date) | | |
| /DOMINIC D SALTARELLI/ Primary Examiner.Art Unit 2421 | 4/6/09 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 09840283 | STILIADIS, NICHOLAS |
| | **Examiner** | **Art Unit** |
| | Saltarelli, Dominic | 2421 |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| updated | | 10/12/07 | DS |
| updated | | 11/25/08 | DS |
| updated | | 4/6/09 | DS |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Updated Search | 8/18/2006 | jm |
| Updated Search History Attached | 08/18/2006 | jm |

## INTERFERENCE SEARCH

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 725 | 86,91,105,114,144 | 4/6/09 | DS |

| | |
|---|---|
| | |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/840,283 | 08/11/2009 | 7574725 | NS2 | 3319 |

27805        7590        07/22/2009
THOMPSON HINE L.L.P.
Intellectual Property Group
P.O. BOX 8801
DAYTON, OH 45401-8801

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 557 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Nicholas Stiliadis, Toronto, CANADA;

IR103 (Rev. 11/05)

<u>PATENT</u>

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

| | | |
|---|---|---|
| Applicant | : | Nicholas Stiliadis |
| Serial No. | : | 09/840,283 |
| Filed | : | April 23, 2001 |
| Patent No. | : | 7,574,725 |
| Issue date | : | August 11, 2009 |
| Title | : | MULTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |
| Docket | : | US09840283 |
| Examiner | : | DOMINIC D. SALTARELLI |
| Art Unit | : | 2421 |

**Filed Via EFS-Web**

Sir:

## ASSERTION OF SMALL ENTITY STATUS

## (37 C.F.R. § 1.27(c)(1))

**Applicant hereby states that applicant is a small entity and that status as a small entity is asserted for this patent.**

Respectfully submitted,

February 12, 2013

/Anthony H. Handal/
Anthony H. Handal
Reg. No. 26,275

THOMPSON HINE LLP
P.O. Box 8801
Dayton, Ohio 45401-8801
Telephone:  (937) 443-6816
Facsimile:  (937) 443-6635

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 14943831 |
| **Application Number:** | 09840283 |
| **International Application Number:** | |
| **Confirmation Number:** | 3319 |
| **Title of Invention:** | MUTIMEDIA MARKETING AND DISTRIBUTION SYSTEM |
| **First Named Inventor/Applicant Name:** | Nicholas  Stiliadis |
| **Customer Number:** | 27805 |
| **Filer:** | Anthony H. Handal |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | NS2 |
| **Receipt Date:** | 12-FEB-2013 |
| **Filing Date:** | 23-APR-2001 |
| **Time Stamp:** | 21:21:55 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | Assertion.pdf | 66012<br>d14e9cab216e8831c9eadb75eaeb217ada939b16 | no | 1 |

**Warnings:**

**Information:**

Total Files Size (in bytes): 739

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.