## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **DIGITAL MEDIA TECHNOLOGY HOLDINGS, LLC,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**DELUXE MEDIA INC.,**<br><br>        **Defendant.** | **Court No. 1:25-cv-00038-JCG** |

## OPINION AND ORDER

[Granting Defendant's Motion to Dismiss.]

Dated:  September 24, 2025

Neal C. Belgam and Daniel A. Taylor, Smith, Katzenstein, & Jenkins LLP, of Wilmington, DE; John C. Carey, Carey Rodriguez LLP, of Miami, FL.  Attorneys for Plaintiff Digital Media Technology Holdings, LLC.

Karen E. Keller and Nathan R. Hoeschen, Shaw Keller LLP, of Wilmington, D.E.; Gene W. Lee and Thomas V. Matthew, Perkins Coie LLP, of New York, N.Y., and Aaron E. Schindler, Perkins Coie LLP, of Madison, W.I.  Attorneys for Defendant Deluxe Media Inc.

Choe-Groves, Judge:  This matter involves patent infringement claims filed

by Digital Media Technology Holdings, LLC ("DMTH" or "Plaintiff") against

Deluxe Media, Inc. ("Deluxe Media" or "Defendant").  DMTH alleges that Deluxe

Media infringed at least Claim 1 of its patent involving the distribution and display

of multimedia material in conjunction with marketing material.  Deluxe Media

filed a motion to dismiss claims related to the asserted patent raised in the

Complaint.  For the reasons discussed below, Deluxe Media's motion to dismiss is

granted.

## BACKGROUND

DMTH is the owner of U.S. Patent No. 7,574,725 ("the '725 Patent" or

"Asserted Patent").  Compl. ¶ 6 (D.I. 1).

The '725 Patent is titled "Multimedia Marketing and Distribution System,"

and was issued by the U.S. Patent and Trademark Office on August 11, 2009.  Id.

at ¶¶ 6–7.

DMTH's Complaint alleges that Defendant infringed at least Claim 1 of the

Asserted Patent, either literally or under the doctrine of equivalents, by making,

using, selling, or offering for sale in the United States, infringing services

including but not limited to Deluxe Media's distribution network, in violation of 35

U.S.C. § 271.  Id. at ¶ 14.[1]  DMTH seeks damages adequate to compensate for the

---

[1] DMTH has filed for infringement of the '725 Patent in two other related cases in
the District of Delaware.  The first related case is Digital Media Technology
Holdings, LLC v. Digital Cinema Distribution Coalition, LLC, No. 1:24-cv-01321-
JCG.  The second case is Digital Media Technology Holdings, LLC v. Disney
Media & Entertainment Distribution, LLC, No. 1:22-cv-01642-CJB, which is
currently stayed in view of Plaintiff's appeal of the Patent Trial and Appeal
Board's Final Written Determination.  Order (Oct. 8, 2024), No. 1:22-cv-01642-
CJB.

infringement, including pre-judgment and post-judgment interest and costs, under
35 U.S.C. § 284.  Id. at 3–4.

Deluxe Media filed Defendant Deluxe Media, Inc.'s Motion to Dismiss the
Complaint for Patent Infringement ("Deluxe Media's Motion" or "Defendant's
Motion"), wherein Deluxe Media moves to dismiss claims related to the '725
Patent.  Def. Deluxe Media Inc.'s Mot. Dismiss Compl. Patent Infringement
(Def.'s Mot.") (D.I. 12); Def.'s Opening Br. Supp. Mot. Dismiss Compl. ("Def.'s
Br.") (D.I. 13).  DMTH opposed the motion to dismiss, and Deluxe Media replied
in further support of its motion.  Pl.'s Br. Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp.
Br.") (D.I. 20); Def. Deluxe Media Inc.'s Reply Br. Support Mot. Dismiss Compl.
("Def.'s Reply Br.") (D.I. 21).  The Court held oral argument on June 11, 2025.
Oral Arg. (June 11, 2025).

## JURISDICTION AND LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which
grant the Court jurisdiction over civil actions relating to patents, plant variety
protection, copyright, and trademarks.  28 U.S.C. §§ 1331, 1338.  Federal Rule of
Civil Procedure 8(a) requires that pleadings contain a short and plain statement of
the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If a
pleading fails to state a claim, in whole or in part, on which a court may grant
relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil

Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.  In considering a motion to dismiss, the Court must assume that the factual allegations contained in the complaint are true. Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678.  In patent infringement cases, the Iqbal/Twombly pleading standard governs allegations of infringement.  Golden v. Apple Inc., 819 F. App'x 930, 930–31 (Fed. Cir. 2020).  Some factual allegations must exist that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.  Bot M8 LLC v. Sony Corp., 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## DISCUSSION

DMTH's Complaint alleges that Deluxe Media has infringed at least Claim 1 of the '725 Patent.  Compl. ¶ 14.  Deluxe Media moves to dismiss DMTH's claim for infringement of the '725 Patent for lack of patent eligible subject matter under

35 U.S.C. § 101.  Def.'s Mot. at 1.  For the reasons that follow, the Court dismisses

DMTH's claim for infringement of the '725 Patent.

## I.    Patent-Eligible Subject Matter

35 U.S.C. § 101 makes patentable "any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement

thereof."  35 U.S.C. § 101.  This broad provision has an important exception:

"[l]aws of nature, natural phenomena, and abstract ideas are not patentable."

Alice Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice"), 573 U.S. 208, 216 (2014).  The

purpose of these exceptions is to protect the "basic tools of scientific and

technological work."  Mayo Collaborative Servs. v. Prometheus Labs., Inc.

("Mayo"), 566 U.S. 66, 71 (2012).  Eligibility "is a question of law" with

"underlying questions of fact."  Simio, LLC v. FlexSim Software Prods., Inc., 983

F.3d 1353, 1358–59 (Fed. Cir. 2020).

In Alice, the Supreme Court reaffirmed the two-step framework set forth

in Mayo for distinguishing patents that claim ineligible subject matter from those

that claim patent-eligible applications of those concepts.  Alice, 573 U.S. at 217.

In step one, the court must determine whether the claims are drawn to a

patent-ineligible concept, such as an abstract idea.  Id.  To do so, the court

examines the focus of the claim and its character as a whole.  SAP Am., Inc. v.

InvestPic, LLC, 898 F.3d 1161, 1167 (Fed. Cir. 2018).  Courts must consider

whether the focus of the claims is on "the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." Finjan, Inc. v. Blue Coat Sys., Inc. ("Finjan"), 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting Enfish, LLC v. Microsoft Corp. ("Enfish"), 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

If the claims are drawn to an abstract idea at step one of the analysis, the court then turns to step two to examine "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." Alice, 573 U.S. at 217–18 (citation omitted). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." Id. at 221. Such "additional features" are not enough to constitute an inventive concept if they are "well-understood, routine, conventional activities." Id. at 225 (citation omitted). To transform an unpatentable concept into a patent-eligible application, "one must do more than simply state the [ineligible concept] while adding the words 'apply it.'" Mayo, 566 U.S. at 72 (emphasis omitted).

## II.   Representative Claim

Deluxe Media contends that the Court should treat Claim 1 as representative of all 23 claims of the '725 Patent because Claims 2–12 and 13–23 do not differ from Claim 1 in significant ways with respect to patent eligibility.  Def.'s Br. at 16. Deluxe Media argues that all 23 claims of the '725 Patent are directed to the abstract idea of organizing, distributing, and displaying media content and related advertisements, and that the differences between the claims "are immaterial with respect to patent eligibility."  Id.

DMTH disagrees that Claim 1 should also be representative of apparatus Claim 14, arguing that dependent Claims 2–13 and 15–23 are directed to "essentially the same method as Claim 1, but with slight modifications for specific embodiments" and Claims 2–12 comprise of the same elements as Claim 1 but with additional limitations.  Pl.'s Resp. Br. at 19.

A court may limit its analysis of a Section 101 challenge to representative claims when the claims at issue are "substantially similar and linked to the same ineligible concept."  Mobile Acuity Ltd. v. Blippar Ltd. ("Mobile Acuity"), 110 F.4th 1280, 1290 (Fed. Cir. 2024) (internal quotation omitted).  Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the

representative claim or if the parties agree to treat the claim as representative." See

Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

The patent challenger asserting that a claim is representative of multiple

claims bears the initial burden of making a prima facie showing that the group of

claims are substantially similar and linked to the same ineligible concept. Mobile

Acuity, 110 F.4th at 1290 (citation omitted). If a prima facie showing is made, the

burden shifts to the patent owner to demonstrate why the eligibility of the

purported representative claim is not decisive of the eligibility of the other claims

within the identified group. Id. If the patent owner cannot make a non-frivolous

argument against treating the identified claim as representative, it is precluded

from arguing the eligibility of the other claims in the group. Id. (citations omitted).

Claim 1 of the '725 Patent recites:

A method of marketing and distributing multimedia, the method comprising:

receiving, by a server, multimedia material and advertising material
from a producer or owner of said multimedia material, said advertising
material being associated with said multimedia material, said
advertising material comprising audio and video components;

storing said multimedia material and associated advertising material on
a computer readable storage medium as correlated information in
digital format;

providing a server system accessible over a communication network,
said server system accessing said correlated information in a digital
format from said computer readable storage medium for transfer of said
correlated information in a digital format over said communication

network to potential purchasers;

providing samples of said correlated information in a digital format from said server system over said communication network to said potential purchasers, said purchasers being linked to the server system through said communication network;

downloading to said purchasers, upon request of said purchasers, over said communication network, said correlated information in a digital format corresponding to said multimedia material from said server system, said purchasers storing downloaded correlated information in a digital format corresponding to said multimedia material; and

providing said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material to said purchasers from said server system over said communication network, allowing purchasers to locally market and sell said multimedia material, said purchasers downloading said correlated information in a digital format corresponding to said advertising material that is associated with said multimedia material, said purchasers storing the downloaded correlated information in a digital format corresponding to said advertising material; and

wherein said purchaser is an exhibitor exhibiting said multimedia material, after deriving said multimedia material from said stored correlated information in a digital format corresponding to said multimedia material, in a public theater to a number of individuals in exchange for a paid admission or a broadcast exhibitor, said advertising material, after deriving of said advertising material from said correlated information in a digital format corresponding to said stored associated advertising material, being shown to the public at a time or in a place different from the time or place at which said associated multimedia material is displayed.

'725 Patent at 16:19–17:2.

As the party challenging the '725 Patent, Deluxe Media has the initial

burden to make a prima facie showing that the representative claim is

"substantially similar and linked to the same" allegedly abstract concept of organizing, distributing, and marketing media content and related advertisements as the other claims at issue.  Mobile Acuity, 110 F.4th at 1290.

The '725 Patent includes twenty-three claims, with five independent claims: method Claims 1, 13, 15, and 22, and apparatus Claim 14.  '725 Patent at 16:19–20:30.  Deluxe Media argues that apparatus Claim 14 is the system analog of Claim 1 and is similar in scope to Claim 1 but is written as a system instead of as a method with conventional and generic hardware elements such as central processing units, memories, a communications network, an input device, and a digital film projector.  Def.'s Br. at 16; compare '725 Patent at 17:65–33 with '725 Patent at 16:19–17:2.

Deluxe Media asserts that Claims 2–13 and 15–23 are method claims that differ from Claim 1 in insignificant ways with respect to patent eligibility.  Def.'s Br. at 17.  Deluxe Media argues that Claim 2 depends from Claim 1 and specifies that the multimedia material includes certain non-digital media.  Def.'s Br. at 17; compare '725 Patent at 16:19–17:2 with '725 Patent at 17:3–7.  Deluxe Media contends that Claim 3 depends from Claim 2 and calls for digitizing the non-digital media.  Def.'s Br. at 17; compare '725 Patent at 17:8–10 with '725 Patent at 17:3–7.  Deluxe Media avers that Claim 4 depends from Claim 1 and states that the server that receives the multimedia material and advertising material is accessed

over a public communications network.  Def.'s Br. at 17–18; compare '725 Patent

at 17:11–13 with '725 Patent at 16:19–17:2.  Deluxe Media asserts that Claim 5

depends from Claim 1 and specifies that the exhibition of multimedia material is a

public showing of a motion picture.  Def.'s Br. at 18; compare '725 Patent at

17:14–15 with '725 Patent at 16:19–17:2.  Deluxe Media states that Claim 6

depends from Claim 1 and adds a search function.  Def.'s Br. at 18; compare '725

Patent at 17:16–18 with '725 Patent at 16:19–17:2.  Deluxe Media argues that

Claim 7 depends from Claim 1 and states that the advertising material comprises a

motion picture with synchronized sound.  Def.'s Br. at 18; compare '725 Patent at

17:19–17:21 with '725 Patent at 16:19–17:2.  Deluxe Media contends that Claim 8

depends from Claim 1 and states that the advertising material comprises a motion

picture with synchronized sound and a radio commercial.  Def.'s Br. at 18;

compare '725 Patent at 17:22–24 with '725 Patent at 16:19–17:2.  Deluxe Media

avers that Claim 9 depends from Claim 1 and states that the advertising material

comprises a motion picture trailer or coming attraction movie segment with sound.

Def.'s Br. at 18; compare '725 Patent at 17:25–27 with '725 Patent at 16:19–17:2.

Deluxe Media asserts that Claim 10 depends from Claim 9 and requires that at

least one element of the advertising material is selected from the group of graphics

for a newspaper advertisement, a radio spot, a poster, a coming attractions film

segment, and handbills.  Def.'s Br. at 18; compare '725 Patent at 17:28–32 with

'725 Patent at 17:25–27.  Deluxe Media states that Claim 11 depends from Claim 1

and adds "automatically collecting sales information relating to the multimedia

material" and "providing sales and marketing data to exhibitors."  Def.'s Br. at 18;

compare '725 Patent at 17:33–38 with '725 Patent at 16:19–17:2.

 Deluxe Media argues that Claim 13 is an independent claim that is similar to

Claim 1 but "specifies receiving a movie on celluloid and adds scanning the movie

and converting it into digital form, inputting licensing information about the

movie, and transmitting the licensing information to a potential exhibitor."  Def.'s

Br. at 18; compare '725 Patent at 17:42–64 with '725 Patent at 16:19–17:2.

 Deluxe Media contends that Claim 15 is an independent claim that is similar

to Claim 1 but adds "establishing an account for a broadcaster or live theater

exhibitor, communicating with the exhibitor to determine information necessary to

calculate the amount owed for the multimedia material, and charging the exhibitor

the amount owed."  Def.'s Br. at 18–19; compare '725 Patent at 18:34–65 with

'725 Patent at 16:19–17:2.

 Deluxe Media avers that Claim 16 depends from Claim 15 and specifies that

the multimedia material includes certain non-digital media.  Def.'s Br. at 19;

compare '725 Patent at 18:66–19:5 with '725 Patent at 18:34–65.  Deluxe Media

asserts that Claim 17 depends from Claim 15 and requires that the "communicating

with the exhibitor is by automatically sending an email."  Def.'s Br. at 19; compare

'725 Patent at 19:6–8 <u>with</u> '725 Patent at 18:34–65.  Deluxe Media states that

Claim 18 depends from Claim 15 and adds "consulting publicly reported data

about the exhibitor."  Def.'s Br. at 19; <u>compare</u> '725 Patent at 19:9–11 <u>with</u> '725

Patent at 18:34–65.  Deluxe Media argues that Claim 19 depends from Claim 15

and "calls for querying the exhibitor to cause the sending of data from exhibitor

and recording the data in a database."  Def.'s Br. at 19; <u>compare</u> '725 Patent at

19:12–15 <u>with</u> '725 Patent at 18:34–65.  Deluxe Media contends that Claim 20

depends from Claim 19 and "calls for providing marketing data reported in the

database to customers in response to a query from the exhibitor."  Def.'s Br. at 19;

<u>compare</u> '725 Patent at 19:16–19 <u>with</u> '725 Patent at 19:12–15.  Deluxe Media

avers that Claim 21 depends from Claim 15 and "requires that the information

comprises box office information that is transmitted to other exhibitors and/or

potential exhibitors."  Def.'s Br. at 19; <u>compare</u> '725 Patent at 19:20–23 <u>with</u> '725

Patent at 18:34–65.

     Deluxe Media asserts that Claim 22 is an independent claim that is similar to

Claim 1 but adds "querying the exhibitor to stimulate the sending of ticket sales

data from the exhibitor, recording such data into a database for billing purposes,

and reporting the ticket sales data to other exhibitors."  Def.'s Br. at 19; <u>compare</u>

'725 Patent at 19:24–20:26 <u>with</u> '725 Patent at 16:19–17:2.

DMTH contends that Claims 1–12, 13, and 15–23 are not directed to an abstract idea but instead to a specific method for distributing and displaying both multimedia material and advertising material that involves packaging multimedia into "correlated information" and Claim 14 is not directed to an abstract idea because it claims a specific collection of hardware components that operate together to display content to an audience at a particular time and place. See Pl.'s Resp. Br. at 1–2.

Deluxe Media argues that all claims (Claims 1–23) of the '725 Patent are invalid under 35 U.S.C. § 101 because they are directed to the abstract idea of organizing, distributing, and marketing media content and related advertisements, and they implement this abstract idea using generic computers without adding an inventive concept. See Def.'s Br. The Court observes that Claims 2–12 and 13–23 describe using generic computers to perform the functions of marketing and distributing multimedia, including receiving, storing, exhibiting, searching, and providing data. '725 Patent at 17:3–17:41. These functions are nearly identical to the method of marketing and distributing multimedia described in Claim 1, which includes receiving, storing, providing, downloading, and displaying data. '725 Patent at 16:19–17:2.

The Court holds that Deluxe Media has made a prima facie showing that the '725 Patent claims are "substantially similar and linked to the same" allegedly

abstract concept of organizing, distributing, and marketing media content and related advertisements.  <u>Mobile Acuity</u>, 110 F.4th at 1290.

The burden now shifts to DMTH to present a non-frivolous argument for why the eligibility of Claim 1 cannot be fairly treated as representative of all claims.  <u>Id.</u>  DMTH states that Claim 1 should not be treated as representative, that dependent Claims 2–12 are comprised of the same elements as Claim 1, but with additional limitations, and that the claims are not directed to abstract ideas.  Pl.'s Resp. Br. at 16–19.  DMTH has not shown that any of the claim limitations contained in the remaining '725 Patent claims are significantly distinct from those in Claim 1 and would require a separate eligibility analysis.  <u>See Berkheimer</u>, 881 F.3d at 1365.  The Court further notes that DMTH's Complaint does not address any of the '725 Patent's claims other than Claim 1.  <u>See</u> Compl.  Accordingly, the Court will consider Claim 1 of the '725 Patent as representative of the other patent claims.

## A. <u>Alice</u> Step One

The Court first assesses <u>Alice</u>'s step one, examining the "character as a whole" or "focus" of the claims to determine whether they are "directed to" an abstract idea.  <u>SAP Am., Inc.</u>, 898 F.3d at 1167.  District courts may compare the claims at issue to claims already found to be directed to an abstract idea in previous cases to inform the step one analysis.  <u>See Enfish</u>, 822 F.3d at 1334.

The U.S. Court of Appeals for the Federal Circuit ("CAFC") has "treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas," along with the analysis and display of information.  Elec. Power Grp., LLC v. Alstom S.A. ("Electric Power Group"), 830 F.3d 1350, 1353 (Fed. Cir. 2016); see also In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 611 (Fed. Cir. 2016) (concluding that claims that classify an image and store the image based on its classification is directed to the abstract idea of classifying and storing digital images in an organized manner and fail to add an inventive concept sufficient to confer patent eligibility); FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1096 (Fed. Cir. 2016) (concluding that claims directed to collecting and analyzing information to detect misuse and notify a user when misuse is detected merely grafts generic computer components onto otherwise-ineligible method claims and are patent-ineligible); CardioNet, LLC v. InfoBionic, Inc., 816 F. App'x 471, 475 (Fed. Cir. 2020) (concluding that claims directed to collecting, analyzing, and displaying cardiac data are abstract concepts); Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (concluding that the claims of the asserted patents are drawn to the abstract idea of collecting data, recognizing certain data within the collected data set, and storing that recognized data).  The CAFC has explained that claims reciting those

concepts, either individually or collectively, "fall into a familiar class of claims"

directed to patent-ineligible concepts:

> Information as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas. In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category. And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.

Elec. Power Grp., 830 F.3d at 1353–54 (internal citations omitted).

Claims that are merely directed to an abstract idea and applied with generic,

conventional computer components have been held consistently to be patent

ineligible. See Intell. Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363,

1367–69 (Fed. Cir. 2015) (claims adding generic computer components to

financial budgeting); OIP Techs. Inc. v. Amazon.com, Inc, 788 F.3d 1359, 1362–

64 (Fed. Cir. 2015) (claims implementing offer-based price optimization using

conventional computer activities); Ultramercial, Inc. v. Hulu, LLC

("Ultramercial"), 772 F.3d 709, 714–17 (Fed. Cir. 2014) (claims applying an

exchange of advertising for copyrighted content to the internet); buySAFE, Inc. v.

Google, Inc., 765 F.3d 1350, 1354–55 (Fed. Cir. 2014) (claims adding generic

computer functionality to the formation of guaranteed contractual relationships).

Deluxe Media contends that the '725 Patent is an expired patent with claims directed to the abstract idea of organizing, distributing, and displaying media content and related advertisements, and implements this abstract idea by using generic computers without adding anything to transform it into a patent-eligible invention.  See Def.'s Br. at 1.  Defendant asserts that the organization, distribution, and display of media content (e.g., movies) and related advertisements (e.g., movie trailers) were well-known business practices in media-related industries prior to the issuance of the '725 Patent, which does not propose a technological improvement or innovation to these business practices.  Id. Defendant analogizes Claim 1 of the '725 Patent to two cases for the step one analysis.  Id. at 10–13 (citing Broadband iTV, Inc. v. Amazon.com, Inc., 113 F.4th 1359 (Fed. Cir. 2024); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709 (Fed. Cir. 2014)).

DMTH responds that claims of the '725 Patent are not directed to an abstract idea because: (1) Claims 1–12 are directed to the specific method for distributing and displaying both multimedia material and advertising material that involves packaging multimedia material into "correlated information;" (2) Claims 13 and 15–23 are not directed to an abstract idea for essentially the same reasons as claim 1–12; and (3) Claim 14 is not directed to an abstract idea because it claims a

specific collection of hardware components that operate together to display content

to an audience at a particular time and place.  Pl.'s Resp. Br. at 19.

DMTH also argues that none of the cases on which Defendant relied on

involved a patent claim requiring a tangible display, as claimed by the '725 Patent.

Id. at 19.

The '725 Patent "relates to the marketing and distribution of multimedia

material, including digitally generated film, video, graphics and audio, and

analog[] traditional media converted into digital movie and television programs,

and associated materials for distribution over a computer network to exhibitors and

broadcasters."  See '725 Patent at 1:20–25.  The '725 Patent describes a central

server having a computer readable storage media for storing multimedia material,

such as motion pictures and television programming, in digital format that is

connected to a communications network (such as the Internet) for exhibitors (such

as theaters and television stations) to preview available programming, verify the

ownership of such material, and review contract provisions for obtaining and

paying for the desired programming along with marketing materials for the

program and movie.  See '725 Patent.  The central server loads material into the

storage media as it is received from producers and owners of such material, retains

data regarding requests for material, such as titles requested, who requested each,

and where the requesters are located geographically so that producers can market

their material more economically.  Id.

Claim 1 includes six steps for the organization and distribution of such

multimedia content and a "wherein" limitation that describes the purchaser of the

media content and related advertisements and the display of such content.  The

steps include: (1) receiving multimedia material (or media content) and associated

advertisements; (2) storing media content and associated advertisements; (3)

providing potential purchasers with access to this material; (4) providing potential

purchasers with samples; (5) downloading of material to potential purchasers; (6)

delivering media content and associated advertisements to purchasers in response

to a request; and the "wherein" limitation describing how purchasers can exhibit

the content, such as showing a film in a public theater in exchange for paid

admission.  See id. at 16:19–17:2.

Claims that merely apply computer technology to the distribution of media

content have been invalidated under 35 U.S.C. § 101 by the CAFC.  See, e.g.,

Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709 (Fed. Cir. 2014).  The CAFC

concluded that the claims in Ultramercial were directed to non-patent eligible

matter:

> This ordered combination of steps recites an abstraction—an idea,
> having no particular concrete or tangible form.  The process of
> receiving copyrighted media, selecting an ad, offering the media in

exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application. Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content.

Id. at 715.

Similar to Claim 1 of the '725 Patent, the claims in Ultramercial recited processes relating to media distribution and the facilitation of the exhibition of media content to users. Id. at 712. Claim 1 recites similar limitations directed to the organizing of media content through the receiving and storage of the media content and associated advertisements, distribution of media content through providing potential purchasers with access to the server, and marketing of media content through providing potential purchasers with samples and an exhibitor to exhibit such media content. See '725 Patent at 16:19–17:2. The Court concludes that nothing in representative Claim 1, understood in light of the specification, requires anything other than conventional computer technology for receiving, sending, storing, and retrieval of information.

DMTH argues that the exhibition of the media content, such as in a public theater or broadcast exhibitor, is a tangible display of media content that renders the claim to not be abstract. Pl.'s Resp. Br. at 19. The Court is not persuaded by this argument because the focus of the claims is on "a process that qualifies as an

'abstract idea' for which computers are invoked merely as a tool." See Enfish, 822 F.3d at 1335–36.

Therefore, the Court concludes that Claim 1 of the '725 Patent is directed to the abstract idea of organizing, distributing, and marketing media content and related advertisements. Because Claim 1 is the representative claim, and Plaintiff's Complaint alleges only Claim 1 to support its patent infringement allegations, the Court does not provide an analysis of Claims 13 to 24.[2] The Court now turns to step two of the Alice analysis.

## B. Alice Step Two

At step two, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." Alice, 573 U.S. at 217; see also Mayo, 566 U.S. at 73 (explaining that steps of claim must amount to more than "well-understood, routine, conventional activity"). "The

---

[2] DMTH asserts that independent Claim 14 is not directed to an abstract idea because it claims a specific collection of hardware components that operate together to display content to an audience at a particular time and place. Pl.'s Br. at 1. As discussed above, the patent specification does not indicate anything other than conventional computer technology for receiving, sending, storing, and retrieval of information. Claim 14 is directed to an abstract idea and lacks an inventive concept as its hardware elements are general-purpose components that are not specific to the claimed invention. See also Planet Bingo, LLC v. VKGS LLC, 576 F. App'x 1005 (Fed. Cir. 2014).

question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact . . . [and] must be proven by clear and convincing evidence." Berkheimer, 881 F.3d at 1368.

Deluxe Media argues that Claim 1 simply uses generic computer technology to receive, store, provide, and download data. Def.'s Br. at 13–15.

DMTH contends that Claim 1 of the '725 Patent recites the inventive concept of using "correlated information" to identify "multimedia material" and Claim 11 additionally recites "automatically collecting sales information" related to such multimedia material, none of which was a conventional or generic technology in May 2000. Pl.'s Resp. Br. at 20–22.

Deluxe Media replies that Claim 1's recitation of "correlated information" does not provide an inventive concept because organizing information by associating or correlating content "can be performed in the human mind or using a pencil and paper [, which is an] indication that a claim is abstract." Def.s Reply Br. at 1–2 (citing Broadband iTV, Inc. v. Amazon.com, Inc., 113 F.4th 1359 (Fed. Cir. 2024)). Deluxe Media further replies that Claim 11's recitation of "automatically collecting sales information" uses functional language at a high level of generality and is directed to insignificant post-solution activity that cannot

supply an inventive concept.  Def.s Reply Br. at 10 (citing <u>IBM v. Zillow Grp., Inc.</u>, 50 F.4th 1371 (Fed. Cir. 2022)).

The Court concludes that Claim 1 does not recite or provide specific improvements to the computer technology used to implement the claimed method. Claim 1 recites "storing said multimedia material and associated advertising material . . . as correlated information in digital format" through computer hardware components such as a "server system," a "computer readable storage medium," and a "communication network."  <u>See</u> '725 Patent at 16:19–17:2, 16:26–28.  The specification does not indicate anything other than conventional computer technology for receiving, sending, storing, and retrieving information, nor does the specification indicate what kind of technology is used for the "correlated information" between the media content and associated advertisements.  <u>See</u> <u>id.</u> at 3:13–17, 8:48–49.

Therefore, the Court holds that Claim 1 of the '725 Patent lacks an inventive concept.  Accordingly, representative Claim 1 does "no more than claim the application of generic machine learning to new data environments, without disclosing improvements to the machine learning models to be applied, [and] are patent-ineligible under §101."  <u>All Terminal Svcs., LLC v. Roboflow, Inc.</u>, C.A. No. 25-476-WCB, 2025 WL 2576394, at *15 (D. Del. Sept. 5, 2025) (citing <u>Recentive Analytics, Inc. v. Fox Corp.</u>, 134 F.4th 1205, 1216 (Fed. Cir. 2025)).

## CONCLUSION

The Court holds that the '725 Patent does not plausibly recite patent eligible subject matter under § 101 and the Court dismisses Count I based on a lack of eligible subject matter.

Moreover, although the Court is not required to consider Patent Office determinations as to eligibility because patent eligibility is a matter of law, see Beterio, LLC v. DraftKings Inc., 104 F.4th 1350, 1359 (Fed. Cir. 2024) ("[A] patent examiner's consideration of Section 101 issues does not in any way shield the patent's claims from Article III review for patent eligibility." (internal quotation omitted)); Sanderling Mgmt. Ltd. v. Snap Inc., 65 F.4th 698, 705 (Fed. Cir. 2023) ("[C]ourts are not required to defer to Patent Office determinations as to eligibility."), the Court takes judicial notice of the Patent Trial and Appeal Board's ("PTAB") August 25, 2025 determination in Disney Media & Entertainment Distribution LLC v. Digital Media Technology Holdings, LLC, No. IPR2024-00736 (P.T.A.B. Aug. 25, 2025) (D.I. 29-1) as further support of the Court's dismissal of the '725 Patent. The PTAB determined that Claims 1, 4–7, 9, and 11 of the '725 Patent are unpatentable. See Inter Partes Disney Media & Entertainment Distribution LLC v. Digital Media Technology Holdings, LLC, No. IPR2024-00736 (P.T.A.B. Aug. 25, 2025) (D.I. 29-1).

Because the representative claim fails to satisfy both the first and second steps of the <u>Alice</u> test for patent eligibility, Deluxe Media's motion to dismiss is granted.

ACCORDINGLY, IT IS HEREBY

**ORDERED** that Defendant's Motion to Dismiss (D.I. 12) is granted.

IT IS SO ORDERED this 24th day of September, 2025.

<u>/s/ Jennifer Choe-Groves</u>
Jennifer Choe-Groves
U.S. District Court Judge[*]

---

[*] Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.